UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| NORTH CAROLINA STATE CONFERENCE OF THE NAACP; MOORE COUNTY BRANCH OF THE NAACP; JAMES EDWARD ARTHUR, SR.; JAMES MICHAEL BROWER, GRACE BELL HARDISON; and JAMES L. COX; | No. 16-cv-1274 |
| *Plaintiffs*; | |
| v. | |
| The NORTH CAROLINA STATE BOARD OF ELECTIONS ("State BOE"); A. GRANT WHITNEY, JR., in his official capacity as Chairman of the State BOE; RHONDA K. AMOROSO, in her official capacity as Secretary of the State BOE; KIM WESTBROOK STRACH, in her official capacity as Executive Director of the State BOE; JOSHUA D. MALCOLM, in his official capacity as Member of the State BOE; JAMES BAKER, in his official capacity as Member of the State BOE; MAJA KRICKER, in her official capacity as Member of the State BOE; the BEAUFORT COUNTY BOARD OF ELECTIONS ("Beaufort BOE"); JAY MCROY, in his official capacity as Chairman of the Beaufort BOE; JOHN B. TATE, III, in his official capacity as Secretary of the Beaufort BOE; THOMAS S. PAYNE, II, in his official capacity as Member of the Beaufort BOE; KELLIE HARRIS HOPKINS, in her official capacity as Director of the Beaufort BOE; the MOORE COUNTY BOARD OF ELECTIONS ("Moore BOE"); SUSAN T. ADAMS, in her | |

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

official capacity as Chairman of the Moore
BOE; CAROLYN M. MCDERMOTT, in her
official capacity as Secretary of the Moore
BOE; WILLIAM R. PARKE, in his official
capacity as Member of the Moore BOE;
GLENDA M. CLENDENIN, in her official
capacity as Director of the Moore BOE; the
CUMBERLAND COUNTY BOARD OF
ELECTIONS ("Cumberland BOE"); JAMES
H. BAKER, in his official capacity as
Chairperson of the Cumberland BOE;
ROBERT KEVIN HIGHT, in his official
capacity as Secretary of the Cumberland BOE;
HARVEY RAYNOR III, in his official capacity
as Member of the Cumberland BOE; and
TERRI ROBERTSON, in her official capacity
as Director of the Cumberland BOE,

Defendants.

# COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

## INTRODUCTION

1.      This is an action for declaratory and immediate injunctive relief before the

November 8, 2016 general election, seeking to enjoin the North Carolina and County

Boards of Elections from cancelling the voter registrations of thousands of North Carolina

voters who have been targeted in coordinated, *en masse* challenge proceedings brought in

the final weeks and months before Election Day, and whose right to vote has been

challenged solely on the basis of a single piece of undeliverable mail, in clear violation of

the National Voter Registration Act ("NVRA") and other federal laws.

2.      In order to protect the rights of voters, the NVRA limits states' authority to

cancel voter registration on the basis of a voter's change in residence.   A registration

cancellation for change in residence is allowed *only if* a voter either (1) confirms the residence change in writing, or (2) is given a prescribed notice and then fails to respond and fails to vote for two federal election cycles. The NVRA also prohibits all systemic voter removal programs within 90 days of a federal election.

3.     In recent weeks and months, in direct violation of the NVRA and other federal laws, boards of election in at least three North Carolina counties, and possibly others, have cancelled thousands of voter registrations for changes in residence on the basis of single mailings returned as undeliverable – without compliance with the NVRA's notice and two-cycle provisions. In many cases, voters purged by Defendants still reside at the addresses where they are registered to vote, or have moved within the county and remain eligible to vote there. Nonetheless, a single item of returned mail has resulted in their ultimate removal from the voter rolls.

4.     The State Board of Elections defends these mass cancellations on the ground that state laws purportedly allow private individuals to challenge voter registrations based on evidence that they have moved out of the precinct or county, including a returned mailing. But those state laws cannot be implemented in a manner that violates the NVRA, which is exactly what Defendants have done and will continue to do unless enjoined. Defendants have cancelled thousands of voter registrations in the final weeks before a general election in violation of federal law.

5.     Accordingly, Plaintiffs James Michael Brower, Grace Bell Hardison, and James L. Cox, whose eligibility to vote has been unlawfully challenged, and Plaintiff James

Edward Arthur, Sr., whose voter registration has been unlawfully cancelled, as well as Plaintiffs North Carolina State Conference of the NAACP ("North Carolina NAACP") and Moore County Branch of the NAACP ("Moore County NAACP") (collectively "organizational Plaintiffs"), bring this action seeking injunctive relief to stop further unlawful voter purges by the Defendants and to require Defendants to restore wrongfully purged voters to the rolls so that they can exercise their right to vote in the general election on November 8, 2016 and in future elections.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over this action under 28 U.S.C. §1331 because this action arises under the Constitution and laws of the United States; under 28 U.S.C. §§1343(a)(3)-(4) and 1357 because this action seeks equitable and other relief pursuant to an act of Congress providing for the protection of the right to vote; and under 42 U.S.C. §§1983 and 1988 because this action seeks to enforce rights and privileges secured by the laws of the United States. This Court has authority to issue declaratory and injunctive relief pursuant to 28 U.S.C. §§2201 and 2202.

7.      Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because, among other things, a substantial part of the events or omissions giving rise to the claims have occurred, or will occur, in this District.

## PARTIES

8.      Plaintiff NORTH CAROLINA STATE CONFERENCE OF THE NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE

("North Carolina NAACP") is a nonpartisan, nonprofit organization, whose headquarters are in Durham, North Carolina. With over 100 branches and more than 20,000 individual members throughout the state of North Carolina, the North Carolina NAACP is the largest NAACP conference in the South and the second largest conference in the country. The North Carolina NAACP has members who are citizens and registered voters in each of the state's 100 counties, including the 40 counties formerly covered by the pre-clearance formula under Section 4(b) of the federal Voting Rights Act.

9.     The fundamental mission of the North Carolina NAACP is the advancement and improvement of the political, educational, social, and economic status of minority groups; the elimination of racial prejudice and discrimination; the publicizing of adverse effects of racial discrimination; and the initiation of lawful action to secure the elimination of racial bias and discrimination. In furtherance of this mission, the North Carolina NAACP advocates to ensure that the interests of the African American community are represented on local, state, and national legislative bodies by representatives who share the community's interests, values, and beliefs, and who will be accountable to the community.

