IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| NORTH CAROLINA NAACP, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>NORTH CAROLINA STATE BOARD OF ELECTIONS, et al.,<br><br>Defendants. | Civil Action No.<br>1:16-cv-1274-LCB-JLW |

## STATEMENT OF INTEREST OF THE UNITED STATES

The United States respectfully submits this Statement of Interest pursuant to 28 U.S.C. § 517, which authorizes the Attorney General to attend to the interests of the United States in any pending lawsuit. This matter implicates the interpretation and application of the National Voter Registration Act (NVRA), 52 U.S.C. § 20501 *et seq.*, a statute over which Congress accorded the Attorney General broad enforcement authority. *See* 52 U.S.C. § 20510(a). The United States has a substantial interest in ensuring that the NVRA is properly interpreted and uniformly enforced around the country.[1]

---

[1] For example, the United States has pending litigation to enforce the NVRA in Louisiana, *United States v. Louisiana*, No. 3:11-cv-00470 (M.D. La.), and this year alone, has filed statements of interest or amicus briefs regarding the proper interpretation of the NVRA in Georgia, North Carolina, and Ohio, and resolved NVRA claims in an agreement with Connecticut. *See* Statement of Interest of the United States, *Common Cause v. Kemp*, No. 1:16-cv-00452 (N.D. Ga. May 4, 2016); Statement of Interest of the United States, *Action NC v. Strach*, No. 1:15-cv-01063 (M.D.N.C. May 20, 2016); Brief for the United States as Amicus Curiae, *Ohio A. Philip Randolph Inst. v. Husted*, No. 16-3746 (6th Cir. July 18, 2016); Statement of Interest of the United States, *Ohio A. Philip*

The United States files this Statement for the limited purpose of articulating proper standards under Section 8 of the NVRA, 52 U.S.C. § 20507, on which the plaintiffs rely in their motion for a temporary restraining order. It takes no position on any other issue before this Court.

## I. BACKGROUND

Plaintiffs allege that, in at least three North Carolina counties, including Beaufort, Cumberland, and Moore counties, over the course of the last several months and weeks, private individuals have used state voter challenge procedures to submit *en masse* challenges seeking to have thousands of voters purged from the voter registration rolls solely on the basis of a single mailing to each voter returned as undeliverable. Plaintiffs allege that the county boards of elections have sustained most of these challenges and thus removed thousands of voters in violation of the NVRA's bar on (1) removing registered voters without adequate notice and without waiting at least two federal general elections, and on (2) systematic purges within 90 days of an election.

## II. ARGUMENT

Congress passed the NVRA to "establish procedures that will increase the number of eligible citizens who register to vote in elections for Federal office" and "ensure that accurate and current voter registration rolls are maintained." 52 U.S.C. § 20501(b). The provisions relating to maintenance of voter rolls in Section 8 of the NVRA, 52 U.S.C.

---

*Randolph Inst. v. Husted*, No. 2:16-cv-00303 (S.D. Ohio Oct. 17, 2016); Agreement, U.S. Dep't of Justice & State of Connecticut, Aug. 5, 2016, https://www.justice.gov/opa/file/882686/download.

§ 20507, reflect these two purposes. *See A. Philip Randolph Inst. v. Husted*, No. 16-3746, 2016 WL 5328160, at *3 (6th Cir. Sept. 23, 2016). "Section 8's language pairs the mandate that states maintain accurate voter rolls with multiple constraints on how the states may go about doing so." *Id.* Specifically, Section 8 provides that "[i]n the administration of voter registration for elections for Federal office, each State shall . . . provide that the name of a registrant *may not* be removed from the official list of eligible voters except" under certain circumstances. 52 U.S.C. § 20507(a)(3) (emphasis added).[2]

Three limitations on the removal of voters are pertinent here: (1) a jurisdiction may not remove voters based on a purported change of address outside of the jurisdiction using only mail returned as undeliverable and without following specific required procedures; (2) a jurisdiction may not remove voters based on a change of address within the same jurisdiction; and (3) a jurisdiction may not carry out a program of systematic removals within 90 days of a Federal election.

