IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No. 1:16-cv-1274-LCB-JLW

| | |
|---|---|
| N.C. STATE CONFERENCE OF THE NAACP, *et al.*, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| N.C. STATE BD. OF ELECTIONS, *et al.*, | ) ) |
| Defendants. | ) ) |

## BRIEF IN SUPPORT OF THE BEAUFORT COUNTY DEFENDANTS' MOTION TO DISMISS

**NOW COME** the Defendants Beaufort County Board of Elections, Jay McRoy, in his official capacity as Chairman of the Beaufort County Board of Elections, John B. Tate, III, in his official capacity as Secretary of the Beaufort County Board of Elections, Thomas S. Payne II, in his official capacity as Member of the Beaufort County Board of Elections, and Kellie Harris Hopkins, in her official capacity as Director of the Beaufort County Board of Elections (collectively "the Beaufort County Defendants"), and submit this Brief in support of their Motion to Dismiss the Plaintiffs' Complaint in this matter. The Plaintiffs' claims against the Beaufort County Defendants should be dismissed because all relief requested in those claims has already been granted by this Court, and the allegedly wrongful actions by the Beaufort County Defendants cannot reasonably be expected to recur. Therefore, the Plaintiffs' claims as to the Beaufort County Defendants are moot and should be dismissed.

1

## NATURE OF THE MATTER BEFORE THE COURT

This matter is before the Court on the Beaufort County Defendants' Motion to Dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, arguing that because the Plaintiffs' claims regarding these Defendants are moot, this Court lacks subject matter jurisdiction over this lawsuit as to these Defendants.

## FACTS

A. <u>The statutorily-prescribed control of the County Boards of Election by the North Carolina State Board of Elections</u>

The members of the Board of Elections of Beaufort County, North Carolina, along with all other County Elections Boards, are appointed pursuant to N.C.G.S. § 163-30. Under that statute, potential members of each County Board of Election are recommended by the "State chairman of each political party . . . to the State Board of Elections . . . for appointment to the board of elections for that county." <u>Id.</u> The State Board of Elections then appoints the recommended nominees of its choosing to each County Board.

As with every other County Board of Elections in this State, it is the first power and duty of the Beaufort Board:

> [t]o make and issue such rules, regulations, and instructions, not inconsistent with law, with directives promulgated under the provisions of G.S. 163-132.4, or with the rules, orders, and directives established by the State Board of Elections, as it may deem necessary for the guidance of election officers and voters.

N.C. GEN. STAT. § 163-33(1). However, as that statute states, the power of the County Boards is controlled and constrained by the authority of the North Carolina State Board of Elections, which has the power and duty to direct the functions of every County Board in their administration of primaries and elections. Under N.C.G.S. § 163-22, entitled "Powers and duties of State Board of Elections:"

> The State Board of Elections shall have general supervision over the primaries and elections in the State, and it shall have authority to make such reasonable rules and regulations with respect to the conduct of primaries and elections as it may deem advisable . . . .

N.C. GEN. STAT. § 163-22(a). The County Boards are also further controlled by the Executive Director of the State Board of Elections, who "may promulgate directives concerning its duties and those of the county boards of elections . . . ." N.C. GEN. STAT. § 163-132.4.

The State Board of Elections can and does exercise its power to supervise the primaries and elections in each County by directing the Counties regarding what procedures must be used to comply with State and Federal election law. After it appoints the County Board members, the State Board of Elections then "advise[s] them as to the proper methods of conducting primaries and elections." N.C. GEN. STAT. § 163-22(c). One way it accomplishes this is by providing the County Boards with copies of the election laws and the procedures for complying with them, as written by the State Board:

> the Board shall publish and furnish to the county boards of elections and other election officials a sufficient number of indexed copies of all election laws and Board rules and regulations then in force. It shall also publish, issue, and distribute to the electorate such materials explanatory of primary and election laws and procedures as the Board shall deem necessary.

N.C. GEN. STAT. § 163-22(b).  Through this statute, the State Board of Elections instructs each County Board regarding how "all election laws" should be interpreted and how the County Board must stay in compliance with those laws.  The State Board then requires "reports from the county boards" to ensure their compliance with those election laws.  N.C. GEN. STAT. § 163-22(c).

