IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No. 1:16-cv-1274-LCB-JLW

| | |
|---|---|
| N.C. STATE CONFERENCE OF THE NAACP, *et al.*, | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) ) |
| N.C. STATE BD. OF ELECTIONS, *et al.*, | ) ) ) |
| Defendants. | ) ) |

## ANSWER OF THE BEAUFORT COUNTY DEFENDANTS TO THE PLAINTIFFS' COMPLAINT

**NOW COME** the Defendants Beaufort County Board of Elections, Jay McRoy, in his official capacity as Chairman of the Beaufort County Board of Elections, John B. Tate, III, in his official capacity as Secretary of the Beaufort County Board of Elections, Thomas S. Payne II, in his official capacity as Member of the Beaufort County Board of Elections, and Kellie Harris Hopkins, in her official capacity as Director of the Beaufort County Board of Elections (collectively "the Beaufort County Defendants"), after moving to dismiss the Plaintiffs' claims in this matter pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, and answer the allegations in the Plaintiffs' Complaint as follows:

### FIRST DEFENSE

The Beaufort County Defendants respond to the numbered paragraphs of the Plaintiffs' Complaint as follows:

1.      Regarding Paragraph 1 of the Complaint, it is admitted that the Plaintiffs' action includes a request for declaratory and immediate relief which was granted by the Court by order dated November 4, 2016 after a hearing on the matter before the Court on November 2, 2016. It is further admitted that it appears the basis of the challenges set out in the Complaint was based upon prima facie evidence of returned first-class mail as allowed under the provisions of North Carolina General Statute (herein after noted as "GS") 163-85(e). It is denied that the action of the Beaufort County Board of Elections ("BCBE") in sustaining several such challenges was in violation of the National Voter Registration Act ("NVRA") and other federal laws. It is further denied that in the case of the BCBE there was a coordinated, en masse challenge procedure. The 138 challenges were brought against both inactive and active registered voters of the Town of Belhaven, by four different private individuals who were also registered voters of Belhaven.

2.      Regarding Paragraph 2 of the Complaint, it is admitted that the provisions of the NVRA mandate certain procedures and processes as to voter registration. It is denied that the NVRA is the exclusive means of removing voters from the voter rolls as challenge procedures are also allowed. Specifically, the voter challenge statutes of North Carolina allow the removal of certain voters based upon procedures and facts set out in those statues. GS 163-84, GS 163-85, and GS 163-86 deal with voter challenges prior to Election Day.  GS 163-87, GS 163-88, and GS 163-88.1 deal with Election Day challenges. GS 163-89 deals with absentee voter challenges. GS 163-227.2(h) deals with challenges at one-stop (early) voting. GS 163-289 deals with challenges of municipal

voters. GS 163-90, GS 163-90.1, GS 163-90.2, and GS 163-90.3 also pertain to challenges.

3. Paragraph 3 is denied except it is admitted that some voters have been removed based upon prima facie evidence allowed under the provisions of GS 163-85(e). It is further admitted that in the case of the challenges filed with the BCBE, some of the challenged voters still resided at the addresses at which they were registered. When that fact was established before the BCBE, the challenges were not sustained. Each voter challenge coming before the BCBE was given the proper due process mandated by the state challenge statutes. The result of the 138 challenges filed in Beaufort County was as follows: 30 challenges were dismissed at the preliminary hearing stage, 1 challenge was dismissed as a duplicate, 14 challenges were dismissed when the challenged voters updated their addresses, 15 challenges were withdrawn by the challengers, 13 challenges were postponed to allow further evidence on behalf of the challenged voter to be produced, and 65 challenges were sustained. Later, two (2) of these sustained challenges were reversed by the BCBE when competent evidence was later produced on behalf of the challenged voters.

4. Regarding Paragraph 4 of the Complaint, it is admitted that the State Board of Elections has stated that the state challenge statutes can be used to remove voters. The remainder of Paragraph 4 is denied.

5. Regarding Paragraph 5 of the Complaint, it is admitted that the Plaintiffs have brought this action. The remainder of Paragraph 5 is denied.

