IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No. 1:16-cv-1274-LCB-JLW

| | |
|---|---|
| NORTH CAROLINA STATE CONFERENCE OF THE NAACP, *et al*. | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| NORTH CAROLINA STATE BOARD OF ELECTIONS, *et al*., | ) ) ) |
| Defendants. | ) ) |

**Brief in Support of Cumberland Defendants' Motions to Dismiss
Pursuant to Fed. R. Civ. P. 12(b)(1) for Lack of Standing and Mootness**

**Now come** defendants the CUMBERLAND COUNTY BOARD OF ELECTIONS; JAMES H. BAKER, in his official capacity as its Chairperson; ROBERT KEVIN HIGHT, in his official Capacity as its Secretary; HARVEY RAYNOR III, in his official capacity as one of its members; and TERRI ROBERTSON, in her official capacity as its Director of Elections, collectively referred to as "the Cumberland Defendants," and submit this Brief in support of their Motions to Dismiss the Plaintiffs' Complaint in this matter pursuant to Rule 12(b)(1) of the Fed. R. of Civ. P.

1

## Nature of the Matter before the Court

This matter is before the Court on the Cumberland Defendants' Motions to Dismiss the Plaintiffs' Complaint in this matter pursuant to Rule 12(b)(1) of the Fed. R. of Civ. P. on the grounds that the Court does not have subject matter jurisdiction because: (1) the plaintiffs lack standing to bring this action against the Cumberland Defendants; and (2) the relief requested by the plaintiffs has already been granted by this Court and it cannot reasonably be expected that the Cumberland Defendants will repeat the allegedly wrongful conduct in the future.

## Statement of Facts

The plaintiffs in this action are the North Carolina State Conference of the NAACP, the Moore County Branch of the NAACP, three named citizens and residents of Beaufort County, and a named citizen and resident of Moore County. The defendants are the Boards of Elections, the members of the Boards of Elections in their respective official capacities, and the Directors of Elections in their official capacities for the State of North Carolina and the counties of Beaufort, Cumberland and Moore. See Complaint, Doc. 1, ¶¶ 8-37.

Plaintiffs allege that the actions of the defendants in canceling the registrations of voters under the North Carolina voter challenge statutes, N.C.G.S. §§ 163-85 and 163-86, violate provisions of the National Voter Registration Act; the Voting Rights Act, 52 U.S.C. § 10301; the Equal Protection Clause; and 42 U.S.C. § 1983. See *Id.*, ¶¶ 91-135.

2

Plaintiffs seek declaratory and injunctive relief to permanently enjoin the defendants from following the State statutes that allow any registered voter to challenge the registration of any other voter for change of residency; to reinstate all registrations canceled through the State's voter challenge statutes prior to the November 8, 2016, general election; and attorney fees.  See *Id.*, *Prayer for Relief*.

The Court entered a preliminary injunction on November 4, 2016, ordering the defendants to reinstate any registrations that had been canceled pursuant to the State's voter challenge statutes within 90 days of the November 8, 2016, general election; take all measures to ensure that any challenged voters were restored to their status prior to being challenged so they could vote on November 8, 2016, and in future elections; prohibit any same day challenges to voters if they appeared to vote in person on November 8, 2016;  not to process challenges or hold hearings pursuant to N.C.G.S.  §§ 163-85 and 163-86 based on change of residency; count all provisional or challenged ballots cast by any challenged voter; provide absentee ballots to any challenged voters who had requested and been denied an absentee ballot and count such ballots; count any absentee ballot already cast by any challenged voter the same as if the voter had the same registration status as before being challenged; and take measures to ensure that all North Carolina counties complied with the Court's Order.   See Doc. 43, *Order Granting Preliminary Injunction.*

## Questions Presented

I.A  Do either the individual or organizational plaintiffs have standing to bring this action against the Cumberland County Board of Elections?

I.B  Do any of the plaintiffs have standing to bring this action against the members of the Cumberland County Board of Elections or the Cumberland County Director of Elections in their respective official capacities?

II.  Does the relief granted by the Court's Preliminary Injunction, together with the statutory obligation of a county board of elections to comply with the directives of the North Carolina State Board of Elections, render the plaintiffs' claims moot as to all the county defendants?

