IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No. 1:16-cv-1274-LCB-JLW

| | |
|---|---|
| NORTH CAROLINA STATE CONFERENCE OF THE NAACP, *et al*. | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | )<br>) |
| NORTH CAROLINA STATE BOARD OF ELECTIONS, *et al.*, | )<br>)<br>) |
| Defendants. | )<br>) |

**Brief in Support of Moore County Defendants' Motions to Dismiss
Pursuant to Fed. R. Civ. P. 12(b)(1) for Mootness and Lack of Standing**

**NOW COME** the Defendants Moore County Board of Elections, Susan T. Adams, in her official capacity as Chairman of the Moore County Board of Elections, Carolyn M. McDermott, in her official capacity as Secretary of the Moore County Board of Elections, William R. Parke, in his official capacity as Member of the Moore County Board of Elections, and Glenda M. Clendenin, in her Official capacity as Director of the Moore County Board of Elections (collectively "the Moore County Defendants"), who submit this Brief in support of their Motion to Dismiss the Plaintiffs' Complaint in this matter. The Plaintiffs' claims against the Moore County Defendants should be dismissed because all relief requested in those claims have already been granted by this Court, and the allegedly wrongful actions by the Moore County Defendants cannot reasonably be expected to recur. Therefore, the Plaintiffs' claims as to the Moore County Defendants

1

and all defendant county Boards of Elections defendants are moot and should be dismissed. Additionally, the identified Plaintiffs do not have standing to bring this action against Moore County defendants or any county Boards of Elections defendants.

## NATURE OF THE MATTER BEFORE THE COURT

This matter is before the Court on the More County Defendants' Motion to Dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, arguing that Plaintiffs' claims as to these Defendants are moot and that the named plaintiffs lack standing to pursue relief, this Court lacks subject matter jurisdiction over this lawsuit as to these Defendants.

## STATEMENT OF FACTS

The Plaintiffs in this action are the North Carolina State Conference of the NAACP, the Moore County Branch of the NAACP, three named citizens and residents of Beaufort County, and a named citizen and resident of Moore County. The Defendants are the Boards of Elections, the members of the Boards of Elections in their respective official capacities, and the Directors of Elections in their official capacities for State of North Carolina and the counties of Beaufort, Cumberland and Moore. Compl. ¶¶ 8-37.

Plaintiffs allege that the actions of the Defendants in canceling the registrations of voters under the North Carolina voter challenge statutes, N.C.G.S. §§ 163-85 and 163-86, violate provisions of the National Voter Registration Act, the Voting Rights Act, 52 U.S.C. § 10301, the Equal Protection Clause, and 42 U.S.C. § 1983. Plaintiffs seek declaratory and injunctive relief to permanently enjoin the Defendants from following the

2

State statutes that allow any registered voter to challenge the registration of any other voter for change of residency, to reinstate all registrations canceled through the State's voter challenge statutes prior to the November 8, 2016, General Election, and attorney fees. Compl., *Prayer for Relief*.

The Plaintiffs allege that the Moore County Defendants, along with other County Boards of Elections in North Carolina, removed "voter registrations for changes in residence on the basis of single mailings returned as undeliverable – without compliance with the [National Voter Registration Act ("NVRA")]'s notice and two-cycle provisions." Compl. ¶ 3. In particular, the Plaintiffs complain that the Moore County Defendants followed North Carolina's Voter Challenge Statute, N.C.G.S. §§ 163-85 and -86 ("the Voter Challenge Statute"), to hear filed "challenges to approximately 400 registered voters in September and October 2016." Compl. ¶ 61,62. The Plaintiffs allege that hearing and allowing those challenges pursuant to N.C.G.S. §§ 163-85 and -86 solely on the basis of undelivered mail to the challenged voters' addresses is a violation of the NVRA. Compl. ¶ 3.

The Plaintiffs never alleged the Moore County Defendants, nor any other named County Defendants, improperly followed the Voter Challenge Statute, or the instructions of the North Carolina State Board of Elections regarding that statute. Plaintiffs assert that even properly following and using the Voter Challenge statute in the manner in which the Moore County Defendants did in this case, is a violation of the NVRA. See Compl. ¶ 69.

