IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No. 1:16-cv-1274-LCB-JLW

| | |
|---|---|
| N.C. STATE CONFERENCE OF THE NAACP, *et al.,* | ) |
| | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| N.C. STATE BD. OF ELECTIONS, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

## REPLY BRIEF IN SUPPORT OF THE
## CUMBERLAND DEFENDANTS' MOTION TO DISMISS

**NOW COME** defendants the CUMBERLAND COUNTY BOARD OF

ELECTIONS; JAMES H. BAKER, in his former official capacity as its Chairperson;

ROBERT KEVIN HIGHT, in his official Capacity as its Secretary; HARVEY RAYNOR

III, in his official capacity as one of its members; and TERRI ROBERTSON, in her

official capacity as its Director of Elections, collectively referred to as "the Cumberland

Defendants," by and through their undersigned counsel, and submit this Reply Brief in

Support of their Motion to Dismiss.

I.      **Whether the Cumberland Defendants were "necessary and proper parties"
        under Rule 20 at the beginning of this litigation is irrelevant to the resolution
        of the Cumberland Defendants' present Motion to Dismiss.**

The Cumberland Defendants concur with and join in the arguments advanced by

the Beaufort and Moore Defendants that the issue raised by the county defendants'

motions to dismiss is not whether the county defendants were proper parties under Rule

1

20 when the action was commenced; but instead, that events subsequent to the commencement of the action have rendered Plaintiffs' claims moot as to the county defendants. See Moore County Defendants' Reply Brief (Doc70), and Beaufort County Defendants' Reply Brief (Doc 71).

## II. Plaintiffs can no longer point to any "connection" between the Cumberland Defendants and the implementation of the challenged statutes.

The Cumberland Defendants concur with and join in the arguments advanced by the Beaufort and Moore Defendants that the there is no longer a connection between the county defendants and the implementation of the challenged statutes. *Id*. This connection is absolutely severed by the November 4, 2016, directive of State Director Strach to all North Carolina counties, identified as Numbered Memo 2016-23. See Exhibit A.

Numbered Memo 2016-23 addresses the defendant county boards of elections and all other county boards of elections separately. The memo directs that "[n]o future residency challenges may be heard under G.S. §§ 163-85 and 163-86 prior to Election Day." See Exhibit A, Paragraph 4. Regardless of how the State Defendants now interpret the meaning of the quoted language, by its clear terms the quoted language has no meaning unless it is applied to Election Days after 2016. A "future" residency challenge means one made after the date of the directive; however; G.S. § 163-85(a) prohibits such challenges being made after the twenty-fifth day before each primary, general, or special election. Thus, no residency challenge could have been made between

2

the date of the directive and Election Day 2016 even if the quoted language was not included.

This quoted language is also included in the portion of the directive addressed to all other county boards of elections with the additional language, "[t]his does not include Election Day challenges." This additional language even further enforces that this directive is addressed to Election Days after 2016 because the statutory process for Election Day challenges is quite different than the process in G.S. § 163-86 for challenges made more than twenty-five days before Election Day. G.S. § 163-87 is the statute that covers challenges made on Election Day, and although it does list the reasons for making a challenge based on residency as are contained in G.S. § 163-85(c), it does not contain the provision for prima facie evidence being established by a returned envelope as is contained in G.S. § 163-85(e). The process for conducting an Election Day challenge is set out in G.S. § 163-88. That statute specifically provides that a letter or postal card mailed by returnable mail and returned by the United States Postal Service shall <u>not</u> be admissible evidence in an Election Day challenge. The prima facie evidence provision is the single-most aspect of the North Carolina challenge statutes that has been complained of by the Plaintiffs and questioned by this Court at the hearing on the preliminary injunction.

G.S. § 163-82.2 makes Defendant Strach, as Executive Director of the State Board of Elections, the "Chief State Election Official" of North Carolina for purposes of The National Voter Registration Act, with the responsibility for coordination of State responsibilities under the Act. G.S. § 163-82.24 establishes one of the chief State

3

responsibilities under the Act to be a uniform program of voter list maintenance which shall comply with the provisions of the Act. G.S. § 163-82.24(d) provides that for change of address, county boards of elections shall conduct a systematic program to remove registered voters who have moved out of the county and to update the registration of persons who have moved within the county. G.S. § 163-82.24(e) provides that the State Board may provide list maintenance under this statute with the same authority as a county board of elections. The residency challenge process under G.S. §§ 163-85 and 163-86 clearly does not comply with the systematic list maintenance requirements of the Act. Nor does it comply with the requirement of G.S. § 163-82.1(c) that all voter registrations shall be permanent until one of the three listed reasons for removal occurred, each of which is contained in the Act. But until Defendant Strach issued Numbered Memo 2016-23, the guidance of the State Defendants was that individual challenges lodged by private citizens were not part of the State's systematic list maintenance program and were not barred by the Act. See Exhibit B, Letter from Director Strach to Rev. Dr. Barber, dated October 27, 2016.

