IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

NORTH CAROLINA STATE CONFERENCE      )
OF THE NAACP, MOORE COUNTY BRANCH     )
OF THE NAACP, JAMES EDWARD ARTHUR,    )
SR., JAMES MICHAEL BROWER, GRACE      )
BELL HARDISON, and JAMES L. COX,      )
                                      )
                Plaintiffs,           )
                                      )
     v.                               )
                                      )          1:16cv1274
                                      )
THE NORTH CAROLINA STATE BOARD        )
OF ELECTIONS,[1] A. GRANT WHITNEY,    )
JR., in his official capacity as      )
Chairman of the State Board of        )
Elections, RHONDA K. AMOROSO, in      )
her official capacity as Secretary    )
of the State Board of Elections,      )
KIM WESTBROOK STRACH, in her          )
official capacity as Executive        )
Director of the State Board of        )
Elections, JOSHUA D. MALCOLM in his   )
official capacity as Member of the    )
State Board of Elections, JAMES       )
BAKER, in his official capacity as    )
Member of the State Board of          )
Elections, MAJA KRICKER, in her       )
Official capacity as Member of the    )
State Board of Elections, et al.,     )
                                      )
                Defendants.           )

**MEMORANDUM OPINION AND ORDER**

---

[1] While this action remained pending, the North Carolina General Assembly
enacted legislation that creates a "Bipartisan State Board of Elections and
Ethics Enforcement" to assume the functions of the North Carolina State Board
of Elections. S. 68, 2017 Gen. Assemb., Reg. Sess. (N.C. 2017). No board
members have been appointed to oversee this new agency, as litigation concerning
this legislative enactment remains pending before the North Carolina Supreme
Court. *See Cooper v. Berger*, 801 S.E.2d 637 (N.C. 2017) (mem.). Accordingly,
this Court will not order the substitution of any parties pursuant to Rule 25(d)
of the Federal Rules of Civil Procedure at this time.

Loretta C. Biggs, District Judge.

Before the Court are three motions to dismiss Plaintiffs'
Complaint. The first is brought by the Beaufort County Board of
Elections, its Chairman, Secretary, Director, and a Member of the
Board, each named in their official capacities (collectively
"Beaufort Defendants"), (ECF No. 56); the second by the Cumberland
County Board of Elections, its Chairperson, Secretary, Director,
and a Member of the Board, each named in their official capacities
(collectively "Cumberland Defendants"), (ECF No. 59); and the
third by the Moore County Board of Elections, its Chairman,
Secretary, Director, and a Member of the Board, each named in their
official capacities (collectively "Moore Defendants"), (ECF No.
61). Each county's motion is brought pursuant to Federal Rule of
Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction.
For the reasons that follow, the Cumberland and Moore Defendants'
motions are granted in part and denied in part; and the Beaufort
Defendants' motion is denied in its entirety.

## I.  BACKGROUND

Plaintiffs, the North Carolina State Conference of the NAACP
and the Moore County Branch of the NAACP (collectively
"Organizational Plaintiffs"), as well as James E. Arthur, Sr.,
James M. Brower, Grace B. Hardison, and James L. Cox (collectively
"Individual Plaintiffs"), commenced this action seeking
declaratory and injunctive relief, alleging violations of Section

8 of the National Voter Registration Act, (the "NVRA"), 52 U.S.C. § 20507(a), the Voting Rights Act, 52 U.S.C. § 10301, and the Equal Protection Clause of the Fourteenth Amendment. (ECF No. 1 ¶¶ 5, 79.) The Complaint alleges that the Beaufort, Cumberland, and Moore Defendants, (collectively "County Boards"), cancelled thousands of voter registrations based on a single mailing sent to each of the voters, which was returned as undeliverable. (*Id.* ¶ 3.) Further, Plaintiffs allege that "[i]n many cases, voters purged by [the County Boards] still reside at the addresses where they are registered to vote, or have moved within the county and remain eligible to vote there." (*Id.*)

On October 31, 2016, Plaintiffs filed an Amended Application for Temporary Restraining Order, (ECF No. 21), requesting that this Court enjoin Defendants from, among other things: "(1) cancelling the registration of voters through the challenge procedure set forth in N.C.G.S. § 163-85 and § 163-86, when those challenges are based on change of residency and the State has neither received written confirmation from the voter of a change in residence outside of the county, nor complied with the NVRA's notice requirement and two-election cycle waiting period; (2) using the challenge procedure set forth in N.C.G.S. § 163-85 and § 163-86 to remove voters from the rolls based on change of residency information in the 90 days preceding a federal election; and (3) holding hearings or taking any other actions to process challenges

filed under those provisions in the circumstances identified."
(ECF No. 21-1 at 31.) This Court held a hearing on Plaintiffs'
request on November 2, 2016.

On November 4, 2016, this Court entered a Memorandum Opinion,
(ECF No. 42), concluding that Defendants' actions as alleged by
Plaintiffs had likely violated the NVRA (ECF No. 42 at 21),[2] and
simultaneously entered a Preliminary Injunction,[3] (ECF No. 43).
The injunction ordered, among other things, that (1) Defendants
shall "restore the voter registrations that were canceled during
the 90-day period preceding the November 8, 2016" general election
"through application of the challenge procedure set forth in N.C.
Gen. Stat. §§ 163-85 and 163-86, and . . . ensure that those voters
are able to vote" in that election; (2) Defendants were "enjoined
and restrained from canceling the registration of voters through
the challenge procedures set forth in N.C. Gen. Stat. §§ 163-85
and 163-86" when officials had not complied with the NVRA; and (3)
"Defendant Strach shall take all reasonable and necessary steps to

---

[2] Only the alleged NVRA violations were the subject of Plaintiffs' request for
a temporary restraining order. (ECF No. 21-1 at 17-27.)

