IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No. 1:16-cv-1274-LCB-JLW

N.C. STATE CONFERENCE OF THE )
NAACP, *et al.*, )
                                                           )
       Plaintiffs, )
                                                           )
                             v. )
                                                           )
N.C. STATE BD. OF ELECTIONS, *et al.*, )
                                                           )
       Defendants. )
_____ )

**BRIEF IN SUPPORT OF PLAINTIFFS' MOTION TO CLARIFY SCOPE OF PRELIMINARY INJUNCTION OR, ALTERNATIVELY, MOTION TO MODIFY PRELIMINARY INJUNCTION**

**NOW COME** Plaintiffs North Carolina State Conference of the NAACP, Moore County Branch of the NAACP, James Edward Arthur, Sr., James Michael Brower, Grace Bell Hardison, and James L. Cox (collectively "Plaintiffs"), by and through their undersigned counsel, and submit this Brief in support of their Motion to Clarify Scope of Preliminary Injunction or, Alternatively, Motion to Modify Preliminary Injunction.

**NATURE OF THE MATTER BEFORE THE COURT**

Plaintiffs move for clarification of the Court's November 4, 2016 Order Granting Preliminary Injunction ("PI Order," ECF No. 43) because a dispute has arisen between Plaintiffs and the State Defendants[1] as to whether the PI Order continues to apply beyond

---

[1] "State Defendants" refers to Defendants North Carolina State Board of Elections ("SBOE"), Kim W. Strach in her official capacity as the Executive Director of the SBOE, and the SBOE's officers and members.

1

the November 2016 election. Plaintiffs and all County Defendants[2] agree that the PI Order remains in effect through the entry of final judgment and, pursuant to its plain language, enjoins all Defendants from processing any residency-based challenges or cancelling any voter registrations pursuant to N.C. Gen. Stat. §§ 163A-911 and 163A-912[3] within 90 days of a federal election, or without complying with the National Voter Registration Act's ("NVRA") notice requirement and two election cycle waiting period. State Defendants' stated position, however, is that the PI Order applied only to conduct in connection with the November 2016 federal election and enjoined residency-based challenges only in the three counties that are named defendants in this suit. *See* Joint Rule 26(f) Report at 3-4 ¶ 2(f), ECF No. 82. According to State Defendants, therefore, nothing precludes Defendants from engaging in precisely the same type of conduct, and nothing requires State Defendants to ensure against such conduct occurring throughout the state, in connection with the November 2018 election or any other subsequent election that may occur before entry of final judgment. Because State Defendants' position is contrary to both the plain and unambiguous text of the Court's PI Order and its purpose of preventing irreparable harm by maintaining the status quo during the pendency of this litigation, Plaintiffs respectfully request the Court's intervention to ensure the Court's PI Order is not violated.

---

[2] "County Defendants" refers to Defendants Beaufort County Board of Elections, the Moore County Board of Elections, and the Cumberland County Board of Elections, and their respective Chairman, Secretary, Director, and Board Members.

[3] These sections are former N.C. Gen. Stat. §§ 163-85 and 163-86, as recodified by Session Law 2017-6.

# BACKGROUND

## I. The Court's November 4, 2016 Preliminary Injunction Order

On October 31, 2016, Plaintiffs filed an application for a temporary restraining order seeking to enjoin Defendants from cancelling the voter registrations of North Carolina voters in violation of two provisions of the National Voter Registration Act ("NVRA"), 52 U.S.C. §20507, 52 U.S.C. §20507(d)(1) ("Waiting Period and Notice Provision"), which prohibits states from cancelling voter registrations based on a change of residence without first providing NVRA-compliant notice and waiting for the voter to fail to appear to vote in two federal election cycles; and 52 U.S.C. §20507(c)(2) ("90 Day Provision"), which prohibits states from conducting any program to systematically cancel voter registrations within 90 days of a federal election. ECF No. 3. Plaintiffs sought emergency relief based on evidence that, in the days and weeks leading up to the November 8, 2016 election, Defendants had cancelled thousands of voters' registrations pursuant to North Carolina's statutory challenge procedures, N.C. Gen. Stat. §§ 163A-911 and 163A-912, in response to *en masse* private-party challenges alleging voters' change in residence, in direct violation of these two provisions of the NVRA.

