UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

NORTH CAROLINA STATE CONFERENCE
OF THE NAACP, *et al.*,

     *Plaintiffs*,

    v.

The NORTH CAROLINA STATE BOARD OF
ELECTIONS, *et al.*,

     *Defendants*.

No. 1:16-cv-1274-LCB-JLW

**BRIEF IN SUPPORT OF
PLAINTIFFS' MOTION FOR
PARTIAL SUMMARY JUDGMENT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................... iii

NATURE OF THE MATTER BEFORE THE COURT ...................................... 5

QUESTIONS PRESENTED ............................................................................. 7

BACKGROUND ............................................................................................... 7

    A.   Statutory Background .............................................................................. 7

        1.  National Voter Registration Act ...................................................... 7

        2.  North Carolina's Challenge Procedures ......................................... 9

    B.   Factual Background ............................................................................... 10

        1.  Cumberland County ......................................................................... 10

        2.  Moore County .................................................................................. 11

        3.  Beaufort County ............................................................................... 12

LEGAL STANDARD ..................................................................................... 14

ARGUMENT ................................................................................................... 15

    A.   Count I: NVRA's Notice and Waiting-Period Requirements ............... 15

        1.  Notice Requirement. ........................................................................ 16

        2.  Waiting Period Requirement ............................................................ 17

        3.  Invalid Basis for Challenges ........................................................... 18

    B.   Count II: NVRA's 90-day Prohibition .................................................. 20

        1.  State Program .................................................................................... 22

        2.  Systematic Removal ......................................................................... 23

    C.   Declaratory and Injunctive Relief ........................................................ 24

CONCLUSION................................................................................................. 29

# TABLE OF AUTHORITIES

**CASES**

*Arcia v. Fla. Sec. of State*, 772 F.3d 1335 (11th Cir. 2014) ........................................20, 24

*eBay Inc. v. MercExchange, LLC*, 547 U.S. 388 (2006) ...................................................24

*Mont. Democratic Party v. Eaton*, 581 F. Supp. 2d 1077 (D. Mont. 2008) ..........20, 21, 22

*SAS Inst., Inc. v. World Programming Ltd.*, 874 F.3d 370 (4th Cir. 2017) .......................24

*Seremeth v. Bd. of Cty. Comm'rs Frederick Cty.*, 673 F.3d 333 (4th Cir. 2012) ..............14

*U.S. Student Ass'n Found. v. Land*, 546 F.3d 373 (6th Cir. 2008) ....................................14

**FEDERAL STATUTES & RULES**

52 U.S.C. § 20501(b) ...........................................................................................................6

52 U.S.C. § 20507(c) ................................................................................................... passim

52 U.S.C. § 20507(d) ................................................................................................... passim

52 U.S.C. § 20507(e) .....................................................................................................7, 18

52 U.S.C. § 20507(f) ..............................................................................................17, 18, 23

Fed. R. Civ. P. 56(a) ......................................................................................................6, 13

Fed. R. Civ. P. 56(b) ...........................................................................................................14

**STATE STATUTES**

N.C. Gen. Stat. § 163A-911 ......................................................................................... passim

N.C. Gen. Stat. § 163A-912 ..........................................................................................4, 8, 9, 23

Case 1:16-cv-01274-LCB-JLW   Document 94   Filed 03/05/18   Page 3 of 31

**LEGISLATIVE HISTORY**

S. REP. NO. 103-6 (1993)......................................................................................24

S. REP. NO. 103-6 (1993) ………………………………………………………… 19

H. REP. NO. 103-9 (1993)....................................................................................24

Case 1:16-cv-01274-LCB-JLW   Document 94   Filed 03/05/18   Page 4 of 31

## NATURE OF THE MATTER BEFORE THE COURT

The National Voter Registration Act ("NVRA") protects the fundamental right to vote by mandating that a voter may be removed from the registration rolls based on a change in residence under only two circumstances: (1) the state has received the voter's written confirmation that the voter moved outside the county, or (2) the state has complied with the NVRA's notice and waiting-period provisions. 52 U.S.C. §20507(d). The NVRA further protects the right to vote by prohibiting any systematic program that removes voters from the rolls within 90 days of a federal election. *Id.* §20507(c)(2)(A).

Despite these protections, North Carolina maintains a statutory "challenge procedure," N.C. Gen. Stat. §§163A-911 and 163A-912,[1] the enactment of which predates the NVRA, authorizing county coards of elections to remove registered voters pursuant to residency-based challenges up to 25 days before any election. Those provisions authorize removal of voters upon a private party's challenge based on a single piece of returned mail.

In the weeks and months before the 2016 Election, Defendants North Carolina State Board of Elections ("SBOE"), Cumberland County Board of Elections ("Cumberland CBOE"), Moore County Board of Elections ("Moore CBOE"), and Beaufort County Board of Elections ("Beaufort CBOE"), and their directors and members cancelled thousands of voter registrations based on an alleged change in residence pursuant to these state challenge provisions. None of the cancellations was supported by the voter's written confirmation

---

[1] These sections are former N.C. Gen. Stat. §§163-85 and 163-86, as recodified by Session Law 2017-6.

