IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No. 1:16-cv-1274-LCB-JLW

| | |
|---|---|
| N.C. STATE CONFERENCE OF THE NAACP, *et al.*, )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>N.C. STATE BD. OF ELECTIONS, *et al.*, )<br>)<br>Defendants. )<br>_____ ) | RESPONSE TO<br>PLAINTIFFS' MOTION<br>TO CLARIFY |

Now come defendants The NORTH CAROLINA STATE BOARD OF ELECTIONS ("State BOE") [1]; A. GRANT WHITNEY, JR., in his official capacity as Chairman of the State BOE; RHONDA K. AMOROSO, in her official capacity as Secretary of the State BOE; KIM WESTBROOK STRACH, in her official capacity as Executive Director of the State BOE; JOSHUA D. MALCOLM, in his official capacity as Member of the State BOE; JAMES BAKER, in his official capacity as Member of the State BOE; MAJA KRICKER, in her official capacity as Member of the State BOE, (collectively, the "SBE Defendants"), by and through their undersigned counsel and hereby respond to Plaintiffs' Motion to Clarify Scope of Preliminary Injunction or, Alternatively, Motion to Modify Preliminary Injunction (ECF No. 91) ("Motion to Clarify" or "Motion").

---

[1] The State Board of Elections and the Ethics Commission have been merged into the Bipartisan State Board of Elections and Ethics Enforcement.

## NATURE OF THE MATTER BEFORE THE COURT

Plaintiffs seek to clarify the Court's November 4, 2016 Order Granting Preliminary Injunction ("PI Order," ECF No. 43). Specifically, Plaintiffs seek clarification as to whether the PI Order (i) applies to all counties within North Carolina, and (ii) applies to any federal election occurring during the pendency of this lawsuit, rather than just the 2016 election.

As explained below, and as previously described in the SBE Defendants' Response in Opposition to Motions to Dismiss by the County Defendants (ECF No. 65 at 2-6), the SBE Defendants have understood from the language and context of the PI Order and Memorandum Opinion (ECF No. 42) that the PI Order only extended to the specific counties named as defendants herein and to the November 2016 General Election.[2] Nevertheless, the SBE Defendants welcome any clarification the Court deems advisable, if they have inadvertently misinterpreted the PI Order.

## STATEMENT OF FACTS

The PI Order was entered on November 4, 2016 – the day before the end of the same-day registration period in the 2016 general election cycle, and just four days before Election Day, November 8, 2016. The PI Order reinstated the ability of certain removed voters to cast a ballot during that election. The PI Order, which expressly and fully incorporates the Court's Memorandum Opinion, (PI Order at 2), focused on addressing

---

[2] This Court's Memorandum Opinion and Order on the County Defendants' Motion to Dismiss noted that the SBE Defendants and the county board of elections Defendants interpreted the PI Order differently from each other. (ECF No. 77 at 29)

voting rights in the defendant counties for the November 2016 general election.

The Memorandum Opinion states, *inter alia*, that:

> The Court **declines to expand any relief to the counties not named in this lawsuit** and for which the Court has no specific information regarding the process used in those counties or the specific nature of the challenges. The additional counties are not properly before the Court, and the Court "may not enjoin defendants not before [it]." *Hubbard v. Byars*, No. 8:14–33–BHH, 2015 WL 337642, at *14 (D.S.C. Jan. 26, 2015) (citing *Zepeda v. United States I.N.S.*, 753 F.2d 719, 727 (9th Cir. 1983)). Thus, the Court will confine its consideration to the three counties named in this lawsuit and challenges that have been sustained on or after August 10, 2016.

(Mem. Op. (ECF No. 42) at 24)(emphasis added).

The Memorandum Opinion further states:

> It appears that Plaintiffs' requested relief "aim[s] to maintain the status quo and prevent irreparable harm while a lawsuit remains pending," **specifically before the Federal Election on November 8, 2016**.
>
> …
>
> The Court finds that a narrowly tailored injunction is warranted to ensure that eligible voters are not deprived of their right to participate **in the upcoming election** due to a flawed process engaged in by the State and County Boards, which this Court has determined likely violates the NVRA.

(*Id.* at 25) (emphasis added).

