IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No. 1:16-cv-1274-LCB-JLW

| | |
|---|---|
| N.C. STATE CONFERENCE OF THE NAACP, *et al.*, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| N.C. STATE BD. OF ELECTIONS, *et al.*, | ) ) |
| Defendants. | ) ) |

## BRIEF OF THE MOORE COUNTY DEFENDANTS IN OPPOSITION TO THE PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

**NOW COME** the Defendants Moore County Board of Elections, Susan T. Adams, in her official capacity as Chairman of the Moore County Board of Elections, Carolyn M. McDermott, in her official capacity as Secretary of the Moore County Board of Elections, William R. Parke, in his official capacity as Member of the Moore County Board of Elections, and Glenda M. Clendenin, in her Official capacity as Director of the Moore County Board of Elections (collectively "the Moore County Defendants"), by and through counsel, pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rules 56.1 and 7.2 and submit this Brief in Opposition to Plaintiffs' Motion for Partial Summary Judgment.

The Moore County Defendants further request that this Court grant summary judgment *sua sponte* in favor of the Moore County Defendants on the claims set forth in

1

the Plaintiffs' Motion for Partial Summary Judgment on their claims under the National Voter Registration Act (NVRA).

## INTRODUCTION

The Plaintiffs have framed the matter before the Court as, (1) whether the Defendants removed registered voters pursuant to residency-based challenges without complying with the NVRA's required waiting period after NVRA-specific notice, and (2) whether the Defendants systematically purged voters within 90 days of a federal election in violation of the NVRA. The Plaintiffs' characterization of the issues assumes that the Defendants' conduct was subject to the NVRA. Without that assumption, the matter before the Court is whether the actions or omissions by the County Boards of Elections Defendants, including the Moore CBOE Defendants, which were taken pursuant to the North Carolina voter challenge statutes prior to the November 2016 federal election violated the NVRA. The Moore County Defendants argue that the plain language of the NVRA, in conjunction with federal case law interpreting it, shows that no action they took or omission they failed to take while following the North Carolina challenge statutes violated the NVRA.

## FACTS

The following facts are stipulated as to the Moore County Defendants and the Plaintiffs. As such, these are the only facts available to the Court to consider in ruling on the Plaintiffs' Motion for Summary Judgment as to the Moore County Defendants:

In Moore County, preceding the 2016 general election, there were eligibility challenges against 498 voters brought by N. Carol Wheeldon, a registered voter in Moore

County with challenges brought on various dates. The challenges were brought using the challenge forms promulgated and adopted by the SBOE pursuant to N.C.G.S. § 163-85. The challenger, N. Carol Wheeldon, identified challenged voters from an inactive status list. (Doc. 98 at ¶ 1). Each of Wheldons' challenges was brought pursuant to N.C. GEN. STAT. § 163-85(c)(3) on grounds that the voter did not live in the precinct in which they were registered. (Doc. 98 at ¶ 2). On each of the challenge forms, Challenger Wheeldon marked the box indicating that she was challenging the voter's "right to remain registered to vote," and marked, as the basis for the challenge, "person is not a resident of the precinct in which the person is registered." (Doc. 98 at ¶ 2). In each of these challenges, Wheeldon submitted as her evidence, a returned envelope with an affixed notice from the United States Postal Service that the envelope was returned as undeliverable and her returned mailings all stated that they were from "Voter Integrity Project of NC" and were marked "DO NOT FORWARD." (Doc. 98 at ¶ 3). Additionally Wheeldon presented testimony as to each mailing was sent by first class mail and returned to her as undeliverable. (Doc. 98 at ¶ 5).

That the Moore CBOE scheduled preliminary hearings on the voter challenges on September 6, 2016. (Doc. 98 at ¶ 5). That prior to the scheduled preliminary hearings on the challenges, the Moore CBOE staff conducted research on the challenged voters in an attempt to find updated residency information, including review of tax records, made telephone calls, review of court records, review of data base records as to new or recent registrations in other states or precincts, review of Facebook accounts, visits to places of employment to contact challenged voters, and additional internet search. Based on

3

information the CBOE staff found, the CBOE "resolved" 99 of the 498 challenges, and those challenges were dismissed. (Doc. 98 at ¶ 4).

