IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No. 1:16-cv-1274-LCB-JLW

| | |
|---|---|
| N.C. STATE CONFERENCE OF THE NAACP, *et al.,* | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| N.C. STATE BD. OF ELECTIONS, *et al.*, | ) ) |
| Defendants. | ) ) |
| _____ | ) |

## BRIEF OF THE CUMBERLAND DEFENDANTS IN OPPOSITION TO THE PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

**NOW COME** Defendants, the Cumberland County Board of Elections and its members in their respective official capacities as it is currently constituted, and Terri Robertson, in her official capacity as its Director of Elections, (collectively "the Cumberland Defendants"), by and through undersigned counsel, pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rules 56.1 and 7.2, and submit this Brief in Opposition to Plaintiffs' Motion for Partial Summary Judgment.

The Cumberland Defendants further request that this Court grant summary judgment *sua sponte* in favor of all Defendants on the claims set forth in the Plaintiffs' Motion for Partial Summary Judgment on their claims under the National Voter Registration Act (NVRA).

1

## INTRODUCTION

The Plaintiffs have framed the matter before the Court as, (1) whether the Defendants removed registered voters pursuant to residency-based challenges without complying with the NVRA's required waiting period after NVRA-specific notice, and (2) whether the Defendants systematically purged voters within 90 days of a federal election in violation of the NVRA. The Plaintiffs' characterization of the issues simply assumes that the Defendants' conduct was subject to the NVRA. Without making that assumption, the matter before the Court is really whether the actions or omissions by the County Boards of Elections Defendants, which were taken pursuant to the North Carolina voter challenge statutes prior to the November 2016 federal election, violated the NVRA. The Cumberland Defendants argue that the plain language of the NVRA, in conjunction with federal case law interpreting it, shows that no action they took, or omission they failed to take, while following the North Carolina challenge statutes, violated the NVRA.

## FACTS

The following facts are stipulated as to the Cumberland Defendants and the Plaintiffs. As such, these are the only facts available to the Court to consider in ruling on the Plaintiffs' Motion for Summary Judgment as to the Cumberland Defendants:

On September 10, September 15, September 30, October 3, and October 21, 2016, the Cumberland CBOE conducted preliminary hearings pursuant to its understanding of N.C. Gen. Stat. § 163A-911 (former. § 163-85) on more than 4,000 challenges brought by

a registered voter named Michael Hyers.  (Doc. 97, Cumberland Stipulations, ¶ 1).  Each of Hyers' challenges was brought pursuant to N.C. Gen. Stat. § 163A-911(c)(3)  (former § 163-85(c)(3)) on grounds that the voter did not live in the precinct in which they were registered (Doc. 97, Cumberland Stipulations, ¶ 2).  In each of these challenges, Hyers submitted as his only evidence, a returned envelope with an affixed notice from the United States Postal Service that the envelope was returned as undeliverable and his returned mailings all stated that they were from "Voter Integrity Project of NC— Cumberland County 6297 Lakehaven Drive Fayetteville, NC 28304" and were marked "DO NOT FORWARD." (Doc. 97, Cumberland Stipulations, ¶ 2).

The Cumberland CBOE found probable cause on more than 3,500 of these challenges based on the CBOE's understanding of N.C. Gen. Stat. § 163A-911(e) (former § 163-85(e)).  (Doc. 97, Cumberland Stipulations, ¶ 3).    Upon finding probable cause, the CBOE directed Cumberland County Director of Elections Terri Robertson to mail by first-class mail, a written notice of the challenge to the challenged voter, to the address of the voter listed in the registration records of the county, so as to comply with N.C. Gen. Stat. § 163A-912(b) (former § 163-86(b)).  (Doc. 97, Cumberland Stipulations, ¶ 4). Because the CBOE's intent was to follow the requirements of N.C. Gen. Stat. §§ 163A-911 and 163A-912 (former §§163-85 and 163-86), and it did not consider the challenges to be list maintenance procedures under the NVRA because these voters were already in inactive status though the list maintenance process, the notices sent to the challenged voters did not include a postage prepaid and pre-addressed return card.  (Doc. 97,

Cumberland Stipulations, ¶ 4). The Cumberland CBOE did not send the challenged voters any other forms of notices at this time before removing them from the voter registration rolls; however; Cumberland County Director of Elections Robertson mailed the notices as directed and also to any other address that was available. (Doc. 97, Cumberland Stipulations, ¶ 5). Some of the notices were returned with an affixed notice from the United States Postal Service that the envelope was returned as undeliverable. (Doc. 97, Cumberland Stipulations, ¶ 5).