10.     Since its founding in 1938, an enduring priority of the North Carolina NAACP has been to protect and expand hard-won voting rights. The organization has played a prominent role in promoting the right to vote and civic engagement generally throughout North Carolina, including by fighting for the voting rights of African Americans. For example, in the past decade, the North Carolina NAACP has engaged in voter registration drives, efforts to encourage civic engagement by youth, and Get Out the

Vote ("GOTV") drives. The North Carolina NAACP engages in voter empowerment work through all-volunteer Political Action Chairs and Committees active at both the state and local levels. GOTV efforts have included large-scale "Souls to the Polls" campaigns on Sundays after church, Million Voter Marches, and non-partisan civic engagement trainings, events, and assemblies across the State. The organization has placed a particular emphasis on promoting the use of early voting, same-day registration, outreach to young voters, and Souls to the Polls.

11.    Plaintiff MOORE COUNTY BRANCH OF THE NAACP ("Moore County NAACP") is a unit of the NAACP, and shares in the mission of the North Carolina NAACP. In furtherance of its mission, the Moore County NAACP has long been engaged in efforts to promote the right to vote, including through voter registration drives, efforts to encourage civic engagement by youth, and Get Out the Vote drives, among other voter-protection and voter-education activities.

12.    Plaintiff James Edward Arthur, Sr., is an African American U.S. citizen and a resident of Washington (Beaufort County), North Carolina, where he has lived his entire life. Mr. Arthur became a registered voter in Beaufort County in November 2011, and has since voted in at least 14 elections. Mr. Arthur wishes to vote in the upcoming November 8, 2016 general election, and had planned to do so, but recently learned that he will be unable to cast a regular ballot because his voter registration was cancelled by the Beaufort County Board of Elections ("Beaufort BOE") on or after October 24, 2016, as a result of a third-party challenge brought under North Carolina's voter challenge statute. Mr. Arthur

is one of approximately 138 voters in Beaufort County whose registration was challenged in recent weeks by a group of individuals, based solely on undeliverable mass mailings.

13.     Plaintiff James Michael Brower is an African American U.S. citizen and a resident of Robbins (Moore County), North Carolina.  Mr. Brower was born in Moore County, and has lived in Moore County continuously since 1999.  Mr. Brower is an active voter and, since becoming a registered voter in Moore County, has voted in person in at least nine elections in Moore County, including as recently as November 2014.  Mr. Brower's registration status was challenged as part of an *en masse* challenge proceedings brought by a private citizen in Moore County on the basis of alleged change in residence.  Mr. Brower only learned of the challenge when a relative with knowledge of the challenges informed him that his name appeared on the list of challenged voters.  Upon learning of the challenge, Mr. Brower went to the Moore BOE to inform them that he is still a Moore County resident eligible to vote and was ultimately successful in getting his name removed from the challenge list.  Nonetheless, he is troubled that his right to vote was challenged, and particularly by the knowledge that but for others' efforts, he may have been purged from the voter rolls and unable to cast a regular ballot in the November 8 election, which he intends to do.  Mr. Brower has been a member of the Moore County NAACP within the last five years and is currently renewing his membership.

14.     Plaintiff Grace Bell Hardison is a 100-year-old African-American woman who is a U.S. citizen and a resident of Belhaven (Beaufort County), North Carolina, where she has lived her entire life.  Ms. Hardison is an active voter and has voted nearly every

year for the last twelve years, including most recently in the 2015 municipal election. Ms. Hardison's registration was challenged as part of *en masse* challenges brought by a group of private citizens in Beaufort County on the basis of her alleged change in residence, even though she has lived continuously at the same residence since 2011, which is the same address on her voter registration records. Ms. Hardison only learned of the challenge on or about October 14, 2016 from her nephew, who is active with the NC NAACP and read about the challenges in the newspaper. Although her nephew was ultimately successful in defeating the challenge by presenting evidence of Ms. Hardison's residence, Ms. Hardison continues to fear that she will be told at the polls on Election Day that she is not registered and will be denied her right to vote, which she holds sacred.

15. Plaintiff James L. Cox is an African-American U.S. citizen and a resident of Belhaven (Beaufort County), North Carolina, where he has lived his entire life. Mr. Cox registered to vote in Beaufort County in 2011 and has since voted in at least seven elections, including as recently as the June 7, 2016 primary. Mr. Cox's registration was challenged as part of *en masse* challenges brought by a group of private citizens in Beaufort County on the basis of his alleged change in residence, even though he has lived continuously at the same residence since 2011, which is the same address on his voter registration records. Mr. Cox never received any notice from the Beaufort BOE regarding the challenge to his registration. Mr. Cox only learned of the challenge from a friend and fellow Belhaven resident who learned of the *en masse* challenges through a news story, and who assisted him in submitting proof of his voter eligibility to the Beaufort BOE in order to protect his

registration status. Mr. Cox wishes and plans to vote in the upcoming November 8, 2016 general election. Had he not been informed about the challenge by his friend, he would not have known that his right to vote in the November 8 election had been placed in jeopardy.

16. Defendant NORTH CAROLINA STATE BOARD OF ELECTIONS ("State BOE") is charged with administering the election laws of the State of North Carolina. The State BOE has the authority to advise county BOEs as to the proper methods for conducting primaries and elections and to compel county BOEs to observe the requirements of elections laws. N.C.G.S. §163-22(c).

17. Defendant A. GRANT WHITNEY, JR., is sued in his official capacity as Chairman of the State BOE, which is charged with administering the election laws of the State of North Carolina.

18. Defendant RHONDA K. AMOROSO is sued in her official capacity as Secretary of the State BOE, which is charged with administering the election laws of the State of North Carolina.

19. Defendant KIM WESTBROOK STRACH is sued in her official capacity as Executive Director of the State BOE, which is charged with administering the election laws of the State of North Carolina. Defendant Strach is also the designated chief state election official responsible for coordination of North Carolina's responsibilities under the NVRA.

20.     Defendant JOSHUA D. MALCOLM is sued in his official capacity as a Member of the State BOE, which is charged with administering the election laws of the State of North Carolina.

21.     Defendant JAMES BAKER is sued in his official capacity as a Member of the State BOE, which is charged with administering the election laws of the State of North Carolina.

22.     Defendant MAJA KRICKER is sued in her official capacity as a Member of the State BOE, which is charged with administering the election laws of the State of North Carolina.

23.     Defendant BEAUFORT COUNTY BOARD OF ELECTIONS ("Beaufort BOE") is charged with administering North Carolina's election laws within Beaufort County, North Carolina.

24.     Defendant JAY MCROY is sued in his official capacity as Chairman of the Beaufort BOE, which is charged with administering North Carolina's election laws within Beaufort County, North Carolina.

25.     Defendant JOHN B. TATE, III, is sued in his official capacity as Secretary of the Beaufort BOE, which is charged with administering North Carolina's election laws within Beaufort County, North Carolina.