### A. The NVRA Prohibits Election Officials from Purging Voters Based on a Change of Residence By Sustaining a Challenge Using Only Mail Returned as Undeliverable Without Following Specific Required Procedures

Section 8 does not permit a jurisdiction[3] to purge voters based solely on mail returned as undeliverable, without following a specified notice procedure that includes giving the voter two federal general election cycles to vote or update his or her

---

[2] While certain states are exempt from the NVRA's requirements, *see* 52 U.S.C. § 20503(b), North Carolina is not one of them.

[3] With respect to North Carolina, the term "jurisdiction" as used in Section 8 refers to a county. *See* 52 U.S.C. § 20507(j); N.C. Gen. Stat. § 163-82.1.

3

registration. This limitation applies whether the mailing is sent by the jurisdiction itself or by a third party. 52 U.S.C. §§ 20507(a), (d).

Subsections 8(a)(3), 8(a)(4), and 8(d) "set[] limits on the removal of registrants from the voter registration rolls." *Bell v. Marinko*, 367 F.3d 588, 591 (6th Cir. 2004). Subsections 8(a)(3) and 8(a)(4) "provide[] an exhaustive list of circumstances justifying removal: criminal conviction or mental incapacity as provided by state law, the death of the registrant, or . . . a change of the registrant's residence." *A. Philip Randolph Inst.*, 2016 WL 5328160, at *4 (internal quotation marks omitted). And the latter circumstance—a change of residence—"is subject to its own mandate and accompanying constraints." *Id.* Namely, a jurisdiction must "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of . . . a change in the residence of the registrant," but any such program is constrained in a number of respects, including the "mandatory confirmation notice procedure" set out in Subsection 8(d). *Id.* (internal quotation marks omitted).

Subsection 8(d) specifies the process that election officials must follow to give a voter the opportunity to confirm or rebut evidence of a possible change of residence that would render the voter ineligible to vote in the jurisdiction. Election officials must send the voter a detailed notice by forwardable mail, designed to reach the voter wherever she may be, asking the voter to confirm whether she has in fact moved outside the registrar's jurisdiction. 52 U.S.C. § 20507(d). The voter may affirmatively confirm ineligibility in writing (and may then be purged). *Id.* Alternatively, the voter may rebut the evidence of ineligibility either by declaring that she still resides within the jurisdiction or by

4

Case 1:16-cv-01274-LCB-JLW   Document 33   Filed 11/01/16   Page 4 of 13

appearing to vote. *Id.* If the voter does not respond to that notice *and* does not vote or appear to vote at or before the second federal general election following mailing of the notice, only then may the state properly purge that voter from the voter rolls based on change of residence. *Id.*

This procedure recognizes that second-hand evidence such as mail returned as undeliverable may not actually reflect a change of residence impacting a citizen's eligibility to vote in the jurisdiction. Mail may be returned as undeliverable despite an individual's continued residence at the same address, or an individual's change of residence from that address but within the jurisdiction. *Cf.* 52 U.S.C. § 20507(d)(2)(A). The NVRA contemplates that mail returned as undeliverable may be probative in indicating a change of residence, but it precludes such second-hand evidence from being treated as the dispositive predicate for removal from the rolls without the procedure specified by Subsection 8(d).

To be sure, Section 8's restrictions are not intended to prohibit a jurisdiction from acting on an individualized determination of a voter's change of residence when presented with reliable first-hand evidence specific to that voter (assuming the jurisdiction is otherwise complying with the NVRA's requirements). But a jurisdiction may not purge voters based solely on systematically procured second-hand evidence of a possible move without following the Subsection 8(d) notice procedures, whether that evidence is procured by the jurisdiction or submitted through a challenge process. Subsection 8(d) limits purging voters based on a change of residence; plaintiffs in this case have alleged that election officials have done just that: purged voters based on a

5

purported change of residence. Pls.' Amended TRO Mot., ECF No. 21-1, at 6, 10-11. Nothing in the NVRA's text or framework suggests that Congress provided a wholesale exemption of anything labeled a voter challenge procedure from the reach of the safeguards provided in Subsection 8(d).[4]

Thus, where a voter's eligibility is questioned on the basis of mail returned as undeliverable, removal is not permitted without following the Subsection 8(d) notice and confirmation procedure (including the two federal general election waiting period), regardless of whether the information was obtained directly by the jurisdiction or indirectly through a private party's voter challenge.