If any County Board strays from the procedures dictated by the State Board, the State Board is legally *required* to "compel observance of the requirements of the election laws by county boards of elections and other election officers."  N.C. GEN. STAT. § 163-22(c).  If the County Board refuses to observe the requirements of "all election laws," as those requirements are interpreted by the State Board, the "State Board of Elections shall have power to remove from office any member of a county board of elections for incompetency, neglect or failure to perform duties, fraud, or for any other satisfactory cause."  N.C. GEN. STAT. § 163-22(c).

Therefore, pursuant to N.C.G.S. §§ 163-22 and -30, the North Carolina State Board of Elections has both the power and legal duty to (1) appoint all County Board of Elections members, (2) advise them on the interpretation of election laws, (3) instruct them on the proper procedures for complying with election laws, and (4) remove them from office if they fail to do so.

B.  <u>Factual Allegations in the Plaintiffs' Complaint regarding the Beaufort County Defendants</u>

The Plaintiffs allege that the Beaufort County Defendants, along with other County Boards of Elections in North Carolina, removed "voter registrations for changes

4

in residence on the basis of single mailings returned as undeliverable – without compliance with the [National Voter Registration Act ("NVRA")]'s notice and two-cycle provisions." Compl. ¶ 3. In particular, the Plaintiffs complain that the Beaufort County Defendants followed North Carolina's Voter Challenge Statute, N.C.G.S. §§ 163-85 and -86 ("the Voter Challenge Statute"), to hear filed "challenges to 138 registered voters in September and October 2016." Compl. ¶ 48. The Plaintiffs allege that hearing and allowing those challenges pursuant to N.C.G.S. §§ 163-85 and -86 solely on the basis of undelivered mail to the challenged voters' addresses is a violation of the NVRA. Compl. ¶ 3.

Significantly, the Plaintiffs never allege that the Beaufort County Defendants have improperly followed the Voter Challenge Statute or the instructions of the North Carolina State Board of Elections regarding that statute. Their allegation is simply that even properly following and using the Voter Challenge statute in the manner in which the Beaufort County Defendants did in this case is a violation of the NVRA. Consequently, when the Plaintiffs refer to "unlawful voter challenge and practices," the legal violation they allege is a violation of the NVRA and other federal law, not of the Voter Challenge Statute. See Compl. ¶ 69.

However, correctly citing to N.C.G.S. §163-22(c), the Plaintiffs also allege that the State Board of Elections is "charged with administering the election laws of the State of North Carolina [and] has the authority to advise county BOEs as to the proper methods for conducting primaries and elections and to compel county BOEs to observe the requirements of elections laws." Compl. ¶ 16. Therefore, when the Plaintiffs protested

"Defendants' unlawful voter challenge and purge practices" prior to filing suit, instead of addressing their concerns to the Beaufort County Defendants, they instead "took immediate steps to notify the State of its unlawful practices and to petition for immediate cessation of the unlawful practices and restoration of the challenged voters' registration status . . . ." Compl. ¶ 70.

For example, on October 17, 2016, North Carolina NAACP President Rev. Dr. William J. Barber, II sent a letter to the North Carolina State Board of Elections alleging that the use of the Voter Challenge Statute by the Beaufort County Defendants, and other County Boards, violated the NVRA. Compl. ¶ 71. He "requested that the [State] Board instruct all county BOEs to cease removal of voters from the rolls based on returned mail without complying with the NVRA." Compl. ¶ 72. The State Board responded stating that the challenge procedure used by the Beaufort County Defendants, and other County Boards, was lawful. Compl. ¶ 72.

"On October 22, 2016, Rev. Dr. Barber sent another letter" to the "Executive Director of the State Board of Elections, elaborating on the North Carolina NAACP's concerns." Compl. ¶ 74. The State Board again responded that "the State's voter challenge procedures [as followed by the County Boards] comport with requirements under the NVRA." Compl. ¶ 75. Notably, nowhere do any of the Plaintiffs allege that they ever made any formal protest directly to the Beaufort County Board of Elections prior to the initiation of this lawsuit.