6. Paragraphs 6 and 7 are admitted.

7. Paragraphs 8, 9, 10, and 11 are neither admitted or denied.

8. Regarding Paragraph 12 of the Complaint, Mr. James Edward Arthur was originally challenged by Shane Hubers on October 4, 2016. Preliminary hearing was set for October 7th. Mr. Hubers presented three returned mailings. The BCBE set the hearing on this matter for October 24th. Notice, dated October 12, of the October 24th hearing was sent to Mr. Cox. That notice was returned to the BCBE on October 24th as undeliverable. No other information was provided to the BCBE office prior to the hearing. No one appeared at the hearing. Mr. Cox's challenge was the first considered by the BCBE. Ms. Veronica Ward did testify that, if she was not mistaken, Mr. Cox was in a nursing home. She stated that she had heard he was at River Trace Nursing home for two years in the Alzheimer's unit. Ms. Ward also testified that she was not even sure that Mr. Cox's wife still resided at the Belhaven address. No other information was provided. Based on the evidence presented (the challenger and the four (4) BOE notices that were returned), the challenge was sustained unanimously. As a result of the Court's November 4, 2016 Order, Mr. Arthur was restored as a voter and voted a regular ballot in the November 8, 2016 Beaufort County election. It is admitted that James Edward Arthur was registered prior to this year and had voted in several prior Beaufort County elections. Other that admitted herein, the remainder of Paragraph 12 is denied. For reasons unknown to the BCBE, James Edward Arthur did not vote in the November 8, 2016 General Election, even though he was eligible to do so as a result of the injunctive relief granted by the Court.

9. Paragraph 13 involves a Moore County voter, is not directed to the Beaufort County Defendants, and therefore the Paragraph is neither admitted nor denied.

10. Paragraph 14 is denied except that it is admitted that Grace Bell Hardison is 100 years old and has been an active voter in Beaufort County in recent years. It is further admitted that she was challenged as a voter by Shane Hubers on October 4, 2016. Preliminary hearing on the challenge was held October 7th. Mr. Greg Satterthwaite (Ms. Hardison's nephew) contacted the BCBE and informed it that Ms. Hardison still lived at her registered address and used a post office box. At that time, it appeared that the returned mail used as the basis of the challenge had been mailed to her residence address not her mailing address. This information was shared with the challenger Mr. Hubers by the BCBE Director, Kellie Hopkins, at the second preliminary hearing on October 14, 2016, and Mr. Hubers withdrew his challenge. Ms. Hardison's case prompted the BCBE to ask the Director to communicate with the challengers to share information and allow the challengers to withdraw if they were satisfied with information submitted to them by the Director. The Washington Daily news did in fact list the names of those challenged at the first preliminary hearing, and the article was published the day after the hearing and was public before COB notices were mailed to affected voters. Ms. Hardison was mailed two notices, one to her physical address and one to her post office box on October 12, 2016, and neither notice has been returned to the BCBE office as undeliverable. Ms. Hardison has not contacted the BCBE office directly, only though her nephew Mr. Satterthwaite. The BCBE was never given contact information for Ms. Hardison. The BCBE Director contacted Mr. Satterthwaite to inform him that the challenge had been

withdrawn. Ms. Hardison was never removed as a voter and voted in the November 8, 2016 Beaufort County elections.

11.     Paragraph 15 is denied except that it is admitted that James Lee Cox is an African American, life-long citizen of Beaufort County and was a registered voter that had voted in several past Beaufort County elections. Alan Rogers originally challenged Mr. James Lee Cox. Notices were sent on October 15, 2016 to both Mr. Cox's residential and post office box, and neither has been returned to the BCBE office. Mr. Cox called the BCBE on October 18, 2016 and attested to living at his resident address, stated that he used a post office box, and stated that he would be available for the hearing if needed. The BCBE confirmed that the returned mail used as the basis of the challenge had been mailed to the residential address and not the post office box. That information was conveyed to the challenger Mr. Rogers, and the challenge was withdrawn. Mr. Cox was never removed as a voter and voted in the November 8, 2016 Beaufort County elections.

12.     Paragraphs 16, 17, 18, 19, 20, 21, and 22 are admitted.

13.     Paragraphs 23, 24, 25, 26, and 27 are admitted except that the administration of election laws within Beaufort County by the BCBE is subject to the superior authority of the State Board of Elections to interpret and direct how such laws should be implemented. It is further stated that County Board of Elections Directors are selected by a County Board and then submitted for approval to the Executive Director of the State Board who appoints or denies the recommended person. GS 163-22(a) gives the State Board of Elections the ultimate supervision over all elections in North Carolina and as such county boards of elections are implementing federal and state election laws under

the direction and control of the State Board of Elections. The actions of all the county board of elections defendants in this matter were taken with the known approval of the State Board of Elections based upon the state statutes allowing such action.