## Argument

I. A.  <u>The plaintiffs do not have standing to bring this action against the Cumberland Defendants and all causes of action against the Cumberland Defendants must be dismissed.</u>

Standing is a threshold question in every case before a federal court and it determines the power of the court to entertain the suit. *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 2204, 45 L.Ed.2d 343 (1975). A federal court must ask "whether the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief." *Warth v. Seldin*, at 500, 95 S.Ct. at 2206, (footnote omitted). The Supreme Court defined the

constitutional requirements of standing in *Allen v. Wright*, 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984): "A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." A plaintiff must also allege that he has suffered a particularized injury; injury to the public is not sufficient to establish standing. See *Friends of the Earth, Inc., v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000).

In addition to the constitutional requirements, there are also prudential rules of standing that have served to limit the role of the courts in resolving public disputes. *Warth v. Seldin*, at 500, 95 S.Ct. at 2206. These "judicially self-imposed limits on the exercise of federal jurisdiction" include such prudential rules as the "prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed to the representative branches, and the requirement that a plaintiff's complaint fall with the zone of interests protected by the law invoked." *Allen v. Wright*, at 751, 104 S.Ct. at 3324. Even when a plaintiff has alleged injury sufficient to meet the Article III of the Constitution's "case or controversy" requirement, a plaintiff must generally assert his own legal rights and interests and cannot rest his claim to relief on the legal rights of others. *Warth v. Sedlin,* at 499, 95 S.Ct. at 2205.

An association may have standing in its own right to seek judicial relief from injury to itself. Even in the absence of injury to itself, it may have standing solely as the

5

Case 1:16-cv-01274-LCB-JLW   Document 60   Filed 01/26/17   Page 5 of 20

representative of its members. *Ward v. Seldin*, at 515, 95 S.Ct. at 2213, citing *National Motor Freight Assn. v. United States*, 372 U.S. 246 (1963). Such representational standing, however, does not eliminate the constitutional requirement of a "case or controversy." The association must allege that its members, or any of them, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members brought suit. If this is established and if the nature of the claim and of the relief sought does not make the individual participation of each injured party indispensable to proper resolution of the cause, the association may be an appropriate representative of its members *Ward v. Seldin*, at 511, 95 S.Ct. at 2211-2212, citing *Sierra Club v. Morton*, 405 U.S. 727, 734-741 (1972).

The standard of review for determining standing encompasses two prongs. A defendant may challenge a plaintiff's standing by asserting that the plaintiff has failed to allege sufficient facts to show that is has standing, or that the plaintiff's factual allegations in support of its standing are untrue. *Adams v. Bain*, 697 F.2d 1213, 1219, (4th Cir. 1982). If a defendant's challenge is based on insufficient allegations, the court must accept all material allegations of the complaint as true and construe the complaint in favor of the plaintiff. If the challenge is based on the factual allegations being untrue, the court may go beyond the allegations of the complaint and make factual findings as to whether the plaintiff has standing. *Id*.

No conduct of the Cumberland Defendants is traceable to the individual plaintiffs in this case. By the very nature of their claims, each individual plaintiff could only have

6

been subject to the conduct of the Board of Elections in the county in which the individual plaintiff was registered. For this reason, the named plaintiffs lack standing as to the claims on all their causes of actions against the Cumberland Defendants and the court has no subject matter jurisdiction as to these claims.

The two organizational plaintiffs have intertwined their separate claims against all the defendants to such an extent that it is necessary to closely examine their Complaint to distinguish the claims of each against the Cumberland Defendants. In ¶ 8 of the Complaint (Doc. 1), the North Carolina NAACP pleads that it has members who are registered voters in each of the state's 100 counties. In ¶ 9, *Id*., the Moore County NAACP pleads that it is a unit of the NAACP and shares in the mission of the North Carolina NAACP. The next mention of organizational members is in ¶ 80, *Id*., where the organizational plaintiffs allege that the defendants' unlawful actions cause substantial and irreparable harm to the organizational plaintiffs' members or subject them to a real and imminent risk of such harm. In ¶ 81, *Id.,* the organizational plaintiffs further allege that the practices *occurring in North Carolina*, including Beaufort, Moore and Cumberland County, have already harmed many of the organizational plaintiffs' members.