3

Plaintiffs also allege that the State Board of Elections is "charged with administering the election laws of the State of North Carolina [and] has the authority to advise county BOEs as to the proper methods for conducting primaries and elections and to compel county BOEs to observe the requirements of elections laws."  Compl. ¶ 16. Therefore, when the Plaintiffs protested "Defendants' unlawful voter challenge and purge practices" prior to filing suit, instead of addressing their concerns to the Moore County Defendants, they instead "took immediate steps to notify the State of its unlawful practices and to petition for immediate cessation of the unlawful practices and restoration of the challenged voters' registration status . . . ."  Compl. ¶ 70.

On October 17, 2016 and again October 22, 2016, the Rev. Dr. William J. Barber, II, North Carolina NAACP President, acknowledging the governing control over local BOEs, wrote the State Board of Elections protesting voter challenges and removal by local BOEs.  Dr. Barber requested the State Board issue a directive compelling local BOE's to cease such Challenge Hearings asserting they violated the NVRA.  In each instance the State Board responded that the challenge procedures comported with the requirements of the NVRA. Compl. ¶ 71-75

The Complaint further alleges that "on October 14, 2016, Moore County NAACP President O'Linda D. Watkins sent a letter to Moore BOE and its Director Glenda Clendenin, setting forth what the organization had learned about voter removals in Moore County and protesting that the removal of these voters from the voter rolls violated the NVRA as well as state law." Compl. ¶ 76  Notably, nowhere do the Plaintiffs' allege they

4

ever made any formal protest directly to the Moore Board of Elections until post Voter Challenge hearings, nor do they allege that the conduct of Moore County Defendants failed to follow and comport with the mandate of N.C.G.S. §§ 163-85. According to the Declaration of O'Linda D. Watkins, Document 7, at Decl. ¶ 17, Ms Watkins "did not have an opportunity to make public comment at the beginning of the October 14, 2016 hearing, but after the hearing, I submitted to Director Clendenin a letter to the CBOE…" Ms. O'Linda D. Watkins, on October 12, 2016, submitted a letter to the Director of the Moore Board of Elections which advised of the intent of the Moore County NAACP to attend Friday hearings scheduled for October 14, 2016, but fails to express any concerns as to compliance or noncompliance with the NVRA. Document 7, at Decl. ¶ 9

The Court entered a preliminary injunction on November 4, 2016, ordering the defendants to reinstate any registrations that had been canceled pursuant to the State's voter challenge statutes within 90 days of the November 8, 2016, general election, take all measures to ensure that any challenged voters were restored to their status prior to being challenged so they could vote on November 8, 2016, and in future elections, prohibit any same day challenges to voters if they appeared to vote in person on November 8, 2016, not process challenges or hold hearings pursuant to N.C.G.S. § 163-85 and 163-86 based on change of residency, count all provisional or challenged ballots cast by any challenged voter, provide absentee ballots to any challenged voters who had requested and been denied an absentee ballot and count such ballots, and count any absentee ballot already cast by any challenged voter the same as if the voter had the same

5

registration status as before being challenged. See Doc. 43, Order Granting Preliminary Injunction.

The Moore County Board of Elections and the Moore County Director of Elections fully complied with this order. Additionally, the State Board of Elections and the Executive Director of the State Board of Elections, Kimberly Westbrook Strach, on November 4, 2016 submitted Numbered Memo 2016-23, a directive to Beaufort, Cumberland and Moore County Boards of Elections, as well as all County Boards of Elections, advising as to the Court's Order and directing all Counties to comply.

## QUESTIONS PRESENTED

Because the Moore County Board County Board of Elections is required to follow all directives of the North Carolina State Board of Elections, does the relief granted by this Court's preliminary injunction and the conclusion of the November 8, 2016 General Election render the Plaintiffs' remaining claims against the Moore County Defendants moot? Do the identified individual plaintiffs and the Organizational Plaintiffs have standing to pursue relief as to named Defendants?