The only substantive issue remaining in this case is whether the provisions for challenges based on residency contained in G.S. §§ 163-85 and 163-86 violate the National Voter Registration Act. It is an issue that must be decided as a matter of law, not as a matter of fact. It is a state-wide issue, not just an issue in three counties. All defendants complied with the preliminary injunction entered by this Court with respect to the 2016 election. If any voters who were removed pursuant to these challenges prior to August 10 voted or attempted to vote in the 2016 election, they were made aware of their

4

registration status and either have re-registered or have had the opportunity to do so. Neither Plaintiffs nor the State Defendants have claimed that any of the county defendants violated the provisions of these State statutes by accepting or hearing any of these voter challenges. Even if Plaintiffs or the State Defendants did allege such violations, that it would not address the issue of whether an individual challenge based on residency under these statutes violates the National Voter Registration Act.

With Numbered Memo 2016-23, Director Strach, as the designated "Chief Election Official" for North Carolina, has directed the county defendants and all other county boards of elections that no future residency challenges under G.S. §§ 163-85 and 163-86 may be heard before Election Day. Those are the only State challenge statutes of which Plaintiffs have complained. Any relief Plaintiffs sought for those voters removed before August 10, 2016, for the 2016 general election can no longer be provided. Plaintiffs' claims have indeed become moot by these two events and the future remedies sought by Plaintiffs lie entirely within the purview and statutory control of the State Defendants, which includes the duty of the State Board under G.S. § 163-22(i) to make recommendations to the Governor and legislature relative to the conduct and administration of the elections in the State as it may deem advisable.

**III.  The prospect of a potential award of attorneys' fees is not an adequate reason for the Cumberland Defendants to remain in this lawsuit.**

The Cumberland Defendants concur with and join in the arguments advanced by the Beaufort Defendants that the prospect of attorneys' fees is not an

5

adequate reason for the county defendants to remain in this lawsuit.  See Beaufort County

Defendants' Reply Brief (Doc 71).

**IV.     The State Board obviously misreads the breadth of the Injunction Order entered by this Court.**

The Cumberland Defendants concur with and join in the arguments

advanced by the Beaufort and Moore Defendants that State Board misreads the breadth of

the preliminary injunction entered by this Court.   See Moore County Defendants' Reply

Brief (Doc70), and Beaufort County Defendants' Reply Brief (Doc 71).  The Cumberland

Defendants have fully complied with the preliminary injunction entered by this Court and

with the directives issued by Defendant Strach in Numbered Memo 2016-23.   The

Cumberland Defendants read the language in Numbered Memo 2016-23 as being

consistent with the preliminary injunction entered by this Court, the National Voter

Registration Act, and G.S. § 163-82.1(c).

**V.      That a party might be helpful to the discovery process is no basis for that party to remain a defendant in a lawsuit.**

The Cumberland Defendants concur with and join in the arguments advanced by

the Beaufort and Moore Defendants that a party might be helpful to the discovery process

is no basis for that party to remain a defendant in a lawsuit.   See Moore County

Defendants' Reply Brief (Doc70) and Beaufort County Defendants' Reply Brief (Doc

71).   Further, the Cumberland Defendants fail to understand how the State Defendants'

concern for discovery related to the actions of the defendant counties in accepting and

hearing these residency-based challenges prior to November 4, 2016, bears on the issue

of whether these residency-based challenges violate the National Voter Registration Act.

6

**VI.     The North Carolina NAACP does not have standing to assert claims for itself or its members against the Cumberland Defendants.**

The Cumberland Defendants concur with and join in the arguments advanced by the Moore Defendants that the North Carolina NAACP does not have standing to assert claims for itself or its members. See Moore County Defendants' Reply Brief (Doc70). The Cumberland Defendants make further arguments on this issue as follows:

**A.     As To Plaintiff NC NAACP's Allegations That It Has Established Organizational Standing:**

Plaintiff NC NAACP states that it only learned of the mass challenges in Moore County around October 8, 2016, and soon thereafter of similar challenges in Beaufort and Cumberland Counties. (Plaintiffs' Brief in Opposition, Doc 69, p. 20). Rev. Barber states in his supplemental declaration that NC NAACP staff and volunteers assisted voters from Cumberland County who were concerned that they may have been wrongfully removed for the voter registration rolls by providing them with information about the challenges. (Doc 69-1, p. 2). Plaintiffs have not alleged where or how they obtained the information that they provided to these voters. The plaintiffs filed this suit October 31, 2016, and   Plaintiffs have not alleged that any actions were taken by any of the defendants after the suit was filed. Whatever time the NACCP staff and volunteers spent to provide this information to the voters from Cumberland took place in this period of less than three weeks. Plaintiffs have not alleged when this diversion of resources commenced, other than some time after October 8, 2016, nor any facts related to the number of voters to whom NACCP staff provided information. Since Plaintiffs only allege that information was provided to voters from Cumberland, the number of those

7

voters could be as few as two. These allegations simply do not rise to the level of resource diversion that establishes organizational standing.

**B.     As To Plaintiff NC NAACP's Allegations That It Has Established Associational Standing to Assert Claims on Behalf of Its Members:**

Plaintiff NAACP argues that it has associational standing to assert claims on behalf of its members because it has "identified at least one NC NAACP member, Plaintiff Brower, who was injured by Defendants' processing of the mass challenges in the weeks before the 2016 general election." (Plaintiffs' Brief in Opposition, Doc 69, p. 25).  In the Complaint, Plaintiff Brower is described as being a Moore County resident who had been a member of the Moore County NAACP within the last five years and currently renewing his membership.  (Doc 1, p.7).  In his supplemental declaration, Plaintiff Brower now describes himself as having been a member of the Moore County NAACP until his membership lapsed recently and that he had submitted an application to restart his membership around January, 2017.  (Doc 69-2, p. 2).  With the different language in the complaint and the supplemental declaration, it is now not clear if Plaintiff Brower was a member of the Moore County NAACP at the time the lawsuit was filed.  It is still clear, however, that his complaint, "that his sacred right to vote had been placed in peril," was not occasioned by any action of the Cumberland Defendants. (Doc. 69, p. 27).

Plaintiff NC NAACP attempts to bolster its argument that it has established associational standing because it "has plausibly alleged that all of its members are likely to suffer future harm if Defendant's unlawful conduct is not enjoined," (Doc 69, p. 27); however; this assertion is only plausible if the residency-based challenge process

contained in the State statutes violates the National Voter Registration Act, because that is what would make the Defendant's actions unlawful. The action of any single county board of elections in following the guidance of the State Defendants, that individual challenges based on residency are not barred by the Act, cannot harm all of the NC NAACP's members.  It is only the guidance given by the State Defendants to all county boards of elections that can cause that perceived harm.  That is why the associational standing of Plaintiff NC NAACO lies only with the State Defendants in this case and the county defendants should be dismissed.

## VII.   Conclusion

Plaintiffs argue, "[T]hat the various defendants cannot even agree on the effect of the preliminary injunction and the meaning of Numbered Memo 2016-23 highlights the importance of retaining all parties in the litigation, so that they will all be bound by any further order of the Court." (Doc 68, p. 17).  This is really the argument why all the county defendants should be dismissed.  For the three county defendants, as well as the State's other 97 county boards of elections, will be bound by any order imposed on the State Defendants as to the validity of these residency-based challenge statutes.  The duties of the State Defendants to coordinate the State responsibilities under the National Voter Registration Act, to adopt a uniform program of list maintenance under the Act, and to train and certify local election officials in election law and procedure that are set out in Article 7A, Registration of Voters, of Chapter 163 of the North Carolina General Statutes compel the State Defendants to that end.  For the reasons stated herein, the Plaintiffs' Complaint should be dismissed as to all the county defendants.

9

Submitted May 12, 2017.

/s/ *Rickey L. Moorefield*
Rickey L. Moorefield
N.C. State Bar No. 8914
Cumberland County Attorney
P.O. Box 1829
Fayetteville, NC 28302
Telephone: (910) 678-7762
Fax: (910) 678-7758
Email: rmoorefield@co.cumberland.nc.us
Attorney for Cumberland Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on May 12, 2017, I electronically filed the foregoing with the

Clerk of Court using the CM/ECF system which will send notification of such to all

counsel of record in this matter.

May 12, 2017.

/s/ *Rickey L. Moorefield*
Rickey L. Moorefield
N.C. State Bar No. 8914
Cumberland County Attorney
P.O. Box 1829
Fayetteville, NC 28302
Telephone: (910) 678-7762
Fax: (910) 678-7758
Email: rmoorefield@co.cumberland.nc.us
Attorney for Cumberland Defendants

10