[3] Plaintiffs moved for a temporary restraining order, however the Court
"treat[ed] the motion as a request for a preliminary injunction" because
opposing parties had notice of the Plaintiffs' motion and had the opportunity
to be present and present evidence at the hearing on the motion. *Planned
Parenthood of Wis., Inc. v. Van Hollen*, 963 F. Supp. 2d 858, 864-65 (W.D. Wis.
2013); *see U.S. Dep't of Labor v. Wolf Run Mining Co.*, 452 F.3d 275, 284 (4th
Cir. 2006) (concluding that the defendant "had a fair opportunity to oppose the
injunction and that the district court did not abuse its discretion in electing
to enter a preliminary injunction in lieu of a TRO").

ensure statewide compliance with the NVRA consistent" with the
Court's Opinion. (ECF No. 43 at 3–5 (emphasis omitted).)

The County Boards' motions to dismiss were filed on January
26, 2017. (ECF Nos. 56, 59, 61.) The Cumberland and Moore
Defendants argue that Plaintiffs lack standing in each of their
respective motions; while in all three motions, the County Boards
each contend that Plaintiffs' claims are now moot. (ECF Nos. 57
at 10–17; 60 at 4–19; 62 at 6–19.) In addition to Plaintiffs
filing a Consolidated Opposition to County Defendants' Motions to
Dismiss, (ECF No. 69), Defendant the North Carolina State Board of
Elections, its Chairman, Secretary, Executive Director, and
Members of the Board, each named in their official capacities
(collectively "State Defendants"), filed an Opposition to Motions
to Dismiss by County Defendants, (ECF No. 65).

## II. LEGAL STANDARD

A motion under Rule 12(b)(1), which governs dismissals for
lack of subject-matter jurisdiction, raises the question of
"whether [the plaintiff] has a right to be in the district court
at all and whether the court has the power to hear and dispose of
[the] claim." *Holloway v. Pagan River Dockside Seafood, Inc.*, 669
F.3d 448, 452 (4th Cir. 2012). The burden of establishing subject-
matter jurisdiction is on the plaintiff. *Evans v. B.F. Perkins
Co.*, 166 F.3d 642, 647 (4th Cir. 1999). At the pleading stage, a
plaintiff can survive a motion to dismiss while asserting only

"general factual allegations of injury resulting from the defendant's conduct" because at this stage of a case, courts "presume that general allegations embrace those specific facts that are necessary to support the claim." *Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir.), *cert. denied*, 137 S. Ct. 2307 (2017) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). When, as here, a defendant brings a factual challenge to the court's subject-matter jurisdiction, "the defendant argues 'that the jurisdictional allegations of the complaint [are] not true,' providing the [district] court the discretion to 'go beyond the allegations of the complaint.'" *Id.* (first alteration in original). The court should grant the motion "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Evans*, 166 F.3d at 647.

## III. DISCUSSION

The County Boards' arguments in support of their motions to dismiss for lack of subject-matter jurisdiction are grounded in Article III's case-or-controversy requirement. Article III of the Constitution "limits the jurisdiction of federal courts to 'Cases' and 'Controversies,'" *Beck*, 848 F.3d at 269 (quoting U.S. Const. art. III, § 2), and the doctrines of standing and mootness derive from that limitation, *White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 458 (4th Cir. 2005). The standing determination "remains focused on whether the party invoking jurisdiction had the

requisite stake in the outcome when the suit was filed." *Davis v. FEC*, 554 U.S. 724, 734 (2008).  In contrast, "[a] case becomes moot . . . 'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'" *Pashby v. Delia*, 709 F.3d 307, 316 (4th Cir. 2013).

**A.  Standing**

Standing ensures that a plaintiff has "a personal stake in the outcome of the controversy" that is sufficient to warrant the "invocation of federal-court jurisdiction." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009).  To establish Article III standing at the motion to dismiss stage, "a plaintiff must plausibly allege that: '(1) it has suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Liberty Univ., Inc. v. Lew*, 733 F.3d 72, 89 (4th Cir. 2013) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180–81 (2000)).  When a plaintiff seeks redress for a prospective harm, the plaintiff can demonstrate that an alleged injury is sufficiently imminent for standing purposes by showing that the harm is "certainly impending" or that the plaintiff faces a "substantial risk" of its occurrence. *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334,

2341 (2014).  The requirement that a plaintiff have standing to sue applies to both individuals and organizations.  *White Tail Park, Inc.*, 413 F.3d at 458.  An organization can demonstrate standing to sue in two ways: on its own behalf (organizational standing) or on behalf of its members (representational standing).[4] *See id.*

A plaintiff can establish organizational standing "when it seeks redress for an injury suffered by the organization itself." *Id.*  An injury is cognizable, for organizational standing purposes, when the plaintiff alleges that "a defendant's practices have hampered an organization's stated objectives causing the organization to divert its resources as a result."  *Action NC v. Strach*, 216 F. Supp. 3d 597, 616 (M.D.N.C. 2016) (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982)).

A plaintiff can establish "representational standing" to sue on its members' behalf when "(1) its own members would have standing to sue in their own right; (2) the interests the organization seeks to protect are germane to the organization's purpose; and (3) neither the claim nor the relief sought requires

---

[4] Consistent with a recent discussion of the Fourth Circuit, this Court will refer to the theory of standing doctrine where an organization seeks to establish standing on the basis of injuries suffered by its members as "representational standing."  *See S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 183–85 (4th Cir. 2013).  In other cases, representational standing is termed "associational standing."  *See, e.g., Lansdowne on the Potomac Homeowners Ass'n, Inc. v. OpenBand at Landsdowne, LLC*, 713 F.3d 187, 198 n.6 (4th Cir. 2013); *White Tail Park*, 413 F.3d at 458.

the participation of individual members in the lawsuit." *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013). Applying Supreme Court precedent, the Fourth Circuit has held that the first requirement of representational standing—demonstrating that an organization's members would have standing to sue in their own right—requires an organization to "make specific allegations establishing that at least one *identified member* had suffered or would suffer harm." *Id.* (quoting *Summers*, 555 U.S. at 498).