On November 4, 2016, this Court issued an order and accompanying memorandum opinion granting in part Plaintiffs' motion for preliminary injunction, concluding that Plaintiffs established a likelihood of success on the merits of both NVRA claims. ECF No. 43 ("PI Order"), ECF No. 42 ("Mem. Op."). In addition to other forms of injunctive relief specifically targeted at restoring the voter registrations that had been

cancelled during the 90-day window before the November 8, 2016 election, the Court's PI Order also ordered the following:

> IT IS FURTHER ORDERED that Defendants and their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them, are HEREBY ENJOINED AND RESTRAINED from canceling the registration of voters through the challenge procedures set forth in N.C. Gen. Stat. §§ [163A-911 and 163A-912], when those challenges are based on change of residency and the State has neither received written confirmation from the voter of a change in residency outside of the county, nor complied with the NVRA's notice requirement and two-election cycle waiting period; from using the challenge procedure set forth in N.C. Gen. Stat. §§ [163A-911 and 163A-912] to remove voters from the rolls based on change of residency information in the 90 days preceding a Federal election; and from holding hearings or taking any other action(s) to process challenges filed under those provisions in the circumstances identified above. [("Fourth Paragraph")]…
>
> IT IS FURTHER ORDERED that Defendant Strach shall take all reasonable and necessary steps to ensure statewide compliance with the NVRA consistent with this Court's Memorandum Opinion and this Order. [("Eighth Paragraph")]

ECF No. 43 at 4-5 (hereafter "Fourth Paragraph" and "Eighth Paragraph," respectively).

To comply with these provisions of the PI Order, State Defendants issued Numbered Memo 2016-23 on November 4, 2016, pursuant to which Defendant Strach issued the following directive to all County Boards of Elections ("CBOEs"): "No future residency challenges may be heard under G.S. §§163-85 and 163-86 prior to Election Day." ECF No. 61-1 at 9.

## II. Subsequent Proceedings

Following issuance of the Court's PI Order, Defendants sought, and the Court granted, various requests for extension of time to respond to the complaint. ECF Nos. 44,

4

47, 48, 50, 51, 52, 53 (granted via docket text orders).  State Defendants answered the complaint on December 22, 2016 (ECF No. 55), but on January 26, 2017, Beaufort County Defendants, Moore County Defendants, and Cumberland County Defendants each filed a motion to dismiss for lack of subject-matter jurisdiction.  ECF Nos. 56, 59, 61.  On September 26, 2017, the Court issued an order granting in part and denying in part Moore and Cumberland County Defendants' motions, and denying Beaufort County Defendants' motion in its entirety.  ECF No. 77.

After Cumberland County Defendants filed their answer and cross-claim on October 10, 2017 (ECF No. 78), thus finally making the case fully at issue, Plaintiffs promptly informed Defendants of their intention to move for early partial summary judgment on their NVRA claims (Counts I and II) and proposed that the parties stipulate to a set of facts on which such motion could be decided, thus obviating the need for time-consuming and costly discovery over largely undisputed facts.  The parties promptly began negotiating over such stipulated facts and a stay of discovery related to Plaintiffs' remaining claims pending resolution of the early partial summary judgment motion, as reported in the parties' Joint Rule 26(f) Report on December 18, 2017 (ECF No. 82), which the Court approved (ECF No. 84).   On February 20, 2018, the parties reported to the Court that Plaintiffs had reached agreement with all Defendants on stipulated facts relevant to Counts I and II of Plaintiffs' complaint, on which Plaintiffs plan to move for early partial summary judgment by no later than March 5, 2018.  ECF No. 90.