Case 1:16-cv-01274-LCB-JLW   Document 94   Filed 03/05/18   Page 5 of 31

that the voter had moved. Rather, these voter purges resulted from CBOE proceedings triggered by challenges filed in bulk by private individuals on the basis of returned mail from a mass mailing. Defendants removed these voters without complying with the NVRA's notice and waiting-period provisions and in violation of the NVRA's bright-line 90-day prohibition of systematic removals.

On October 31, 2016, Plaintiffs North Carolina State Conference of the NAACP ("NC NAACP"), Moore County Branch of the NAACP, James Edward Arthur, Sr., James Michael Brower, Grace Bell Hardison, and James L. Cox ("Plaintiffs") filed this action, along with an application for Temporary Restraining Order. On November 4, 2016, this Court concluded Plaintiffs were likely to succeeed on the merits of their two NVRA claims and granted a preliminary injunction enjoining Defendants from further processing residency-based challenges or cancelling voters' registrations based on challenges, and ordering, *inter alia*, restoration of removed voters in Cumberland, Moore, and Beaufort Counties.[2] Prelim. Inj. Order, ECF No. 43.

---

[2] As noted in the December 18, 2017 Joint Rule 26(f) Report, the SBOE disagrees with the other Parties' understanding of the preliminary injunction. Plaintiffs and Defendant CBOEs believe that the preliminary injunction remains and will remain in effect until entry of final judgment, or until the Court dissolves the injunction, including during the upcoming 2018 federal election. The SBOE posits that the preliminary injunction was limited to the 2016 Election and to the three CBOEs that are defendants in this case. *See* Joint Rule 26(f) Report at 3-4, ECF No. 82. Plaintiffs earlier today filed a Motion for Clarification requesting the Court's guidance in resolving this dispute. ECF No. 91.

Plaintiffs and each Defendant group agree that the facts in the Stipulations of Undisputed Facts are undisputed.[3]  Thus, Plaintiffs' NVRA claims may be resolved as a matter of law.  Accordingly, Plaintiffs seek partial summary judgment as to Counts I and II of the Complaint, pursuant to Federal Rule of Civil Procedure 56(a).

## QUESTIONS PRESENTED

Are Plaintiffs entitled to summary judgment on Count I where Defendants removed registered voters pursuant to residency-based challenges without complying with the NVRA's required two-federal-election-cycle waiting period after providing adequate NVRA notice?

Are Plaintiffs entitled to summary judgment on Count II where Defendants systematically purged voters within 90 days of a federal election?

## BACKGROUND

### A.  Statutory Background

#### 1.  National Voter Registration Act

Congress enacted the NVRA to "increase the number of eligible citizens who register to vote in elections for Federal office . . . ; to protect the integrity of the electoral process; and to ensure that accurate and current voter registration rolls are maintained."  52 U.S.C. §20501(b).  Once a voter is registered, the NVRA imposes strict safeguards against improper removal from the voting rolls.  *Id.* §20507(a)(3)-(4).

---

[3] The parties' Stipulations of Undisputed Facts are attached as exhibits to the accompanying Declaration of Leah Kang.

7

Specifically, the NVRA prohibits removing a voter based on change of residence unless the voter: (1) confirms the change of residence in writing, or (2) fails to respond to a notice, the contents and manner of which are prescribed by the NVRA, *and* fails to vote during the next two general election cycles after receiving the notice. *Id.* §20507(d). The formal notice §20507(d)(2) requires is "a postage prepaid and pre-addressed return card, sent by forwardable mail, on which the registrant may state his or her current address." *Id.* §20507(d)(2). The notice must also explain:

(A) If the registrant did not change his or her residence, or changed residence but remained in the registrar's jurisdiction, the registrant should return the card not later than the time provided for mail registration under subsection (a)(1)(B). If the card is not returned, affirmation or confirmation of the registrant's address may be required before the registrant is permitted to vote in a Federal election during the period beginning on the date of the notice and ending on the day after the date of the second general election for Federal office that occurs after the date of the notice, and if the registrant does not vote in an election during that period the registrant's name will be removed from the list of eligible voters.

(B) If the registrant has changed residence to a place outside the registrar's jurisdiction in which the registrant is registered, information concerning how the registrant can continue to be eligible to vote.

*Id.*

The NVRA also states that "[i]n the case of a change of address, for voting purposes, of a registrant to another address *within the same registrar's jurisdiction*, the registrar shall correct the voting registration list accordingly, and the registrant's name may not be removed from the official list of eligible voters by reason of such change except as provided in subsection (d)." *Id.* §20507(e)(2)(A) (emphasis added).

8

In addition, states must "complete, not later than 90 days prior to the date of a primary or general election for Federal office, any program the purpose of which is to systematically remove the names of ineligible voters from the official lists of eligible voters." *Id.* §20507(c)(2)(A). The only exceptions are upon the registrant's request, criminal conviction, incompetence, or death. *Id.* §20507(c)(2)(B).

### 2. North Carolina's Challenge Procedures

North Carolina laws that predate the NVRA allow any voter to challenge the right of another voter in the same county to register, remain registered, or vote up to 25 days before a primary, general, or special election based on specified grounds, including non-residence in the county or precinct where the voter is registered to vote. N.C. Gen. Stat §163A-911(a), (c)(2), (c)(3).