Within this context, the second and third decretal paragraph of the PI Order require the restoration of voters removed within 90 days of Election Day, November 8, 2016, and protects those voters from additional challenges on Election Day 2016. (*Id.* at 3-4)  The fourth decretal paragraph, which does not specifically mention the November 8, 2016 election, bars the use of N.C. Gen. Stat. §§ 163-85 and 163-86 "to remove voters from the rolls based on change of residency information in the 90 days preceding a Federal election." (*Id.* at 4)  The fifth decretal paragraph addresses provisional ballots already cast for the

3

November 8, 2016 election. (*Id.* at 4-5) The sixth and seventh decretal paragraphs address absentee ballots for the November 8, 2016 election. (*Id.* at 5) The eighth decretal paragraph does not specifically reference the 2016 Election, but orders Director Strach to "take all reasonable and necessary steps to ensure statewide compliance with the NVRA consistent with this Court's Memorandum Opinion and this Order." (*Id.*)

## QUESTION PRESENTED

Whether the November 4, 2016 PI Order extends to (i) all counties within North Carolina, and (ii) federal elections occurring after November 8, 2016?

## ARGUMENT

### I. THE PI ORDER DOES NOT EXTEND TO ALL COUNTIES WITHIN NORTH CAROLINA

In their Motion to Clarify, Plaintiffs focus narrowly on the fourth and eighth decretal paragraphs of the PI Order. However, when the PI Order and Memorandum Opinion are construed as a whole, it appears that the PI Order does not extend to all counties within North Carolina.

The Court's Memorandum Opinion focuses on the evidence Plaintiffs presented as to the specific processes used by the defendant County Boards of Elections (CBEs) in the 90 days leading up to the November 8, 2016 general election; as well as on the ability of affected voters in those counties to vote in that election. (*See* ECF No. 42 at 11-12) The Court noted, "Plaintiffs argue that in each of these counties, County Boards improperly used change-of-address information submitted to them *en masse* by a few individuals challenging voters' eligibility under North Carolina law." (ECF 42 at 11, citing ECF No.

4

21-1 at 20.)

Thus, it appears the Court was specifically concerned with the process used in the defendant CBEs before the November 2016 general election. (ECF 42 at 12-13)("Here, there is little question that the County Boards' process of allowing third parties to challenge hundreds and, in Cumberland County, thousands of voters within 90 days before the 2016 General Election constitutes the type of "systematic" removal prohibited by the NVRA.") The Court concluded that an injunction against these specific CBEs prior to the November 8, 2016 general election was needed to protect the status quo based on the evidence presented by Plaintiffs.

> Based on the evidence discussed above, the Court concludes that the County Boards' reliance on a single mailing that was returned undeliverable as the basis for sustaining a challenge, resulting in the County Boards systematically purging between 3,500 and 4,000 voters from registration rolls within 90 days of the General Election, was a likely violation of the NVRA.

(ECF 42 at 18)

Similarly, in weighing the interest of the parties, the Court expressly declined to extend the preliminary injunction to counties not before it, focused on voter challenges within the 90-day period before the November 8, 2016 election, and emphasized the need to protect voters in the then upcoming November 8, 2016 election.

> The Court notes that at the hearing, Plaintiffs requested that the Court expand any injunctive relief granted to include additional counties set forth in a declaration filed by the Executive Director of the State Board, which provided data about other counties that had allowed purging of voter registrations based on individual challenges over a 24-month period. (ECF No. 39-1 ¶ 8.) The Court declines to expand any relief to the counties not named in this lawsuit and for which the Court has no specific information regarding the process used in those counties or the specific nature of the

5

challenges. The additional counties are not properly before the Court, and the Court "may not enjoin defendants not before [it]." *Hubbard v. Byars*, No. 8:14–33–BHH, 2015 WL 337642, at *14 (D.S.C. Jan. 26, 2015) (citing *Zepeda v. United States I.N.S.*, 753 F.2d 719, 727 (9th Cir. 1983)). Thus, the Court will confine its consideration to the three counties named in this lawsuit and challenges that have been sustained on or after August 10, 2016.

(ECF No. 42 at 24).