That on September 6, 2016, the Moore CBOE conducted preliminary hearings at which it determined, pursuant to its understanding of the applicable provisions of N.C. Gen. Stat. § 163.85(e) and rules promulgated by the SBOE, that probable cause existed as to the remaining 399 challenges, based on Wheeldon's status as a registered voter of Moore County, her evidence that of a returned mailing, and her testimony under oath that her mailing had been mailed by first-class mail and returned to her as undeliverable. (Doc. 98 at ¶ 5). Upon findings of probable cause for challenged voters, on September 30, 2016, the Moore CBOE, pursuant to its understanding of the provisions of N.C. Gen. Stat. § 163-86 and rules promulgated by the SBOE, sent via first class mail a written notice to the 399 challenged voters for whom it had found probable cause to the address of the voter listed in the voter's registration records. The notice of challenge letters notified the voters that their "right to remain registered to vote" was being challenged, and that the reason asserted by the challenger was that the voter is "not a resident of the precinct in which s/he is registered," and informed the voters that they were required to attend a hearing to verify their identity and qualifications to be registered. The letters also stated that if the voter was unable to attend in person, another person could attend and tender an affidavit attesting to the voter's credentials. The written notices were sent at least 10 days prior to the full challenge hearings. (Doc. 98 at ¶ 6).

That the challenge notices sent to the 399 challenged voters informed them as to a full challenge hearing scheduled for October 14, 2016. On October 14, 2016, the Moore

4

CBOE held full challenge hearings on the merits of the individual voter challenges. In addition to the challenge against James Michael Brower, the individual plaintiff, which was dismissed, the Moore CBOE "resolved without removal" several other voter challenges. At the hearings, the challenger offered no additional evidence that the challenged voters were not residents of the precincts in which they were registered. The Board was also informed as to the research conducted by the Moore CBOE staff as to the voters' continued voter eligibility, and some challenges were dismissed. For the remaining 374 voters, with neither the voters nor a representative appearing on behalf of the voters appearing at the hearing, the Moore CBOE sustained the challenges, removing them from the voter rolls. (Doc. 98 at ¶ 13). The Moore CBOE removed voters in accordance with its understanding of N.C. Gen. Stat. §§ 163-85 and 163-86, following consult with and trainings by the SBOE and pursuant to its understanding of the directives promulgated by the SBOE. (Doc. 98 at ¶ 17). The Moore County Board of Elections is statutorily obligated to follow state election laws and directives of the State Board of Elections. (Doc. 98 at ¶ 18).

That Director Strach, as the Executive Director of the SBOE, is charged with ensuring compliance with the NVRA, has opined and advised the numerous counties that the NC elections laws, and specifically the voter challenge laws, N.C. Gen. Stat. §§ 163-85 and 163-86, comply with the NVRA, and additionally has compelled County Boards of Elections to follow state statutes. (Doc. 98 at ¶ 19). The SBOE was aware of the October 2016 pre-election voter challenges filed in Moore County and did not direct the Moore CBOE to take any actions contrary to those the CBOE took in processing and

5

hearing these challenges. (Doc. 98 at ¶ 21). That Director Strach did not give notice or guidance to the Moore CBOE that the challenge procedures set forth in N.C.G.S. §§ 163-85 and 86 violated the NVRA. (Doc. 98 at ¶ 22).

The Moore CBOE consulted with the SBOE and conducted its hearings based upon SBOE recommendations and under the supervision of the SBOE. Staff of the SBOE were advised as to the challenges, and George McCue, Agency Counsel of the SBOE attended one of the hearings as an observer. Neither Mr. McCue nor any other SBOE staff made any recommendations as to any changes in the process, or manner in which hearings were conducted. In addition to the communications with the SBOE seeking guidance specifically as to the challenges filed by Challenger Wheeldon, the Moore CBOE received numerous trainings from the SBOE over the years as to how to conduct challenge hearings. (Doc. 98 at ¶ 14). That the Moore CBOE understood the voter challenges to be challenges under N.C. Gen. Stat. § 163-85 and not part of the list maintenance process governed by Section 8 of the NVRA, 52 U.S.C. § 20507, or N.C. Gen. Stat. § 163-82.14(d). (Doc. 98 at ¶ 16). That on October 26, 2016, the Moore CBOE received a copy of Director Strach's response to the NAACP confirming that the challenge process has never been part of the State's systemic list maintenance program. (Doc. 98 at ¶ 20).