On September 30 and October 21, 2016, the Cumberland CBOE conducted hearings on the merits for these more than 3,500 challenged voters for whom the CBOE had previously found probable cause. (Doc. 97, Cumberland Stipulations, ¶ 6). Unless the challenged voters attended hearings or otherwise responded to the challenge brought against them, the CBOE sustained the challenges as to almost all of them, based on the CBOE's understanding of N.C. Gen. Stat. § 163A-912(d) (former §163-86(d). (Doc. 97, Cumberland Stipulations, ¶ 6). The Cumberland CBOE issued a written order for the cancellation of the registrations of those voters for whom the challenges were sustained following the September 30, 2016, merits hearings. (Doc. 97, Cumberland Stipulations, ¶ 6).

Within ninety (90) days of the 2016 General Election, the registrations of these more than 3,500 challenged voters for whom the challenges had been sustained were either cancelled directly by the Cumberland CBOE staff, or Cumberland County Director of Elections Robertson requested the staff of the SBOE to process the cancellations

4

because the Cumberland CBOE staff did not have sufficient personnel to do so in the midst of the election process. (Doc. 97, Cumberland Stipulations, ¶ 7). Pursuant to the request of Cumberland County Director of Elections Roberson, 3,564 of those removals were processed by the staff at the State BOE. (Doc. 96, State BOE Stipulations, ¶ 20). Some number of these more than 3,500 challenged voters had their registrations cancelled before the two federal election cycles had passed after they received a notice that complied with the requirements set forth in 52 U.S.C. § 20507(d)(2). (Doc. 97, Cumberland Stipulations, ¶ 8).

The Cumberland CBOE and Cumberland County Director of Elections Robertson never received notice or guidance from Director Strach that the challenge procedures set forth in N.C. Gen. Stat. §§ 163A-911 and 163A-912 (former §§ 163-85 and 163-86) violated the NVRA. (Doc. 97, Cumberland Stipulations, ¶ 9). The Cumberland CBOE is statutorily obligated to follow state election laws and directives of the SBOE, and the CBOE's belief at all times was that the voter challenges under N.C. Gen. Stat. § 163A-911 (former § 163-85) were not subject to the NVRA because neither the SBOE nor Director Strach had ever advised that the challenge statutes were subject to the NVRA. (Doc. 97, Cumberland Stipulations, ¶ 10). In processing and hearing the challenges, the Cumberland CBOE, Cumberland Director of Elections Robertson, and the CBOE staff acted in good faith and attempted to follow state law, as laid out in N.C. Gen. Stat. §§ 163A-911 and 163A-912 (former §§ 163-85 and 163-86). (Doc. 97, Cumberland Stipulations, ¶ 11).

5

Because the material facts have been stipulated to and no genuine issue of material fact exists as to the allegations in the Plaintiffs' Complaint, summary judgment is proper. However, contrary to the Plaintiff's assertion, partial summary judgment should be granted in favor of the all Defendants, finding, as a matter of law, that their process and acts did not violate the NVRA.