26.     Defendant THOMAS S. PAYNE, II, is sued in his official capacity as a Member of the Beaufort BOE, which is charged with administering North Carolina's election laws within Beaufort County, North Carolina.

27.    Defendant KELLIE HARRIS HOPKINS is sued in her official capacity as Director of the Beaufort BOE, which is charged with administering North Carolina's election laws within Beaufort County, North Carolina. Defendant Hopkins is appointed by the Executive Director of the State BOE and is responsible for implementing the Beaufort BOE's decisions.

28.    Defendant MOORE COUNTY BOARD OF ELECTIONS ("Moore BOE") is charged with administering North Carolina's election laws within Moore County, North Carolina.

29.    Defendant SUSAN T. ADAMS is sued in her official capacity as Chairman of the Moore BOE, which is charged with administering North Carolina's election laws within Moore County, North Carolina.

30.    Defendant CAROLYN M. MCDERMOTT is sued in her official capacity as Secretary of the Moore BOE, which is charged with administering North Carolina's election laws within Moore County, North Carolina.

31.    Defendant WILLIAM R. PARKE is sued in his official capacity as a Member of the Moore BOE, which is charged with administering North Carolina's election laws within Moore County, North Carolina.

32.    Defendant GLENDA M. CLENDENIN is sued in her official capacity as Director of the Moore BOE, which is charged with administering North Carolina's election laws within Moore County, North Carolina. Defendant Clendenin is appointed by the

Executive Director of the State BOE and is responsible for implementing the Moore BOE's decisions.

33.     Defendant CUMBERLAND COUNTY BOARD OF ELECTIONS ("Cumberland BOE") is charged with administering North Carolina's election laws within Cumberland County, North Carolina.

34.     Defendant JAMES H. BAKER is sued in his official capacity as Chairperson of the Cumberland BOE, which is charged with administering North Carolina's election laws within Cumberland County, North Carolina.

35.     Defendant ROBERT KEVIN HIGHT is sued in his official capacity as Secretary of the Cumberland BOE, which is charged with administering North Carolina's election laws within Cumberland County, North Carolina.

36.     Defendant HARVEY RAYNOR, III, is sued in his official capacity as a Member of the Cumberland BOE, which is charged with administering North Carolina's election laws within Cumberland County, North Carolina.

37.     Defendant TERRI ROBERTSON is sued in her official capacity as Director of the Cumberland BOE, which is charged with administering North Carolina's election laws within Cumberland County, North Carolina.  Defendant Robertson is appointed by the Executive Director of the State BOE and is responsible for implementing the Cumberland BOE's decisions.

## LEGAL BACKGROUND

### The National Voter Registration Act of 1993

38.     The NVRA sets forth mandatory procedures for state election officials that further several goals, including to "increase the number of eligible citizens who register to vote in elections for Federal office . . . ; to protect the integrity of the electoral process; and to ensure that accurate and current voter registration rolls are maintained." 52 U.S.C. §20501(b).

39.     To that end, the NVRA requires States to "ensure that any eligible applicant is registered to vote in an election" if the applicant submits, through one of several means, a valid voter registration form at least 30 days before the date of a federal election. 52 U.S.C. §20507(a)(1). Once voters are registered, the NVRA imposes strict safeguards against their improper or unfair removal from the official list of eligible voters. *Id.* §20507(a)(3)-(4).

40.     The NVRA provides that certain procedures must be followed if a state undertakes to remove registered voters on the basis of a change in residence. In particular, the NVRA prohibits such removals unless the registrant either: (1) confirms the change of residence in writing, or (2) fails to respond to a notice, the contents and manner of mailing of which are prescribed by the NVRA, *and* fails to vote during the next two general election cycles after receiving the notice. *Id.* §20507(d).

41.     The NVRA's safeguards are particularly stringent in the period leading up to a federal election. Specifically, states must "complete, not later than 90 days prior to the

date of a primary or general election for Federal office, any program the purpose of which is to systematically remove the names of ineligible voters from the official lists of eligible voters." *Id.* §20507(c)(2)(A).  The only exceptions to this provision occur upon the request of the registrant, criminal conviction, a determination of incompetence, or the death of the registrant.  *Id.* §20507(c)(2)(B).

## North Carolina's Voter Challenge Statute

42.     North Carolina law authorizes any voter in a county to challenge the eligibility of any other county voter at any time up to 25 days before each primary, general, or special election.  N.C.G.S. §163-85(a).  Such challenges may be based on certain specified grounds including that the challenged voter is not a resident of the county or of the precinct where he or she is registered to vote.  N.C.G.S. §163-85(c)(2), (3).

43.     The statute mandates the county BOEs to schedule a preliminary hearing on any such challenge, at which only the challenger may proffer evidence.  N.C.G.S. §163-85(d).  At that hearing, a returned letter sent by first-class mail to the voter at the address listed on the voter registration card constitutes "prima facie evidence that the person no longer resides in the precinct."  N.C.G.S. §163-85(e).  If the board finds probable cause that the person challenged is not qualified to vote, then the board must schedule a second hearing on the challenge and send a notice to the challenged voter's registration address stating the grounds for the challenge and the time and place of the hearing.  N.C.G.S. §§163-85(d), 163-86(b).

44. At that second hearing, if the challenged voter appears in person, county BOE officials must explain the qualifications for registration and question the voter under oath regarding his or her qualifications. N.C.G.S. §163-86(c). A challenged voter who is "unable to appear in person" at the hearing "may be represented by another person" but must submit to the board an affidavit stating that, among other things, he or she "has or will have resided in this State and in the precinct for which registered for 30 days by the date of the next primary or election." N.C.G.S. §163-86(d). If the challenged voter neither takes an in-person oath nor submits the required affidavit, their registration must be cancelled. N.C.G.S. §163-86(c).

45. In contrast to these challenge provisions, other provisions of North Carolina law actually incorporate the protections of the NVRA. *E.g.*, N.C.G.S. §163-82.14(d) (providing for NVRA-compliant list maintenance procedures including address updates and removal of ineligible voters after notice and two federal election cycles); *id.* §163-82.14(d)(3) (requiring that voters removed from rolls under §163-82.14(d) be allowed to cast valid ballots if they show up to vote even if their address has changed); *id.* §163-82.15(e) (permitting voters to cast valid ballots if they have moved within a county). Whatever the explanation for the apparent inconsistency between North Carolina statutory provisions authorizing challenges to/cancellation of registrations of voters who have moved within the county while simultaneously affirming their eligibility to vote, the counties' recent implementation of the challenge procedures has violated the federal NVRA.