The only court that has, as far as we are aware, addressed the issue of the NVRA's application to mass challenges based on change of residence reached a similar conclusion. It explained that local registrars would have violated the NVRA had they given effect to private challenges based solely on postal change-of-address information and comparisons between databases with residential information. *See Mont. Democratic*

---

[4] Indeed, in enacting the NVRA, Congress explicitly found that "discriminatory and unfair registration laws and procedures can have a direct and damaging effect on voter participation in elections for Federal office and disproportionately harm voter participation by various groups, including racial minorities," 52 U.S.C. § 20501 (a)(3); *see also* H.R. Rep. No. 103-9, at 3 (1993), and in a number of states, voter challenge statutes have a history of facilitating just such discrimination, *see* Nicolas Riley, Brennan Center for Justice, "Voter Challengers," 7-10 (2012), https://www.brennancenter.org/sites/default/files/legacy/publications/Voter_Challengers.pdf; *see also Rice v. Cayetano*, 528 U.S. 495, 513 (2000) (listing "registration challenges" among the "[m]anipulative devices and practices" that historically had been "employed to deny the vote to blacks"); *United States v. Long County*, No. 2:06-cv-40 (S.D. Ga.), *available at* https://www.justice.gov/crt/voting-section-litigation; *United States v. City of Hamtramck*, No. 00-73541 (E.D. Mich.), *available at same webpage*.

*Party v. Eaton*, 581 F. Supp. 2d 1077, 1083 (D. Mont. 2008); *see also id.* at 1081 (noting that limitations on use of change-of-address information to purge voters are "designed to protect the citizen's right to vote for at least two federal election cycles while the citizen updates his or her registration information").[5]

Here, plaintiffs allege that election officials in three North Carolina counties have removed voters solely based on alleged changes of residence, premised on mail returned as undeliverable and submitted through voter challenges, and without following the procedures required by Subsection 8(d). Pls.' Amended TRO Mot., ECF No. 21-1, at 6, 10-11. If true, such removals are not permitted by the NVRA.

---

[5] The United States Department of Justice, which is responsible for enforcing the NVRA, 52 U.S.C. § 20510(a), has provided guidance stating that Section 8 "prevent[s] the immediate outright cancellation of a voter's registration based solely on the assumption that a postal change-of-address form or an apparent match between databases shows a move, whether officials obtain that information directly or rely on information provided by challengers or other private parties to the same effect." Summary of Selected Federal Protections for Eligible Voters § I.3, https://www.justice.gov/crt/summary-selected-federal-protections-eligible-voters (last visited Nov. 1, 2016). The Department has also produced guidance (in the form of questions and answers) that discusses the requirements of Section 8 of the NVRA. https://www.justice.gov/crt/national-voter-registration-act-1993-nvra (last visited Nov. 1, 2016) (*see, e.g.*, Questions ## 30-39). The Department's policy statements "reflect a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Fed. Express Corp.* v. *Holowecki*, 552 U.S. 389, 399 (2008) (internal quotation marks omitted). They are "entitled to a measure of respect." *Action NC v. Strach*, No. 1:15-cv-1063, 2016 WL 6304731, at *12 (M.D.N.C. Oct. 27, 2016) (quoting *Fed. Express Corp.*, 552 U.S. at 399); *see also Martin v. Occupational Safety & Health Review Comm'n*, 499 U.S. 144, 157 (1991) (noting that "informal interpretations are still entitled to some weight"); *Knox Creek Coal Corp. v. Sec'y of Labor*, 811 F.3d 148, 160 (4th Cir. 2016) (concluding that "deference is still due" to a federal agency's litigating positions).