On these allegations, the Plaintiffs seek in their Complaint (1) injunctive relief preventing the Defendants from "cancelling the registration of voters through the

challenge procedure set forth in N.C.G.S. §163-85 and §163-86" and ordering the Defendants to "restore the voter registrations that were unlawfully cancelled based on returned mail or other purported evidence of a change in residence" and (2) declaratory relief holding "that North Carolina's unlawful voter challenge and purge practices violate [the NVRA], 42 U.S.C. § 1983, and the Equal Protection Clause of the United States Constitution." See Compl. pp 38–39. This Court granted the injunctive relief sought by the Plaintiffs in its November 4, 2016 Order Granting Preliminary Injunction. (Dkt. 43). Therefore, all that remains to be litigated in this matter is whether the challenge procedure set forth in N.C.G.S. §163-85 and § 163-86 is unlawful.

## QUESTION PRESENTED

Because the Beaufort County Board County Board of Elections is required to follow all directives of the North Carolina State Board of Elections, does the relief granted by this Court's preliminary injunction render the Plaintiffs' remaining claims against the Beaufort County Defendants moot?

## ARGUMENT

The Beaufort County Defendants are no longer proper parties to this action because their presence as defendants is not required to decide the Plaintiffs' claims regarding the lawfulness of N.C.G.S. §163-85 and §163-86. Further, because the North Carolina State Board of Elections' control over the Beaufort County Defendants renders it impossible for the Beaufort County Defendants to take any action without the direction and consent of the State Board, the challenge procedure forbidden by the Order Granting

7

Preliminary Injunction cannot "reasonably be expected to recur" even if the Beaufort County Defendants are no longer parties to this lawsuit.

A.   Standard of Review for Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction. Under Article III's case or controversy requirement, federal courts may only decide "real and substantial controvers[ies]." North Carolina v. Rice, 404 U.S. 244, 246 (1971) (quoting Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240–41 (1937)). Federal courts have no jurisdiction over moot cases, see Worth v. Jackson, 451 F.3d 854, 857 (D.C. Cir. 2006), and such cases must be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. Deposit Guar. Nat'l Bank v. Roper, 445 U.S. 326, 345–46 (1980) ("a federal court retains no jurisdiction when the parties substantive claims become moot . . . ."). The Court has "an affirmative obligation to 'ensure that it is acting within the scope of its jurisdictional authority, . . . which includes the obligation to consider the possibility of mootness." Abu Ali v. Gonzales, 387 F. Supp. 2d 16, 17 (D.D.C. 2005).

"The doctrine of mootness derives directly from the case-or-controversy limitation because an action that is moot cannot be characterized as an active case or controversy." Fla. Pub. Interest Research Grp. Citizen Lobby, Inc. v. E.P.A., 386 F.3d 1070, 1085 (11th

8

Cir. 2004). "A case is moot[1] when it no longer presents a live controversy with respect to which the court can give meaningful relief." Id.; see also Powell v. McCormack, 395 U.S. 486, 496 (1969) ("[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."). "If events that occur subsequent to the filing of a lawsuit or an appeal deprive the court of the ability to give the plaintiff or appellant meaningful relief, then the case is moot and must be dismissed." Fla. Pub. Interest Grp., 386 F.3d at 1085. Because mootness is jurisdictional, dismissal is mandated. Id.; see also Rice, 404 U.S. at 246 ("Mootness is a jurisdictional question because the Court is not empowered to decide moot questions or abstract propositions."). "Any decision on the merits of a moot case or issue would be an impermissible advisory opinion." Fla. Pub. Interest Grp., 386 F.3d at 1085; see also Under Seal 1 v. United States (*In re* Grand Jury Subpoena), 542 F. App'x 252, 255 (4th Cir. 2013) (unpublished) ("To decide a moot issue is to issue an advisory opinion.").

Under Rule 12(b)(1), the plaintiff bears the burden of establishing subject matter jurisdiction. See Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982); Brady Campaign to Prevent Gun Violence v. Ashcroft, 339 F. Supp. 2d 68, 72 (D.D.C. 2004). Under Rule 12(b)(1), the Court may dispose of the motion on the basis of the complaint alone or it may consider materials beyond the pleadings "as it deems appropriate to resolve the question whether it has jurisdiction to hear the case." Scolaro v. D.C. Bd. of Elections & Ethics, 104 F. Supp. 2d 18, 22 (D.D.C. 2000). A Rule 12(b)(1) motion may assert what

---

[1] Courts "recognize two kinds of mootness: constitutional mootness and prudential mootness." Rio Grande Silvery Minnow v. Bureau of Reclamation, 601 F.3d 1096, 1121 (10th Cir. 2010). Only constitutional mootness appears to apply to the instant Motion.