14. Paragraphs 28 through 37 are admitted upon information and belief except that that the administration of election laws within Moore and Cumberland Counties by their Boards of Election is subject to the superior authority of the State Board of Elections to interpret and direct how such laws should be implemented. It is further stated that proposed Directors for County Boards of Elections are nominated by each County Board and then submitted for approval to the Executive Director of the State Board of Elections, who then appoints or denies the recommended Director.

15. Paragraphs 38 through 41 are admitted except it is stated that the NVRA does not preclude the operation of North Carolina's challenge statutes, specifically GS 163-85 and GS 163-86, to remove voters from North Carolina registration rolls before and even on the day of elections. The actions complained of herein by the Plaintiffs were based upon valid state statutes.

16. Paragraphs 42, 43 and 44 are admitted as they appear to quote the North Carolina Statutes involved in this matter.

17. Paragraph 45 is denied except it is admitted that the provisions of the NVRA have been incorporated in many North Carolina statutes. Challenge statutes and laws have been in existence in various jurisdictions for as long as there have been elections that involve voters that must qualify as voters. The concept of challenges as a means to remove voters that do not qualify to vote in an election to protect the integrity

of the election has been an integral part of American elections for centuries. When the NVRA was passed in 1993, there was no attempt by Congress to address in the NVRA the interaction of state challenge statutes with NVRA mandates. There have no subsequent amendments to the NVRA that has attempted that function.

18. Paragraphs 46 and 47 are denied except it is admitted that four individuals filed 138 challenges in Beaufort County in October of 2016. Based upon information and belief, it is believed that challenges were also filed in Moore and Cumberland Counties at some time close to the November 8, 2016 election.

19. Paragraphs 48 and 49 are admitted except that the 138 challenges were received in six batches between October 4 and October 14, 2016.

20. Paragraph 50 is denied in that notice of challenge letters were sent to voters and to all addresses the voters had on file with the Beaufort County Board of Elections including resident addresses, mailing addresses, and in two cases national change of address (NCOA) addresses provided by the U.S. Postal Service.

21. Paragraph 51 is denied except it is admitted that these challenges were limited to voters registered in the town of Belhaven, which has a 55.3% African American population. Based upon information and belief, it is admitted that 91 of the 138 challenged voters were African American.

22. The BCBE worked with Veronica Ward to make sure the challenges filed were fairly heard. Her efforts were appreciated. Paragraph 52 is admitted except this Defendant has insufficient knowledge to know exactly how many challenged voters Veronica Ward contacted. Veronica Ward provided the BCBE with information on the

challenged voters daily until the hearings. At the challenge hearings, Veronica Ward was a sworn witness and shared what information she had on challenged voters. Her testimony was used to allow postponements of certain hearings to allow challenged voters she felt were still active to contact the BCBE in hopes of resolving the challenge.

23. Paragraph 53 is admitted except this Defendant has no knowledge of the ability of the several individuals to travel to their hearings. On at least two occasions, Veronica Ward filed two affidavits of challenged voters; in both cases those challenges were withdrawn by the challenger prior to hearing.

24. Paragraph 54 is denied except it is admitted that Veronica Ward helped many of the challenged voters and that her help was very valuable to the BCBE and to many of the voters. She also confirmed the fact that many of the challenged voters did not currently lived within the town limits of Belhaven.

25. Paragraph 55 is admitted, and it is further stated that 14 hearings were postponed mainly on information provided by Veronica Ward and her friends. The BCBE did not want to remove voters if there remained some other evidence yet to be presented that would support the eligibility of the voter to remain registered.

26. Paragraph 56 is admitted, but it is further stated that most of these sustained challenges were of voters that were no longer residing in Beaufort County, a fact that was supported by evidence generated by the challengers, staff of the BCBE, and Veronica Ward. Of those 138 voters that had been challenged in Beaufort County, but later restored as voters by the order of the Court in this matter, only 34 voted in the November 8, 2016 election. Of those 34 that voted, 7 had submitted address changes prior to

challenges being filed and had their challenges dismissed. Eight (8) had submitted address changes after the challenges were filed and had the challenges dismissed. Twelve (12) voters had their information researched by the BCBE, and after the BCBE had shared that research with the challengers, the challengers withdrew those challenges. Two (2) voters had their challenge hearings postponed to seek further information, and the injunctive relief ordered by the Court prevented further action upon their challenges. Five (5) voters, all of whom were white and not minorities, had been removed by the BCBE but appeared and voted on election day as per the injunctive relief ordered by this Court. No other voters challenged or removed voted in Beaufort County in the November 8, 2016 election.