They further allege in ¶ 81, *Id*., "on information and belief," that members of both the North Carolina NAACP and Moore County NAACP, such as individual plaintiff Brower, have been challenged or purged or are at risk of being so challenged and denied their right to vote in future elections. In ¶ 13, *Id.,* however, individual plaintiff Brower describes himself as only have been a member of the Moore County NAACP within the

last five years and currently renewing his membership. Moreover, individual plaintiff Brower reports that although he was challenged, he was informed of the challenge by a relative, he advised the Moore County Board of Elections that he was still a Moore County resident eligible to vote, and his name was removed from the challenge list. ¶ 13, *Id.* The named person that the organizational plaintiffs describe as suffering the same injury as their members, individual plaintiff Brower, complains that he was challenged and may be challenged again, not that his registration was canceled in violation of the NVRA.

In ¶¶ 86-90, the organizational plaintiffs plead that the actions of the defendants threatened the voting rights of *all* of the organizational plaintiffs' members. *Id.* They further allege that both organizational plaintiffs have been harmed by undermining their hard-fought efforts to register eligible voters and by forcing them to divert their limited resources to investigating and taking measures to counteract defendants' unlawful purging in order to protect the voting rights of their members and *all citizens*. *Id.*

The organizational plaintiffs allege in ¶¶ 99-103 of their first cause of action for violation of the NVRA that the defendants' unlawful removals disenfranchised "members of the communities the organizational plaintiffs serve, depriving members of those organizations of their rights under the NVRA." *Id.* This allegation is made again in ¶¶ 109-113 of their second cause of action for violation of the NVRA. *Id.* These allegations are merely an attempt to boot-strap injury to their members from a general allegation of

8

injury to the members of the communities served by the organizational plaintiffs without any description of the communities that they serve.

In their third cause of action for violation of the Voting Rights Act, the organizational plaintiffs allege in ¶ 117 that defendants' unlawful voter challenge and purge practices have a disparate impact upon African American voters and result in fewer opportunities for African Americans to participate in the political process than members of other groups. *Id.* They do not plead any facts to demonstrate this allegation as to any of the voters challenged or removed in Cumberland County. In ¶ 118, they allege that the defendants' unlawful voter challenge and purge practices interact with social and historical conditions to cause a disparity between electoral opportunities of African American and other voters. *Id.* Again, they plead no facts to demonstrate this allegation as to any of the voters challenged or removed in Cumberland County. They further describe racial discrimination and its impact on voting in North Carolina without pleading any facts to demonstrate this allegation as to any of the voters challenged or removed in Cumberland County. *Id.* In ¶ 119, the organizational defendants again plead that defendants' unlawful removals disenfranchised "members of the communities the organizational plaintiffs serve, depriving members of those organizations of their rights under the Voting Rights Act." *Id.* They do not plead any facts to substantiate this conclusory allegation as to any of the defendants.

In their fourth cause of action for violation of the Equal Protection Clause and 42 U.S.C. § 1983, in ¶ 125, the organizational plaintiffs allege that the defendants' actions

9

violate the Equal Protection Clause by causing a severe and arbitrary denial of the fundamental right of North Carolina voters including organizational plaintiffs' members. *Id*. In ¶ 130, they allege that the defendants' unlawful challenge and purge practices violate their members' rights secured to them by the Constitution, in violation of 42 U.S.C. § 1983. *Id.* In ¶ 131 they repeat the allegation that defendants' unlawful removals disenfranchised "members of the communities the organizational plaintiffs serve, depriving members of those organizations of their rights under the Equal Protection Clause." *Id.* Again, these are conclusory allegations and are not substantiated by any pleadings of facts related to the challenges and removals of any voters in Cumberland County.

The organizational plaintiffs allege that the defendants' unlawful actions caused injury both to the organizations and to their respective members. The injuries that the organizational plaintiffs claim for themselves are that the defendants' unlawful actions in canceling voter registrations undermined their hard-fought efforts to register eligible voters and forced them to divert their limited resources to investigating and taking measures to counteract defendants' unlawful purging in order to protect the voting rights of their members and *all* citizens. Id., ¶ ¶ 87, 88.