## ARGUMENT

I. <u>The claims of all the Plaintiffs against all Defendant county Boards of Elections and Directors of Elections became moot upon entry of the Preliminary Injunction November 4, 2016 and occurrence of the November 8, 2016, general election, and the Court has no further subject matter jurisdiction as to these Defendants.</u>

6

The Moore County Defendants are no longer proper parties to this action because their presence as Defendants is not required to decide the Plaintiffs' claims regarding the lawfulness of N.C.G.S. §163-85 and §163-86.  Further, because the North Carolina State Board of Elections' control over the Moore County Defendants renders it impossible for the Moore County Defendants to take any action without the direction and consent of the State Board, the challenge procedure forbidden by the Order Granting Preliminary Injunction cannot "reasonably be expected to recur" even if the Moore County Defendants are no longer parties to this lawsuit.

Federal courts are courts of limited jurisdiction.  Under Article III's case or controversy requirement, federal courts may only decide "real and substantial controvers[ies]." North Carolina v. Rice, 404 U.S. 244, 246 (1971) (quoting Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240–41 (1937)).  Federal courts have no jurisdiction over moot cases, see Worth v. Jackson, 451 F.3d 854, 857 (D.C. Cir. 2006), and such cases must be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. Deposit Guar. Nat'l Bank v. Roper, 445 U.S. 326, 345–46 (1980) ("a federal court retains no jurisdiction when the parties substantive claims become moot . . . .").

The doctrine of mootness is derived from the mandate of Article III of the Constitution that "federal courts may adjudicate only [those] disputes involving a 'case or controversy.' " *Williams v. Ozmint*, 716 F.3d 801, 808 (4th Cir. 2013).  This mandate requires that all the plaintiffs in a federal lawsuit must "continue to have a 'particularized,

concrete stake' in the outcome of the case through all stages of litigation." *Id*. At 808-09 (quoting *Lewis v. Cont' Bank Corp*., 494 U.S. 472, 479, 110 S.Ct. 1249, 1254, 108 L.Ed.3d 400 (1990)). When a plaintiff has received "the relief he or she sought to obtain through the claim," the federal court lacks the power to provide "effective relief." *Id.* at 809 (internal quotation marks omitted). With the Preliminary Injunction entered November 4, 2016, and the occurrence of the November 8, 2016, general election, the plaintiffs received all the relief they have requested from the county Defendants. There is no further effective relief to be ordered as to these county Defendants. The only relief left for consideration by the Court seeks to change an interpretation of North Carolina election laws which is not within the control of the various County Defendants and rest exclusively with the State of North Carolina, either the General Assembly or the North Carolina State Board of Elections.

Under Rule 12(b)(1), the plaintiff bears the burden of establishing subject matter jurisdiction. See Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982); Brady Campaign to Prevent Gun Violence v. Ashcroft, 339 F. Supp. 2d 68, 72 (D.D.C. 2004). Under Rule 12(b)(1), the Court may dispose of the motion on the basis of the complaint alone or it may consider materials beyond the pleadings "as it deems appropriate to resolve the question whether it has jurisdiction to hear the case." Scolaro v. D.C. Bd. of Elections & Ethics, 104 F. Supp. 2d 18, 22 (D.D.C. 2000). A Rule 12(b)(1) motion may assert what is termed a facial jurisdictional challenge (i.e., one based solely on the allegations presented in the complaint) or a factual jurisdictional challenge (i.e., one based on

8

evidence that goes beyond the complaint's allegations). See Holt v. United States, 46 F.3d 1000, 1002 (10th Cir.1995). The Moore County Defendants join the other County Defendants and assert the latter. "[W]hen a defendant challenges subject matter jurisdiction via a Rule 12(b)(1) motion to dismiss, the district court may regard the pleadings as . . . evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Velasco v. Gov't of Indon., 370 F.3d 392, 398 (4th Cir. 2004). Nevertheless, when presented with a factual challenge to jurisdiction, the Court must resolve all factual disputes in favor of plaintiffs as the nonmoving party. Dreier v. United States, 106 F.3d 844, 847 (9th Cir. 1996), as amended (Feb. 4, 1997).