Only the Cumberland and Moore Defendants challenge this Court's subject-matter jurisdiction on standing grounds. (ECF No. 60 at 4-15; ECF No. 62 at 15-19.)

1. *Cumberland Defendants*

The Cumberland Defendants make three arguments in support of their contention that Plaintiffs lack standing to bring any claim against the Cumberland Defendants. The Cumberland Defendants argue that (1) Plaintiffs lack standing to sue the individual Cumberland County officials who are being sued in their official capacities on the ground that the challenged actions can only be taken by county boards of elections, and not by individual members of those boards, (ECF No. 60 at 14-15); (2) no Individual Plaintiff has an injury that is fairly traceable to the conduct of the Cumberland Defendants because "each individual plaintiff could only have been subject to the conduct of the Board of Elections in

the county in which the individual plaintiff was registered," (*id.* at 6–7); and (3) the Organizational Plaintiffs have not pled sufficient allegations to establish standing arising from cognizable harm suffered by the organizations themselves or a specific, identified member, (*id.* at 7–14).

The Cumberland Defendants' first two arguments require very little discussion. As to the first contention that Plaintiffs lack standing to sue individual county officials in their official capacities, the Cumberland Defendants cite no legal authority to support this argument and this Court finds none. "[O]fficial-capacity suits 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Andrews v. Daw*, 201 F.3d 521, 525 (4th Cir. 2000) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). "As long as the government entity [involved] receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Graham*, 473 U.S. at 166. Consequently, this first argument fails. As to the Cumberland Defendants' second argument—that Individual Plaintiffs lack standing to bring claims against them since no Individual Plaintiff alleges that he or she was a registered voter in Cumberland County— Plaintiffs do not dispute the Cumberland Defendants' contention. (*See generally* ECF No. 69.) Therefore, to the extent that Individual Plaintiffs Arthur, Brower, Hardison, and Cox, assert

claims against Cumberland Defendants, the Cumberland Defendants'
motion is allowed.

The Cumberland Defendants' third argument requires an
examination of the allegations in the Complaint in greater detail.
The Cumberland Defendants challenge the standing of each
Organizational Plaintiff on both organizational and
representational standing grounds. (ECF No. 60 at 7–14.) However,
these Plaintiffs do not contest that the Moore NAACP has standing
to sue the Cumberland Defendants. Plaintiffs do argue, however,
that the North Carolina NAACP has representational standing to
bring claims arising from the harm to its members and
organizational standing to bring claims on its own behalf. (ECF
No. 69 at 23–29.) The Court will therefore only examine whether
the North Carolina NAACP has standing to assert claims against the
Cumberland Defendants.

The North Carolina NAACP disputes the Cumberland Defendants'
contention that its representational standing claim fails because
the North Carolina NAACP cannot identify one specific member whose
voter registration was purged. (ECF No. 69 at 25–29.) Plaintiffs
argue that they have specifically identified one member, Mr.
Brower, who was injured by Defendants' challenged conduct. (*Id.*
at 25.) However, Plaintiffs do not contend that Mr. Brower's
injury resulted from, or is traceable to, the challenged conduct
of the Cumberland Defendants. Rather, Plaintiffs' Complaint

alleges that all of Mr. Brower's injuries result from the conduct of the Moore Defendants. (ECF No. 1 ¶ 13.) Therefore, the North Carolina NAACP cannot rely on Mr. Brower's injuries to establish representational standing to sue the Cumberland Defendants.

The North Carolina NAACP next argues, in the alternative, that it can establish representational standing to sue the Cumberland Defendants on the ground that all of its members are likely to be harmed. (ECF No. 69 at 27.) Specifically, Plaintiffs contend that the North Carolina NAACP "has plausibly alleged that all of its members are likely to suffer future harm if Defendants' unlawful conduct is not enjoined, and that allegation is independently sufficient for [representational] standing." (*Id.*) There is a "limited exception" to the identification requirement, which applies only when "all members of an organization are harmed," *S. Walk*, 713 F.3d at 184 (citing *Summers*, 555 U.S. at 499); however, the evidence in this case does not support the application of this exception here.

To demonstrate the limited nature of this exception, the Supreme Court, in *Summers v. Earth Island Institute*, cited *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449 (1958), as an example of a case where an organization could demonstrate that all of its members would be harmed by challenged activity. *See Summers*, 555 U.S. at 499. In *NAACP v. Alabama*, the national NAACP petitioned for certiorari to review a contempt order issued against it by an

12

Alabama state court. *NAACP v. Alabama*, 357 U.S. at 454. The
Alabama court issued the contempt order because the NAACP refused
to comply with an earlier order, which required the NAACP to
produce membership lists "containing the names and addresses of
*all* Alabama 'members' and agents' of the [NAACP]." *Id.* at 453–54
(emphasis added). The challenged activity in that case, i.e. the
Alabama court order requiring the production of records containing
the names and addresses of *all* of the NAACP's Alabama members,
thus affected *all* of the national NAACP's members in that state.
*See id.* In this case, by contrast, while the record suggests that
a small number of individuals are availing themselves of N.C. Gen.
Stat. §163-85[5] to bring *en masse* challenges to large numbers of
voters, (*see* ECF No. 1 ¶ 47), there is no evidence that suggests
that all of the members of the North Carolina NAACP—or even all of
its members in Cumberland County—have been or will be affected by