/ / /

### III. The Parties' Dispute

Plaintiffs and County Defendants agree and have stipulated that the Court's November 4, 2016 Order Granting Preliminary Injunction (ECF No. 43) "remains in effect and will continue to remain in effect until entry of final judgment, or until the Court otherwise dissolves the injunction." ECF No. 83 at 3. Plaintiffs and County Defendants further agree and have stipulated that, "pursuant to the Court's Preliminary Injunction Order, Defendants and their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them, are enjoined from: (a) canceling the registration of voters under N.C.G.S. §§ [163A-911 and 163A-912], where those challenges are based on change of residency and the State has neither received written confirmation from the voter of a change in residency outside of the county, nor complied with the NVRA's notice requirement and two-election cycle waiting period; (b) using the challenge procedures set forth in N.C.G.S. §§ [163A-911 and 163A-912] to remove voters from the rolls based on change of residency information in the 90 days preceding a Federal election, including in the 90 days preceding the November 2018 election; and (c) holding hearings or taking any other actions to process challenges filed under N.C.G.S. §§ 163-85 and 163-86 in the circumstances identified above." ECF No. 83 at 3-4.

State Defendants, however, have asserted their position that the PI Order is limited in scope and time to the named Defendants and the November 8, 2016 General Election only. *See* ECF No. 83 at 4. State Defendants take the position that nothing in the PI

6

Order precludes Defendants from engaging, or from permitting North Carolina's 100 counties to engage, in precisely the same kind of conduct that occurred leading up to the November 2016 election, which this Court found likely violated the NVRA, at any time before the November 2018 election or any other future election that may occur before entry of final judgment in this case. For this reason, State Defendants maintain that Director Strach's Numbered Memo 2016-23 applied only to the 2016 Election, and refuse to issue a memorandum to all CBOEs, pursuant to the Eighth Paragraph in the Court's PI Order, directing the CBOEs not to violate the Waiting Period and Notice Provision or the 90 Day Provision of the NVRA in connection with the November 2018 election or any other future election that may occur before entry of final judgment in this case.

## QUESTIONS PRESENTED

Does the Fourth Paragraph of the PI Order enjoin all Defendants from processing any residency-based challenges or cancelling any voter registrations pursuant to N.C. Gen. Stat. §§ 163A-911 and 163A-912 within 90 days of any federal election, or without complying with the NVRA's notice requirement and two-federal-election-cycle waiting period, until entry of final judgment in this action?

Does the Eighth Paragraph of the PI Order direct Defendant Strach to take all reasonable and necessary steps to ensure statewide compliance with the Court's PI Order, including issuing a memorandum directive to all County Boards of Elections ("CBOEs") similar to the one she issued immediately following issuance of the Court's PI Order, instructing all CBOEs not to violate the Waiting Period and Notice Provision (52 U.S.C.

§20507(d)(1)) or the 90 Day Provision (52 U.S.C. §20507(c)(2)) of the NVRA in connection with the November 2018 election or any other future election that may occur before entry of final judgment in this action?

## ARGUMENT

I.  **The Court Should Clarify or, Alternatively, Modify the PI Order to Enjoin Defendants From Processing New Challenges Under N.C. Gen. Stat. §§ 163A-911 and 163A-912 in Violation of the NVRA Throughout the Pendency of This Litigation.**

   A. **State Defendants' Interpretation of the PI Order Is Contrary to Its Text.**

State Defendants' position that the Fourth Paragraph of the PI Order was limited to enjoining the specific voter registration cancellations that occurred before the November 2016 election is contrary to the plain and unambiguous text of the Court's PI Order. In direct contrast to the Second, Third, Fifth, Sixth, and Seventh Paragraphs of the PI Order, which are specifically directed at restoring the voter registrations of those voters who had already been purged in the weeks and months before the November 2016 election and ensuring that such voters could fully exercise their voting rights in the November 2016 election, the Fourth Paragraph of the PI Order is *not* tied to the November 2016 election or otherwise temporally limited. Instead, the Fourth Paragraph enjoins and restrains all Defendants, including State Defendants, without limitation as to time: (a) "from canceling the registration of voters through the challenge procedures set forth in N.C. Gen. Stat. §§ [163A-911 and 163A-912], when those challenges are based on change of residency and the State has neither received written confirmation from the voter of a change in