If a challenge is made, the county board of elections shall schedule a preliminary hearing. *Id.* §163A-911(d). Presentation at that hearing "of a letter mailed by first-class mail to the voter at the address listed on the voter registration card and returned because the person does not live at the address shall constitute prima facie evidence that the person no longer resides in the precinct." *Id.* §163A-911(e). If the county board finds that "probable cause exists that the person challenged is not qualified to vote," the board must schedule a full hearing and send notice of the hearing to the challenged voter at "the address of the voter listed in the registration records." *Id.* §§163A-911(d), 163A-912(b).

At the full hearing, the challenge "shall be sustained" and the challenged voter's registration cancelled unless the voter testifies in person and under oath or submits a sworn

9

affidavit confirming residency in the precinct where the voter is registered. *Id.* §163A-912(c).

## B. Factual Background

### 1. Cumberland County

In Cumberland County, Mike Hyers brought challenges claiming that over 4,000 voters did not live in the precinct where they were registered. Cumberland Stipulations ¶¶1-2. For each, Hyers submitted as evidence only a single piece of mail that had been returned as undeliverable. *Id.* ¶2. Each had been mailed by the "Voter Integrity Project of NC—Cumberland County" and marked "DO NOT FORWARD." *Id.*

The Cumberland CBOE held preliminary hearings on these challenges in September and October 2016, and found probable cause regarding 3,500 voters based solely on the returned mailing. *Id.* ¶¶2-3. Unless voters updated their voter registration or attended the hearing to contest the challenge, or the CBOE staff otherwise found the challenge forms defective, the CBOE found probable cause. *Id.*, Ex. A (Sept. 10 & 15 Hearings Order) at 4-22; *Id.*, Ex. B (Sept. 30 Hearing Order) at 5-6.

The CBOE mailed these 3,500 voters a notice stating that their right to vote was being challenged and that to remain registered they were required to verify their identity and qualifications at a challenge hearing. *Id.* ¶4 & Ex. D. These notice-of-challenge letters did not comply with the NVRA's requirements for notice under §20507(d)(2). *Id.*

On September 30 and October 21, 2016, the CBOE held full challenge hearings and sustained the 3,500 challenges except for a few cases where the challenged voters attended

10

the hearing or otherwise responded to the challenge by, for example, updating their voter registration. *See id.* ¶6 & Ex. B at 2-3. The CBOE did not send these voters any other notice before ordering cancellation of their registrations. *Id.* ¶¶4, 6. *See* SBOE Stipulations ¶¶16-20, 35 (stipulating to Cumberland Stipulations ¶¶1-8, 11, and in part ¶10)

## 2. Moore County

In Moore County, N. Carol Wheeldon brought challenges against over 498 voters claiming that they did not live in the precinct where they were registered. Moore Stipulations ¶¶1-2. For each, Wheeldon submitted as evidence only a single piece of mail that had been returned as undeliverable. *Id. ¶*3. Each had been mailed by the "Moore Voter Integrity Project" and marked "DO NOT FORWARD." *Id.*

The CBOE held a preliminary hearing on September 6, 2016. *Id.* ¶5. Where CBOE staff found updated information about the challenged voters, for example from an internet search or review of public records, those challenges were resolved or dismissed before the preliminary hearing. *Id.* ¶4. For the 399 remaining challenges, the CBOE found probable cause based solely on the challenger's returned mailing. *Id.* ¶5.

The CBOE mailed to these 399 voters a notice stating that they were required to verify their identity and qualifications to remain registered to vote at a challenge hearing. *Id.* ¶¶6-8 & Ex. A. These notice-of-challenge letters did not comply with the NVRA's requirements under §20507(d)(2). *Id.* ¶¶7-8.

Plaintiff Michael Brower has lived in Moore County since 1999 and resided at his current address for three years. *Id.* ¶9. Although he is a resident of Moore County and an

11

eligible voter, Brower was challenged based on non-residency in a precinct. *Id.* Wheeldon based her challenge against Brower on a returned postcard that had been mailed to a Moore County address where Brower had previously lived. *Id.* The CBOE found probable cause and mailed Brower a notice-of-challenge letter. *Id.* ¶9. On October 14, 2016, after Brower appeared in person to attest to his eligibility, the CBOE dismissed the Brower challenge. *Id.*

The CBOE held a full challenge hearing on October 14, 2016 and sustained 374 challenges. *Id.* ¶13. The CBOE sustained challenges unless, as in Brower's case, the voters or their representative contacted the CBOE to contest the challenge, or CBOE staff was otherwise able to find updated information on the voters. *Id.* The CBOE did not send those voters any other notice before cancelling their registrations. *Id.* ¶24. *See* SBOE Stipulations ¶¶21-25, 33 (stipulating to Moore Stipulations ¶¶1-4, 7, 9-13, 16, 18-20, 23-25, and in part ¶¶5 and 15).

### 3. Beaufort County

In Beaufort County, in the months before the 2016 Election, four individuals brought challenges against 138 voters claiming that they did not reside in the precinct where they were registered. Beaufort Stipulations ¶¶1-2. The challengers' only evidence was returned mail from a 2015 mass mailing by a political campaign. *Id.* ¶3.