While the SBE Defendants are not opposed to modifying the PI Order with regard to whether it applies to all 100 counties, there is a question as to whether such a modification would be supportable on the current record, which, as the Court noted, is limited to the three defendant CBEs because "the Court [had] no specific information regarding the process used in those counties or the specific nature of [any] challenges [therein]." (ECF No. 42 at 25) Since entry of the PI Order, Plaintiffs have not supplemented the record with additional evidence as to any challenges filed with any of the other 97 CBEs, the processes used by them to address such challenges, or that any voter is at risk of being improperly removed prior to a Federal Election in any other county.

## II. THE SBE DEFENDANTS HAVE REASONABLY UNDERSTOOD THE PI ORDER TO EXTEND ONLY TO THE NOVEMBER 2016 ELECTION

The SBE Defendants' understanding that PI Order and Memorandum Opinion was limited to the then-impending general election was based in part of the Memorandum Opinion's analysis of the immediate and irreparable harm voters would suffer if they were unable to vote:

> It is without question that Individual Plaintiffs have made a clear showing that they will suffer irreparable harm in the absence of an injunction. **The General Election is a few days away and unless Individual Plaintiffs who were purged from the voter rolls are reinstated, they will not be allowed to vote and have that vote counted.** … Such an injury to these

6

> voters is neither speculative nor remote but is real and imminent, *In re Microsoft*, 333 F.3d at 530, and once denied the right to vote on Election Day, "there can be no do-over and no redress" for Individual Plaintiffs, *League of Women Voters*, 769 F.3d at 247.

(ECF No. 42 at 22) (emphasis added) (footnote omitted).

The Court also noted that Plaintiffs' requested relief was focused on maintaining the status quo "specifically before the federal election on November 8, 2016," and that the injunction was "narrowly tailored." (*Id.* at 25) These aspects of the PI Order, combined with the fact that the evidence before the Court focused on the immediate context of the then-impending 2016 general election and the specific counties at issue, reasonably led the SBE Defendants to conclude that the PI Order did not extend beyond that context. Because of the general language of the eighth decretal paragraph in the PI Order, the SBE Defendants interpreted it as a directive to Director Strach to ensure implementation of the proceeding paragraphs in the PI Order rather than interpreting it to override the specific limitations therein. As such, the SBE Defendants complied by issuing Numbered Memo 2016-23 directing the defendant CBEs herein to implement this Court's orders, and to all CBEs, including defendants herein, directing them that, "No future residency challenges may be heard under G.S. §§ 163-85 and 163-86 prior to Election Day."

The SBE Defendants are committed to fully following and implementing all orders of this Court, including the PI Order. The SBE Defendants believe that they reasonably interpreted and implemented the PI Order and the Court's Memorandum Opinion, but certainly stand ready to accept and implement any clarification or modification the Court deems advisable.

Respectfully submitted, this the 26th day of March 2018.

>JOSHUA H. STEIN
>Attorney General
>
>/s/ James Bernier, Jr.
>James Bernier, Jr.
>Special Deputy Attorney General
>N.C. State Bar No. 45869
>Email: jbernier@ncdoj.gov
>
>/s/ Alexander McC. Peters
>Alexander McC. Peters
>Senior Deputy Attorney General
>State Bar No. 13654
>Email: apeters@ncdoj.gov
>
>N.C. Department of Justice
>Post Office Box 629
>Raleigh, NC 27602-0629
>Telephone: (919)716-6900

## CERTIFICATE OF WORD COUNT

I certify that the foregoing RESPONSE TO PLAINTIFFS' MOTION TO CLARIFY contains fewer than 6250 words (exclusive of those sections of the Brief excluded by rule), which complies with the word limitations of Local Civil Rule 7.3(d) (M.D.N.C.).

This the 26th day of March 2018.

/s/ James Bernier, Jr.
James Bernier, Jr.
Special Deputy Attorney General

**CERTIFICATE OF SERVICE**

      I hereby certify that on 26 March 2018, I electronically filed the foregoing with the clerk of Court using the CM/ECF system which will send notification of such to all counsel of record in this matter.

      This the 26th day of March 2018.

                                          /s/ James Bernier, Jr.
                                          James Bernier, Jr.
                                          Special Deputy Attorney General
                                          N.C. State Bar No. 45869
                                          Email: jbernier@ncdoj.gov