That because the Moore CBOE removed the sustained challenged voters from the official list of eligible voters pursuant to its understanding of N.C. Gen. Stat. §§ 163-85 and 86, it did not send those voters any other notice than the notice required by § 163-86(b) before removing them, and it did not wait for the voters' failure to vote or to appear

6

to vote in an election during the two federal election-cycle period after receiving such a notice before it removed the voters. (Doc. 98 at ¶ 24). In processing and hearing the challenges, the Moore CBOE, Director Clendenin, and the CBOE staff acted in good faith and attempted to follow state law, as laid out in N.C. Gen. Stat. §§ 163-85 and 86. (Doc. 98 at ¶ 25).

Because the material facts have been stipulated to and no genuine issue of material fact exists as to the allegations in the Plaintiffs' Complaint, summary judgment is proper. However, contrary to the Plaintiff's assertion, partial summary judgment should be granted in favor of the Moore County Board of Elections and other County Boards of Elections, finding, as a matter of law, that their process and acts did not violate the NVRA.

## ARGUMENT

### I. Summary Judgment Standard and Granting in Favor of the Nonmovant

Summary judgment is appropriate when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). A Court also "has the power to grant summary judgment *sua sponte* in favor of the nonmovant where no genuine issue of material fact exists and the nonmovant is entitled to judgment as a matter of law." *Crampton v. Immediato (In re Persinger)*, No. 5:16-CV-118-FL, 2016 U.S. Dist. LEXIS 110520, at *12 (E.D.N.C. Aug. 3, 2016); *see also Helton v. Good*, 208 F. Supp. 2d 597, 608 (W.D.N.C. 2002), *aff'd in relevant part*, 330 F.3d 242 (4th Cir. 2003). In determining "whether a *sua sponte* grant of summary judgment is appropriate, the key inquiry is whether the losing party was on notice that he or she had

7

to marshal the evidence necessary to withstand summary judgment." *Crampton*, 2016 U.S. Dist. LEXIS 110520, at *12 (internal quotation marks omitted); *see also Amzura Enters. v. Ratcher*, 18 F. App'x 95, 103 (4th Cir. 2001). Courts have found the moving party to have been put on adequate notice when the Court is considering granting summary judgment in favor of the nonmovant on an issue identical to that raised by the moving party. *Ratcher*, 18 F. App'x at 104 n.8.

The Moore County Defendants and Plaintiffs worked diligently to agree upon the stipulated facts which each believe are relevant to the Plaintiffs' NVRA claims and the Defendant Moore County Board of Elections' defenses to those claims. The issue on which the Moore County Defendants request entry of summary judgment in their favor is identical to that of the Plaintiffs, namely, "Did the actions or omissions of the Moore Defendants violate the NVRA?" Because the parties' summary judgment issues are identical, the Plaintiffs are on notice that they had to marshal the evidence needed to achieve summary judgment or alternatively to withstand summary judgment. As notice exists and there are no genuine issues of material fact remaining on these claims, judgment as a matter of law is appropriate on the NVRA claims. In accordance with *Crampton* and *Ratcher*, this Court can grant summary judgment in favor of the Moore County Defendants and all other Defendants on the NVRA claims.

## II.     The Plaintiffs Cannot Show a Violation of the NVRA by the Moore County Defendants

### A.     The Plaintiffs were not Eligible Voters for the NVRA to Apply to Them

The Plaintiffs argue extensively that with respect to removals from voting rolls for changes in residence, under the NVRA "[a] State shall not remove the name of a registrant from the official list of eligible voters in elections for Federal office . . . unless the registrant" confirms the change in residency in writing or the registrant both fails to respond to the statutorily prescribed notice *and* fails to vote or appear to vote in two consecutive federal election cycles. 52 U.S.C. § 20507(d); (Doc. 94 at 15). The Plaintiffs assume the individuals removed were eligible voters. In order for the NVRA to apply, the named registrant must be an eligible voter. Multiple federal courts have held that the NVRA only protects *eligible* voters and therefore allows for a process to accurately ascertain whether or not a potential voter person falls within the category eligible voters who are protected by the NVRA, or ineligible voters who are not.