## ARGUMENT

### I. Summary Judgment Standard and Granting in Favor of the Nonmovant

Summary judgment is appropriate when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A Court also "has the power to grant summary judgment *sua sponte* in favor of the nonmovant where no genuine issue of material fact exists and the nonmovant is entitled to judgment as a matter of law." *Crampton v. Immediato (In re Persinger)*, No. 5:16-CV-118-FL, 2016 U.S. Dist. LEXIS 110520, at *12 (E.D.N.C. Aug. 3, 2016); *see also Helton v. Good*, 208 F. Supp. 2d 597, 608 (W.D.N.C. 2002), *aff'd in relevant part*, 330 F.3d 242 (4th Cir. 2003). In determining "whether a *sua sponte* grant of summary judgment is appropriate, the key inquiry is whether the losing party was on notice that he or she had to marshal the evidence necessary to withstand summary judgment." *Crampton*, 2016 U.S. Dist. LEXIS 110520, at *12 (internal quotation marks omitted); *see also Amzura Enters. v. Ratcher*, 18 F. App'x 95, 103 (4th Cir. 2001). Courts have found the moving party to have been put on adequate notice when the Court is considering granting

6

summary judgment in favor of the nonmovant on an issue identical to that raised by the moving party. *Ratcher*, 18 F. App'x at 104 n.8.

The Cumberland Defendants responded to the Plaintiffs' multiple drafts of proposed stipulations for over a period of approximately three months to agree upon the stipulated facts which each believe are relevant to the Plaintiffs' NVRA claims and the Defendants' defenses to those claims. The issue on which the Cumberland Defendants request entry of summary judgment in their favor is identical to that of the Plaintiffs, namely, "Did the actions or omissions of the Cumberland Defendants violate the NVRA?" Because the parties' summary judgment issues are identical, the Plaintiffs are on notice that they had to marshal the evidence needed to achieve summary judgment, which by definition is significantly less than "the evidence necessary to withstand summary judgment." As notice exists and there are no genuine issues of material fact remaining on these claims, judgment as a matter of law is appropriate on the NVRA claims. In accordance with *Crampton* and *Ratcher*, this Court can grant summary judgment in favor of the Cumberland Defendants and all other Defendants on the NVRA claims.

## II. The Plaintiffs Cannot Show a Violation of the NVRA by the Cumberland Defendants

### A. The Plaintiffs were not Eligible Voters for the NVRA to Apply to Them

The Plaintiffs argue extensively that with respect to removals from voting rolls for changes in residence, under the NVRA "[a] State shall not remove the name of a

7

registrant from the official list of eligible voters in elections for Federal office . . . unless the registrant" confirms the change in residency in writing or the registrant both fails to respond to the statutorily prescribed notice *and* fails to vote or appear to vote in two consecutive federal election cycles. 52 U.S.C. § 20507(d); (Doc. 94 at 15). The Plaintiffs, however, completely overlook that the official list must be of *eligible* voters.

In *Bell v. Marinko*, 367 F.3d 588 (6th Cir. 2004), the Sixth Circuit Court of Appeals held that Congress did not intend the NVRA to act as a bar to the removal of voters from the official list of voters when that voter was *ineligible* and improperly registered to vote in the first place. *Bell*, 367 F.3d at 591, 592 (emphasis added). In *Bell*, individual residents filed challenges to the registrations of nearly one hundred voters on the grounds that the challenged voters were not permanent residents of the precinct and therefore not qualified or eligible to vote. *Id.* at 589. The board of elections held hearings on each challenge to a voter's registration, devoting each hearing to investigating and examining the challenged voter's residency. *Id.* at 590, 592. Based on the information gathered at the hearing on each challenged voter, the board denied the challenge to one voter's registration, referred one challenge to the Secretary of State who sustained it, and sustained the remaining challenges upon finding sufficient evidence to conclude that the challenged voters were not residents of the precinct and therefore were ineligible to vote. *Id.* at 590. Consequently, the board removed the name of the voters whose challenges were sustained from the voter rolls, reasoning that the presence of the ineligible voters on the rolls rendered the rolls inaccurate. *Id.* at 592.