## FACTUAL BACKGROUND

### North Carolina's Unlawful Voter Challenge and Purge Practices

46.     In the weeks and months leading up to the November 8, 2016 general election, county BOEs throughout North Carolina have been removing large numbers of eligible, registered voters from the voter rolls, in response to coordinated and targeted *en masse* change-of-address challenges brought under the State's voter challenge statute by a handful of individuals.

47.     According to the State BOE, in Beaufort, Moore, and Cumberland Counties alone, a small number of individuals have recently challenged the registration of approximately 4,500 voters, based exclusively on mass mailings that were returned as undeliverable.  The overwhelming majority of these challenges were brought in August and September 2016, less than 90 days before Election Day.  Similar challenges may be occurring in other North Carolina counties as well.

48.     In Beaufort County, four individuals (including two 2015 candidates for local office, Ricky Radcliffe and Shane Hubers) filed challenges to 138 registered voters in September and October 2016.  The sole basis for these challenges appears to be a mass mailing from Mr. Radcliffe's 2015 campaign that was returned from these voters' addresses as undeliverable.

49.     The Beaufort BOE held preliminary hearings on these voter challenges – of which the challenged voters were given no notice – on October 7 and October 14, 2016, and subsequently set the 138 challenges for formal hearing on October 24 or October 29,

during the first week of early voting. At the preliminary hearings, Beaufort BOE members acknowledged it was very close to the election to be holding formal hearings, that some of the challenged voters (particularly the elderly) would have difficulty attending the hearings, and that most of the challenged voters would not attend them. Beaufort BOE members also noted at the preliminary hearing that some of the challenges were based on returned mailings that had been sent to the voter's residential address rather than their listed mailing address, but nonetheless set those challenges for formal hearing anyway. Beaufort BOE members stated that any voters who did not attend the formal hearing – including those individuals who had already contacted the Board to confirm that they had not moved – would be automatically removed from the rolls.

50.    The Beaufort BOE purportedly sent letters to the challenged voters advising them of the hearings, but in most instances these letters were sent only to the same addresses from which Mr. Radcliffe's 2015 campaign mailings were returned as undeliverable. Many challenged voters did not receive any notice from the Beaufort BOE that their registration status was challenged or that in order to remain registered to vote they would have to attend the October 24 or October 29 hearing in person or otherwise send a representative to appear on their behalf and submit a signed affidavit attesting to certain specific facts.

51.    The *en masse* voter challenges in Beaufort County have disproportionately targeted African American voters. African Americans comprise only 25.9% of the

Beaufort County population, but they account for more than 65% (91 of 138) of the challenges.

52.    Veronica Ward, a long-time Belhaven resident, initially learned of these systematic challenges occurring in Beaufort County through a news report.  On or about October 19, 2016, she saw a list of the 138 challenged voters, and realized that she knew many of the people on the list, a majority of whom are African American.  Disturbed by the fact that African Americans appeared to have been targeted by these last-minute *en masse* voter challenges, Ms. Ward and two other Beaufort County residents immediately reached out to as many of the challenged voters as they could in an effort to offer assistance in advance of the hearings.  In the limited period of time they had before the scheduled formal hearings, they were able to contact 35 of the 138 challenged voters, many of whom were not aware before being contacted by Ms. Ward or her friends that their voter registration status had been challenged.  Five of those individuals were scheduled for hearings on October 24, and 30 were scheduled for hearings on October 29.

53.    Ms. Ward and her friends assisted these individuals in drafting affidavits affirming that they live in Beaufort County and are eligible to vote, and presented information at the October 24 and October 29 hearings about these voters' residency. Several of the individuals they assisted would have had difficulty traveling to attend the hearings themselves.

54.    As a result of Ms. Ward's and her friends' efforts, the voting eligibility of all five of the challenged voters they assisted who were scheduled for hearings on October 24

was upheld.  Without the assistance of Ms. Ward and her friends, these five eligible voters would in all likelihood have been removed from the voter rolls.  Many of the other challenged voters, whom Ms. Ward and her friends were unable to reach in time, were purged from the voter rolls after the October 24 hearing, which they did not attend.

55.    At the October 29 hearing, Ms. Ward presented evidence on behalf of the challenged voters she and her friends had been able to reach, demonstrating that these individuals still lived within Beaufort County.  For example, Ms. Ward testified that she personally visited one of the challenged voters at the residence in dispute.  No evidence to the contrary was presented.  Nevertheless, rather than reject the challenge outright, the Beaufort BOE instead postponed the hearing on the challenge to this individual to November 7 – the day before Election Day – in order to afford the challenger an opportunity to withdraw his challenge.  The Beaufort BOE also postponed hearings on 11 other individual voters to November 7.  The challenges to these 12 voters thus currently remain pending.  Beaufort BOE members stated at the hearing that the registrations of these postponed voters would be cancelled if they did not show up at the November 7 hearing or present an affidavit attesting to their eligibility.

56.    The challenges to many other voters, whom Ms. Ward and her friends were unable to reach in time, were sustained at the October 29 hearing, and approximately 50 voters were purged from the voter rolls as a result.

57.    Many of the voters who have been challenged or actually removed from the voter rolls are registered voters who currently reside within Beaufort County and are

eligible to vote. Many of these voters simply moved to another residence within Beaufort County, and many others had not changed their residence at all, but nonetheless sometimes do not receive mail for various reasons.

58.     Voters removed from the registration rolls at the October 24 hearing include an individual who the Beaufort BOE members knew continues to reside within the county, Plaintiff James Edward Arthur, Sr. Mr. Arthur is a resident of Washington, North Carolina and has lived in Beaufort County his entire life. He registered to vote in Beaufort County in November 2011, and since then has voted in at least 14 elections. In 2013, he was admitted to Ridgewood Manor, a nursing home also located in Washington, North Carolina (within Beaufort County), due to an injury he sustained. Mr. Arthur never received any notice from the Beaufort BOE regarding a challenge to his voter registration status, and never received any notice from the Beaufort BOE that a hearing had been set for October 24, 2016. Mr. Arthur wishes to vote in the upcoming November 8, 2016 general election, and had planned to do so, but recently learned that he will be unable to cast a regular ballot on election day because his voter registration has been cancelled. At the October 24 hearing, BOE members discussed that Mr. Arthur had moved into a nursing home within the county, but nonetheless cancelled his registration based on the returned-as-undeliverable mailing sent to the address where he lived prior to the nursing home.