## B. The NVRA Prohibits Election Officials from Removing Voters Challenged Solely on the Basis of a Change in Residence to a Different Precinct Within the Same Jurisdiction

Section 8 also prohibits purging voters due to a change of address within the same jurisdiction, even if the voter has failed to notify election officials of his or her move.

The required notice sent to voters under Subsection 8(d) must state that voters who move within the registrar's jurisdiction, just like voters who have not moved at all, will not be removed from the voter registration list. *See* 52 U.S.C. § 20507(d)(2)(A) ("If the registrant did not change his or her residence, or changed residence but remained in the registrar's jurisdiction, . . . ."). Subsection 8(f) likewise instructs that when a voter changes address within the same registrar's jurisdiction, "the registrar shall correct the voting registration list accordingly, and the registrant's name may not be removed from the official list of eligible voters by reason of such a change of address except as provided in subsection (d) of this section." 52 U.S.C. § 20507(f).

Furthermore, under Subsection 8(c), when USPS change-of-address information indicates that a voter has moved within the same registrar's jurisdiction, officials meet NVRA requirements if they "change[ ] the registration records to show the new address," rather than initiating the removal process of Subsection 8(d). 52 U.S.C. § 20507(c)(1)(B)(i). Each of these provisions confirms that a voter moving *within* the registrar's jurisdiction remains eligible to vote absent some other valid basis for removal, and that a registrar should update that voter's address rather than removing him or her

8

from the rolls.[6] *See A. Philip Randolph Inst.*, 2016 WL 5328160, at *4 ("[O]ne of the guiding principles of [the NVRA is] to ensure that once registered, a voter remains on the rolls so long as he or she is eligible to vote in that jurisdiction." (quoting S. Rep. No. 103-6, at 19 (1993))).

Plaintiffs here allege that certain North Carolina counties have removed voters due to a change in residence, even where the evidence showed that the new residence was in the same jurisdiction. Pls.' Amended TRO Mot., ECF No. 21-1, at 9. If the allegations prove correct, such removals would violate the NVRA.

### C. The NVRA Prohibits Election Officials from Purging Voters Challenged on a Systematic Basis Within 90 Days of an Election

Finally, Subsection 8(c) of the NVRA requires that systematic programs designed to remove the names of ineligible voters from the voter rolls must be completed as of 90 days before the date of a Federal election. 52 U.S.C. § 20507(c)(2)(A).[7] This 90-day "quiet period" for programs of systematic removals "shall not be construed to preclude" removal of voters (1) at the request of the registrant; (2) if the registrant is disqualified under state law by reason of criminal conviction or mental incapacity; or (3) if the

---

[6] Section 8(e) provides yet another safeguard, prescribing a particular procedure for many voters who move within a registrar's jurisdiction to cast a valid ballot even if their registration has not been updated to reflect their new address. *See* 52 U.S.C. § 20507(e) (permitting voters to cast valid ballots following within-precinct moves and within-county moves in the same congressional district).

[7] The provision states, in full: "A State shall complete, not later than 90 days prior to the date of a primary or general election for Federal office, any program the purpose of which is to systematically remove the names of ineligible voters from the official lists of eligible voters." 52 U.S.C. § 20507(c)(2)(A).

9

registrant has died. 52 U.S.C. § 20507(c)(2)(B); *see also id.* § 20507(a)(3)(A) & (B); *Arcia v. Fla. Sec'y of State*, 772 F.3d 1335, 1345 (11th Cir. 2014) (describing these statutory exceptions as "exhaustive"). This rule of construction merely confirms that individualized correction of the rolls—to account for circumstances in which an individual's eligibility changes at the eleventh hour—does not amount to a statutorily prohibited program of systematic removal.