9

is termed a facial jurisdictional challenge (i.e., one based solely on the allegations presented in the complaint) or a factual jurisdictional challenge (i.e., one based on evidence that goes beyond the complaint's allegations). See Holt v. United States, 46 F.3d 1000, 1002 (10th Cir. 1995). The Beaufort County Defendants assert the latter. "[W]hen a defendant challenges subject matter jurisdiction via a Rule 12(b)(1) motion to dismiss, the district court may regard the pleadings as . . . evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Velasco v. Gov't of Indon., 370 F.3d 392, 398 (4th Cir. 2004). Nevertheless, when presented with a factual challenge to jurisdiction, the Court must resolve all factual disputes in favor of plaintiffs as the nonmoving party. Dreier v. United States, 106 F.3d 844, 847 (9th Cir. 1996), as amended (Feb. 4, 1997).

B.    Constitutional Mootness as a Bar for Subject Matter Jurisdiction

"Constitutional mootness is grounded in the requirement that any case or dispute that is presented to a federal court be definite, concrete, and amenable to specific relief." Jordan v. Sosa, 654 F.3d 1012, 1024 (10th Cir. 2011) (internal quotation marks omitted); see also Rice, 404 U.S. at 246 (providing that a suit "must be definite and concrete, touching the legal relations of parties having adverse legal interests"). This aspect of mootness focuses on whether "a definite controversy exists throughout the litigation and whether conclusive relief may still be conferred by the court despite the lapse of time and any change of circumstances that may have occurred since the commencement of the action." Jordan, 654 F.3d at 1024; see also Pashby v. Delia, 709 F.3d 307, 316 (4th Cir. 2013) ("even if a plaintiff has standing when he or she files a complaint, subsequent

10

events can moot the claim."). It derives from Article III's case or controversy rule, which requires that "an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." Arizonans for Official English v. Arizona, 520 U.S. 43, 67 (1997).

Courts frequently have described constitutional mootness as "the doctrine of standing set in a time frame." Arizonans for Official English, 520 U.S. at 68 n.22; see also U.S. Parole Comm'n v. Geraghty, 445 U.S. 388, 397 (1980) ("The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)."). Although both the standing and mootness requirements present threshold jurisdictional issues, see In re Yellow Cab Coop. Ass'n, 132 F.3d 591, 594 (10th Cir. 1997), the doctrines impose separate burdens of proof. The "plaintiff bears the burden of demonstrating standing, [while] the defendant bears the burden of proving mootness." WildEarth Guardians v. Pub. Serv. Co. of Colo., 690 F.3d 1174, 1183 (10th Cir. 2012).

C. <u>Precedent from North Carolina Federal Courts, including this Court, holds that County Boards of Election are not proper parties to lawsuits which seek to change the interpretation of North Carolina election laws.</u>

Abating challenged activity pursuant to a court order moots a plaintiff's claims only if it is "'absolutely clear,' absent the injunction, 'that the allegedly wrongful behavior could not reasonably be expected to recur.'" Vitek v. Jones, 445 U.S. 480, 487 (1980) (quoting United States v. Concentrated Phosphate Exp. Ass'n, 393 U.S. 199, 203 (1968)). However, a finding of mootness is appropriate "when there is no reasonable expectation that the voluntarily ceased activity will, in fact, actually recur after the

11

termination of the suit." Troiano v. Supervisor of Elections, 382 F.3d 1276, 1278 (11th Cir. 2004) (citing United States v. W.T. Grant Co., 345 U.S. 629, 633 (1953)).

Ordinarily, "[c]ompliance with the provisions of a preliminary injunction . . . does not render moot [plaintiffs'] underlying claims" because "[i]f the injunction is dissolved without a decision on the merits, there is nothing to keep defendants from resuming the activity that had been restrained by the preliminary injunction." LaPeer Cnty. Med. Care Facility v. Mich., No. 1:91–CV–333, 1992 WL 220917, at *7 (W.D. Mich. Feb. 4, 1992). However, this case is an exception to that general rule,[2] because here the Court's preliminary injunction is not the only thing which is keeping the Beaufort County Defendants "from resuming the activity that had been restrained by the preliminary injunction."