27. Paragraph 57 is denied, but it is admitted that many of the challenged voters were still eligible voters with Beaufort County and that is why 75 of the 138 challenged voters were not removed by the BCBE.

28. Regarding Paragraph 58 of the Complaint, Mr. James Edward Arthur was originally challenged by Shane Hubers on October 4, 2016. Preliminary hearing was set for October 7th. Mr. Hubers presented three returned mailings. The BCBE set the hearing on this matter for October 24th. Notice, dated October 12, of the October 24th hearing was sent to Mr. Cox. That notice was returned to the BCBE on October 24th as undeliverable. No other information was provided to the BCBE office prior to the hearing. No one appeared at the hearing. Mr. Cox's challenge was the first considered by the BCBE. Ms. Veronica Ward did testify that, if she was not mistaken, Mr. Cox was in a nursing home. She stated that she had heard he was at River Trace Nursing home for two

years in the Alzheimer's unit. Ms. Ward also testified that she was not even sure that Mr. Cox's wife still resided at the Belhaven address. No other information was provided. Based on the evidence presented (the challenger and the four (4) BOE notices that were returned), the challenge was sustained unanimously. As a result of the Court's November 4, 2016 Order, Mr. Arthur was restored as a voter and voted a regular ballot in the November 8, 2016 Beaufort County election. It is admitted that James Edward Arthur was registered prior to this year and had voted in several prior Beaufort County elections. Other that admitted herein, the remainder of Paragraph 58 is denied. For reasons unknown to the BCBE, James Edward Arthur did not vote in the November 8, 2016 General Election, even though he was eligible to do so as a result of the injunctive relief granted by the Court.

29. Paragraph 59 is denied except that it is admitted that James Lee Cox is an African American, life-long citizen of Beaufort County and was a registered voter that had voted in several past Beaufort County elections. Alan Rogers originally challenged Mr. James Lee Cox. Notices were sent on October 15, 2016 to both Mr. Cox's residential and post office box, and neither has been returned to the BCBE office. Mr. Cox called the BCBE on October 18, 2016 and attested to living at his resident address, stated that he used a post office box, and stated that he would be available for the hearing if needed. The BCBE confirmed that the returned mail used as the basis of the challenge had been mailed to the residential address and not the post office box. That information was conveyed to the challenger Mr. Rogers, and the challenge was withdrawn. Mr. Cox was never removed as a voter and voted in the November 8, 2016 Beaufort County elections.

30.     Paragraph 60 is admitted, but there is no legal duty under either North Carolina law or the NVRA to notify a voter removed as a result of a sustained challenge of the removal.  All challenged voters had been mailed the challenges at all the addresses the BCBE had of the voters prior to the hearings.

31.     Paragraphs 61, 62, 63, 64, 65, and 66 involved Moore County voters and the actions of the Moore County Board of Elections.  Having insufficient knowledge as to matters alleged therein, this Defendant denies Paragraphs 61, 62, 63, 64, 65, and 66.

32.     Paragraphs 67, 68, and 69 involved Cumberland County voters and the actions of the Cumberland County Board of Elections.  Having insufficient knowledge as to matters alleged therein, this Defendant denies Paragraphs 67, 68 and 69.

33.     Paragraphs 70, 71, 72, 73, 74, and 75 involved the Plaintiff NAACP and the actions of the State Board of Elections.  Having insufficient knowledge as to matters alleged therein, this Defendant denies Paragraphs 70, 71, 72, 73, 74, and 75. However it is admitted that the BCBE agrees with the State Board of Elections' position that voter removals based upon timely filed challenges are not a violation of the NVRA, the U.S. Constitution, or any other federal statute, law, or regulation.

34.     Paragraphs 76, 77, and 78 involve the Plaintiff Moore County NAACP and the State Board of Elections. Having insufficient knowledge as to matters alleged therein, this Defendant denies Paragraphs 76, 77, and 78.