The claim for having their efforts to register voters undermined does not meet the constitutional standing requirement that a plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief. Neither of the organizational plaintiffs alleges that they have undertaken

efforts to register voters in any of the three counties in which the county Boards of Elections are defendants.  Nor have they alleged that any voter whose registration was canceled in any of the counties was registered by either of them.  This claim is not particularized to the organizational plaintiffs.  Any organization that has conducted voter registration drives within the State of North Carolina is in the same position as the organizational plaintiffs.  If organizational standing for the undermining of voter registration is recognized in these circumstances, each of the county defendants would be potentially subject to countless suits by a variety of organizations which conduct voter registration drives.  These organizations would invariably be representing the same voters.  The avoidance of this circumstance is the crux of why the injury must withstand the constitutional limitation of being particular and traceable to the defendant's conduct and the prudential rule prohibiting a litigant's raising another person's legal rights.

With respect to their claim that the defendants' actions forced the organizational plaintiffs to divert resources to counteract such actions, the organizational plaintiffs plead the following:  (1) In ¶ 14, individual plaintiff  Hardison's nephew, who is *active* with the NC NAACP, presented evidence on behalf of his aunt to successfully defeat the challenge against her in Beaufort County; (2) in ¶ 65, an attorney *working with* the Moore County NAACP contacted a voter whose registration had been canceled in Moore County; (3) in ¶ 66,  the Moore County NACCP made a request for information to the Moore County BOE to which the Moore County BOE did not respond; (4) in ¶ 70, upon learning of the defendants' unlawful challenge and purge practices the organizational

11

plaintiffs took immediate steps to notify the State of *its* unlawful practices without any description of what these steps were or when they were taken; (5) in ¶ 71, on October 17, 2016, the President of the NC NCAAP sent a letter of protest to the defendant State BOE addressing the unlawful activities by all defendants; (6) in ¶ 74, on October 22, 2016, the President of the NC NCAAP sent a letter of concerns to the defendant State BOE Director of Elections addressing the unlawful activities by all defendants; and (7) in ¶ 76, on October 14, 2016, the President of the Moore County NAACP sent a letter of protest to the defendants Moore County BOE and its Director of Elections. Of these seven measures which organizational plaintiffs plead as what they did to counteract the unlawful actions of the defendants, one of the measures was undertaken in Beaufort County by a person associated with the NC NAACP; one of the measures was undertaken in Moore County by an attorney working with the Moore County NAACP; two were undertaken in Moore County by the Moore County NAACP's requesting information and giving a letter of protest to the Moore County BOE; one was undertaken by both the NC NAACP's and the Moore County NAACP's giving notice to the State BOE for *its* unlawful actions; and only two were undertaken as to all the defendants by the NC NAACP's giving letters of protest and concern to the State BOE and its Director of Elections. These measures are not a significant diversion of resources for any purpose. With respect to the Cumberland Defendants, the Moore County NAACP took no measures at all and the NC NAACP sent two letters to the State BOE protesting the actions of the defendants in all three counties.

12

The organizational defendants also allege that *all* of their members have been harmed and remain at risk of future harm by the challenge procedures and unlawful disenfranchisement, *Id*. ¶ 86, but they do not identify any of their members who have been challenged and/or removed. The NC NAACP reaches this incongruous conclusion by pleading that it has members who are registered voters in every county in North Carolina; therefore, some of the challenged and/or removed voters must be its members. The Moore County NAACP does not plead that it has members, or members that are registered voters, anywhere. It simply joins in with the NC NAACP in the allegations. It would appear that since the NC NAACP did identify one voter in Beaufort County who, though not one of its members, was challenged and removed, it could at least identify one of its members who were removed by each of the county Boards of Elections that it sued. It has not done so in its Complaint. Instead it and the Moore County NAACP have alleged their representational standing in general averments and conclusory allegations.

This is particularly apparent with the allegations commencing in ¶ 90 and continuing thereafter that the defendants' actions threatened to harm *all* of the organizational members, forced the organizational plaintiffs to take measures to protect the voting rights of their members and *all citizens*, and disenfranchised *members of the communities the organizational plaintiffs served* which deprived their members of rights. *Id*. These allegations did not even limit the allegations of harm and threatened harm to members or citizens and communities in the counties where the local Boards of Elections were sued. The organizational plaintiffs cannot rest the claims of its members on persons

13

other than its members; but by using this catch-all approach that their members are included in all voters, their allegations really do no more than just that.