"Constitutional mootness is grounded in the requirement that any case or dispute that is presented to a federal court be definite, concrete, and amenable to specific relief." Jordan v. Sosa, 654 F.3d 1012, 1024 (10th Cir. 2011) (internal quotation marks omitted); see also North Carolina v. Rice, 303 U.S. 244, 246 (1971) (a suit "must be definite and concrete, touching the legal relations of parties having adverse legal interests"). This aspect of mootness focuses on whether "a definite controversy exists throughout the litigation and whether conclusive relief may still be conferred by the court despite the lapse of time and any change of circumstances that may have occurred since the commencement of the action." Jordan, 654 F.3d at 1024; see also Pashby v. Delia, 709 F.3d 307, 316 (4th Cir. 2013) ("even if a plaintiff has standing when he or she files a complaint, subsequent events can moot the claim."). It derives from Article III's case or

9

controversy rule, which requires that "an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." Arizonans for Official English v. Arizona, 520 U.S. 43, 67 (1997).

Courts frequently have described constitutional mootness as "the doctrine of standing set in a time frame." Arizonans for Official English, 520 U.S. at 68 n.22; see also United States Parole Comm'n v. Geraghty, 445 U.S. 388, 397 (1980) ("The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)."). Although both the standing and mootness requirements present threshold jurisdictional issues, see In re Yellow Cab Coop. Ass'n, 132 F.3d 591, 594 (10th Cir. 1997), the doctrines impose separate burdens of proof. The "plaintiff bears the burden of demonstrating standing, [while] the defendant bears the burden of proving mootness." WildEarth Guardians v. Pub. Serv. Co. of Colo., 690 F.3d 1174, 1183 (10th Cir. 2012).

There exist precedents from North Carolina Federal Courts, including this Court, that holds County Boards of Election are not proper parties to lawsuits which seek to change the interpretation of North Carolina election laws. Abating challenged activity pursuant to a court order moots a plaintiff's claims only if it is "'absolutely clear,' absent the injunction, 'that the allegedly wrongful behavior could not reasonably be expected to recur.'" Vitek v. Jones, 445 U.S. 480, 487 (1980) (quoting United States v. Concentrated Phosphate Exp. Ass'n, 393 U.S. 199, 203 (1968)). However, a finding of mootness is appropriate "when there is no reasonable expectation that the voluntarily ceased activity

10

will, in fact, actually recur after the termination of the suit." Troiano v. Supervisor of Elections, 382 F.3d 1276, 1278 (11th Cir. 2004) (citing United States v. W.T. Grant Co., 345 U.S. 629, 633 (1953)).

The federal courts have recognized an exception to the mootness doctrine for conduct "capable of repetition, yet evading review." *Lux v. Judd*, 651 F3d 396, 401 (4th Cir. 2011). That may apply to elections-related disputes when "there is a reasonable expectation that the challenged provisions will be applied against the plaintiffs again during future election cycles." *Id*. (internal quotation marks omitted). The Plaintiffs have not alleged any facts that forecast a reasonable expectation that any of the defendants will violate the orders set out in the Preliminary Injunction. Nor have they brought forward any allegations that any of the defendants failed to comply with the orders directed to the November 8, 2016, general election. The Plaintiffs' allegations do not establish the sort of exceptional situation necessary to apply the exception.

Ordinarily, "[c]ompliance with the provisions of a preliminary injunction . . . does not render moot [plaintiffs'] underlying claims" because "[i]f the injunction is dissolved without a decision on the merits, there is nothing to keep defendants from resuming the activity that had been restrained by the preliminary injunction." LaPeer Cnty. Med. Care Facility v. Mich., No. 1:91–CV–333, 1992 WL 220917, at *7 (W.D. Mich. Feb. 4, 1992). However, this case is an exception to that general rule,[1] because here the Court's

---

[1] Further, regarding voluntary cessation of disputed activity, courts have held that "when the defendant is not a private citizen but a government actor, there is a rebuttable presumption that the objectionable behavior will not recur." Troiano, 382 F.3d at 1283

11

preliminary injunction is not the only thing which is keeping the Moore County Defendants and other named County Defendants "from resuming the activity that had been restrained by the preliminary injunction."