---

[5] The legislative enactment that creates the earlier discussed "Bipartisan State
Board of Elections and Ethics Enforcement" also directs the North Carolina
Revisor of Statutes to recodify Chapter 163 of the North Carolina General
Statutes into a new chapter of the general statutes. S. 68, 2017 Gen. Assemb.,
Reg. Sess. (N.C. 2017). The Court will discuss statutes affected by this
recodification as if they remain located within Chapter 163, as it appears that
the recodification has not yet been completed, while litigation concerning the
underlying legislative enactment remains ongoing. *See Cooper v. Berger*, 801
S.E.2d 637 (N.C. 2017) (mem.).

the challenged activity of the Cumberland Defendants.[6]
Accordingly, the Court concludes that Plaintiff North Carolina
NAACP has failed to demonstrate representational standing to sue
the Cumberland Defendants.[7]

However, the North Carolina NAACP's inability to establish
representational standing is not fatal to its claims because it
can satisfy the requirements of organizational standing. As
earlier stated, an organization can establish standing to sue "on
its own behalf when it seeks redress for an injury suffered by the
organization itself." *White Tail Park*, 413 F.3d at 458. The North
Carolina NAACP alleges that it "has been forced to divert its
valuable and limited resources away from its core mission and
planned voter-mobilization, voter-protection, and voter-education

---

[6] Plaintiffs cite four cases from outside of the Fourth Circuit to support their contention that the alleged statistical likelihood that all of the North Carolina NAACP's members will be harmed in the future is sufficient to establish standing, independently of the requirement that it identify a specific member who will be harmed. (ECF No. 69 at 27–28 (first citing *Arcia v. Fla. Sec'y of State*, 772 F.3d 1335 (11th Cir. 2014); then citing *Fla. State Conference of the NAACP v. Browning*, 522 F.3d 1153 (11th Cir. 2008); then citing *Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032 (9th Cir. 2015); and then citing *Sandusky Cty. Democratic Party v. Blackwell*, 387 F.3d 565 (6th Cir. 2004)). The Supreme Court, however, has rejected this approach. *See Summers,* 555 U.S. at 497–99 ("The dissent proposes a hitherto unheard-of test for organizational standing [herein referred to as "representational standing"]: whether . . . there is a statistical probability that some of those members are threatened with concrete injury. . . . This requirement of naming the affected members has never been dispensed with in light of statistical probabilities, but only where *all* the members of the organization are affected by the challenged activity.").

[7] While this Court in its Memorandum Opinion in support of its Preliminary Injunction concluded that "the NAACP has . . . sufficiently pled associational standing [herein referred to as "representational standing"] on behalf of its members," (ECF No. 42 at 23 n.15), the Court has concluded upon closer examination here that the North Carolina NAACP has not established representational standing as to the Cumberland Defendants.

activities . . . in order to investigate, respond to, mitigate, and address the concerns of its members resulting from Defendants' unlawful *en masse* voter challenge and purging practices." (ECF No. 1 ¶ 89.) The North Carolina NAACP has, therefore, established a cognizable injury by alleging that Defendants' "practices have hampered [its] stated objectives causing [it] to divert its resources as a result," *see Action NC*, 216 F. Supp. 3d at 616.

Further, the North Carolina NAACP has not only plausibly alleged but has also provided evidence to show that these injuries are fairly traceable to the conduct of the Cumberland Defendants. (*See* ECF No. 69 at 20–21.) Specifically, Plaintiffs point out that North Carolina NAACP President Rev. Dr. William J. Barber II sent multiple letters to the State Board concerning the conduct of the Cumberland Defendants. (ECF No. 5 ¶¶ 16, 19.) Plaintiffs also assert that other staff members and volunteers communicated with NAACP members, including some from Cumberland County, who were concerned that their voter registrations might be challenged or purged. (ECF No. 69 at 21.) In addition, Plaintiffs contend that after learning of the conduct of the Cumberland Defendants, the North Carolina NAACP began an investigation that "included interviews, reviews of publicly available information, and requests for further information from individuals with first-hand knowledge of the challenges." (*Id.* at 20.) The Court, therefore,

concludes that the North Carolina NAACP has standing to pursue its claims against the Cumberland Defendants.

The Court is not persuaded by the Cumberland Defendants' arguments that the North Carolina NAACP cannot establish organizational standing. The Cumberland Defendants contend that the many of the North Carolina NAACP's allegations are too "conclusory." (ECF No. 60 at 9, 10, 13.) However, the Court concludes that the North Carolina NAACP has satisfied the requirements of standing doctrine on the basis of the factual allegations and evidence discussed above. The Cumberland Defendants also argue that the North Carolina NAACP's diversion of resources is too insubstantial to establish a cognizable injury. (ECF No. 60 at 11–12.) However, the Cumberland Defendants cite no case to support this argument, while a number of courts have concluded that resource diversions similar to the North Carolina NAACP's were sufficient to establish cognizable injuries. *E.g.*, *Arcia*, 772 F.3d at 1341–42 (finding a cognizable injury where an "organization expended resources to locate and assist the members to ensure that they were able to vote"); *Nnebe v. Daus*, 644 F.3d 147, 156–57 (2d Cir. 2011) (finding a cognizable injury where an organization "expended resources to assist its members . . . by providing initial counseling," explaining rules, and helping them finding attorneys); *Fair Emp't Council of Greater Wash., Inc. v. BMC Mktg. Corp.*, 28 F.3d 1268, 1276 (D.C. Cir. 1994) (concluding

a cognizable injury was established where the challenged conduct "might increase the number of people in need" of the organization's services).  The Cumberland Defendants finally argue that the North Carolina NAACP's injuries are not particularized.  (ECF No. 60 at 10–11.)  The Cumberland Defendants cite no case to support this argument and the Court concludes that it lacks merit.