8

residency outside of the county, nor complied with the NVRA's notice requirement and two-election cycle waiting period;" (b) "from using the challenge procedure set forth in N.C. Gen. Stat. §§ [163A-911 and 163A-912] to remove voters from the rolls based on change of residency information in the 90 days preceding a Federal election;" and (c) "from holding hearings or taking any other action(s) to process challenges filed under those provisions in the circumstances identified above." ECF No. 43 at 4.

Not only is there no reference in the Fourth Paragraph to the November 2016 election or any other specific time limitation, but the Court's prohibition on cancellation of voter registrations in violation of the NVRA's 90 Day Provision expressly enjoins such cancellations "in the 90 days preceding *a Federal election*." *Id.* (emphasis added). Given that the Court's PI Order issued on November 4, 2016, just four days before the November 8, 2016 election, the terms of the Fourth Paragraph demonstrate that it enjoins Defendants from processing any *new* challenges in violation of the NVRA's 90 Day Provision or Waiting Period and Notice Provision, including any such challenges arising *after* the November 2016 election.

Likewise, there is no temporal restriction in the Eighth Paragraph of the PI Order, which directs Defendant Strach to "take all reasonable and necessary steps to ensure statewide compliance with the NVRA consistent with this Court's Memorandum Opinion and this Order." ECF No. 43 at 5. Because this clearly includes ensuring compliance with the Fourth Paragraph, there is simply no textual basis for State Defendants' refusal to take basic steps, such as issuing a memorandum directive to all CBOEs similar to the

9

one they issued immediately following issuance of the Court's PI Order, instructing all CBOEs not to violate the Waiting Period and Notice Provision or the 90 Day Provision of the NVRA in connection with the November 2018 election or any other future election that may occur before entry of final judgment. State Defendants' insistence that their responsibilities under the PI Order are limited to Beaufort, Moore, and Cumberland Counties is particularly meritless, given that Defendant Strach is statutorily responsible for ensuring *statewide* compliance with the NVRA. *See* N.C. Gen. Stat. § 163A-861; ECF No. 42 at 10.[4]

### B. State Defendants' Interpretation of the PI Order Is Contrary to Its Purpose of Preserving the Status Quo During the Course of Litigation.

State Defendants' position is also contrary to the spirit and intent of the PI Order, which is to prevent irreparable harm by maintaining the status quo during the pendency of this litigation. "The traditional office of a preliminary injunction is to protect the status quo and to prevent irreparable harm during the pendency of a lawsuit ultimately to preserve the court's ability to render a meaningful judgment on the merits." *In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 525 (4th Cir. 2003), *abrogated on other grounds by eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388 (2006); *see* Order on Motions to Dismiss (ECF No. 77) at 26 n.13 ("This Court granted preliminary injunctive relief for the limited purpose of preserving the status quo so as to prevent irreparable harm *during the course of the litigation*.") (emphasis added).

---

[4] The Court does not need jurisdiction over every North Carolina CBOE in order to direct State Defendants, who are party to this litigation and over whom the Court indisputably *does* have jurisdiction, to ensure statewide compliance with the NVRA.

Here, this Court concluded that Defendants' administration of North Carolina's statutory challenge procedures to purge large numbers of voters from the voter rolls fewer than 90 days before a federal election, and without giving such voters NVRA-compliant notice and a two-federal-election-cycle waiting period, likely violated the NVRA and risked unlawfully disenfranchising thousands of North Carolina voters. There is no reason the Court would have intended Defendants to be free to engage in precisely the same unlawful conduct and cause precisely the same risk of irreparable disenfranchisement in connection with subsequent federal elections, simply because this litigation remained pending. To the contrary, the Fourth and Eighth Paragraphs of the PI Order unambiguously reflect the Court's intent that Defendants be enjoined from administering North Carolina's statutory challenge procedures in violation of the NVRA throughout the pendency of this litigation. *See* ECF No. 43 at 4-5.