On October 7 and 14, 2016, the Beaufort CBOE held preliminary hearings and found probable cause regarding 106 voters based solely on evidence of the returned mailing. *Id.* ¶¶5, 10. Unless the voters had updated their voter registration or the challenge

12

was withdrawn, the CBOE found probable cause, even where the returned mailings had been mailed to the voter's residential address instead of the *mailing address* listed on the voter's registration. *Id.* ¶¶4-5, 9-11.

Plaintiff Grace Bell Hardison, a 100-year-old African-American woman and lifelong Beaufort County resident, has lived at her current residence since 2011, but receives mail at a P.O. Box mailing address, which she listed on her voter registration. *Id.* ¶6. The returned campaign mailer that formed the basis of the Hardison challenge was mailed to Hardison's residential address instead of her mailing address. *Id.* The CBOE nonetheless found probable cause. *Id.*

Plaintiff James Lee Cox is a Beaufort County resident who receives mail at a P.O. Box mailing address, which he listed on his voter registration. *Id.* ¶12. The CBOE found probable cause as to the Cox challenge even though the returned mailer was mailed to Cox's residential address instead of his mailing address. *Id.*

After finding probable cause, the CBOE mailed the challenged voters a notice stating that their right to vote was being challenged and that they were required to attend a challenge hearing to verify their identity and qualifications to remain registered to vote. *Id.* ¶8. These notices did not comply with the NVRA's notice requirements under §20507(d)(2). *Id.* ¶8 & Ex. A.

On October 24 and 29, 2016, the CBOE held full challenge hearings, sustaining 65 and postponing 13 challenges. *Id.* ¶¶15 & 21. Challenges were postponed or sustained unless the challenged voters affirmatively responded to the challenge by, for example,

13

updating their voter registration or providing the CBOE staff with information that led the challenger to withdraw his challenge. *Id.* ¶¶17-18.

The CBOE sustained the challenge against Plaintiff Arthur despite testimony from Veronica Ward, a community member who attended the hearing, that Arthur had resided in a nursing home in Beaufort County for the past two years. *Id.* ¶16. The CBOE did not send Arthur or any other voters whose challenges were sustained any additional notice before ordering cancellation of their registrations. *Id.* ¶25.

The CBOE postponed rather than dismissed 13 challenges despite testimony from Ward that the challenged voters continued to reside in Beaufort County. *Id.* ¶19. For example, Ward testified that she had visited Latasha Freeman at the residence in dispute and the CBOE discussed that the likely explanation for the returned mailing was that a hurricane had caused flooding in the area of Freeman's residence. *Id.* ¶20. The CBOE postponed resolution of the challenges against Freeman and a dozen other voters until November 7, 2016, with the understanding that unless those voters contacted the CBOE to update their registration, or the challenger withdrew his challenge, the challenge would be sustained automatically and the voters would be struck from the rolls. *Id.* ¶19. *See* SBOE Stipulations ¶¶26-30, 34 (stipulating to Beaufort Stipulations ¶¶1-21 and 24-26).

## LEGAL STANDARD

Summary judgment is appropriate where there is "no genuine issue as to any material fact" and the moving party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Seremeth v. Bd. of Cty. Comm'rs Frederick Cty.*, 673 F.3d 333, 336 (4th Cir.

14

2012). "[A] party may file a motion for summary judgment at any time until 30 days after the close of all discovery." Fed. R. Civ. P. 56(b). Because the material facts relevant to Counts I and II of Plaintiffs' Complaint are undisputed, Plaintiffs' NVRA claims are ripe for summary judgment.

## ARGUMENT

### A. Count I: NVRA's Notice and Waiting-Period Requirements

The NVRA "limits the methods which a state may use to remove individuals from its voting rolls" in order to "ensure that eligible voters are not disenfranchised by improper removal." *U.S. Student Ass'n Found. v. Land*, 546 F.3d 373, 381 (6th Cir. 2008). With respect to removals for changes in residence, "[a] State *shall not* remove the name of a registrant from the official list of eligible voters in elections for Federal office . . . *unless*" the registrant has confirmed a change of residence in writing, or the voter *both* fails to respond to a formal notice, as defined by §20507(d)(2), *and then* fails to vote in two subsequent federal election cycles. 52 U.S.C. §20507(d); *see also U.S. Student Ass'n Found.*, 546 F.3d at 381.

All of the cancellations of voter registrations at issue in this case were based on alleged changes of residence and none was supported by a voter's written confirmation of a change in residence. *See* Cumberland Stipulations ¶¶1, 6; Moore Stipulations ¶¶1-2, 13; Beaufort Stipulations ¶¶1-2, 17-18. The NVRA therefore required Defendants to wait two federal election cycles *after* the voters received an NVRA notice under §20507(d)(2) before removing any voters from the rolls. However, as the Court concluded in its

preliminary injunction ruling, Defendants failed to comply with this two federal-election-cycle waiting period and in some cases, complied with *neither* the waiting period *nor* the notice requirement. Plaintiffs are thus entitled to summary judgment on Count I of the Complaint.

1. **Notice Requirement.** Section 20507(d)(2) requires "a postage prepaid and pre-addressed return card, sent by forwardable mail, on which the registrant may state his or her current address," which must provide prescribed information regarding how the voter may respond and the consequences for not responding. 52 U.S.C. §20507(d)(2); *see* Statutory Background, *supra*.