In *Bell v. Marinko*, 367 F.3d 588 (6th Cir. 2004), the Sixth Circuit Court of Appeals held that Congress did not intend the NVRA to act as a bar to the removal of voters from the official list of voters when that voter was *ineligible* to vote. *Bell*, 367 F.3d at 591 (emphasis added). In *Bell*, individual residents filed challenges to the registrations of nearly one hundred voters on the grounds that the challenged voters were not permanent residents of the precinct and therefore not qualified or eligible to vote. *Id.* at 589. The board of elections held hearings on each challenge to a voter's registration, devoting each hearing to investigating and examining the challenged voter's residency. *Id.* at 590, 592. Based on the information gathered at the hearing on each challenged voter, the board denied the challenge to one voter's registration, referred one challenge to the Secretary of State who sustained it, and sustained the remaining challenges upon

9

finding sufficient evidence to conclude that the challenged voters were not residents of the precinct and therefore were ineligible to vote. *Id.* at 590. Consequently, the board removed the names of the voters whose challenges were sustained from the voter rolls, reasoning that the presence of the ineligible voters on the rolls rendered the rolls inaccurate. *Id.* at 592.

As in this action, the *Bell* plaintiffs filed suit for injunctive relief, arguing that the Board's procedures violated the NVRA. *Id.* The district court granted summary judgment in favor of the Board, concluding that it did not violate the NVRA. *Id.* Specifically, the district court held that to read the NVRA as the plaintiffs wanted it read, "would require a finding that the defendants violated [52 U.S.C. § 20507(a)(3)] because none of the plaintiffs had requested removal from the list, been convicted of a crime, been found mentally unfit, or had changed residences." *Bell v. Marinko*, 235 F. Supp. 2d 772, 776 (N.D. Ohio 2002). However, the district court found this reading to overlook the "precondition to being entitled to vote entitled to vote [sic]: name residency in the precinct. If a person is not a resident, he is not a 'qualified elector.'" *Id.* The district court went on to conclude that the NVRA does not protect the "franchise of persons not entitled to vote," and to hold otherwise would be to undermine the integrity of the electoral process instead of protect it and would "dilute the franchise of those duly qualified to vote." *Id.*; *see* 52 U.S.C. § 20501(b)(3).

In affirming the district court's grant of summary judgment in favor of the board of elections, the Sixth Circuit Court of Appeals examined the board's process for determining whether voters were eligible to vote. *Bell*, 367 F.3d at 592. The Court stated

that through this process, which included an individual examination of each challenge, the board reached the conclusion that the registrants were ineligible to vote and removed them from the voter rolls. *Id.* The Court reasoned that the NVRA "protects only 'eligible' voters from unauthorized removal," and does not "bar the removal of names from the official list of persons who were ineligible and improperly registered to vote in the first place." *Id.* at 591–92. "Eligible voters, at a minimum, are those who qualify as bona fide residents of the precinct in which they are registered or wish to register to vote." *Id.* at 592. The Sixth Circuit Court of Appeals reasoned that "[w]ere we to find that the Board's removal of these voters does violate the [NVRA], we would effectively grant and then protect, the franchise of persons not eligible to vote." *Id.* Instead, the Court held that the NVRA "encourages the Board to maintain accurate and reliable voting rolls" and "does not bar the Board's continuing consideration of a voter's residence." *Id.* It was this process, using individualized examinations and at various stages in a process involving a hearing, that led to the realization that the voter was ineligible. Only upon finding the voter ineligible did the board remove the voter. *Id.* As a result, the board's process for removal of ineligible voters did not violate the NVRA.

Here, the Plaintiffs use the case of *U.S. Student Ass'n Found. v. Land* to argue the proposition that the "NVRA 'limits the methods which a state may use to remove individuals from its voting rolls' in order to 'ensure that eligible voters are not disenfranchised by improper removal.'" (Doc. 94 at 15) (quoting *U.S. Student Ass'n Found. v. Land*, 546 F.3d 373, 381 (6th Cir. 2008)). However, the facts of *Land* are in stark contrast to the facts of this matter and those of *Bell*. In *Land*, the Sixth Circuit

11

Court of Appeals ruling distinguished *Bell* because there was no process in place in *Land* for the board of elections to determine whether the voter was eligible or not. *Land*, 546 F.3d at 385–86. In *Land*, "there ha[d] never been a determination that the vote[ was] ineligible." *Id.* at 386. The mere return of a mailed voter-ID card deemed the voter ineligible. *Id.* *Land* made no provision for an individual and particularized determination as to the eligibility or ineligibility of the voter status, and removal was triggered by return of a *voter id card*. The Moore BCOE followed the N.C Statutes and rules promulgated by the State BOE in determining voter eligibility prior to removal of ineligible voters.