As in this action, the *Bell* plaintiffs filed suit for injunctive relief, arguing that the Board's procedures violated the NVRA. *Id.* The district court granted summary judgment in favor of the Board, concluding that it did not violate the NVRA. *Id.* Specifically, the district court held that to read the NVRA as the plaintiffs wanted it read, "would require a finding that the defendants violated [52 U.S.C. § 20507(a)(3)] because none of the plaintiffs had requested removal from the list, been convicted of a crime, been found mentally unfit, or had changed residences." *Bell v. Marinko*, 235 F. Supp. 2d 772, 776 (N.D. Ohio 2002). However, the district court found this reading to ignore the "precondition to being entitled to vote entitled to vote [sic]: name residency in the precinct. If a person is not a resident, he is not a 'qualified elector.'" *Id.* The district court went on to conclude that the NVRA does not protect the "franchise of persons not entitled to vote," and to hold otherwise would be to undermine the integrity of the electoral process instead of protect it and would "dilute the franchise of those duly qualified to vote." *Id.*; *see* 52 U.S.C. § 20501(b)(3).

In affirming the district court's grant of summary judgment in favor of the board of elections, the Sixth Circuit Court of Appeals examined the Board's process for determining whether voters were eligible to vote. *Bell*, 367 F.3d at 592. The Court stated that through this process, which included an individual examination of each challenge, the Board reached the conclusion that the registrants were ineligible to vote and removed them from the voter rolls. *Id.* The Court reasoned that the NVRA "protects only 'eligible' voters from unauthorized removal," and does not "bar the removal of names

from the official list of persons who were ineligible and improperly registered to vote in the first place." *Id.* at 591, 592. "Eligible voters, at a minimum, are those who qualify as bona fide residents of the precinct in which they are registered or wish to register to vote." *Id.* at 592. The Sixth Circuit Court of Appeals reasoned that "[w]ere we to find that the Board's removal of these voters does violate the [NVRA], we would effectively grant and then protect, the franchise of persons not eligible to vote." *Id.* Instead, the Court held that the NVRA "encourages the Board to maintain accurate and reliable voting rolls" and "does not bar the Board's continuing consideration of a voter's residence." *Id.* It was this process, using individualized examinations and at various stages in a process involving a hearing, that led to the realization that the voter was ineligible. Only upon finding the voter ineligible did the Board remove the voter. *Id.* As a result, the Board's process for removal of ineligible voters did not violate the NVRA.

In *Bell*, the challenged voters attended the challenge hearings and provided evidence to such matters as their driver's license address, employment, and amount of time spent in the precinct in which they were registered. *Id.*at 590. Unlike *Bell*, only three of the challenged voters in Cumberland County for whom the challenges were sustained attended the hearings or responded at all. It is unlikely that the other challenged voters even received notice of the hearings. That is not because the North Carolina challenge process is not particularized or is deficient as to the notice requirements. It is because these voters were likely not living at their registration address and were simply not properly registered.

10

Plaintiffs argue that all of the cancellations by the Cumberland CBOE "were based on alleged changes of residence" citing the Cumberland Stipulations, ¶¶ 1, 6. (Doc. 94 at 15). Plaintiffs also argue that the Cumberland CBOE did not send any of the voters, whose challenges were sustained at the September 30, 2016, hearings, any other notice before ordering cancellation of their registrations, citing Cumberland Stipulations, ¶¶ 4, 6. (Doc. 94 at 11). Plaintiffs' characterization of those stipulations is not consistent with the language of the stipulations. Cumberland Stipulation ¶ 1 only addresses the finding of probable cause based on the prima facie evidence presented by the challenger. Cumberland Stipulation ¶ 6 only addresses that the Cumberland CBOE sustained the challenges. Cumberland Stipulation ¶ 4 clearly states that the Cumberland CBOE did not send *any other forms* of notices at this time, not that it did not send other notices. (Doc. 97, Cumberland Stipulations, ¶ 4). Plaintiffs have ignored Cumberland Stipulations, ¶¶ 4 and 5 to characterize Cumberland Stipulations ¶¶ 1 and 6 as they do. Cumberland Stipulation ¶ 4 makes it clear that the Cumberland CBOE knew that these challenged voters were in inactive status through the list maintenance process required by the NVRA, and Cumberland Stipulation ¶ 5 makes it clear, that in addition to the statutory notice directed by the orders, Director of Elections Robertson also mailed notice of the hearings to any other address that was available. The only other addresses that could have been available were mailing addresses contained in the registration records or forwarding addresses obtained from any correspondence that had been returned with a forwarding address shown on the returned envelope.