59.     Plaintiff James Lee Cox was also challenged solely on the basis of undeliverable mail. Mr. Cox is another lifelong resident of Belhaven, North Carolina, and has resided continuously at the same address in Beaufort County since 2012. Mr. Cox

registered to vote in Beaufort County in October 2011 and since then has been an active voter, voting in at least seven elections. Mr. Cox never received any notice from the Beaufort BOE regarding a challenge to his voter registration status, and never received any notice from the Beaufort BOE that a hearing had been set for October 29, 2016. Mr. Cox has both a street address and a P.O. box; in his past experience, if mail is not addressed to his P.O. box, it is returned to the sender as "undeliverable." Mr. Cox only learned of the challenge to his registration status and of the October 29 hearing because he was contacted by Vera Martin, who offered to assist him in defending the challenge. Although Mr. Cox, with Ms. Martin's assistance, submitted a form to the Beaufort BOE demonstrating his eligibility to vote, he has not received any notice from the Beaufort BOE confirming that the challenge to his registration status has been withdrawn. Mr. Cox desires and intends to vote in the November 8, 2016 general election.

60. To date, the Beaufort BOE has not notified Beaufort County voters who were removed at the October 24 hearing of their removal, and the Beaufort BOE Director is unsure what to tell those voters regarding whether they may cast ballots in the upcoming November 8 election.

61. Similar practices have occurred, and are occurring, in Moore County, where a single individual challenger, N. Carol Wheeldon, submitted forms in July 2016 challenging approximately 400 registered voters. It appears that the sole basis for all of these challenges was an undelivered, returned letter from a mass mailing, which Ms. Wheeldon attached to her challenge forms in support of her claim that "[t]he person is not

a resident of the precinct in which the person is registered." The envelopes used in Ms. Wheeldon's mailing were expressly marked "DO NOT FORWARD."

62. The Moore BOE held preliminary hearings on September 6, 2016 and subsequently set nearly all of the approximately 400 challenges for formal hearings on a single day, October 14, 2016, less than 90 days before Election Day. The Moore BOE sent notice letters to each of the challenged voters, likely to the same addresses from which Ms. Wheeldon's mailings had been returned as undeliverable.

63. At the hearing on October 14, no further evidence of any of the challenged voters' ineligibility to vote was proffered. None of the challenged voters attended. Approximately a dozen or fewer challenges were dismissed or otherwise taken off the challenge list at the hearing itself or in the days leading up to the hearing. With the exception of those few individuals, the remaining several hundred individuals on the challenge list were removed from the voter rolls.

64. The list of challenged voters included individuals like Plaintiff Brower, who currently reside within Moore County and are eligible to vote. Mr. Brower has lived in Moore County continuously since 1999. He is an active voter and has voted as recently as in the November 2014 election, and he has every intention of voting on November 8, 2016. In October 2016, when a friend who was familiar with the issue alerted his wife that his name was on a list of challenged voters Mr. Bower learned that his registration had been challenged. Upon learning of the challenge, Mr. Brower went to the Moore BOE to inform them that he is still a Moore County resident eligible to vote and ultimately succeeded in

getting his name removed from the challenge list. Had he not been contacted by his friend, he very likely would have been purged from the voter rolls as a result of a single piece of returned mail.

65. An attorney working with the Moore County NAACP was able to contact another purged voter, who in fact still lives at the same Moore County address he used to register to vote. The voter wishes to vote in the upcoming November 8, 2016 general election, and had planned to do so, but recently learned that he will be unable to cast a regular ballot because his voter registration was cancelled at the October 14 hearing. He never received notice from the Moore BOE of the challenge or of the hearing.

66. Plaintiff Moore NAACP made a request for information to the Moore BOE, seeking a copy of any post-hearing notice that the Moore BOE sent to the removed voters. To date, the Moore BOE has not responded.

67. Similar coordinated, *en masse* voter challenge and registration cancellation practices have occurred, and are occurring, in Cumberland County as well. According to the State BOE, nearly 4,000 challenges were filed in Cumberland County in August and September 2016, and many more challenges have been filed since 2014. As in Moore and Beaufort Counties, the challenges in Cumberland County were based on mass mailings returned as undeliverable.

68. At a September 30 hearing, the Cumberland BOE found probable cause to set approximately 3,500 voters for a formal hearing to consider whether to cancel their registrations. Although Plaintiffs have not yet been able to obtain comprehensive

information concerning the fates of those voters, a sample of voter registration records suggests that the vast majority have been cancelled.

69. As a result of these unlawful voter challenge and practices under North Carolina's voter challenge statute, large numbers of eligible voters have been wrongfully challenged and, in many cases, wrongfully purged from the voter rolls, without sending the notice required by the NVRA or waiting for two election cycles afterward.

## Plaintiffs' Protests of Unlawful Challenge and Purge Practices

70. Upon learning of Defendants' unlawful voter challenge and purge practices, Plaintiff organizations took immediate steps to notify the State of its unlawful practices and to petition for immediate cessation of the unlawful practices and restoration of the challenged voters' registration status, to no avail.

71. On October 17, 2016, North Carolina NAACP President Rev. Dr. William J. Barber, II sent a letter to Defendant North Carolina State Board of Elections, setting forth what Plaintiffs had learned about voter removals in Beaufort, Moore, and Cumberland Counties and protesting that the removal of these voters from the voter rolls violated the NVRA as well as state law.

72. In that letter, Rev. Dr. Barber specifically stated that the cancellation of these registrations violated the following provisions of the NVRA: 52 U.S.C. §20507(d)(1) (prohibiting removal of voters based on changed address without meeting certain requirements) and 52 U.S.C. §20507(c)(2)(A) (prohibiting systemic removal of voters within 90 days of an election). The letter requested that the Board instruct all county BOEs

to cease removal of voters from the rolls based on returned mail without complying with the NVRA.

73.     In response, the State BOE stated its opinion that the cancellations do not constitute systematic removals as prohibited by the NVRA within 90 days of the election, but did not address the concern raised that the cancellations also violate 52 U.S.C. §20507(d)(1).

74.     On October 22, 2016, Rev. Dr. Barber sent another letter, to Defendant Kim Westbrook Strach, Executive Director of the State Board of Elections, elaborating on the North Carolina NAACP's concerns.

75.     The State BOE responded on October 27, 2016, confirming that thousands of voters have been challenged in these *en masse* proceedings in at least Beaufort, Moore, and Cumberland Counties, and that these proceedings have resulted in the removal of voters from the voter rolls.  The State BOE nonetheless reasserted its position that the State's voter challenge procedures comport with requirements under the NVRA.

76.     On October 14, 2016, Moore County NAACP President O'Linda D. Watkins sent a letter to the Moore BOE and its Director Glenda Clendenin, setting forth what the organization had learned about voter removals in Moore County and protesting that the removal of these voters from the voter rolls violated the NVRA as well as state law.