Here, plaintiffs have alleged that election officials, based on mass mailings by third parties and pursuant to challenge procedures under state law, carried out a systematic purge of voters within 90 days of the upcoming November 8, 2016 general election. If true, these allegations amount to a violation of Subsection 8(c) of the NVRA.

The voter challenge procedures ostensibly followed by defendants would constitute a state program to remove ineligible voters. *See Arcia*, 772 F.3d at 1344 ("[T]he phrase 'any program' suggests that the 90 Day Provision has a broad meaning."). Although private citizens raised the challenges, they would have had no legal effect if they had not been accepted and sustained by election officials; county officials immediately assumed control of the process, and the ultimate removal of names from the statewide list of legally registered voters was conducted by county officials in accordance with state law procedures. *See Mont. Dem. Party*, 581 F. Supp. 2d at 1083 (finding that "[i]f the State's procedure for evaluating voter challenges allows a county election official to conclude that any voter . . . targeted [by a third party] on the basis of change-of-address information cannot vote . . . the State would then be in clear violation of federal law"). A jurisdiction may not evade the 90-day requirement simply by

10

outsourcing a voter registration purge to third parties. *See Action NC v. Strach*, No. 1:15-cv-1063, 2016 WL 6304731, at *14 (M.D.N.C. Oct. 27, 2016) (concluding that states may not evade NVRA responsibilities by delegating to third parties).

As alleged by plaintiffs, the removals executed here pursuant to North Carolina's challenge procedures were systematic and not individualized. "[I]ndividualized removals are safe to conduct" within the 90-day period because they rely on "individual correspondence or rigorous individualized inquiry, leading to a smaller chance for mistakes." *Arcia*, 772 F.3d at 1346. These safeguards are absent here. As alleged, the voter challenges at issue were based on large scale mailings and were filed and processed *en masse* by county boards dozens, hundreds, or even thousands at a time. Pls.' Amended TRO Mot., ECF No. 21-1, at 6, 10. Though hearings were held, notices of those hearings were allegedly sent to individual voters at the very addresses from which mail had previously been rejected. As described, the purge program at issue here rested on a mass mailing and the silence of voters largely unaware of the potential injury to their voting rights. A perfunctory administrative proceeding to consider evidence produced by a mass mailing does not turn an otherwise prohibited systematic process into an "individualized" removal.[8]

---

[8] For an example of lawful voter purges conducted after the jurisdiction "investigated and examined the residence of each [voter]" and gathered detailed, individualized evidence that supported their determinations, see *Bell*, 367 F.3d at 590 n.2, 592.

## III. CONCLUSION

For the foregoing reasons, the Court should apply the proper legal standards under Section 8 of the NVRA to resolve plaintiffs' motion for a temporary restraining order.

Dated: November 1, 2016

Respectfully submitted,

VANITA GUPTA
Principal Deputy Assistant Attorney General
Civil Rights Division

*/s/ Ripley Rand*
RIPLEY RAND
UNITED STATES ATTORNEY
North Carolina State Bar No. 22275
United States Attorney's Office
Middle District of North Carolina
101 South Edgeworth Street
Fourth Floor
Greensboro, North Carolina 27401
Phone: (336) 333-5351
E-mail: ripley.rand@usdoj.gov

By: */s/ David G. Cooper*
T. CHRISTIAN HERREN, JR.
DAVID G. COOPER
CATHERINE MEZA
NEAL UBRIANI
Attorneys, Voting Section
Civil Rights Division
U.S. DEPARTMENT OF JUSTICE
NWB 7th Floor
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530
Phone: (800) 253-3931

# CERTIFICATE OF SERVICE

I hereby certify that on November 1, 2016, I electronically filed the foregoing Statement of Interest of the United States, using the CM/ECF system, which will send notification of such filing to all counsel of record.

                               /s/ David G. Cooper
                               DAVID G. COOPER
                               U.S. Department of Justice
                               Civil Rights Division - Voting Section
                               950 Pennsylvania Avenue, N.W.
                               Washington, DC 20530
                               Phone:   (800) 253-3931
                               Email:    david.cooper@usdoj.gov