The crucial distinguishing fact in this matter is the presence of the North Carolina State Board of Elections as a defendant who is subject to this Court's Order for Injunctive Relief, along with any future Order or Judgment yet to be entered. "In general, the county boards are prohibited from acting 'inconsistent with law or the rules established by the State Board of Elections.'" Republican Party of N.C. v. Martin, 682 F. Supp. 834, 835 (M.D.N.C. 1988) (citing N.C. GEN. STAT. § 163-33). As discussed in the Fact

---

[2] Further, regarding voluntary cessation of disputed activity, courts have held that "when the defendant is not a private citizen but a government actor, there is a rebuttable presumption that the objectionable behavior will not recur." Troiano, 382 F.3d at 1283 (citing Coral Springs St. Sys., Inc. v. City of Sunrise, 371 F.3d 1320, 1328–29 (11th Cir. 2004) ("[G]overnmental entities and officials have been given considerably more leeway than private parties in the presumption that they are unlikely to resume illegal activities."); see also Ragsdale v. Turnock, 841 F.2d 1358, 1365 (7th Cir. 1988) ("[C]essation of the allegedly illegal conduct by government officials has been treated with more solicitude by the courts than similar action by private parties.")).

12

section above, North Carolina elections statutes give the State Board of Elections broad authority to institute "reasonable rules and regulations with respect to the conduct of primaries and elections" which must be followed by the County Boards. N.C. GEN. STAT. § 163-22. This leaves the County Boards with little, if any, discretion in election procedures used. If any County Board were to employ election procedures in contradiction to those directed by the State Board, the State Board "shall compel observance of the requirements of the election laws by county boards of elections . . . ." N.C. GEN. STAT. § 163-22(c); see also Appeal of Judicial Review by Republican Candidates for Election in Clay Cnty., 45 N.C. App. 556, 559–60, 264 S.E.2d 338, 340 (1980) ("The Legislature has mandated that the State Board of Elections shall compel observance of the election laws.").

Because of this direct control by the State Board of Elections over County Boards of Elections, when federal courts in this State and in this District have considered the question of whether County Boards of Election are amenable to suit when the only legal questions at issue are those controlled by the State Board of Elections, the unanimous opinion has been that they are not. In Brown v. N.C. State Bd. of Elections, 394 F. Supp. 359, 360 (W.D.N.C. 1975), a resident of Anson County who wanted to file to run for Congress sued the North Carolina State Board of Elections and the Anson County Board of Elections over the statutory requirement in N.C.G.S. § 163-107 that all candidates for office pay a filing fee. Brown, 394 F. Supp. at 360. The Court dismissed the Anson County Board of Elections as a defendant in the case, holding that "the state statute

13

requires that candidates for Congress file with the State Board of Elections and the County Board has no authority to accept or reject such applications." Id.

Similarly, in Republican Party of N.C. v. Martin, Plaintiffs filed suit against the State Board of Elections and several County Boards challenging a new method of electing North Carolina Superior Court Judges. 682 F. Supp. at 835. The County Boards moved to dismiss, arguing that "the suit against the county boards of elections is superfluous since they exercise virtually no discretion in the implementation of state law and act only in a ministerial capacity." Id. This Court agreed that the County Boards were not proper parties to the lawsuit, because "county boards have no authority to act in a manner inconsistent with the statute governing election of superior court judges. They are merely acting in a ministerial capacity and can only carry out duties as detailed by statute and the State Board." Id.

To summarize both cases, because the County Boards of Election were "merely acting in a ministerial capacity and can only carry out duties as detailed by statute and the State Board," the Courts found that it was not proper for them to remain parties to lawsuits challenging the validity and enforceability of North Carolina election laws.

D. <u>The Beaufort County Defendants' cessation of the disputed challenge procedure pursuant to this Court's injunction renders the Plaintiffs' claims moot.</u>

The Courts' holdings in Brown and Martin that the County Boards of Elections were not proper parties to their respective lawsuits were based on exactly the same argument that the Beaufort County Defendants now make to this Court: because the State Board of Elections completely controls the decision, and policy-making in regard to the

14

interpretation and enforcement of "all election laws," the County Boards are completely superfluous to any lawsuit which seeks to change the interpretation and enforcement of those laws. The only difference here, as the Plaintiffs will no doubt argue, is that the Beaufort County Defendants *were* arguably proper parties when this lawsuit was filed,[3] as the injunctive relief sought by the Plaintiffs applied to them.