35.     Paragraphs 79, 80, 81, 82, 83, 84, 85, 86, 87, 87, 88, 89, and 90 are denied. It is further stated that the challenge statutes of North Carolina and other states preexisted the NVRA, and in the case of North Carolina, existed as early as 1715.  Challenge

statutes and procedures are an essential tool to protect the integrity of elections where voters in those elections must qualify as eligible based upon factors such a residency, citizenship, and age. Congress, in its initial passage of the NVRA and since, has not specifically addressed the interplay between NVRA voter list maintenance and state challenge statutes. Further the United State Department of Justice (USDOJ), which implements the NVRA on behalf of the federal government, has never addressed with the North Carolina State Board of Elections or any North Carolina Board of Elections any concern over the effect of pre-election challenges as set out in GS 163-85 and GS 163-86 as being in violation of the NVRA, the Voting Rights Act of 1965, or the Equal Protection Clause of the U.S. Constitution. In fact the USDOJ had pre-cleared, under Section 5 of the Voting Rights Act, North Carolina election statutes that allowed pre-election challenges or referred to such challenges. It is further stated that voters affected by the challenges alleged herein were free to use the provisional ballot provisions allowed by GS 163-166.11 to protect their voting rights. Although requiring some paperwork by the voter, such provisional ballots are offered to voters at voting places where advice and assistance is also tendered to the voter at that time by election officials as to the provisional ballots. The fact that approximately 50,000 provisional ballots were cast in the November 8, 2016 General Election attests to the ease with which these types of votes can be cast. Further, if the North Carolina statues and procedures pertaining to provisionals were in violation of the Voting Rights Act of 1965, the NVRA, HAVA, or otherwise harmed the voters, the USDOJ would not have pre-cleared such statutes and procedures under Section 5 of the Voting Rights Act of 1965 when it was in effect.

36. Paragraph 91 is not denied in that it is an incorporation of prior allegations to which this Defendant also reasserts its prior responses in the preceding paragraphs of this response.

37. Paragraphs 92, 93, and 94 are admitted as reflecting certain provisions of the NVRA. However, it is denied that such NVRA provisions would apply to the challenge procedures applied to certain voters that form the basis of this litigation.

38. Paragraph 95 is admitted, but it is further stated that a voter's leaving of a residence in a precinct may affect the particular elections that a voter may be eligible to vote in, such as when a voter moves outside a municipality but stays within the county. Voters leaving their prior electoral residences and removing themselves from the county are a basis for canceling their registrations.

39. Paragraphs 96, 97, 98, 99, 100, 101, 102, 103, and 104 are denied. The BCBE properly removed some voters in October 2016, based on challenges filed against them under the provisions of GS 163-85 and GS 163-86. It is further stated that the BCBE, whenever possible, avoided removing voters from the voter rolls when it appeared that they had a residence within the county. It should be noted that the Beaufort County challenges alleged non-residency within the municipality of Belhaven. However, GS 163-289 mandates that the municipal election challenges are processed by a county board of elections, under the provisions of Article 8 of Chapter 163 of the North Carolina General Statutes, which includes the pre-election challenge statutes GS 163-85 and GS 163-86. At the time of this response, the Court has already entered injunctive relief for

the Plaintiffs that protected removed voters from not being able to vote in the November 8, 2016 General Election.

40.     Paragraph 105 is not denied in that it is an incorporation of prior allegations to which this Defendant also reasserts its prior responses in the preceding paragraphs of this response.

41.     Paragraph 106 is admitted as reflecting certain provisions of the NVRA. However, it is denied that such NVRA provisions would apply to the challenge procedures applied to certain voters that form the basis of this litigation.

42.     Paragraphs 107, 108, 109, 110, 111, 112, 113, and 114 are denied. The BCBE lawfully removed challenged voters under the challenge laws and procedures of North Carolina. The 90-day cutoff on NVRA list maintenance of voter rolls does not address or apply to voter challenges made under state statutes. At the time of this response, the Court has already entered injunctive relief for the Plaintiffs that protected removed voters from not being able to vote in the November 8, 2016 General Election.

43.     Paragraph 115 is not denied in that it is an incorporation of prior allegations to which this Defendant also reasserts its prior responses in the preceding paragraphs of this response.