The organizational plaintiffs also lack standing as to the claims on all their causes of actions against the Cumberland Defendants and the court has no subject matter jurisdiction as to these claims. All the claims of the organizational plaintiffs against the Cumberland Defendants must be dismissed.

I. B. <u>The plaintiffs have not pled any injury that is traceable to the actions of the defendant individual members of the local boards of elections or local directors of elections in their respective official capacities.</u>

N.C.G.S. § 163-85(b) is captioned, "Challenges Shall Be Made to the County Board of Elections." In N.C.G.S. § 163-86, all references to the process for noticing and conducting the hearings on challenges is to the board of elections. N.C.G.S. § 163-31 provides that a majority of the board shall constitute a quorum for the transaction of board business. N.C.G.S. § 163-90.2 requires, "[w]hen any challenge is sustained for any cause listed under G.S. § 163-85(c), the <u>board</u> shall cancel or correct the voter registration of the voter." (Emphasis added.) Under this statutory process, neither the individual board members nor the director of elections has any legal means to conduct any hearing on a challenge or to take any action with respect to the removal of a voter for a challenge. Any action of the director of elections to cancel the registration of a voter for whom a challenge has been sustained by the board is simply a ministerial act—the

14

cancellation itself can only be effected by the action of the board at a meeting where a quorum is present.

Because only the county board of elections has the statutory authority to conduct challenge hearings and cancel the registrations of voters for whom the board has upheld a challenge, none of the injury complained of by the plaintiffs is traceable to the actions of any of the individual county defendants in their respective official capacities. For this reason the plaintiffs do not have standing as to the individual county defendants in their respective official capacities and all claims against the individual county defendants in their official capacities must be dismissed.

II. <u>The claims of all the plaintiffs against all defendant county Boards of Elections and Directors of Elections became moot upon occurrence of the November 8, 2016, general election and the Court has no further subject matter jurisdiction as to these defendants.</u>

The doctrine of mootness is derived from the mandate of Article III of the Constitution that "federal courts may adjudicate only [those] disputes involving a 'case or controversy.' " *Williams v. Ozmint*, 716 F.3d 801, 808 (4th Cir. 2013). This mandate requires that all the plaintiffs in a federal lawsuit must "continue to have a 'particularized, concrete stake' in the outcome of the case through all stages of litigation." *Id*. At 808-09 (quoting *Lewis v. Cont' Bank Corp*., 494 U.S. 472,479, 110 S.Ct. 1249, 1254, 108 L.Ed.3d 400 (1990)). When a plaintiff has received "the relief he or she sought to obtain

15

through the claim," the federal court lacks the power to provide "effective relief." *Id.* at 809 (internal quotation marks omitted). With the Preliminary Injunction (Doc. 43) entered November 4, 2016, and the passage of the November 8, 2016, general election, the plaintiffs received all the relief they have requested from the county defendants. There is no further effective relief to be ordered as to these county defendants.

There is, however, a portion of the Preliminary Injunction that survives the November 8, 2016, general election and applies to the county defendants. It is the order enjoining defendants from canceling the registration of voters on challenge procedures based on change of residency under N.C.G.S. §§ 163-85 and 163-86 when the State has neither received written confirmation from the voter of a change in residency outside the county, nor complied with the NVRA's notice and two-election cycles waiting requirements; from using the challenge procedures to remove voters from the rolls based on change of residency in the 90 days before a Federal election; and from holding hearings or taking any action to process challenges filed in these circumstances. See Doc. 43, *Order Granting Preliminary Injunction*. This surviving portion of the Order, however, is mooted as to the counties by a separate surviving portion of the Order that orders defendant Strach, Director of Elections for the North Carolina State Board of Elections, to take all steps to ensure *statewide* compliance with the NVRA consistent with the Court's Order. See Doc. 43, *Order Granting Preliminary Injunction*. As the plaintiffs plead in ¶ 19 of their Complaint (Doc. 1), defendant Strach is the designated chief election official responsible for coordination of the State's responsibilities under the

16

NVRA. That official duty, together with the control given the State BOE over the county Boards of Elections, is why the portion of the Preliminary Injunction surviving the election is now moot as to the county defendants.