The crucial distinguishing fact in this matter is the presence of the North Carolina State Board of Elections as a defendant who is subject to this Court's Order for Injunctive Relief, along with any future Order or Judgment yet to be entered. "In general, the county boards are prohibited from acting 'inconsistent with law or the rules established by the State Board of Elections.'" Republican Party of N.C. v. Martin, 682 F. Supp. 834, 835 (M.D.N.C. 1988) (citing N.C. GEN. STAT. § 163-33). The North Carolina elections statutes give the State Board of Elections broad authority to institute "reasonable rules and regulations with respect to the conduct of primaries and elections" which must be followed by the County Boards. N.C. GEN. STAT. § 163-22. If any County Board were to employ election procedures in contradiction to those directed by the State Board, the State Board "shall compel observance of the requirements of the election laws by county boards of elections . . ." N.C. GEN. STAT. § 163-22(c); see also Appeal of Judicial Review by Republican Candidates for Election in Clay Cnty., 45 N.C. App. 556, 559–60, 264 S.E.2d 338, 340 (1980) ("The Legislature has mandated that the State Board of Elections shall compel observance of the election laws.").

---

(citing Coral Springs St. Sys., Inc. v. City of Sunrise, 371 F.3d 1320, 1328–29 (11th Cir. 2004) ("[G]overnmental entities and officials have been given considerably more leeway than private parties in the presumption that they are unlikely to resume illegal activities.") and Ragsdale v. Turnock, 841 F.2d 1358, 1365 (7th Cir. 1988) ("[C]essation of the allegedly illegal conduct by government officials has been treated with more solicitude by the courts than similar action by private parties.")).

12

Because of this direct control by the State Board of Elections over County Boards of Elections, when federal courts in this State and in this District have considered the question of whether County Boards of Election are amenable to suit when the only legal questions at issue are those controlled by the State Board of Elections, the unanimous opinion has been that they are not. In Brown v. N.C. State Bd. of Elections, 394 F. Supp. 359, 360 (W.D.N.C. 1975), a resident of Anson County who wanted to file to run for Congress sued the North Carolina State Board of Election and the Anson County Board of Election over the statutory requirement in N.C.G.S. § 163-107 that all candidates for office pay a filing fee. Brown, 394 F. Supp. at 360. The Court dismissed the Anson County Board of Elections as a defendant in the case, holding that "the state statute requires that candidates for Congress file with the State Board of Elections and the County Board has no authority to accept or reject such applications." Id.

Similarly, in Republican Party of N.C. v. Martin, Plaintiffs filed suit against the State Board of Elections and several County Boards challenging a new method of electing North Carolina Superior Court Judges. 682 F. Supp. at 835. The County Boards moved to dismiss, arguing that "the suit against the county boards of elections is superfluous since they exercise virtually no discretion in the implementation of state law and act only in a ministerial capacity." Id. This Court agreed that the County Boards were not proper parties to the lawsuit, because "county boards have no authority to act in a manner inconsistent with the statute governing election of superior court judges. They

13

are merely acting in a ministerial capacity and can only carry out duties as detailed by statute and the State Board." Id.

To summarize both cases, because the County Boards of Election were "merely acting in a ministerial capacity and can only carry out duties as detailed by statute and the State Board," the Courts found that it was not proper for them to remain parties to lawsuits challenging the validity and enforceability of North Carolina election laws. The only particularized, concrete stake the plaintiffs have in this case after the county Boards took the actions ordered to be taken before and on Election Day, now lie against the State Board of Elections and the State Director of Elections.

This is further demonstrated by the statutory mechanism for resolving challenges to the State's election laws. The Court's Order contains provisions that directly conflict with certain provisions of the State challenge statutes. N.C.G.S. § 163-22.2 provides that in the event any State election law is held unconstitutional or invalid by a State or federal court, the State Board of Elections, upon recommendation of the Attorney General, has the authority to enter into agreement with the courts until such time as the General Assembly convenes. Under this statutory mechanism, the ultimate resolution of any such challenge to a State election statute lies exclusively with the General Assembly. Under the State statutes, the defendant county Boards of Elections have no authority to do anything but follow the law as directed by the State Board of Elections.