*2. The Moore Defendants*

The Moore Defendants contend that the Individual Plaintiffs lack standing to bring claims against them because none of the Individual Plaintiffs alleged a cognizable injuries that are fairly traceable to the Moore Defendants.  (ECF No. 62 at 17–18.) Specifically, they  argue that Mr. Brower is the only Individual Plaintiff in this case that has a connection to Moore County; and that Mr. Brower never suffered a cognizable injury since the challenge to his voter registration status was dismissed and he was therefore never removed from the voter rolls.[8]  (*Id*. at 17–18.)  Plaintiffs contend that Mr. Brower "suffered an injury-in fact fairly traceable to the unlawful conduct of Moore County Defendants, and thus he has standing."  (ECF No. 69 at 30.) Plaintiffs also argue that "a voter need not actually have been

---

[8] The Moore Defendants also argue that "[t]he NVRA does not prohibit voter challenges," (ECF No. 62 at 18); however, the question of whether the NVRA prohibits voter challenges pertains to the merits of the case and not to the standing inquiry.  *See Cooksey v. Futrell*, 721 F.3d 226, 239 (4th Cir. 2013) ("[F]or purposes of standing, we must assume the Plaintiffs' claim has legal validity.").

purged from the rolls or prevented from voting" to satisfy the injury-in-fact requirement. (*Id.* at 25.)

This Court agrees with Plaintiffs' argument that Mr. Brower did not need to be "purged from the rolls or prevented from voting" to demonstrate injury, (*see id.*). *See Charles H. Wesley Educ. Found., Inc. v. Cox*, 408 F.3d 1349, 1352 (11th Cir. 2005) ("A plaintiff need not have the franchise wholly denied to suffer injury."). Further, in addition to alleging that Mr. Brower was harmed when his right to remain registered to vote was challenged before the 2016 election, Plaintiffs' Complaint also alleges that Mr. Brower remained at risk of being harmed by the Defendants in a similar manner in future elections. (ECF No. 1 ¶ 80.) Specifically, the Complaint states that "Defendants' practice of permitting and enabling challengers to bring systematic, coordinated, *en masse* challenges to large numbers of registered voters . . . subject[s] [Plaintiffs] to a real and imminent risk that they will be unlawfully purged from the voter rolls and consequently denied their right to vote in the upcoming November 8, 2016 general election, as well as in subsequent elections." (*Id.* ¶¶ 79, 80.) The Court concludes that Mr. Brower has plausibly alleged that he suffered a cognizable injury—in the form of his substantial risk of future harm—that is traceable to the challenged conduct of the Moore Defendants. Thus, Mr. Brower has standing to sue the Moore Defendants. The Court further concludes, however,

18

that no other Individual Plaintiff sufficiently alleged any similar injury resulting from the conduct of the Moore Defendants.[9] Therefore, to the extent the Complaint alleges claims brought against Moore Defendants by Plaintiffs Arthur, Hardison, and Cox, the Moore Defendants' motion is allowed.

The Moore Defendants also contend that the North Carolina NAACP and the Moore NAACP lacked standing to bring their claims. (ECF No. 62 at 18–19.) The Moore Defendants support this contention by arguing that the Organizational Plaintiffs did not "identify any harm to the Plaintiffs"; failed to specifically identify any of their members who were injured; and pled conclusory allegations supported by facts that were insufficient to substantiate those allegations. (*Id.*)

The Organizational Plaintiffs identify one specific individual whose injury results from the challenged conduct of the Moore Defendants, i.e. Mr. Brower. (ECF Nos. 1 ¶ 13; 69 at 25.) As discussed earlier, Mr. Brower has adequately demonstrated that he has standing to sue the Moore Defendants as an individual. *See supra*. The Organizational Plaintiffs cannot establish standing on the basis of Mr. Brower's injury, however, as the Complaint does not allege that Mr. Brower was a member of the North Carolina NAACP

---

[9] Of the four Individual Plaintiffs in this lawsuit, Mr. Brower is the only resident of Moore County; the three remaining Individual Plaintiffs are residents of Beaufort County. (ECF No. 1 ¶¶ 12–15.) The Beaufort Defendants have not challenged the standing of these residents.

or the Moore NAACP at the time the Complaint was filed.  *See Davis*,
554 U.S. at 734 (noting that "the standing inquiry remains focused
on whether the party invoking jurisdiction had the requisite stake
in the outcome when the suit was filed").  Rather, the Complaint
alleges that "Mr. Brower *has been* a member of the Moore County
NAACP within the last five years and *is currently renewing* his
membership."[10]  (ECF No. 1 ¶ 13 (emphasis added).)  Consequently,
the Organizational Plaintiffs cannot establish representational
standing against the Moore Defendants on the basis of Mr. Brower's
injuries because their Complaint does not identify Mr. Brower as
a member of either organization at the time the litigation
commenced.  Further, the Organizational Plaintiffs cannot
demonstrate that all of their members in Moore County will be
affected by the challenged activity of the Moore Defendants for
the same reasons that the North Carolina NAACP is unable to satisfy
this exception with respect to the conduct of the Cumberland
Defendants.  *See supra*.

The North Carolina NAACP and the Moore NAACP, however, can
establish organizational standing to sue the Moore Defendants.