> **C. To Ensure State Defendants' Compliance With the Court's PI Order and Prevent the Risk of Further Unlawful Voter Purges, the Court Should Issue an Order Clarifying or, Alternatively, Modifying the Scope of the PI Order.**

When parties disagree over the scope of an injunction, the "proper approach" is for the parties to seek "clarification of the injunction from the district court." *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 883 (9th Cir. 2003); *see Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 15 (1945) (district courts, in their "sound discretion," may "clarif[y]" their injunctions). "Clarifications of orders previously issued, which may be obtained on motion or made *sua sponte* by the court, add certainty to an implicated party's efforts to comply with the order and provide fair warning as to what future

11

conduct may be found contemptuous." *N.A. Sales Co., Inc. v. Chapman Indus. Corp.*, 736 F.2d 854, 858 (2d Cir. 1984) (district court properly issued clarifying order specifying conduct that would violate injunction). Thus, courts "that issue injunctions can and should give declaratory guidance defining the meaning and scope of injunctions issued." *Bank of Crete, S.A. v. Koskotas*, 733 F.Supp. 648, 649 (S.D.N.Y. 1990); *see also, e.g.*, *Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.*, 904 F.Supp.2d 530, 533-36 (D. Md. 2012) (granting motion to clarify scope of preliminary injunction order); *Major v. Orthopedic Equipment Co., Inc.*, 410 F.Supp. 1250 (E.D. Va. 1976) (granting motion to clarify permanent injunction).

Because State Defendants have taken the position that they will not abide by the directives of the Fourth and Eighth Paragraphs of the PI Order because they do not believe those directives extended beyond the 2016 election, this Court should issue an order clarifying that the PI Order enjoins all Defendants from processing any residency-based challenges or cancelling any voter registrations pursuant to N.C. Gen. Stat. §§ 163A-911 and 163A-912 within 90 days of a federal election, or without complying with the NVRA's notice requirement and two-federal-election-cycle waiting period, until entry of final judgment in this action, and further clarifying that Defendant Strach is directed to take all reasonable and necessary steps to ensure statewide compliance with the Court's PI Order as clarified.

Alternatively, if for any reason the Court concludes that an order clarifying the injunction would be inappropriate, the Court should issue an order modifying the original

PI Order to enjoin all Defendants from processing any residency-based challenges or cancelling any voter registrations pursuant to N.C. Gen. Stat. §§ 163A-911 and 163A-912 within 90 days of a federal election, or without complying with the NVRA's notice requirement and two election cycle waiting period, until entry of final judgment in this action, and further directing Defendant Strach to take all reasonable and necessary steps to ensure statewide compliance with the Court's PI Order as modified. "[A] district court retains the power to reconsider and modify its interlocutory judgments … at any time prior to final judgment when such is warranted." *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514-15 (4th Cir. 2003); *see* Fed. R. Civ. P. 54(b) ("[A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties … may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."). "The power to reconsider or modify interlocutory rulings 'is committed to the discretion of the district court,' and that discretion is not cabined by the 'heightened standards for reconsideration' governing final orders." *Saint Annes Dev. Co. v. Trabich*, 443 F. App'x 829, 832 (4th Cir. 2011) (per curiam; unpublished) (quoting *Am. Canoe*, 326 F.3d at 514-15); *see also Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 12 (1983) ("[E]very order short of a final decree is subject to reopening at the discretion of the district judge."); *Transp., Inc. v. Mayflower Serv., Inc.*, 769 F.2d 952, 954 (4th Cir. 1985) (per curiam) ("District courts have inherent equitable power to modify their

injunctions to ensure that any injunctive relief granted fully vindicates the rights accorded by the underlying judgment.").[5]