There is no dispute that the notice-of-challenge letters CBOEs sent to challenged voters failed to comply with these NVRA notice requirements. *See* Cumberland Stipulations ¶4 & Ex. B; Moore Stipulations ¶¶7-8 & Ex. A; Beaufort Stipulations ¶8 & Ex. A. The CBOEs believed that the NVRA's requirements did not apply and therefore made no effort to ensure that the notice-of-challenge letters were NVRA-compliant. *Id.* The CBOEs also did not send the challenged voters any other notice before removing them from the rolls. Cumberland Stipulations ¶4; Moore Stipulations ¶24; Beaufort Stipulations ¶25. Thus, where challenged voters' only contact from their CBOE was the notice-of-

16

challenge letter, they were removed from the rolls in violation of the NVRA based on the deficient notice alone.[4]

The Cumberland and Moore CBOEs suggest that voters challenged in their counties were on the "inactive" list and so may have at some point received, unrelated to the challenges, a notice compliant with §20507(d)(2).[5] But the removal of those voters still violated the NVRA because, as discussed *infra*, they were struck from the rolls before two federal election cycles had passed after the date of any such notice.

**2. Waiting Period Requirement.** The CBOEs failed to comply with the NVRA's requirement that, before cancelling voter registrations, states must wait for a "period beginning on the date of the notice and ending on the day after the date of the second general election for Federal office that occurs after the date of the notice." *Id.* §20507(d)(1)(B)(ii).

In all three counties, some (if not all) challenged voters were purged from the rolls *before* the NVRA-mandated two federal-election-cycle waiting period had passed. *See* Cumberland Stipulations ¶8 ("Some number of the more than 3,500 challenged voters

_____

[4] It is undisputed that the individual challengers' mass mailings did not comply with §20507(d)(2)'s requirements. *See* Cumberland Stipulations ¶2 (mailings marked "DO NOT FORWARD"); Moore Stipulations ¶3 (same); Beaufort Stipulations ¶3 (mailings were "campaign mailings"). In any event, a private party's mailing would not trigger the NVRA's waiting period.

[5] The Cumberland and Moore CBOEs maintain, and Plaintiffs stipulate for purposes of this motion, that the challengers in their counties identified challenged voters from an "inactive" list. *See* Cumberland Stipulations ¶4; Moore Stipulations ¶1.

17

whose registrations were canceled had their registrations cancelled before the two federal election cycles had passed after they received a notice that complied with the requirements set forth in 52 U.S.C. §20507(d)(2)."); Moore Stipulations ¶24 (Moore CBOE "did not wait for the voters' failure to vote or to appear to vote in an election during the two federal election-cycle period after receiving [an NVRA-compliant] notice before it removed the voters"); Beaufort Stipulations ¶25 (Beaufort CBOE "did not wait for the voters' failure to vote or to appear to vote in an election during the two federal election-cycle period after receiving such a notice before it removed the voters").

Even if some challenged voters had independently received an NVRA-compliant notice from a CBOE, Defendants still violated the NVRA by removing voters from the rolls without waiting the requisite two federal election cycles. Plaintiffs are thus entitled to summary judgment on Count I of the Complaint.

**3. Invalid Basis for Challenges.** Setting aside Defendants' failure to comply with the NVRA's notice and waiting-period provisions, the CBOEs should never have considered the challenges at all, because the NVRA prohibits removal of a voter from the rolls based solely on a change in residence to a different precinct within the same county.

The NVRA states: "In the case of a change of address . . . of a registrant to another address *within the same registrar's jurisdiction*, the registrar shall correct the voting registration list accordingly, and the registrant's name *may not be removed* from the official list of eligible voters by reason of such change except as provided in subsection (d)." 52 U.S.C. §20507(f) (emphases added).

18

The NVRA also safeguards the right to vote after an intra-county move by permitting voters to vote at multiple polling places in the county. The statute expressly protects any "registrant who has moved from an address in the area covered by one polling place to an address in an area covered by a second polling place within the same registrar's jurisdiction and the same congressional district." By ensuring that, even when such voters fail to notify the county of their move, they "*shall be permitted* to correct the voting records *and vote*" upon confirmation or affirmation of the new address either at the voter's former polling place, a central location within the registrar's jurisdiction, or, if state law allows, at the voter's current, new polling place. *Id.* §20507(e)(2)(A)(i)-(ii) (emphases added).

Thus, the NVRA provides that voters who move within the county remain eligible to vote. *Id.*; *see also* S. REP. NO. 103-6, at 34 (1993) ("an underlying purpose" of the NVRA is that "once registered, a voter should remain on the list of voters so long as the individual remains eligible to vote in that jurisdiction," and §20507(f) "ensures that if a registered voter moves within the jurisdiction of the same registrar, he or she should be permitted to vote").