In contrast to *Land*, the process and acts by the Moore CBOE here closely align with those of the board of elections in *Bell*. Here, a registered voter, N. Carol Wheeldon, brought individual challenges against 498 voters to remain registered to vote on the grounds that the voter was not a resident of the precinct in which the voter is registered on the basis of returned mail. (Doc. 98 at ¶¶ 1–3). However, unlike in *Land*, that mere return of mail did not deem the voter ineligible. Instead, like in *Bell*, the Moore County BOE undertook a process to first determine whether the voter was eligible or ineligible. This process involved a preliminary hearing to first determine whether probable cause existed for each individual challenge, and only when probable cause found were full hearings on the merits held for each individual challenge. (Doc. 98 at ¶¶ 4–6, 9, 11, 13-14, 16-19). Only during the full hearings on individual challenges did the Moore County BOE consider all evidence, both for and against the challenged voter, based upon the totality of the circumstances and reach a determination regarding whether a voter was

ineligible and could be removed. (Doc. 98 at ¶¶ 6, 9-11, 13). In fact, at multiple points in time prior to the challenge being sustained after the full hearing, challenges were withdrawn and/or rejected/dismissed based upon information regarding a voter's continued eligibility, including the challenge to James Michael Brower. (Doc. 98 at ¶¶ 4, 9-11, 13). During the individualized hearings on the merits, the Moore CBOE was informed as to the returned mailings of the challenger, N. Carol Wheeldon, the mailings and notices required following findings of probable cause including notice of hearing, and findings of the Moore County BOE staff as to voters' continued eligibility. (Doc. 98 at ¶¶ 6, 13).

As the Court in *Bell* reasoned, the NVRA "protects only eligible voters from unauthorized removal." Here, after the Moore County BOE completed its above-detailed process, it only sustained challenges of individual voters who were found to be ineligible after a full hearing on each separate challenge. Following the Court's reasoning and holding in *Bell*, the NVRA cannot protect the voters found to be ineligible by the Moore County BOE, because those voters were not at that time "eligible voters" to which the NVRA applied. The Moore County BOE employed a process to assess the eligibility and residency of challenged voters. As this process determined that the voters were ineligible before the NVRA could even apply, summary judgment should be denied as to the Plaintiffs and granted as to the Moore County Defendants, and as to all Defendants.

### B. The Moore County BOE Did Not Utilize any "Program" Which Has a "Purpose" of "Systematically" Removing Voters

Under the NVRA, a "State shall complete, not later than 90 days prior to the date of a primary or general election for Federal office, any program the purpose of which is to systematically remove the names of ineligible voters from the official lists of eligible voters." 52 U.S.C. § 20507(c)(2)(A). Here, the facts fail to establish that the statutory challenge procedures the Moore CBOE had to follow to process the challenges filed by an individual challenger constituted a *State program* with the *purpose* of *systematically* removing voters in violation of the NVRA. Consequently, the Plaintiffs' Motion for Partial Summary Judgment on their NVRA claims should be denied, and partial judgment should be granted as a matter of law in favor of the Moore Defendants.

The words, "program," "purpose," and "systematically," are not defined in the NVRA. The NVRA only address *State* programs, The North Carolina challenge statutes are clearly not a State plan or system for the State to execute a State purpose of removing voters from the voter lists in a methodical fashion. The North Carolina challenge process cannot be a State program conducted in a methodical fashion, nor effect the State's purpose as required by the NVRA, because the State, and for that matter a local Board of Elections, has no control over whether or when any challenges are brought by anyone anywhere in the State. The Plaintiffs have sued only three of North Carolina's 100 counties in this case which demonstrates why these challenge statutes do not constitute a State program subject to the NVRA.

Plaintiffs base their argument that the challenges in this case constituted an effort to systematically remove the names of ineligible voters within the meaning of § 20507(c)(2)(A) because, they allege, the challenges were processed in large batches or

numerous hearings conducted on a single day or several days. (Doc. 94 at 23). The process established by the challenge statutes is the same whether an individual challenges one or hundreds of registrants. The same outcome would have resulted under the challenge statutes if these challenges had been filed by multiple challengers with each filing only a few challenges. This is another reason these challenge statutes cannot be characterized as a State program within the meaning of the NVRA.