11

Contrary to Plaintiffs' assertion that, "[a]ll the cancellations of voter registrations in this case were based on alleged changes of residence," (Doc. 94 at 15), the information known by the Cumberland CBOE in sustaining the challenges was that each of these voters had received not less than four separate mailings requiring a response which had either been returned as undeliverable or to which the voter had failed to respond. The first of these mailings would have necessarily been sent by the Cumberland CBOE; the second would have been the NVRA confirmation mailing also sent by the Cumberland CBOE; the third was the mailing sent by the challenger; and the fourth was the mailing sent by the Cumberland CBOE upon finding probable cause to notice the hearing on the merits. For those voters for whom another address was known, an additional notice was mailed to that address. (Doc . 97, Cumberland Stipulations, ¶¶ 4, 5; Doc. 96, North Carolina State BOE Stipulations, ¶¶ 5, 6; N. C. Gen. Stat. § 163A-877 (former § 163-82.14). Under these circumstances, that these voters could not be reached at their registered address after at least four attempts demonstrates that these voters did not live at their registration address, were not properly registered, and were thus not eligible voters within the meaning of the NVRA, consistent with the reasoning expressed by the Court in *Bell*. Following the Court's reasoning and holding in *Bell*, the NVRA cannot protect the voters found to be ineligible by the Cumberland CBOE, because those voters were not at that time "eligible voters" to which the NVRA applied. As this process determined that the voters were ineligible before the NVRA could even apply, summary judgment should be denied as to the Plaintiffs and granted as to the Cumberland Defendants.

**B.** **The North Carolina Individual Challenge Statutes Do Not Constitute a "Program" Which Has a "Purpose" of "Systematically" Removing Voters**

Under the NVRA, a "State shall complete, not later than 90 days prior to the date of a primary or general election for Federal office, any program the purpose of which is to systematically remove the names of ineligible voters from the official lists of eligible voters." 52 U.S.C. § 20507(c)(2)(A). Here, the facts fail to establish that the statutory challenge procedures the Cumberland CBOE had to follow to process the challenges filed by an individual challenger constituted a *State program* with the *purpose* of *systematically* removing voters in violation of the NVRA. Consequently, the Plaintiffs' Motion for Partial Summary Judgment on their NVRA claims should be denied, and partial judgment should be granted as a matter of law in favor of the Cumberland Defendants.

The words, "program," "purpose," and "systematically," are not defined in the NVRA. The Meriam-Webster Collegiate Dictionary, 10th Ed., defines these words as follows: A "program" is "a plan or system under which action may be taken toward a goal." A "purpose" is "something set up as an object or end to be obtained." "Systematically" is the adverb form of "systematic." "Systematic" means "methodical in procedure or plan; marked by thoroughness and regularity." The NVRA only addresses *State* programs. The North Carolina challenge statutes are clearly not a State plan or system for the State to execute a State purpose of removing voters from the voter lists in a methodical fashion. That is exactly what the routine maintenance program, required by

the NVRA, is designed to do. See N. C. Gen. Stat. § 163A-877 (former § 163-82.14). The North Carolina challenge process cannot be a State program conducted in a methodical fashion, nor effect the State's purpose as required by the NVRA, because the State has no control over whether or when any challenges are brought by anyone anywhere in the State. The fact that the Plaintiffs have sued only three of North Carolina's 100 counties in this case demonstrates why these challenge statutes do not constitute a State program subject to the NVRA.