77.     Ms. Watkins specifically stated that the cancellation of these registrations violated the following provisions of the NVRA: 52 U.S.C. §20507(d)(1) (prohibiting removal of voters based on changed address without meeting certain requirements) and 52

U.S.C. §20507(c)(2)(A) (prohibiting systemic removal of voters within 90 days of an election), and further explained that, separate and apart from their unlawfulness under federal law, the challenges should not have been set for hearing because they did not, on their face, meet the requirements for a successful challenge under state law.

78.     Ms. Watkins did not receive a response to her letter.

### Defendants' Unlawful Voter Challenge and Purge Practices Irreparably Harm Plaintiffs and Their Members

79.     Defendants' practice of permitting and enabling challengers to bring systematic, coordinated, *en masse* challenges to large numbers of registered voters, and of purging those challenged voters from the voter roll violates the NVRA, the Voting Rights Act of 1965, and the Equal Protection Clause of the United States Constitution.

80.     Defendants' unlawful voter challenge and purge practices cause substantial and irreparable harm to the individual Plaintiffs and to the organizational Plaintiffs' members by unlawfully purging registered voters from the voter rolls, and/or by subjecting them to a real and imminent risk that they will be unlawfully purged from the voter rolls and consequently denied their right to vote in the upcoming November 8, 2016 general election, as well as in subsequent elections.

81.     The practices occurring in North Carolina, including in Beaufort, Moore, and Cumberland Counties, have already harmed the individual Plaintiffs and many of the organizational Plaintiffs' members and voters whom those members assist, who have been unlawfully challenged and/or purged, and threaten to disenfranchise many others. On information and belief, members of both North Carolina NAACP and Moore County

NAACP, such as Plaintiff Brower, have been challenged or purged pursuant to Defendants' unlawful implementation of North Carolina's voter challenge statute, in violation of the NVRA and other federal law, or are at risk of being so unlawfully challenged and denied their right to vote in future elections.

82.     Individuals who have been purged from the voter rolls will not appear on the list of registered voters at their polling place and so will be unable to cast regular ballots. Instead, they will be required to stand in a separate line and to attempt to complete the complicated steps required to submit a provisional ballot.

83.     Poll workers may permit such purged voters to cast provisional ballots, but that will require the voters to attest in an affirmation that they are "registered voter[s] in the jurisdiction." N.C.G.S. §163-166.11(2). Voters whose registration has been cancelled, but wrongfully so, may not understand whether they can truthfully provide such an attestation and therefore may not provide it. As a result, many or most purged voters will be unable to cast provisional ballots.

84.     It is likely that even those purged voters who are able to cast provisional ballots will not have their votes counted. The county BOEs will determine whether the purged voter was eligible to vote, including whether the voter was registered in the county. Since these voters' registrations have been cancelled, county BOEs will likely determine that most of these voters are not eligible to vote and will not count their provisional ballots.

85.     Many voters who learn of challenges to their registration will be deterred from voting, even if their registration is preserved. The uncertainty caused by the

challenges and the feeling of having been targeted for removal will undermine many voters' confidence that they will be able to vote and that their votes will be counted. This is more so the case for African American voters who have personal memory of a time when African Americans were not able to vote.

86.     In addition to those individuals who have already been unlawfully challenged and/or purged from the voter rolls, Defendants' unlawful implementation of its voter challenge statute in contravention of the NVRA and other federal law threatens the voting rights of *all* the organizational Plaintiffs' members. Unless Defendants' unlawful practices are enjoined, all of the organizational Plaintiffs' members will remain at risk of being subject to future unlawful challenges and unlawful disenfranchisement.

87.     Defendants' unlawful voter challenge and purging practices also directly harm organizational Plaintiffs North Carolina NAACP and Moore County NAACP, because those practices undermine their hard-fought efforts to register eligible voters, to encourage early voting, and to conduct voter-education activities.

88.     In addition, Defendants' unlawful voter challenge and purging practices further directly harm Plaintiffs North Carolina NAACP and Moore County NAACP as organizations by forcing them to divert their limited resources away from their planned voter-protection and education efforts, and instead to expend valuable staff time and resources investigating and taking measures to counteract Defendants' unlawful purging activities, in an effort to ensure that the voting rights of their members and the voting rights of all citizens are protected in the upcoming November 8, 2016 election.

89.     Plaintiff North Carolina NAACP has been forced to divert its valuable and limited resources away from its core mission and planned voter-mobilization, voter-protection, and voter-education activities in connection with the upcoming November 8, 2016 general election, in order to investigate, respond to, mitigate, and address the concerns of its members resulting from Defendants' unlawful *en masse* voter challenge and purging practices.    This diversion of resources, particularly during this critical time in the weeks leading up to the general election, is itself an irreparable harm to Plaintiff North Carolina NAACP and its members.

90.     Plaintiff Moore County NAACP has similarly had to divert its valuable and limited resources away from its planned voter-protection and voter-education activities in order to investigate, respond to, and address the concerns of its members resulting from Defendants' unlawful practices.  Because Plaintiff Moore County NAACP has been forced to divert its limited resources to respond to Defendants' unlawful conduct, it has been unable to conduct other activities important to its mission.

## CAUSES OF ACTION

### COUNT I

### (Violation of the NVRA, 52 U.S.C. §20507(d))

91.     Plaintiffs reallege every allegation of the preceding paragraphs as though fully set forth herein.

92.     The NVRA provides that if a state undertakes to remove registered voters on the basis of a change in residence, certain procedures must be followed.  In particular, the

NVRA prohibits such removals unless the registrant either: (1) confirms the change of residence in writing, or (2) fails to respond to a notice, the contents and manner of mailing of which are prescribed by the NVRA, *and* fails to vote during the next two general federal election cycles after receiving the notice. *Id.* §20507(d).

93.     Adequate notice for such a removal must be provided by "a postage prepaid and pre-addressed return card, sent by forwardable mail, on which the registrant may state his or her current address." *Id.* §20507(d)(2).

94.     In addition, the notice must explain the following:

(A) If the registrant did not change his or her residence, or changed residence but remained in the registrar's jurisdiction, the registrant should return the card not later than the time provided for mail registration under subsection (a)(1)(B). If the card is not returned, affirmation or confirmation of the registrant's address may be required before the registrant is permitted to vote in a Federal election during the period beginning on the date of the notice and ending on the day after the date of the second general election for Federal office that occurs after the date of the notice, and if the registrant does not vote in an election during that period the registrant's name will be removed from the list of eligible voters.

(B) If the registrant has changed residence to a place outside the registrar's jurisdiction in which the registrant is registered, information concerning how the registrant can continue to be eligible to vote."