However, constitutional mootness must be constantly re-evaluated at different points in every lawsuit. In this lawsuit, the Beaufort County Defendants could not even voluntarily grant the Plaintiffs the remaining declaratory relief they seek, because they do not control how the Voter Challenge Statutes – or any other elections laws – are implemented. Therefore, they are clearly not necessary parties to the declaratory relief sought by the Plaintiffs. Consequently, the only conceivable reason to keep the Beaufort County Defendants as parties to this lawsuit is to ensure that the directives of this Court's Order for Injunctive Relief are implemented. However, as discussed above, because the North Carolina State Board of Elections will have the legal duty – as imposed by this Court and by North Carolina statute – to instruct and direct the Beaufort County Defendants – along with every single other County Board of Election – to follow any Order entered by this Court, "there is no reasonable expectation" that the activity of the Beaufort County Defendants enjoined by this Court will re-commence.

---

[3] Even that point is undermined by the fact that had the Plaintiffs not included the Beaufort County Defendants in this lawsuit, they would have received the exact same result on the Motion for Injunctive Relief, as the State Board of Elections would simply have instructed the Beaufort County Defendants to comply with this Court's Order.

15

In fact, the process of the State Board of Elections issuing directives to the County Boards based upon Orders of this Court has already begun, and that process is already working as it should. This Court entered its Order Granting Preliminary Injunction at 4:58 p.m. on Friday, November 4, 2016. Not even three hours later, at 7:56 p.m. that same evening, Kim Westbrook Strach, Executive Director of the State Board of Election, sent a directive to all County Boards which summarized this Court's Order and listed the steps that the County Boards, including the Beaufort County Defendants, were required to take to comply. See Exhibit A, attached to the Beaufort County Defendant's Motion to Dismiss. Notably, Ms. Strach correctly did not style her Memorandum to the County Boards as a "suggestion" or a "guideline," but instead stated "I am issuing the below directive." Further, the Memorandum issued directives not only to the County Boards which are defendants in this lawsuit, but also to "All Other County Boards of Elections" to take steps to conform with this Court's Order.

The Beaufort County Defendants have already complied with the Court's Injunction Order and the resultant directives of the State Board of Elections. Per the Affidavit of Beaufort County Board of Elections Executive Director Kellie H. Hopkins, attached as Exhibit B to these Defendant's Motion, there is no dispute or even question that "the Beaufort County Board of Elections will continue to comply with any order of this Court and the resultant direction and directives of the State Board of Elections as to how to administer election laws in the operation of any election in Beaufort County." Therefore, if there was any question regarding whether the Beaufort County Defendants will resume the activities enjoined by this Court even if they are no longer a party to this

16

case, Ms. Hopkins' affirmative representation to this Court should put those questions to rest.

## CONCLUSION

Because the Beaufort County Defendants will be legally required to abide by any injunctive relief entered by this Court, whether or not they are parties to this action, and because they are not necessary parties to the Plaintiffs' request for declaratory relief, the Plaintiffs' claims against them are constitutionally moot. Therefore, this Court lacks subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure, and must dismiss the Beaufort County Defendants from this lawsuit.

Respectfully submitted, this the 26th day of January, 2017.

By: /s/ Joshua H. Bennett
Joshua H. Bennett
N.C. State Bar No. 32576
Bennett & Guthrie, P.L.L.C.
1560 Westbrook Plaza Drive
Winston-Salem, North Carolina 27103
Tel: (336) 765-3121
Fax: (336) 765-8622
jbennett@bennett-guthrie.com

By: /s/ Donald M. Wright
Donald M. Wright, Esq.
N.C. State Bar No. 7410
4804 Holly Brook Drive
Apex, NC 27539
Tel: (919) 618-3601
ncelectionattorney@gmail.com
*Special Appearance Counsel*
*Local Civil Rule 83.1(d)*

*Attorneys for Beaufort County Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on January 26, 2017, I electronically filed the foregoing with the clerk of Court using the CM/ECF system which will send notification of such to all counsel of record in this matter.

/s/ Joshua H. Bennett
Joshua H. Bennett
N.C. State Bar No. 32576
Bennett & Guthrie, P.L.L.C.
1560 Westbrook Plaza Drive
Winston-Salem, North Carolina 27103
Tel: (336) 765-3121
Fax: (336) 765-8622
jbennett@bennett-guthrie.com