44.     Paragraphs 116, 117, 118, 119, 120, 121, 122, and 123 are denied. In Beaufort County, the challenges were limited to voters registered in the town of Belhaven, which has a 55.3% African American population. Ninety-one (91) of the 138 (or 66%) challenged voters in Beaufort County were African American. Regardless, the act of challenging all the voters in Beaufort County was not that of the BCBE or any of

the current defendants in this litigation. But for the actions of the four individual citizens that filed the Beaufort challenges, there would have been no challenges filed. Any racial malice, if it exists, forming the basis of these challenges would have been upon the part of these individuals. The only removed voters, five in number, showing up to vote in Beaufort County on election day were white and not minorities. The BCBE did not encourage the filing of the challenges, but once there were filed had to proceed with the challenges as mandated by North Carolina law. At the time of this response, the Court has already entered injunctive relief for the Plaintiffs that protected removed voters from not being able to vote in the November 8, 2016 General Election.

45. Paragraph 124 is not denied in that it is an incorporation of prior allegations to which this Defendant also reasserts its prior responses in the preceding paragraphs of this response.

46. Paragraphs 125, 126, 127, 128, 129, 130, 131, 132, 133, 134, and 135 are denied. The BCBE acted lawfully to process and hear the 138 voter challenges filed with it by four individuals. At the time of this response, the Court has already entered injunctive relief for the Plaintiffs that protected removed voters from not being able to vote in the November 8, 2016 General Election.

## SECOND DEFENSE

Any allegations in Paragraphs 1-135 of the Complaint not specifically admitted are denied.

## THIRD DEFENSE

Plaintiffs' Complaint, in whole or in part, fails to state a claim upon which relief can be granted and should be dismissed.

## FOURTH DEFENSE

The Plaintiffs' claims against the Beaufort County Defendants are moot and should be dismissed.

## FIFTH DEFENSE

Neither the North Carolina NAACP nor the Moore County NAACP have the required associational standing to bring claims against the Beaufort County Defendants.

## SIXTH DEFENSE

The Beaufort County Defendants plead the doctrine of judicial immunity as a bar to Plaintiffs' claims. Plaintiffs' claims are otherwise barred by any immunity provided for by the Eleventh Amendment of the United States Constitution.

## SEVENTH DEFENSE

The activities complained of by the Plaintiffs are those of third parties over whom the Beaufort County Defendants have no control.

## EIGHTH DEFENSE

The Beaufort County Defendants at all times followed lawful election procedures as prescribed and required by the North Carolina State Board of Elections.

## NINTH DEFENSE

The Beaufort County Defendants reserve the right to assert additional defenses. The Beaufort County Defendants incorporate the defenses asserted by other defendants to the extent they conform with the Beaufort County Defendants' defenses in this matter.

**WHEREFORE**, the Beaufort County Defendants respectfully pray that the Court:

1. Find that the North Carolina pre-election challenge statutes and procedures as set out in GS 163-85 and 163-86 are not in violation of any provision of the NVRA, the Voting Rights Act (52 U.S.C. 10301), 42 U.S.C. 1983, or the Equal Protection Clause of the United States Constitution.

2. That the Preliminary Injunction issued by the Court on November 4, 2016 not be extended by the Court and that no permanent injunctive relief set out in the Plaintiffs' Prayer for Relief be granted by the Court;

3. That the Plaintiffs' claims against the Beaufort County Defendants be dismissed, with prejudice;

4. That no attorney fees and costs be awarded; and

5. Grant the Beaufort County Defendants such other and further relief the Court deems just and proper.

Respectfully submitted, this the 26th day of January, 2017.

By: /s/ Joshua H. Bennett
Joshua H. Bennett
N.C. State Bar No. 32576
Bennett & Guthrie, P.L.L.C.
1560 Westbrook Plaza Drive
Winston-Salem, North Carolina 27103
Tel: (336) 765-3121
Fax: (336) 765-8622
jbennett@bennett-guthrie.com

By: /s/ Donald M. Wright
Donald M. Wright, Esq.
N.C. State Bar No. 7410
4804 Holly Brook Drive
Apex, NC 27539
Tel: (919) 618-3601
ncelectionattorney@gmail.com
*Special Appearance Counsel*
*Local Civil Rule 83.1(d)*

*Attorneys for Beaufort County Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on January 26, 2017, I electronically filed the foregoing with the clerk of Court using the CM/ECF system which will send notification of such to all counsel of record in this matter.

/s/ Joshua H. Bennett
Joshua H. Bennett
N.C. State Bar No. 32576
Bennett & Guthrie, P.L.L.C.
1560 Westbrook Plaza Drive
Winston-Salem, North Carolina 27103
Tel: (336) 765-3121
Fax: (336) 765-8622
jbennett@bennett-guthrie.com