N.C.G.S. § 163-33 sets out the powers and duties of county boards of elections. Subsection (1) of this statute provides that the county boards of elections shall make and issue such rules, regulations, and instructions as are consistent with the rules, orders, and directives established by the State Board of Elections, as it may deem necessary for the guidance of elections officers and voters. The plaintiffs have not pled that the defendant county Boards of Elections violated the State challenge statutes. The plaintiffs' complaint is that the actions of the defendant county Boards of Elections in following the State challenge statutes violated the NVRA. The Court's Order that defendant Strach take all steps to ensure statewide compliance with the NVRA consistent with the Court's Order certainly falls within the purview of rules, orders, and directives established by the State Board of Elections for which the county Boards of Elections have the statutory obligation to follow. Thus, the State Director's continuing obligation to comply with the Court's Order will ensure that all the county boards of elections, including the defendant county boards, will comply with the Court's Order. The only particularized, concrete stake the plaintiffs have in this case after the county Boards took the actions ordered to be taken before and on Election Day, now lie against the State Board of Elections and the State Director of Elections.

This is further demonstrated by the statutory mechanism for resolving challenges to the State's election laws. The Court's Order contains provisions that directly conflict with certain provisions of the State challenge statutes. An example of this is the conflict between the order not to cancel the registration of voters within 90 days of a federal election and the provision in N.C.G.S. § 163-85(a) that no challenges shall be made after the twenty-fifth day before an election. N.C.G.S. § 163-22.2 provides that in the event any State election law is held unconstitutional or invalid by a State or federal court, the State Board of Elections, upon recommendation of the Attorney General, has the authority to enter into agreement with the courts until such time as the General Assembly convenes. Under this statutory mechanism, the ultimate resolution of any such challenge to a State election statute lies exclusively with the General Assembly. Under the State statutes, the defendant county Boards of Elections have no authority to do anything but follow the law as directed by the State Board of Elections.

The federal courts have recognized an exception to the mootness doctrine for conduct "capable of repetition, yet evading review." *Lux v. Judd*, 651 F3d 396, 401 (4th Cir. 2011). That may apply to elections-related disputes when "there is a reasonable expectation that the challenged provisions will be applied against the plaintiffs again during future election cycles." *Id*. (internal quotation marks omitted). This exception, however, applies only in exceptional situations. See *City of L.A. v. Lyons*, 461 U.S. 95, 109, 103 S.Ct. 1660, 75 L.Ed2d 675 (1983). "[A] party seeking to invoke this exception to the mootness doctrine bears the burden of showing its application." *Williams*, 716

18

F.3d at 810.  The plaintiffs have not alleged any facts that forecast a reasonable expectation that any of the defendants will violate the orders set out in the Preliminary Injunction.  Nor have they brought forward any allegations that any of the defendants failed to comply with the orders directed to the November 8, 2016, general election.  The plaintiffs' allegations do not establish the sort of exceptional situation necessary to apply the exception.

For these reasons, none of the plaintiffs have standing as to the defendant county boards of elections and directors of elections because the case or controversy between them has become moot by the occurrence of the general election and by the operation of the State law as to their claim for permanent relief.   The case must be dismissed in its entirety against the county boards of elections and directors of elections.

## Relief Requested

Wherefore, all the Cumberland Defendants request the Court to dismiss the plaintiffs' claims against them.

Submitted January 26, 2017.

/s/ *Rickey L. Moorefield*
Rickey L. Moorefield
N.C. State Bar No. 8914
Cumberland County Attorney
P.O. Box 1829
Fayetteville, NC 28302
Telephone: (910) 678-7762
Fax: (910) 678-7758
Email: rmoorefield@co.cumberland.nc.us
Attorney for Cumberland Defendants

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 26, 2017, I electronically filed the foregoing with the clerk of Court using the CM/ECF system which will send notification of such to all counsel of record in this matter.

January 26, 2017.

/s/ *Rickey L. Moorefield*
Rickey L. Moorefield
N.C. State Bar No. 8914
Cumberland County Attorney
P.O. Box 1829
Fayetteville, NC 28302
Telephone: (910) 678-7762
Fax: (910) 678-7758
Email: rmoorefield@co.cumberland.nc.us
Attorney for Cumberland Defendants