In this lawsuit, the Moore County Defendants could not even voluntarily grant the Plaintiffs the remaining declaratory relief they seek, because they do not control how the

14

Voter Challenge Statutes – or any other elections laws – are implemented. Therefore, they are clearly not necessary parties to the declaratory relief sought by the Plaintiffs. The North Carolina State Board of Elections will have the legal duty – as imposed by this Court and by North Carolina statute – to instruct and direct the Moore County Defendants – along with every single other County Board of Election – to follow any Order entered by this Court, "there is no reasonable expectation" that the activity of the Moore County Defendants enjoined by this Court by will re-commence.

The Moore County Defendants have already complied with the Court's Injunction Order and the resultant directives of the State Board of Elections. Per the Affidavit of Moore County Board of Elections Director Glenda Clendenin, attached as Exhibit A to these Defendants' Motion to Dismiss, the Moore County Defendants' cessation of the disputed challenge procedure pursuant to this Court's Injunction, and compliance with the directive issued by the State Board of Elections following the Court's order renders assures future compliance and renders the Plaintiffs' claims moot.

II. A. <u>The plaintiffs do not have standing to bring this action against the Moore County defendants and all causes of action against the Moore County Defendants must be dismissed.</u>

Standing is a threshold question in every case before a federal court and it determines the power of the court to entertain the suit. *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 2204, 45 L.Ed.2d 343 (1975). A federal court must ask "whether the constitutional or statutory provision on which the claim rests properly can be

15

Case 1:16-cv-01274-LCB-JLW   Document 62   Filed 01/26/17   Page 15 of 20

understood as granting persons in the plaintiff's position a right to judicial relief." *Warth v. Seldin*, at 500, 95 S.Ct. at 2206, (footnote omitted). The Supreme Court defined the constitutional requirements of standing in *Allen v. Wright*, 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984): "A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." A plaintiff must also allege that he has suffered a particularized injury; injury to the public is not sufficient to establish standing. See *Friends of the Earth, Inc., v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000).

In addition to the constitutional requirements, there are also prudential rules of standing that have served to limit the role of the courts in resolving public disputes. *Warth v. Seldin*, at 500, 95 S.Ct. at 2206. These "judicially self-imposed limits on the exercise of federal jurisdiction" include such prudential rules as the "prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed to the representative branches, and the requirement that a plaintiff's complaint fall with the zone of interests protected by the law invoked." *Allen v. Wright*, at 751, 104 S.Ct. at 3324.

An association may have standing in its own right to seek judicial relief from injury to itself. Even in the absence of injury to itself, it may have standing solely as the representative of its members. *Ward v. Seldin*, at 515, 95 S.Ct. at 2213, citing *National Motor Freight Assn. v. United States*, 372 U.S. 246 (1963). Such representational

16

standing, however, does not eliminate the constitutional requirement of a "case or controversy." The association must allege that its members, or any of them, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members brought suit. If this is established and if the nature of the claim and of the relief sought does not make the individual participation of each injured party indispensable to proper resolution of the cause, the association may be an appropriate representative of its members *Ward v. Seldin*, at 511, 95 S.Ct. at 2211-2212, citing *Sierra Club v. Morton*, 405 U.S. 727, 734-741 (1972).

The standard of review for determining standing encompasses two prongs. A defendant may challenge a plaintiff's standing by asserting that the plaintiff has failed to allege sufficient facts to show that is has standing, or that the plaintiff's factual allegations in support of its standing are untrue. *Adams v. Bain*, 697 F.2d 1213, 1219, (4th Cir. 1982). If a defendant's challenge is based on insufficient allegations, the court must accept all material allegations of the complaint as true and construe the complaint in favor of the plaintiff.