---

[10] In his supplemental declaration, Mr. Brower appears to confirm that he was
not a member of either the North Carolina NAACP or the Moore NAACP at the time
the Complaint was filed.  (*See* ECF No. 69-2 at 2.)  In pertinent part, Mr.
Brower states that: "I first joined the Moore County Branch of the NAACP and
became a member of the North Carolina NAACP some years ago.  When I realized my
membership lapsed recently, I sought to renew my North Carolina NAACP
membership.  Sometime in or around January 2017, I submitted my payment and
application to restart my NAACP membership."  (*Id.*)

Contrary to the Moore Defendants' contention, both Organizational Plaintiffs have asserted that they were harmed in the form of resource diversion. (ECF. No 69 at 19–23, 30–31.) The Court has already concluded that the North Carolina NAACP's resource diversion is a cognizable injury. *See supra*. Further, this resource diversion of the North Carolina NAACP is fairly traceable to the challenged conduct of the Moore Defendants. (ECF. No 69 at 19–23.) Similarly, the Moore NAACP has also demonstrated cognizable injury, in the form of resource diversion, that is fairly traceable to the conduct of the Moore Defendants. (*See* ECF Nos. 7 ¶ 24; 69 at 31.) Specifically, the Moore NAACP asserts that its "staff members spent [time] researching and investigating the purges, requesting information from . . . and writing letters to the [Moore County Board of Elections]," in response to the Moore Defendants' Conduct. (ECF Nos. 7 ¶ 24; 69 at 31.) Further, the Moore NAACP asserts that this time "would have [been] spent instead on disseminating information about Early Voting opportunities, publicizing the Moore County NAACP Branch's Rides-to-the-Polls program, and recruiting and training volunteer[s]" for "get-out-the-vote efforts." (ECF Nos. 7 ¶ 24; 69 at 31.) Accordingly, the

Court concludes that both Organizational Plaintiffs have established standing to sue the Moore Defendants.[11]

**B.    Mootness**

The Court next turns to the arguments made by the County Boards that Plaintiffs' claims against them are moot.

The requirement of Article III that limits the jurisdiction of federal courts to "cases or controversies" must continue to be satisfied at all stages of a case. *Porter v. Clarke*, 852 F.3d 358, 363 (4th Cir. 2017).   Even when a plaintiff satisfies the requirements of standing doctrine when litigation commences, a federal court may cease to have jurisdiction when subsequent events render a claim moot.   *Pashby*, 709 F.3d at 316.   Mootness is sometimes described as "standing set in a time frame," but as the Supreme Court has explained, that description "is not comprehensive."   *Laidlaw*, 528 U.S. at 190.   Exceptions to the mootness doctrine exist that allow claims to remain live even when events occur after litigation commences that would deprive a plaintiff of standing to bring those claims at the outset of a suit.   *See id.*

---

[11] The Court is not persuaded by the Moore Defendants' contention that Organizational Plaintiffs pled conclusory allegations supported by facts that were insufficient to substantiate those allegations.   (ECF No. 62 at 18–19.) The allegations in the Complaint and the evidence before the Court are sufficiently factual and specific to establish a cognizable injury at this stage of the proceedings.   *See Beck*, 848 F.3d at 270.

One exception to mootness occurs when a defendant's challenged conduct is "capable of repetition, yet evading review." *Id.* Conduct is capable of repetition yet evades review "when '(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration; and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again.'" *Lux v. Judd*, 651 F.3d 396, 401 (4th Cir. 2011) (quoting *FEC v. Wis. Right to Life, Inc.*, 551 U.S. 449, 462 (2007)). Claims that challenge conduct related to the administration of elections satisfy the first of the two requirements and therefore fall within this exception to mootness doctrine "when 'there is a reasonable expectation that the challenged provisions will be applied against the plaintiffs again during future election cycles.'" *Id.*

A second exception to mootness occurs when a defendant voluntarily ceases the challenged conduct at issue. Voluntary cessation of challenged conduct "does not deprive a federal court of its power to determine the legality of the practice," *Porter*, 852 F.3d at 363 (quoting *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982)), because if that were so, courts would necessarily "permit a resumption of the challenged conduct as soon as the case is dismissed," *Knox v. Serv. Emps. Int'l Union, Local 1000*, 132 S. Ct. 2277, 2287 (2012). A party who contends that a claim is moot on the basis of voluntary cessation "bears

the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Porter*, 852 F.3d at 364 (quoting *Laidlaw*, 528 U.S. at 190).

The County Boards make numerous arguments as to why they believe the claims brought against them by Plaintiffs are moot. Because these defendants make essentially the same or overlapping arguments related to mootness, the Court will address these arguments as those of the County Boards, collectively. While a number of these arguments have no bearing on the issue of mootness, the Court has consolidated what appear to be the County Boards' major arguments as follows: (1) all injunctive relief requested has been granted by the Court, the November 8, 2016 election has passed and "[t]he only relief left for consideration by the Court seeks to change an interpretation of North Carolina election laws which is not within the control of the various County [Boards]," (ECF No. 62 at 8; *see* ECF Nos. 56 at 1; 59 at 2–3, 60 at 15–16); (2) the State Board controls the conduct of the County Boards and will continue to be a party to the action and subject to any order issued by the Court and thus the allegedly wrongful conduct by the County Boards cannot reasonably be expected to recur, (ECF Nos. 57 at 15; 62 at 7); and (3) the County Boards are not proper parties to this lawsuit because the State Board controls the

interpretation and enforcement of all of North Carolina's election laws, (ECF Nos. 57 at 11–14; 62 at 7, 10–15).[12]

Plaintiffs respond to County Boards' arguments of mootness first and foremost by asserting that their claims against the County Boards remain live. (ECF. No. 69 at 15–17.) Specifically, Plaintiffs argue that: (1) a preliminary injunction does not moot a complaint for permanent injunctive relief; (2) the County Boards did not voluntarily cease their offending conduct but instead "ceased only in response to the preliminary injunction," which does not moot the case; and (3) the County Boards are proper parties "as the entities implementing" the voter challenge statutes. (*Id.* at 11–12, 15–17.)