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant this motion and issue an order clarifying that the Fourth Paragraph of the PI Order enjoins all Defendants from processing any residency-based challenges or cancelling any voter registrations pursuant to N.C. Gen. Stat. §§ 163A-911 and 163A-912 within 90 days of any federal election, or without complying with the NVRA's notice requirement and two-federal-election-cycle waiting period, until entry of final judgment in this action, and further clarifying that the Eighth Paragraph of the PI Order directs Defendant Strach to take all reasonable and necessary steps to ensure statewide compliance with the Court's PI Order as clarified, including issuing a memorandum directive to all CBOEs similar to the one she issued immediately following issuance of the Court's PI Order, instructing all CBOEs not to violate the Waiting Period and Notice Provision (52 U.S.C. §20507(d)(1)) or the 90 Day Provision (52 U.S.C. §20507(c)(2)) of the NVRA in connection with the November 2018 election or any other future election that may occur before entry of final

---

[5] Furthermore, as one district court has observed, Rule 62(c) authorizes trial courts to suspend, modify, restore, or grant injunctions even during periods when the case may be on interlocutory appeal, while Rule 60(b) authorizes trial courts the power to amend or modify permanent injunctions. "If this Court has the power to modify an injunction while the case is on interlocutory appeal or after entry of a final order, it goes without saying that the same power resides in the Court while the case is before it. Furthermore, the power to modify a temporary injunction seems implicit in the very nature of this discretionary remedy." *Rankin v. Coleman*, 401 F.Supp. 664, 666 (E.D.N.C. 1975).

judgment in this action. Alternatively, Plaintiffs respectfully request that the Court modify the PI Order to reflect the foregoing.

Dated: March 5, 2018

Respectfully submitted,

By: /s/ Stacey M. Leyton
Stacey M. Leyton (CA SBN 203827)
Peder J. Thoreen (CA SBN 217081)
Eric P. Brown (CA SBN 284245)
Connie K. Chan (CA SBN 284230)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Telephone: (415) 421-7151
Facsimile: (415) 362-8064
E-mail: sleyton@altber.com
pthoreen@altber.com
ebrown@altber.com
cchan@altber.com

/s/ Penda D. Hair
Penda D. Hair (DC SBN 335133)
FORWARD JUSTICE
P.O. Box 42521
Washington D.C. 20015
Telephone: (202) 256-1976
Email: phair@forwardjustice.org

Caitlin Swain (VA SBN 84515)
Leah Kang (NC SBN 51735)
FORWARD JUSTICE
400 W. Main Street, Suite 203
Durham, NC 27701
Telephone: (919) 323-3889
Email: cswain@forwardjustice.org
lkang@forwardjustice.org

/s/ Irving Joyner
Irving Joyner (NC SBN 7830)
P.O. Box 374
Cary, NC 27512
Telephone: (919) 560-6293
Fax: (919) 530-6339
Email: ijoyner@nccu.edu

/s/ Mary Joyce Carlson
Mary Joyce Carlson (DC SBN 987939)
1101 New York Avenue NW
Washington DC 20008
Telephone: (202) 230-4096
Fax: (202) 408-4649
Email: Carlsonmjj@yahoo.com

# CERTIFICATE OF WORD COUNT

As required by Local Rule 7.3(d)(1) and (2), I certify that this document contains 3,752 words, excluding the parts of the document that are exempted by Local Rule 7.3(d)(1). The document therefore complies with Local Rule 7.3(d)(1), which limits briefs in support of motions and responsive briefs to 6,250 words and reply briefs to 3,125 words.

This the 5th day of March, 2018.

/s/ Irving Joyner

Irving Joyner
*Attorney for NC NAACP*

## CERTIFICATE OF SERVICE

I, Irving Joyner, hereby certify that on March 5, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and have verified that such filing was sent electronically using the CM/ECF.

This the 5th day of March, 2018.

*/s/* Irving Joyner

Irving Joyner
*Attorney for NC NAACP*