But here, the challenges were brought solely based on non-residency in the *precinct* – not the county. And the only evidence the challengers provided was returned mail, which suggests, *at most*, that a voter *may* have changed residence[6] –not that the voter moved *out*

_____

[6] Returned mail does not prove that a voter has moved at all. Mail can be returned for many reasons, including errors by the postal service, or – as was the case for Plaintiffs

*of the county* where previously registered. *See* Statement of Interest of the U.S. at 5 (ECF No. 33) ("second-hand evidence such as mail returned as undeliverable may not actually reflect a change of residence impacting a citizen's eligibility to vote in the jurisdiction," and therefore NVRA "precludes such second-hand evidence from being treated as the dispositive predicate for removal from the rolls without [the notice and waiting-period procedures]"). The challengers thus failed to establish that *any* of the thousands of challenged voters were ineligible to remain registered in the counties, and federal law required the CBOEs to dismiss the challenges on that basis alone. Instead, the CBOEs purged the challenged voters, including in Plaintiff Arthur's case, even after hearing testimony that he continued to reside in Beaufort County. Beaufort Stipulations ¶16.

## B. Count II: NVRA's 90-day Prohibition

The NVRA mandates: "A State shall complete, not later than 90 days prior to the date of a primary or general election for Federal office, any program the purpose of which is to systematically remove the names of ineligible voters from the official lists of eligible voters." 52 U.S.C. §20507(c)(2)(A). This bright-line window,[7] sometimes called a "quiet period," reflects Congress's determination that "using change-of-address information to

---

Hardison and Cox – because a voter cannot receive mail at home and receives mail at a P.O. Box instead. *See also* Prelim. Inj. Mem. Op. at 20 ("There are a number of reasons why such mailings might be returned as undeliverable"). Here, the individual challengers submitted large batches of returned mail, without any evidence that the mail had been returned because the person did not live at the address.

[7] The only exceptions to the 90-day bar are inapplicable here. *See* 52 U.S.C. §20507(c)(2)(B).

purge voter rolls less than 90 days before an election creates an unacceptable risk that eligible voters will be denied the right to vote." *Mont. Democratic Party v. Eaton*, 581 F. Supp. 2d 1077, 1081 (D. Mont. 2008); *see also Arcia v. Fla. Sec. of State*, 772 F.3d 1335, 1346 (11th Cir. 2014) (NVRA prohibits systematic removals of voters within 90 days before the election "because that is when the risk of dis[en]franchising eligible voters is the greatest").

Congress "decided to be more cautious" with "programs that systematically remove voters," because unlike "individualized removals," which are "usually based on individual correspondence or rigorous individualized inquiry," systematic removals pose a greater risk of erroneous removal of eligible voters. *Arcia*, 772 F.3d at 1346. The weeks leading up to an election are when election officials are busiest, the likelihood of error is highest, and the time and resources to correct errors are lowest. *See id.* ("Eligible voters removed days or weeks before Election Day will likely not be able to correct the State's errors in time to vote."). The 90-day quiet period thus provides a fundamental protection against the grave harm of possible disenfranchisement in the lead-up to an election.

In this case, although the 90-day quiet period began August 10, 2016, Defendant CBOEs held hearings at which they removed voters based on residency challenges in September and October 2016. As the Court has previously noted, "there is little question that the County Boards' process of allowing third parties to challenge hundreds, and in Cumberland County thousands, of voters within 90 days before the 2016 General Election constitutes the type of 'systematic' removal prohibited by the NVRA." Prelim. Inj. Mem.

Case 1:16-cv-01274-LCB-JLW   Document 94   Filed 03/05/18   Page 21 of 31

Op. at 12-13. Plaintiffs are thus entitled to summary judgment on Count II of the Complaint.

**1. State Program.** Although the challenges at issue were initiated by individuals, the resultant process was directed by state actors, who, acting under state law, ordered and executed the cancellations of registrations. State law established the challenge mechanisms and procedures, including the applicable evidentiary thresholds. N.C. Gen. Stat. §§163A-911–912. Defendants applied and implemented these laws, as they conducted preliminary and full hearings, made probable cause determinations, and sent notices to voters requiring them to attend the hearing or submit affidavits swearing to their qualifications to vote. *See id*. §§163A-911(d)-(e), 163A-912. Defendants (not private actors) decided to remove the challenged voters from the rolls, and executed the registration cancellations. *See id*. §163-912(c)-(d). Defendants' challenge and purge process therefore was a state program.

*Eaton* involved a similar scheme under which private parties filed *en masse* challenges against 6,000 registered Montana voters. 581 F. Supp. 2d at 1078-80. There, however, the Secretary of State had directed the counties *not* to send notice-of-challenge letters or otherwise act on any challenges. *Id.* at 1082 n.3 & 1084. The court held that the plaintiffs had not yet demonstrated a violation of federal law, *id.* at 1080, but was careful to note, "[i]f the State's procedure for evaluating voter challenges allows a county election official to conclude that any voter [the challenger] has targeted on the basis change-of-address information cannot vote, or that the elector has to prove anything before he or she

22

is allowed to vote, *the State would then be in clear violation of federal law.*" *Id.* at 1083 (emphasis added).

Here, by processing mass challenges in the 90 days before a federal election and cancelling thousands of registrations, Defendants did precisely what the *Eaton* court saw as a clear violation of §20507(c)(2)(A). *See also* Statement of U.S. at 10 (North Carolina challenge and purge process "constitute[s] a state program to remove ineligible voters" because "county officials immediately assumed control of the process, and the ultimate removal of names from the statewide list of legally registered voters was conducted by county officials in accordance with state law procedures").