While "systematic" is not defined in the NVRA, federal courts have held that for a removal of a registered voter from the rolls to be "systematic," it must be done without individualized investigation, consideration, or hearing. The Plaintiffs rely on the case of *Arcia v. Florida Secretary of State*, 772 F.3d 1335 (11th Cir. 2014) for the proposition that the North Carolina statutory challenge procedure results in *systematic* removals of voters, which is prohibited within 90 days of a federal election under the NVRA. (Doc. 94 at 21). A close reading of *Arcia* shows that the Moore Defendants did not conduct a program or a practice that systematically removed voters; as a result, the 90 Day Provision of the NVRA did not apply to the Moore Defendants' challenge process.

In *Arcia*, the Eleventh Circuit Court of Appeals considered whether the Florida Secretary of State's removal of names of ineligible voters from the voter rolls was performed systematically in violation of the NVRA.[1] Florida initiated a program to remove non-citizens from its voter rolls, relying on a database from the Department of Homeland Security entitled, "Systematic Alien Verification for Entitlements" ("SAVE"),

---

[1] The Court in *Arcia* parsed the language of the 90-day provision, looking to see (1) whether the removal under the program was done "systematically" and (2) whether the purpose of the program was to remove "ineligible voters" from the voter rolls.

15

to check the citizenship of registered voters. *Arcia*, 772 F.3d at 1339. The names of registered voters identified as non-citizens in the SAVE database were forwarded to state supervisors who then automatically removed the voter from the voter rolls, which occurred within 90 days of a federal election. *Id.* at 1340.

The Eleventh Circuit Court of Appeals found that Florida's program violated the NVRA because it was a program designed to systematically remove the names of ineligible voters from the list of eligible voters. The Court looked at the plain meaning of the word "systematic" and held that Florida's program was a "systematic program under any meaning of the word" because it "did not rely upon individualized information or investigation to determine which names from the voter registry to remove." *Id.* at 1343–44. Furthermore, the Court took note of the fact that the "S" in "SAVE" stood for "systematic." *Id.* at 1344. The Court analyzed the exemptions to the 90-day provision listed in the NVRA, stating that those exemptions only applied to systematic removal programs. The Court went on to state that "by limiting its reach to programs that 'systematically' remove voters from the voter rolls, the 90 Day Provision permits removals based on *individualized* information at any time," reasoning that removal based on "individual correspondence or individualized inquiry, lead[s] to a smaller chance for mistakes." *Id.* at 1346.

Under the Court's reasoning in *Arcia*, for the 90-day provision of the NVRA to apply to the Moore Defendants, the Moore Defendants must have conducted a general program that "systematically" removed voters from the voter rolls. If the conduct of the Moore Defendants was based on *individualized* information, there is no systematic

removal for the 90-day provision to apply and removals can occur at any time under that individualized process. More significantly, unlike the initiation of the process by the Florida Secretary of State in *Arcia*, the North Carolina challenges were initiated by private actors, removing the process even further from being a State program.

Significantly, the Plaintiffs' assertion in their Brief that the "Defendants held hearings where they processed challenges and purged voters in large batches" and "without individualized voter information," (Doc. 94 at 23), is unfounded in regard to the Moore Defendants and directly contradicts the stipulated facts agreed to by the Plaintiffs. As set forth in the facts as stipulated between the Moore Defendants and the Plaintiffs, the Moore Defendants did not have a general program, the purpose of which was to "systematically" remove the names of voters from the rolls. Instead those stipulated facts clearly demonstrate that the Moore defendants processed the challenges brought by a private individual under state law in a good faith effort to follow the state law and with individualized consideration of each challenged voter's registration records and other information being reported by elections staff. That the Moore CBOE consists of three (3) registered voters of the County and are appointed by the State Board of Elections. (N.C.G.S. § 163-30).