Plaintiffs base their argument that the challenges in this case constituted an effort to systematically remove the names of ineligible voters within the meaning of § 20507(c)(2)(A) because, they allege, the challenges were processed in large batches. (Doc. 94 at 23). This argument completely overlooks the fact that the process established by the challenge statutes is the same whether an individual challenges one or one-thousand registrants. Plaintiffs suggest no threshold number at which individual challenges become a program of systematic challenges. For the 3,951 challenges filed before September 10, 2016, in Cumberland County, the probable cause hearings stretched over two days with no probable cause found for 387 of these; and at the hearings on the merits, three for which probable cause had been found were not sustained due to the staff report of the challenged voter's registration records. (Doc. 97, Cumberland Stipulations, Exhibits). Having only approximately ten percent of these challenges dismissed for no probable cause is not extraordinary when considered in light of the fact that all the Cumberland challenges were brought against voters on the inactive list who had either

14

had at least two mailings from the Cumberland BOE returned as undeliverable or had not responded to those mailings in order to have been placed on the inactive list in the first place. (Doc. 97, Cumberland Stipulations, ¶ 4). The same outcome would have resulted under the challenge statutes if these challenges had been filed by multiple challengers with each filing only a few challenges. This is another reason these challenge statutes cannot be characterized as a State program within the meaning of the NVRA.

While "systematic" is not defined in the NVRA, federal courts have held that for a removal of a registered voter from the rolls to be "systematic," it must be done without individualized investigation, consideration, or hearing. The Plaintiffs rely on the case of *Arcia v. Florida Secretary of State*, 772 F.3d 1335 (11th Cir. 2014) for the proposition that the North Carolina statutory challenge procedure results in *systematic* removals of voters, which is prohibited within 90 days of a federal election under the NVRA. (Doc. 94 at 21). A close reading of *Arcia* shows that the Cumberland Defendants did not conduct a program or a practice that systematically removed voters; as a result, the 90 Day Provision of the NVRA did not apply to the Cumberland Defendants' actions to process challenges. .

In *Arcia*, the Eleventh Circuit Court of Appeals considered whether the Florida Secretary of State's removal of names of ineligible voters from the voter rolls was performed systematically in violation of the NVRA.[1] Florida initiated a program to

---

[1] The Court in *Arcia* parsed the language of the 90-day provision, looking to see (1) whether the removal under the program was done "systematically" and (2) whether the purpose of the program was to remove "ineligible voters" from the voter rolls.

remove non-citizens from its voter rolls, relying on a database from the Department of Homeland Security entitled, "Systematic Alien Verification for Entitlements" ("SAVE"), to check the citizenship of registered voters. *Arcia*, 772 F.3d at 1339. The names of registered voters identified as non-citizens in the SAVE database were forwarded to state supervisors who then automatically removed the voter from the voter rolls, which occurred within 90 days of a federal election. *Id.* at 1340.

The Eleventh Circuit Court of Appeals found that Florida's program violated the NVRA because it was a program designed to systematically remove the names of ineligible voters from the list of eligible voters. The Court looked at the plain meaning of the word "systematic" and held that Florida's program was a "systematic program under any meaning of the word" because it "did not rely upon individualized information or investigation to determine which names from the voter registry to remove." *Id.* at 1343–44. Furthermore, the Court took note of the fact that the "S" in "SAVE" stood for "systematic." *Id.* at 1344. The Court analyzed the exemptions to the 90-day provision listed in the NVRA, stating that those exemptions only applied to systematic removal programs. The Court went on to state that "by limiting its reach to programs that 'systematically' remove voters from the voter rolls, the 90 Day Provision permits removals based on *individualized* information at any time," reasoning that removal based on "individual correspondence or individualized inquiry, lead[s] to a smaller chance for mistakes." *Id.* at 1346.

Case 1:16-cv-01274-LCB-JLW   Document 103   Filed 04/04/18   Page 16 of 21

Under the Court's reasoning in *Arcia*, for the 90-day provision of the NVRA to apply to the Cumberland Defendants, they must have conducted a general program that "systematically" removed voters from the voter rolls. If the conduct of the Cumberland Defendants was based on *individualized* information, there is no systematic removal for the 90-day provision to apply and removals can occur at any time under that individualized process. More significantly, unlike the initiation of the process by the Florida Secretary of State in *Arcia*, the North Carolina challenges were initiated by private actors, removing the process even further from being a State program or systematic in any sense of the word.