52 U.S.C. §20507(d)(2).

95.     Relatedly, the NVRA expressly requires states to count the votes of individuals who have moved to a new precinct within a county, *regardless* of whether they have re-registered at that address or responded to a notice sent pursuant to 52 U.S.C. §20507(d). *See* 52 U.S.C. §20507(e), (f). Thus, separate and apart from the notice and

timing requirements of 52 U.S.C. §20507(d), the mere fact that someone has left a given precinct is, by itself, a legally insufficient reason to cancel their registration.

96.     After mailings were returned as undeliverable, Defendant county BOEs have removed individual Plaintiffs and members of the organizational Plaintiffs, as well as other individuals, from official voter registration lists based on alleged change in residence prior to the passage of two federal election cycles.

97.     Additionally, Defendant county BOEs have removed Plaintiffs and other individuals from official voter registration lists based on undeliverable mailings that failed to comply with the notice requirements of the NVRA, including but not limited to the fact that such notices were not sent by forwardable mail and did not contain the required notice content.

98.     That Defendants' purges of these voters contravene federal legal protections is highlighted by the fact that the county BOEs have cancelled registrations on the ground that voters moved outside their original precincts, without making any effort to ascertain whether those voters' new addresses remain within the same county. Such registration cancellations violate the NRVA's express protection of the right of such individuals to cast ballots, regardless of whether they have updated their registration. *See* 52 U.S.C. §20507(e), (f).

99.     Defendants' unlawful removals disenfranchise the individual Plaintiffs, as well as members of the communities that the organizational Plaintiffs serve, depriving members of those organizations of their rights under the NVRA.

100.    Defendants' unlawful removals further harm and threaten to imminently harm Plaintiffs because the purges undermine Plaintiffs' voter registration efforts and require Plaintiffs to expend limited resources responding to and taking steps to counteract the unlawful removals.

101.    By depriving registered voters and qualified citizens of the NVRA's safeguards prior to removing their names from the voting rolls, Defendants' actions create the real and immediate risk that members of the organizational Plaintiffs will be deprived of their right to vote on or before November 8, 2016, and in the future.

102.    Absent this Court's intervention, Plaintiffs and their members will suffer irreparable injury as a result of Defendants' interference with their federal rights.

103.    Plaintiffs and their members have no adequate remedy at law for the deprivation of federal voting rights and interference with Plaintiff organizations' ability to protect their members' interests caused by Defendants' actions.

104.    Defendants' conduct must be preliminarily and permanently enjoined and Defendants must be ordered to reinstate all improperly removed voters, and notify those voters that they have been reinstated, as soon as possible.

## COUNT II

### (Violation of the NVRA, 52 U.S.C. §20507(c)(2)(A))

105.    Plaintiffs reallege every allegation of the preceding paragraphs as though fully set forth herein.

106. The NVRA prohibits a state from executing, later than 90 days prior to the date of a primary or general election for federal office, any program with the purpose of systematically removing ineligible voters from the official lists of eligible voters, except at the request of the registrant, or by reason of disenfranchising criminal conviction, mental incapacity, or death of the registrant. 52 U.S.C. §20507(c)(2)(A)-(B).

107. In violation of §20507(c)(2)(A), Defendants have systematically purged voters from the official list of eligible voters for reasons other than request, conviction, adjudication of incapacitation, or death of the registrant within each 90-day period preceding both the March 15, 2016 primary election and November 8, 2016 general election. Defendants have done so, *first*, by adopting and maintaining a challenge procedure that permits private parties to file *en masse* challenges to registered voters on the basis of change-of-address information, evidenced by returned first-class mail, and, *second* by acting on such challenges by sending notification of the challenge to challenged voters, scheduling hearings to assess the challenged voters' eligibility, and purging registered voters from voter registration lists.

108. Defendants continue to purge voters from the official list of eligible voters for reasons other than request, conviction, adjudication of incapacitation, or death as of the date this Complaint is filed.

109. Defendants' unlawful purges disenfranchise the individual Plaintiffs, as well as members of the communities that the organizational Plaintiffs serve, depriving members of those organizations of their rights under the NVRA.

110. Defendants' unlawful purges further harm and threaten imminently to harm Plaintiffs because the purges undermine Plaintiffs' voter registration efforts, place undue burdens on and impediments to the registration process, and require Plaintiffs to expend limited resources responding to and taking steps to counteract the unlawful purges.

111. By depriving registered voters and qualified citizens of the NVRA's safeguards prior to removing their names from the voting rolls, Defendants' actions create the real and immediate risk that members of the organizational Plaintiffs will be deprived of their right to vote on or before November 8, 2016, and in the future.

112. Absent this Court's intervention, Plaintiffs and their members will suffer irreparable injury as a result of Defendants' interference with their federal rights.

113. Plaintiffs and their members have no adequate remedy at law for the deprivation of federal voting rights and interference with the organizational Plaintiffs' ability to protect their members' interests caused by Defendants' actions.

114. Defendants' conduct must be preliminarily and permanently enjoined and Defendants must be ordered to reinstate all improperly purged voters, and notify those voters that they have been reinstated, as soon as possible.

## COUNT III

### (Violation of the Voting Rights Act, 52 U.S.C. §10301)

115. Plaintiffs reallege every allegation of the preceding paragraphs as though fully set forth herein.

116.    Defendants' unlawful voter challenge and purge practices violate 52 U.S.C. §10301, which prohibits practices that "result[] in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color."

117.    Defendants' unlawful voter challenge and purge practices have a disparate impact upon African American voters and result in fewer opportunities for African Americans to participate in the political process than members of other groups.

118.    Defendants' unlawful voter challenge and purge practices interact with social and historical conditions to cause a disparity between the electoral opportunities of African American and other voters.  Among other factors showing this to be the case, North Carolina has a long history of racial discrimination and race-based voter suppression in particular, North Carolina recently adopted voter suppression legislation with racially discriminatory intent, voting in North Carolina is racially polarized, African Americans have borne the effects of discrimination in other areas, and political campaigns have been characterized by overt or subtle racial appeals.

119.    Defendants' unlawful purges disenfranchise the individual Plaintiffs, as well as members of the communities that the organizational Plaintiffs serve, depriving members of those organizations of their rights under the Voting Rights Act.

120.     Defendants' unlawful purges further harm and threaten imminently to harm Plaintiffs because the purges undermine Plaintiffs' voter registration efforts, place undue burdens on and impediments to the registration process, and require Plaintiffs to expend limited resources responding to and taking steps to counteract the unlawful purges.

121.    Absent this Court's intervention, Plaintiffs and their members will suffer irreparable injury as a result of Defendants' interference with their federal rights.

122.    Plaintiffs and their members have no adequate remedy at law for the deprivation of federal voting rights and interference with the organizational Plaintiffs' ability to protect their members' interests caused by Defendants' actions.