No conduct of the Moore County Defendants is traceable to the individual plaintiffs in this case. The only individual named plaintiff with any connection to Moore County and Moore County Defendants is James Michael Brower. Compl. ¶ 13 The named plaintiff James Michael Brower was a former member of the organizational plaintiff and "is currently renewing his membership." Additionally, the Plaintiff James Michael Brower was a challenged voter who subsequently responded to request of the

17

Moore Board of Elections and his challenge was dismissed and his voter's status continuing. The NVRA does not prohibit voter challenges. For these reasons, the named Plaintiffs lack standing as to the claims on all their causes of actions against the Moore County Defendants and the court has no subject matter jurisdiction as to these claims.

The two organizational Plaintiffs have intertwined their separate claims against all the Defendants to such an extent that it is necessary to closely examine their Complaint to distinguish the claims of each against the Moore County defendants, however the organizational Plaintiffs have failed to identify any harm to the Plaintiffs or even establish that a named individual plaintiff was a member or suffered any prohibited act.

They allege in Paragraph 81, "on information and belief," that members of both the North Carolina NAACP and Moore County NAACP, such as individual Plaintiff Brower, have been challenged or purged or are at risk of being so challenged and denied their right to vote in future elections.

The organizational Plaintiffs allege in Paragraphs 99 – 103 of their first cause of action for violation of the NVRA that the defendants' unlawful removals disenfranchised "members of the communities the organizational plaintiffs serve, depriving members of those organizations of their rights under the NVRA."

In their third cause of action for violation of the Voting Rights Act, the organizational Plaintiffs allege in Paragraphs 116-120 that Defendants' unlawful voter challenge and purge practices have a disparate impact upon African American voters and result in fewer opportunities for African Americans to participate in the political process

18

than members of other groups. They further allege the Defendants' unlawful voter challenge and purge practices interact with social and historical conditions to cause a disparity between electoral opportunities of African American and other voters. They describe racial discrimination and its impact on voting in North Carolina generically without pleading any facts to demonstrate this allegation as to any of the voters challenged or removed in Moore County. In Paragraph 119, the organizational Plaintiffs again plead that Defendants' unlawful removals disenfranchised "members of the communities the organizational plaintiffs serve, depriving members of those organizations of their rights under the Voting Rights Act." They do not plead any facts to substantiate this conclusory allegation as to any of the Moore County Defendants.

In their fourth cause of action for violation of the Equal Protection Clause and 42 U.S.C. § 1983, in Paragraph 125, the organizational Plaintiffs allege that the Defendants' actions violate the Equal Protection Clause by causing a severe and arbitrary denial of the fundamental right of North Carolina voters including organizational Plaintiffs' members. Again, these are conclusory allegations, are not substantiated by any pleadings of facts related to the challenges and removals of any voters in Moore County, and fail to identify any organizational member affected by the conduct of Moore County Defendants.

## CONCLUSION

The entry of the Preliminary Injunction Order and occurrence of the November 8, 2016 general election makes all Plaintiffs' claims as to Moore County Defendants moot. The court lacks subject matter jurisdiction and the case must be dismissed. Neither the

19

identified individual Plaintiffs, nor the organizational Plaintiffs have standing as to the Moore County Defendants and their claims should be dismissed.

Respectfully submitted, this the 26th day of January, 2017.

>BY: /s/ R. Ward Medlin
>R. WARD MEDLIN
>NC Bar # 13817
>Moore County Attorney's Office
>P.O. Box 905
>Carthage, NC 28327
>T: (910) 947-4014
>F: (910) 947-1049
>wmedlin@moorecountync.gov
>*Attorney for Moore County Defendants*

>BY: /s/ Misty Randall Leland
>MISTY RANDALL LELAND
>NC Bar # 28320
>Moore County Attorney's Office
>P.O. Box 905
>Carthage, NC 28327
>T: (910) 947-4012
>F: (910) 947-3612
>mistyleland@moorecountync.gov
>*Attorney for Defendant Moore County*

## CERTIFICATE OF SERVICE

I hereby certify that on January 26, 2017, I electronically filed the foregoing with the clerk of Court using the CM/ECF system which will send notification of such to all counsel of record in this matter.

This the 26th day of January, 2017.

>/s/ Misty Randall Leland
>MISTY RANDALL LELAND
>NC Bar # 28320
>Moore County Attorney's Office