The Court begins with the County Boards' argument that because all injunctive relief requested by the Plaintiffs has been granted and the November 2016 election has passed that the case or

---

[12] The County Boards raise additional arguments that the Court finds unpersuasive and irrelevant to the issue of mootness, including those stating that (a) the "surviving portion of the Order . . . is mooted as to the counties by a separate surviving portion of the Order that orders" the State Board "to take all steps to ensure *statewide* compliance with the NVRA consistent with the Court's Order," (ECF No. 60 at 16–18); (b) "[P]laintiffs have not alleged any facts that forecast a reasonable expectation that any of the defendants will violate the orders set out in the Preliminary Injunction," (ECF Nos. 60 at 19; 62 at 11); and (c) Plaintiffs have not alleged "that any of the defendants failed to comply with the orders directed to the November 8, 2016, general election," (ECF Nos. 60 at 19; 62 at 11). Mootness addresses whether the claims remain live—not whether preliminary injunctive relief has been satisfied, complied with, or violated. *Marie v. Mosier*, 122 F. Supp. 3d 1085, 1102 (D. Kan. 2015) ("'Compliance with the provisions of a preliminary injunction . . . does not render moot [plaintiffs'] underlying claims' because 'if the injunction is dissolved without a decision on the merits, there is nothing to keep defendants from resuming the activity that had been restrained by the preliminary injunction.'").

controversy that connects the County Boards to this lawsuit is extinguished. The County Boards argue that as a result of these events, "[t]he only relief left for consideration by the Court" is the Plaintiffs' request "to change an interpretation of North Carolina election laws." (ECF No. 62 at 8.) The premise of this argument—that all injunctive relief requested by the Plaintiffs has been granted—is simply not correct. Plaintiffs also seek a permanent injunction against the County Boards, in addition to declaratory relief.[13] (ECF No. 1 at 38–39.) In addition, while the emergency relief provided by the preliminary injunction may, in large part, have been directed at ensuring that Plaintiffs were not deprived of their franchise during the then-impending November 2016 election, neither Plaintiffs' alleged injuries, nor the relief they seek against the County Boards, are limited to that election only. Plaintiffs have clearly alleged future harm. (ECF No. 1 ¶¶ 79, 80.) Further, the Court only considered the Plaintiffs' NVRA claims at the preliminary injunction stage of these proceedings; Plaintiffs have also alleged that the conduct of County Boards violates the Voting Rights Act as well as the Equal Protection Clause of the Fourteenth Amendment. (*Id.* ¶ 79.)

---

[13] There has been no ruling on the merits of Plaintiffs' claims. This Court granted preliminary injunctive relief for the limited purpose of preserving the status quo so as to prevent irreparable harm during the course of the litigation. (ECF No. 42 at 22, 28.)

Accordingly, this argument advanced by County Boards woefully fails to demonstrate that Plaintiffs' claims are moot.

Next, the Court will address the County Boards' argument that the allegedly wrongful conduct by the County Boards cannot reasonably be expected to recur because the State Board will continue to be a party to this action and thus subject to any order issued by the Court; and because the State Board controls the conduct of the County Boards and can thus direct their compliance.[14] To provide some context to this argument, the Court will briefly summarize the respective roles of the State Board and county boards of elections in hearing voter challenges as set forth under North Carolina law.

"When a challenge is made [under N.C. Gen. Stat. § 163-85], the county board of election shall schedule a preliminary hearing on the challenge," and conduct the hearing, including taking testimony and receiving evidence. N.C. Gen. Stat. § 163-85(d). The State delegates authority to the county boards of elections to decide on each voter challenge, *id.* § 163-86(c), and that decision shall be appealed to the state superior court, *id.* § 163-90.2(d).

---

[14] County Boards appear to ground this and other arguments in the voluntary cessation doctrine. The facts of this case could not be clearer that County Boards ceased the challenged conduct in response to this Court's Order. The law is likewise clear, as two of the County Boards acknowledge in their briefs, that "[a]bating challenged activity pursuant to a court order moots a plaintiff's claims *only if it is* '*absolutely clear,*' absent the injunction, that the allegedly wrongful behavior could not reasonably be expected to recur," (ECF Nos. 57 at 11; 62 at 10 (quoting *Vitek v. Jones*, 445 U.S. 480, 487 (1980)) (emphasis added)). That is not the case here. Accordingly, the voluntary cessation doctrine does not apply.

As a general matter, the State Board retains general supervisory authority over county boards of elections, the power to appoint members to those boards, and the power to regulate primary and general elections in a manner that "do[es] not conflict with any provisions" of the chapter setting forth the respective duties of the county and state boards, which includes the statutes that set forth the voter challenge procedures. *Id.* § 163-22(a), (c). *See generally id.* §§ 163-84–163-90. The State Board's power also includes the authority to "compel observance of the requirements of the election laws by county boards of elections and other election officers," *id.* § 163-22(c), and to promulgate directives "as it may deem necessary for the guidance of election officers and voters," *id.* § 163-33(1).

The County Boards, while acknowledging that compliance with a preliminary injunction does not ordinarily moot underlying claims, argue that this case is exceptional because not only is there a court order that enjoins them from engaging in the allegedly wrongful conduct, but the presence of the State Board in the suit ensures that the challenged conduct will not recur. (ECF Nos. 57 at 12; 62 at 11–12.) They contend that the State Board's compliance with this Court's preliminary injunction demonstrates that the challenged conduct of the County Boards is not reasonably expected to recur because the State Board can direct the County Boards to comply with any order issued by this Court. (ECF Nos.