**2. Systematic Removal.** As the Court previously noted, the challenges at issue constituted an effort "to systematically remove the names of ineligible voters" within the meaning of §20507(c)(2)(A).

Defendants held hearings where they processed challenges and purged voters in large batches. For example, the Cumberland CBOE sustained over 3,500 challenges at a single hearing. Cumberland Stipulations ¶6 & Ex. B. The purge was so large-scale that Cumberland CBOE staff requested the SBOE's assistance processing the cancellations because they lacked the resources to do it. *Id.* ¶7. Likewise, the Moore CBOE ordered a 374-voter purge at a single hearing, and the Beaufort CBOE ordered a 65-voter purge over the course of two hearings. Moore Stipulations ¶13; Beaufort Stipulations ¶¶15 & 21.

These systematic removals were based on challenges filed *en masse* on the basis of returned mail from mass mailings and without individualized voter information.

23

Cumberland Stipulations ¶4; Moore Stipulations ¶1; Beaufort Stipulations ¶3. As the Eleventh Circuit explained, the use of a "mass computerized data-matching process . . . , followed by the mailing of notices" is exactly the type of systematic program prohibited by §20507(c)(2)(A). *Arcia*, 772 F.3d at 1344; *see also* H. REP. NO. 103-9, at 16 (1993) ("This [90-day prohibition] applies to the State outreach activity such as a mailing or a door to door canvas and requires that such activity be completed by the 90-day deadline."); S. REP. NO. 103-6, at (1993) (same).

Given §20507(c)(2)(A)'s broad directive that the state must complete "any program" of systematic removal before the 90-day period, Defendants' actions violated the NVRA. *See Arcia*, 772 F.3d at 1344 ("[T]he phrase 'any program' suggests that the 90 Day Provision has a broad meaning.").

## C. Declaratory and Injunctive Relief

The Court should grant the following declaratory relief:

1. Declare that Defendants' voter challenge and purge practices in the weeks and months before the November 2016 election violated 52 U.S.C. §20507(c)(2)(A), 52 U.S.C. §20507(d)(1), and 52 U.S.C. §20507(f); and

2. Declare that N.C. Gen. Stat. §§163A-911 and 163A-912's authorization of challenges based on non-residency in the state, county, or precinct violates 52 U.S.C. §20507(d)(1) and 52 U.S.C. §20507(f).

In addition, the Court should issue a permanent injunction prohibiting Defendants from further cancelling voter registrations in violation of the NVRA. A party seeking a permanent injunction must demonstrate:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disservd by a permanent injunction.

*eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006); *see also SAS Inst., Inc. v. World Programming Ltd.*, 874 F.3d 370, 385 (4th Cir. 2017). Here, all four factors weigh heavily in favor of a permanent inunction.

Plaintiffs have suffered irreparable injury and will face future danger of such injury without a permanent, statewide injunction. Defendants' conduct resulted in the unlawful purging of thousands of eligible voters in Beaufort, Moore, and Cumberland Counties, including the removal or threatened removal of the individual Plaintiffs in this case. Similar unlawful disenfranchisement may have also occurred in other counties across the state. *See* SBOE Stipulations ¶10.[8]

Absent a permanent statewide injunction, Defendants and other CBOEs across the state will have license to purge voters in violation of federal law, and private challengers

---

[8] In a declaration filed just prior to the preliminary injunction hearing, SBOE Director Strach stated that in the 24 months before November 1, 2016, five counties other than Moore, Beaufort, and Cumberland removed voters from the rolls due to voter challenges: Brunswick (13 voters), Buncombe (101 voters), Durham (82 voters), Guilford (1 voter), Surry (22 voters). Strach Dec. ¶ 8, ECF No. 39.

25

across the state will be free to use state challenge procedures to circumvent the NVRA's protections, resulting in the disenfranchisement of additional eligible voters. Plaintiff NC NAACP and its branches, including Plaintiff Moore County Branch of the NAACP, will be forced in future election cycles to divert valuable and limited resources away from their core mission to monitor, investigate, respond to, mitigate, and address continued unlawful purges and the threat of such purges.

Only statewide relief can remedy such harm. Any injunction limited solely to the Defendant CBOEs, for example, would not redress the fact that state law authorized or even required Defendant CBOEs' unlawful conduct. *See* Cumberland Stipulations ¶4; Moore Stipulations ¶¶7-8; Beaufort Stipulations ¶8. Enjoining the three Defendant CBOEs from unlawful purging without requiring the State BOE to prevent the same unlawful practices in the remaining 97 counties would pave the way for uneven and unlawful implementation of the NVRA across the state.

A statewide injunction is appropriate, and the Court has jurisdiction to order such relief, because State Defendants are a party to this litigation, and Defendant Strach is responsible for ensuring *statewide* compliance with the NVRA. *See* N.C. Gen. Stat. §163A-861; *see also* Prelim. Inj. Mem. Op. at 10; SBOE Stipulations ¶¶2-4. Recognizing this duty, Director Strach issued, upon the Court's preliminary injunction ruling, a statewide directive ordering all CBOEs to cease processing cancellations under the state challenge statutes. ECF No. 61-1 at 9. In ordering permanent relief, the Court should similarly direct State Defendants to take all reasonable and necessary steps to ensure

26

statewide compliance with the NVRA, consistent with the Court's permanent injunction, including by ensuring restoration of voters in other counties who were unlawfully removed based on residency-based challenges.