Looking solely at challenge hearings held by the Moore CBOE, the stipulated facts show that when an individual challenge was made, the Moore CBOE followed North Carolina statute and first held a preliminary hearing to determine whether probable cause existed for each challenge. (Doc. 98 at ¶¶ 1, 2, 5). If probable cause for a particular voter's removal was found, the Moore CBOE sent a notice of challenge letter

17

to that voter which informed the voter that a hearing had been scheduled to address the challenge. (Doc. 98 at ¶ 6). Only then was a full hearing held on the merits of that challenge held. The notice letter was "individual correspondence" in the simplest manner, and the Moore CBOE conducted "rigorous individualized inquiry" through its above-described process. Only following the individual merit hearings and evaluation of all the evidence was any determination made by the Moore BCOE as to ineligible status of any registrant and subsequent removal. Therefore, the Plaintiffs' assertion in their Brief that the "Moore CBOE ordered a 374-voter purge at a single hearing" is misleading. (Doc. 94 at 23). While 374 voters were removed over the course of single day of hearings, 498 individual challenges were concluded over the course of the challenge process, and 374 individual hearings conducted. From the beginning of the challenge process until its conclusion, one hundred twenty four (124) challenges were resolved without removal and three hundred seventy four (374) ineligible voters were removed. (Doc. 98 at ¶¶ 1, 4, 5-6, 9, 13). Through the individualized process employed by Moore CBOE as mandated by state statutes, twenty five percent (25%) of the challenged voters were determined eligible voters and not removed from voter rolls.

As explained in *Arcia*, a program such as the one utilized by the Moore CBOE cannot be categorized as "systematic" when it relies upon individualized information or investigation to determine which names from the voter registry to remove. Individualized information or investigation is what was used here—both preceding the preliminary hearings on probable cause and continuing through the individual merit hearings, including review of tax records, telephone calls, review of court records, review

of data base records as to new or recent voter registrations in other states and precincts, review of Facebook accounts, visits to voter places of employment, additional internet searches, and testimony received at the full challenge hearing—to determine whether a voter was eligible to vote or should be removed from the voter rolls. As a result, the program employed by the Moore County Defendants cannot meet the definition of "systematic" under any meaning of the word.[2] Because the system of challenge is not "systematic" and does not have the purpose of removing voters, it is not subject to the 90-day provision of the NVRA.[3] Consequently, the Moore County Defendants' acts and omissions in regard to the removal of voters within the 90 day window prior to the federal election were not subject to or prohibited by the NVRA and cannot constitute a violation thereof.

## Conclusion

For the foregoing reasons, the Plaintiffs' Motion for Partial Summary Judgment should be denied as to the Plaintiff and granted as to the Moore County Defendants and all other Defendants.

Respectfully submitted, this the 4th day of April, 2018.

BY: /s/ R. Ward Medlin          BY: /s/ Misty Randall Leland
    R. WARD MEDLIN                  MISTY RANDALL LELAND
    NC Bar # 13817                  NC Bar # 28320
    Moore County Attorney's Office  Moore County Attorney's Office

---

[2] Of note, this Court's prior statement that the County Boards' process of allowing third parties the right to challenge the right of numerous voters to vote within 90 days of the 2016 General Election is not supported by the stipulated facts or law as set forth above.

[3] Therefore, the Plaintiffs' argument that the "only exceptions to the 90-day bar are inapplicable here" is irrelevant to the Court's determination. (Doc. 94 at 20).

19

P.O. Box 905  
Carthage, NC 28327  
T: (910) 947-4014  
F: (910) 947-1049  
wmedlin@moorecountync.gov  
*Attorney for Moore County Defendants*

P.O. Box 905  
Carthage, NC 28327  
T: (910) 947-4012  
F: (910) 947-3612  
mistyleland@moorecountync.gov  
*Attorney for Moore County Defendants*

## CERTIFICATE OF WORD COUNT

I certify that the foregoing Response To Plaintiffs' Motion For Partial Summary Judgment As to Counts I and II of The Complaint contains fewer than 6, 250 words, which complies with the word limitations of Local Rule 7.3(d) (M.D.N.C.).

This the 4th day of April, 2018.

/s/ R. Ward Medlin  
R. WARD MEDLIN  
Moore County Attorney's Office

## CERTIFICATE OF SERVICE

I hereby certify that on April 4, 2018, I electronically filed the foregoing with the clerk of Court using the CM/ECF system which will send notification of such to all counsel of record in this matter.

This the 4th day of April, 2018.

/s/ R. Ward Medlin  
R. WARD MEDLIN  
NC Bar # 13817  
Moore County Attorney's Office  
wmedlin@moorecountync.gov  
*Attorney for Moore County Defendants*