Significantly, the Plaintiffs' assertion in their Brief that the "Defendants held hearings where they processed challenges and purged voters in large batches" and "without individualized voter information," (Doc. 94 at 23), is unfounded in regard to the Cumberland Defendants and directly contradicts the stipulated facts agreed to by the Plaintiffs. As set forth in the facts as stipulated between the Cumberland Defendants and the Plaintiffs, the Cumberland Defendants did not have a general program, the purpose of which was to "systematically" remove the names of voters from the rolls. Instead those stipulated facts clearly demonstrate that the Cumberland defendants processed the challenges brought by a private individual under state law in a good faith effort to follow the state law and with individualized consideration of each challenged voter's registration records and other information being reported by elections staff.

**C.** **N. C. Gen. Stat. § 163A-860 (former § 163-82.1) Requires that Persons Who Are Properly Registered Be Permanently Registered**

N. C. Gen. Stat. § 163A-860 (former. § 163-82.1) provides that every person who is registered in accordance with the State's registration requirements shall remain permanently registered, unless the registrant requests in writing to be removed from the voting list; becomes disqualified through death, conviction of a felony, or removal out of the county; or is removed through the list maintenance process. This statute does not include a provision that allows removal if the voter removes from the precinct of registration, which was the statutory basis for most of the challenges brought in Cumberland County. N. C. Gen. Stat. § 163A-1142 (former § 163-166.11) provides the means for which a voter who does not appear on the official list of eligible voters in the voting place to make written declaration that the individual is a registered voter in the county as provided in N. C. Gen. Stat. § 163A-860 (former § 163-82.1) and cast a provisional official ballot. The effect of these two statutes is that any voter who was removed by the challenge process in Cumberland was still able to cause his or her registration to be updated, and still able to vote a provisional official ballot simply by showing up to vote. It is not unreasonable that a voter who was removed from the voter lists under the circumstances of the challenges heard by the Cumberland and CBOE should be required to declare his or her eligibility and vote a provisional official ballot. This result reinforces the Sixth Circuit Court of Appeals finding in *Bell* that the NVRA "encourages the Board to maintain accurate and reliable voting rolls" and "does not bar the Board's continuing consideration of a voter's residence." *Id.* Moreover, these

18

statutes make clear that the State has no program with the purpose of removing eligible voters from the voter lists.

## Conclusion

For the foregoing reasons, the Plaintiffs' Motion for Partial Summary Judgment should be denied as to the Plaintiffs and granted as to the Cumberland and all other Defendants.

Respectfully submitted, this the 4th day of April, 2018.

*s/ Rickey L. Moorefield*
Rickey L. Moorefield
N.C. State Bar No. 8914
Cumberland County Attorney
P.O. Box 1829
Fayetteville, NC 28302
Telephone: (910) 678-7762
Fax: (910) 678-7758
Email: rmoorefield@co.cumberland.nc.us
Attorney for Cumberland Defendants

Case 1:16-cv-01274-LCB-JLW   Document 103   Filed 04/04/18   Page 19 of 21

## CERTIFICATE OF WORD COUNT

I certify that the foregoing Brief Of The Cumberland Defendants In Opposition

To The Plaintiffs' Motion For Partial Summary Judgment contains fewer than 6,250

words as reported by the word count feature of Microsoft Word, which complies with the

word limitations of Local Civil Rule 7.3(d) (M.D.N.C.),

This the 4th day of April, 2018.

s/ *Rickey L. Moorefield*
Rickey L. Moorefield
N.C. State Bar No. 8914
Cumberland County Attorney
P.O. Box 1829
Fayetteville, NC 28302
Telephone: (910) 678-7762
Fax: (910) 678-7758
Email: rmoorefield@co.cumberland.nc.us
Attorney for Cumberland Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on April 4, 2018, I electronically filed the foregoing with the clerk of Court using the CM/ECF system which will send notification of such to all counsel of record in this matter.

s/ *Rickey L. Moorefield*
Rickey L. Moorefield
N.C. State Bar No. 8914
Cumberland County Attorney
P.O. Box 1829
Fayetteville, NC 28302
Telephone: (910) 678-7762
Fax: (910) 678-7758
Email: rmoorefield@co.cumberland.nc.us
Attorney for Cumberland Defendants