123.    Defendants' conduct must be preliminarily and permanently enjoined and Defendants must be ordered to reinstate all improperly purged voters, and notify those voters that they have been reinstated, as soon as possible.

## COUNT IV

### (Violation of the Equal Protection Clause and 42 U.S.C. §1983)

124.    Plaintiffs reallege every allegation of the preceding paragraphs as though fully set forth herein.

125.    Defendants' unlawful voter challenge and purge practices violate the Equal Protection Clause of the Fourteen Amendment by causing a severe and arbitrary denial of the fundamental right to vote of eligible North Carolina voters including Plaintiffs and the organizational Plaintiffs' members.

126.    Defendants' unlawful voter challenge and purge practices place a severe burden on the rights of challenged voters including Plaintiffs and Plaintiffs' members. Voters who learn that their eligibility is being challenged must show up in person at a predetermined time and place, or submit a specified affidavit, in order to remain on the voter rolls.

127.    Voters who are unable to attend that hearing, or who do not receive notice of that hearing, will have their registration cancelled and be unable to cast regular ballots on Election Day or in early voting.  If those voters cast provisional ballots, their votes are unlikely to be counted because they will not be considered registered voters in county records and/or will be unable to execute an affidavit stating that they are registered voters.

128.    No legitimate state interest justifies Defendants' unlawful voter challenge and purge practices.  The NVRA and state law set forth procedures for states to follow to ensure that voters who have moved out of the county are removed from the rolls after having ample opportunity to correct their registration.

129.    Defendants have no legitimate interest in preventing voters who have changed their address but continue to reside in the same county, and therefore remain eligible to vote, from having their votes counted.  In fact, other provisions of state law provides that such individuals have the right to cast regular ballots and change their address at their polling place.

130.    Defendants' unlawful voter challenge and purge practices violate Plaintiffs and Plaintiffs' members of rights, privileges or immunities secured to them by the Constitution of the United States, in violation of 42 U.S.C. §1983.

131.    Defendants' unlawful purges disenfranchise the individual Plaintiffs, as well as members of the communities that the organizational Plaintiffs serve, depriving members of those organizations of their rights under the Equal Protection Clause.

132.    Defendants' unlawful purges further harm and threaten imminently to harm

Plaintiffs because the purges undermine Plaintiffs' voter registration efforts, place undue

burdens on and impediments to the registration process, and require Plaintiffs to expend

limited resources responding to and taking steps to counteract the unlawful purges.

133.    Absent this Court's intervention, Plaintiffs and their members will suffer

irreparable injury as a result of Defendants' interference with their federal rights.

134.    Plaintiffs and their members have no adequate remedy at law for the

deprivation of federal voting rights and interference with the organizational Plaintiffs'

ability to protect their members' interests caused by Defendants' actions.

135.    Defendants' conduct must be preliminarily and permanently enjoined and

Defendants must be ordered to reinstate all improperly purged voters, and notify those

voters that they have been reinstated, as soon as possible.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that the Court order the following relief and

remedies:

1.    Declare that North Carolina's unlawful voter challenge and purge practices

violate 52 U.S.C. §20507(c)(2)(A), 52 U.S.C. §20507(d)(1), 52 U.S.C

§20507(f), 52 U.S.C. §10301, 42 U.S.C. §1983, and the Equal Protection

Clause of the United States Constitution.

2.    Grant a temporary restraining order, preliminary injunction, and permanent

injunction enjoining Defendants and their officers, agents, employees,

attorneys, and all persons who are in active concert or participation with them from (a) cancelling the registration of voters through the challenge procedure set forth in N.C.G.S. §163-85 and §163-86, when those challenges are based on change of residency and the State has neither received written confirmation from the voter of a change in residence outside of the county, nore complied with the NVRA's two-election cycle waiting period; (b) using the challenge procedure set forth in N.C.G.S. §163-85 and §163-86 to remove voters from the rolls based on change of residency information in the 90 days preceding a federal election; and (c) holding hearings or taking any other actions to process challenges filed under those provisions in the circumstances identified.

3. Grant a temporary restraining order, preliminary injunction, and permanent injunction requiring Defendants: (a) to restore the voter registrations that were unlawfully cancelled based on returned mail or other purported evidence of a change in residence through the challenge procedure set forth in N.C.G.S. §163-85 and §163-86; (b) to issue directives and take all other measures to ensure that such voters can cast regular ballots on or before November 8, 2016 and in future elections, including by prohibiting any same-day challenges to such restored voters, as well as previously challenged voters, under N.C.G.S. §163-87 if they appear to vote in person on November 8, 2016; and (c) to provide mailed notice and other public notice reasonably

calculated to reach all voters whose registrations were challenged through the procedures set forth in N.C.G.S. §163-85 and §163-86, whether ultimately cancelled or not, that their registrations remain valid and that they will be able to cast regular ballots in upcoming elections;

4.  Award Plaintiffs' attorneys' fees and costs; and

5.  Award all such other and further relief as the Court deems to be just and equitable.


Dated:      October 31, 2016

                           Respectfully submitted,

                           _____/s/ Stacey M. Leyton_____
                           Stacey M. Leyton (CA SBN 203827)
                           Peder J. Thoreen (CA SBN 217081)
                           Eric P. Brown (CA SBN 284245)
                           Connie K. Chan (CA SBN 284230)
                           ALTSHULER BERZON LLP
                           177 Post Street, Suite 300
                           San Francisco, CA 94108
                           Telephone: (415) 421-7151
                           Facsimile: (415) 362-8064
                           E-mail:     sleyton@altber.com
                                       pthoreen@altber.com
                                       ebrown@altber.com
                                       cchan@altber.com

                           _____/s/ Penda D. Hair_____
                           Penda D. Hair (DC SBN 335133)
                           Leah J. Kang  (DC SBN 1017035)
                           Caitlin A. Swain (VA SBN 84515)
                           FORWARD JUSTICE
                           1401 New York Ave., NW, Suite 1225
                           Washington, DC 20005

Telephone: (202) 256-1976
Email: phair@forwardjustice.org
        lkang@forwardjustice.org
        cswain@forwardjustice.org


        /s/ Irving Joyner
Irving Joyner (NC SBN 7830)
P.O. Box 374
Cary, NC 27512
Telephone: (919) 319-8353
Fax: (919) 530-6339
Email: ijoyner@nccu.edu


        /s/ Mary Joyce Carlson
Mary Joyce Carlson (DC SBN 987939)
1101 New York Avenue NW
Washington DC 20008
Telephone: (202) 230-4096
Fax: (202) 408-4649
Email: Carlsonmjj@yahoo.com

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
40