57 at 12–13; 62 at 12.)  This argument is neither compelling, nor is it relevant to the issue of whether Plaintiffs' claims are moot. Moreover, this Court disagrees with the County Boards' assertion that the fact that the State Board is also subject to any order issued by this Court demonstrates that the County Boards would decline to implement the voter challenge statute in the absence of an order enjoining them from doing so.  As argued by Plaintiffs, the failure of the County and State Boards to agree on either the scope of the Court's preliminary injunction or the meaning of the directive issued by the State Board in response, "highlights the importance of retaining all parties in the litigation." (ECF No. 69 at 17.)  The Court agrees.

Next, the Court will discuss the County Boards' argument that the claims against them are moot because they are no longer proper parties to this lawsuit. They argue that plaintiffs can no longer point to any connection between the County Boards and the implementation of the challenged statute.  (ECF Nos. 57 at 13–14; 62 at 13–14.)

Contrary to these assertions, the County Boards continue to be responsible for implementing the voter challenge statutes under North Carolina law.  As the State Board contends in its brief, this responsibility falls squarely on the County Boards.  (ECF No. 65 at 6–7.)  Further, the State Board  argues that "the County [Boards] play a uniquely direct role in challenge proceedings"

brought under the pertinent statutes, namely that: (1) decisions of each County Board regarding voter challenges are appealable, not to them, but to the state superior court, (*id.* at 6 (citing N.C. Gen. Stat. § 163-90.2(d))); (2) "the underlying events on which Plaintiffs' claims rely involved actions at the county-level and hearings held by the County [Boards]," (*id.*); (3) the voter challenge statute "specifically task[s] the County [Boards], not the State BOE, with certain duties," which include receiving a challenge, "reviewing a challenge, ensuring compliance with the statute, holding a preliminary hearing, sending notices, and holding a hearing on the challenge," (*id.* at 7); and (4) the State Board "plays no statutory role in these processes," (*id.*). The Court agrees.

The County Boards rely heavily on two opinions issued by courts in this state to support their argument that they are no longer proper parties to this suit, however, the Court finds that these cases do not support the County Boards' position. In both *Republican Party of North Carolina v. Martin*, 682 F. Supp. 834 (M.D.N.C. 1988), and *Brown v. North Carolina State Board of Elections*, 394 F. Supp. 359 (W.D.N.C. 1975), the courts dismissed county boards of elections from suits where the county boards of elections "exercise[d] virtually no discretion in the implementation of state law and act[ed] only in a ministerial capacity," *Martin*, 682 F. Supp. at 835. *See Brown*, 394 F. Supp.

at 360 (dismissing a suit against a county board of elections because "the state statute requires that candidates for Congress file with the State Board of Elections and the County Board has no authority to accept or reject such applications"). These cases are simply not applicable here. As Plaintiffs argue, the "County [Boards] processed challenges, scheduled and held hearings, evaluated evidence, and made final determinations regarding whether particular individuals would remain registered to vote." (ECF No. 69 at 15.) Further, as detailed above, the County Boards not only exercise discretion in deciding voter challenges, the statutes give them both the obligation and authority to implement the voter challenge process. *See* N.C. Gen. Stat. § 163-86(c) (delegating to county boards of elections the authority to decide voter challenges). This can hardly be characterized as acting "only in a ministerial capacity," *see Martin*, 682 F. Supp. at 835. The County Boards remain statutorily responsible under North Carolina law for the implementation of the voter challenge process that is the subject of this lawsuit and the allegedly wrongful conduct sought to be abated by Plaintiffs, and they therefore remain proper parties to this action.

For the reasons outlined above, the County Boards have failed to establish that Plaintiffs claims against them are moot.

## CONCLUSION

This Court concludes that the County Boards have failed to demonstrate that they should be dismissed from this lawsuit or that Plaintiffs' claims against them should be dismissed for lack of standing or mootness, except as outlined in this Opinion.[15] Specifically, (a) Cumberland Defendants' motion to dismiss, (ECF No. 59), should be allowed based on lack of standing to the extent that any claims made by Individual Plaintiffs and the Moore County NAACP are against Cumberland Defendants; and the motion should be denied as to all other claims; (b) Moore Defendants' motion to dismiss, (ECF No. 61), should be allowed based on lack of standing to the extent any claims are made against them by Individual Plaintiffs, Arthur, Hardison and Cox; and denied as to all other claims; and (c) Beaufort Defendants' motion to dismiss, (ECF No. 56), should be denied in its entirety.

Based on the foregoing, the Court enters the following:

## ORDER

IT IS ORDERED as follows:

(a) that the Cumberland Defendants' Motion to Dismiss, (ECF No. 59), is GRANTED IN PART AND DENIED IN PART. The motion is GRANTED to the extent that any claims made by Individual Plaintiffs

---

[15] Because Beaufort Defendants did not challenge the standing of the Individual Plaintiffs who are residents of Beaufort County, specifically Plaintiffs Arthur, Hardison and Cox, these Plaintiffs remain in the lawsuit even though the Court determined that they did not have standing to sue the Cumberland or Moore Defendants.

and the Moore NAACP against Cumberland Defendants are DISMISSED;
and the motion is DENIED as to all other claims;

(b)  that the Moore Defendants' Motion to Dismiss Complaint,
(ECF No. 61), is GRANTED IN PART AND DENIED IN PART.  The motion
is GRANTED to the extent that any claims made against the Moore
Defendants by Individual Plaintiffs Arthur, Hardison and Cox are
DISMISSED; and the motion is DENIED as to all other claims; and

(c)  that the Beaufort Defendants' Motion to Dismiss, (ECF
No. 56), is DENIED in its entirety.

This, the 26th day of September, 2017.


                              /s/ Loretta C. Biggs
                         United District Court Judge