As to the remaining factors, as the Court recognized in granting a preliminary injunction, Plaintiffs have no adequate remedy at law. Money damages cannot remedy the loss of the fundamental right to vote, or compensate for the burden of perpetual monitoring against unlawful mail-based challenge and purge schemes.

The balance of equities also warrants an injunction because, while Plaintiffs will face irreparable hardship in the absence of such equitable relief, a permanent injunction will do no harm to Defendants, who can still lawfully remove any voters who have moved out of their county of registration by simply following the processes laid out in the NVRA.

Finally, the requested permanent injunctive relief does not disserve, but rather advances, the public interest because it protects the fundamental right to vote by ensuring that the SBOE and all CBOEs comply with the NVRA before removing eligible voters from the rolls.

Accordingly, the Court should issue a permanent injunction as follows:

1. Defendants, their officers, agents, employees, attorneys, and all persons in active concert or participation with them shall ensure that:

    A. No challenge hearings are held, no actions are taken to process challenges, and no voter registrations are cancelled through the challenge procedures set forth in N.C. Gen. Stat. §§163A-911–912, when those challenges are based on non-

residency in the state, county, municipality or precinct unless, as required by the NVRA, Defendants have either –

    i.   Received written confirmation from the voter that the voter has changed her residence to outside of the county, 52 U.S.C. §20507(d)(1)(A) and N.C. Gen. Stat. §163-82.14(d)(1), or

    ii.   Sent the voter notice, as described in 52 U.S.C. §20507(d)(2), and waited for a period of two federal election cycles during which time the voter has not voted or appeared to vote, as set forth in 52 U.S.C. §20507(c)(2)(A) and N.C. Gen. Stat. §163-82.14(c)(2).

B.   In the 90 days prior to a federal election, no voter registrations are cancelled based on (i) non-residency in the state, county, municipality or precinct, or (ii) challenges brought under N.C. Gen. Stat. §§163A-911–912 by a private party or parties that result in the systematic removal of voters.

2.  Defendants Strach and the SBOE shall take all reasonable and necessary steps to ensure statewide compliance with the foregoing.

3.  Defendants Strach and the SBOE shall restore to the rolls and send mailed notices of restoration to the mailing address of wrongly removed voters statewide who fit the following criteria: (i) the voter's SEIMS record indicates she or he was removed due to a sustained challenge between November 8, 2010 and the date of the permanent injunction order in this case; (ii) SEIMS records do not show that the voter subsequently registered or attempted to register at another address in North

28

Carolina; and (iii) the reason for removal, if ascertainable, did not involve qualifications other than residency (e.g., age).

## CONCLUSION

For the reasons discussed, this Court should grant Plaintiffs' motion for partial summary judgment and enter the requested relief.

Dated:   March 5, 2018

Respectfully submitted,

By: /s/ Stacey M. Leyton
Stacey M. Leyton (CA SBN 203827)
Peder J. Thoreen (CA SBN 217081)
Eric P. Brown (CA SBN 284245)
Connie K. Chan (CA SBN 284230)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Telephone: (415) 421-7151
Facsimile: (415) 362-8064
E-mail: sleyton@altber.com
pthoreen@altber.com
ebrown@altber.com
        cchan@altber.com

        /s/ Penda D. Hair
Penda D. Hair (DC SBN 335133)
FORWARD JUSTICE
P.O. Box 42521
Washington D.C. 20015
Telephone: (202) 256-1976
Email: phair@forwardjustice.org

Caitlin Swain (VA SBN 84515)
Leah Kang (NC SBN 51735)
FORWARD JUSTICE
400 W. Main Street, Suite 203
Durham, NC 27701
Telephone: (919) 323-3889
Email:  cswain@forwardjustice.org
        lkang@forwardjustice.org

        /s/ Irving Joyner
Irving Joyner (NC SBN 7830)
P.O. Box 374
Cary, NC 27512
Telephone: (919) 560-6293
Fax: (919) 530-6339
Email: ijoyner@nccu.edu

 /s/ Mary Joyce Carlson
Mary Joyce Carlson (DC SBN 987939)
1101 New York Avenue NW
Washington DC 20008
Telephone: (202) 230-4096
Fax: (202) 408-4649
Email: Carlsonmjj@yahoo.com

## CERTIFICATE OF WORD COUNT

As required by Local Rule 7.3(d)(1) and (2), I certify that this document contains 6,216 words, excluding the parts of the document that are exempted by Local Rule 7.3(d)(1). The document therefore complies with with Local Rule 7.3(d)(1), which limits briefs in support of motions and responsive briefs to 6,250 words and reply briefs to 3,125 words.

This the 5th day of March, 2018.

_____/s/_____
Irving Joyner
*Attorney for Plaintiffs*

Case 1:16-cv-01274-LCB-JLW   Document 94   Filed 03/05/18   Page 30 of 31

## CERTIFICATE OF SERVICE

I, Irving Joyner, hereby certify that on March 6, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and have verified that such filing was sent electronically using the CM/ECF.

This the 5th day of March, 2018.

_____*/s/*_____
Irving Joyner
*Attorney for Plaintiffs*