IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No. 1:16-cv-1274-LCB-JLW

| | |
|---|---|
| N.C. STATE CONFERENCE OF THE NAACP, *et al.*, | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) ) |
| N.C. STATE BD. OF ELECTIONS, *et al.*, | ) ) ) |
| Defendants. | ) ) |

**REPLY BRIEF IN SUPPORT OF PLAINTIFFS' MOTION TO CLARIFY SCOPE OF PRELIMINARY INJUNCTION OR, ALTERNATIVELY, MOTION TO MODIFY PRELIMINARY INJUNCTION**

**NOW COME** Plaintiffs North Carolina State Conference of the NAACP, Moore County Branch of the NAACP, James Edward Arthur, Sr., James Michael Brower, Grace Bell Hardison, and James L. Cox (collectively "Plaintiffs"), by and through undersigned counsel, and submit this Reply Brief in support of Plaintiffs' Motion to Clarify Scope of Preliminary Injunction or, Alternatively, Motion to Modify Preliminary Injunction.

**ARGUMENT**

State Defendants concede that the Court's PI Order does not on its face impose any temporal limitation on the prospective relief ordered by the Fourth and Eighth Paragraphs, which focus on preventing future NVRA violations, in contrast to the retrospective relief set forth in the Second, Third, Fifth, Sixth, and Seventh Paragraphs, which focus on restoring the full voting rights of those unlawfully removed from the voter rolls in

1

Beaufort, Moore, and Cumberland counties in the weeks and months before the November 2016 election. *See* ECF No. 43 at 3-5; ECF No. 100 at 3-4 (acknowledging Fourth Paragraph "does not specifically mention the November 8, 2016 election" and Eighth Paragraph "does not specifically reference the 2016 Election"). Moreover, State Defendants make no attempt to reconcile their strained interpretation of the PI Order as requiring prospective NVRA compliance in only three counties with the language in the Eighth Paragraph expressly ordering Defendant Strach to "take all reasonable and necessary steps to ensure *statewide* compliance with the NVRA." ECF No. 43 at 5 (emphasis added).

Indeed, State Defendants offer no rationale why the Fourth and Eighth Paragraphs should *not* apply statewide, until entry of final judgment, to enjoin implementation or administration of N.C.G.S. §§163A-911 and 163A-912 in a manner that violates the NVRA's 90-Day Provision or Waiting Period and Notice Provision.[1] They argue only that their narrower reading of the PI Order was "reasonabl[e]" because the evidence and irreparable harm discussion at the preliminary injunction hearing focused on events in only three counties prior to the November 2016 election. ECF No. 100 at 6-7. As explained below, the Court should reject this narrower reading.

---

[1] Plaintiffs do not contend that the Second, Third, Fifth, Sixth, and Seventh Paragraphs apply statewide or beyond the November 2016 election.

## I. A Statewide Injunction Through Entry of Final Judgment Is Appropriate.

### A. The Court Has Jurisdiction to Issue a Statewide Injunction Against State Defendants.

State Defendants suggest a statewide injunction would be inappropriate because the Court lacks jurisdiction over the 97 county boards of elections ("CBOEs") other than Beaufort, Moore, and Cumberland. ECF No. 100 at 6. But jurisdiction over non-parties is not at issue here; *the State Board of Elections* and officers thereof are indisputably proper named defendants in this action and statutorily responsible for overseeing administration of North Carolina's election laws and ensuring statewide NVRA compliance. *See* N.C.G.S. §163A-741(a)-(d) (SBOE "shall have general supervision over the primaries and elections in the State, and it shall have authority to make such reasonable rules and regulations with respect to the conduct of primaries and elections as it may deem advisable …"; SBOE "shall … advise [all members of CBOEs] … as to the proper methods of conducting primaries and elections," and "shall compel observance of the requirements of the election laws by county and municipal boards of elections and other election officers"); N.C.G.S. §163A-861 (SBOE Executive Director is "Chief State Election Official" for NVRA purposes and "is responsible for coordination of State responsibilities under the [NVRA]"); ECF No. 42 at 10.

State Defendants' reliance on the Court's citation to *Hubbard v. Byars*, No. 8:14-33-BHH, 2015 WL 337642 (D.S.C. Jan. 26, 2015), is therefore misplaced. The *Hubbard* plaintiff sought an injunction enjoining not only defendants but also defendants' "friends and colleagues" and other individuals not party to the litigation. *Id.* at \*14 (citing *Zepeda*

*v. U.S. I.N.S.*, 753 F.2d 719, 727 (9th Cir. 1983), for proposition that "Court must have personal jurisdiction over the parties to be enjoined; it may not enjoin defendants not before the court"). Here, Plaintiffs are not suggesting that the PI Order enjoins the 97 unnamed CBOEs, but only that it enjoins the named defendants, particularly including State Defendants, whose authority over implementation of the NVRA and the State's election laws extends statewide. *See, e.g.*, *Bresgal v. Brock*, 843 F.2d 1163, 1170-71 (9th Cir. 1987) (distinguishing *Zepeda* and approving nationwide injunction against Secretary of Labor, "who is a party").

State Defendants further suggest the PI Order should not be construed to apply statewide because the Court lacks evidence concerning specific challenges in the other 97 counties, ECF No. 100 at 6, and point to the Court's refusal to restore cancelled voters in five counties other than Beaufort, Moore, and Cumberland, ECF No. 42 at 24.

However, State Defendants' argument conflates the PI Order's *prospective* components with its *retrospective* ones, and lacks merit. A prohibitory preliminary injunction, such as the PI Order, "'aim[s] to maintain the status quo and prevent irreparable harm *while a lawsuit remains pending*.'" ECF No. 42 at 25 (quoting *League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 236 (4th Cir. 2014); emphasis added). As this Court explained, "'status quo' is defined in this Circuit as 'the last uncontested status between the parties which preceded the controversy,'" and while maintaining the status quo typically entails preventing future unlawful conduct, it sometimes also "require[s] a party who has recently disturbed the status quo to reverse its

4

actions." ECF No. 42 at 25 (quoting *Aggarao v. MOL Ship Mgmt. Co., Ltd.*, 675 F.3d 355, 378 (4th Cir. 2012)).  In this case, Plaintiffs obtained both types of prohibitory injunctive relief: injunctive provisions (like the Fourth and Eighth Paragraphs) preserving the status quo by preventing the removal of any additional voters pursuant to N.C.G.S. §§163A-911 and 163A-912 in violation of the NVRA, and injunctive provisions (like the Second, Third, Fifth, Sixth, and Seventh Paragraphs) restoring the status quo by reinstating the voter registrations of those already wrongfully purged.

The Court did not grant Plaintiffs' request to order *retrospective* relief, i.e., restoration of challenged voters in five counties other than Beaufort, Moore, and Cumberland, *see* ECF No. 39-1 ¶8, given that the Court "ha[d] no specific information regarding the process used in those counties or the specific nature of the challenges" in those counties.  ECF No. 42 at 24.

But the Court did frame the PI Order's *prospective* components as applying statewide.  That makes sense, because if in the future any of the other 97 CBOEs "cancel[] the registration of voters through the challenge procedures set forth in N.C. Gen. Stat. §§ [163A-911 and 163A-912], when those challenges are based on change of residency and the State has neither received written confirmation from the voter of a move outside of the county, nor complied with the NVRA's notice requirement and two-election cycle waiting period," or "us[e] the challenge procedure set forth in N.C. Gen. Stat. §§ [163A-911 and 163A-912] to remove voters from the rolls based on change of residency information in the 90 days preceding a Federal election," ECF No. 43 at 4, those removals would violate

5

the NVRA and disturb the status quo just much as did the actions by Beaufort, Moore, and Cumberland County Defendants prior to the November 2016 election.

There is no reason why the Court would enjoin State Defendants to prevent further NVRA violations in three counties but not in the remainder of the State. In fact, in their recently filed response to Plaintiffs' summary judgment motion, State Defendants themselves propose that the final injunction should require "Defendants Strach and the SBOE [to] *notify all County Boards of Election of this Declaratory Judgment and Injunction and direct them to comply with the paragraphs herein*," ECF No. 101 at 11 (emphasis added), showing that there is no jurisdictional barrier to such a provision.

### B. A Statewide Injunction Is Appropriate Because the Court's Preliminary Findings of NVRA Violations Are Based on Statewide Implementation of State Law.

A statewide injunction is not only permissible, given the Court's undisputed jurisdiction over State Defendants and State Defendants' undisputed authority and responsibility to oversee administration of election laws throughout the State, but is also entirely warranted, because the Court's preliminary findings of NVRA violations are based on State Defendants' unlawful statewide implementation of N.C.G.S. §§163A-911 and 163A-912.

Since *Zepeda*, courts have clarified that "where there is a systemwide injury because of a policy or practice that pervades an institution, then widespread relief is justified to remedy that injury." *Davis v. Astrue*, 874 F.Supp.2d 856, 868 (N.D. Cal. 2012); *see, e.g.*, *Clement v. Cal. Dep't of Corr.*, 364 F.3d 1148, 1153 (9th Cir. 2004)

(affirming statewide injunction applying to all state prisons because "unconstitutional policy ha[d] become sufficiently pervasive to warrant system-wide relief"); *Easyriders Freedom F.I.G.H.T. v. Hannigan*, 92 F.3d 1486, 1501-02 (9th Cir. 1996) (affirming statewide injunction despite there being only 14 named plaintiffs spread among four counties); *League of Women Voters of N.C.*, 769 F.3d at 247-49 (ordering statewide injunction of portions of state elections bill that likely violated Section 2 of Voting Rights Act).

Here, similarly, there is no dispute that the unlawful voter registration cancellations in Beaufort, Moore, and Cumberland counties flowed from the implementation and administration of the challenge procedures provided for under state law, which State Defendants are responsible for implementing statewide. As this Court's PI Memorandum Opinion explained, although the specific challenges that precipitated the preliminary injunction motion occurred in three particular counties, the private parties "used North Carolina's challenge procedures *provided in N.C. Gen. Stat. §[163A-911(a)]* as a mechanism to have these voters purged from the state's voter rolls." ECF No. 42 at 13 (emphasis added). The CBOEs held preliminary hearings, accepted a single mailing marked undeliverable as "prima facie evidence" of ineligibility, placed the burden on the challenged voter to rebut this probable cause showing, and ultimately canceled the challenged voter's registration if the voter did not attend the hearing or send someone to the hearing with an affidavit attesting to that voter's residency – all as authorized and, according to the CBOEs, mandated by North Carolina law. *Id.* at 14-15 (citing N.C.G.S.

7

§§163-85(d)-(e) and 163-86(c)-(d) [§§163A-911(d)-(e) and 163A-912(c)-(d)]); *id.* §163A-911; *see also*, *e.g.*, ECF No. 103 at 3-4.  The Court concluded that these types of cancellations pursuant to state law violate the NVRA's 90-Day Provision *and* the NVRA's Waiting Period and Notice Provision.  ECF No. 42 at 18 (violation of 90-Day Provision), 21 (violation of Waiting Period and Notice Provision).

State Defendants defended "these mass cancellations on the ground[s] that state laws purportedly allow private individual challenges to voter registrations based on evidence that voters have moved out of the precinct, which may include a returned mailing," and that removals pursuant to "'challenge proceedings under Article 8 of Chapter 163 … are not part of North Carolina's systematic list maintenance program and are not, therefore, of the type barred under the NVRA.'"  ECF No. 42 at 4-5 (quoting ECF Nos. 5-2 at 2, 5-5 at 2).  It cannot be disputed that State Defendants' position is the policy throughout the State and is not limited to just Beaufort, Moore, and Cumberland.  Because this statewide policy is unlawful, a statewide injunction is appropriate.

Furthermore, "an injunction is not necessarily made over-broad by extending benefit or protection to persons other than prevailing parties in the lawsuit – even if it is not a class action – if such breadth is necessary to give prevailing parties the relief to which they are entitled."  *Bresgal*, 843 F.2d at 1170-71 (emphasis omitted); *see, e.g.*, *Easyriders*, 92 F.3d at 1502 (statewide injunction of statewide policy necessary to afford plaintiffs complete relief because they otherwise remained at risk of same unlawful conduct by other law enforcement officials).  Here, the SBOE is responsible for

8

overseeing implementation of N.C.G.S. §§163A-911 and 163A-912 and the NVRA on a statewide level, CBOEs follow the SBOE's directives, and other CBOEs will likely continue to process private party challenges brought under the exact same circumstances as occurred in Beaufort, Moore, and Cumberland on the eve of the November 2016 election, absent a directive from State Defendants instructing them not to do so. Thus, absent statewide preliminary injunctive relief, nothing would prevent the Voter Integrity Project or others from bringing the same types of challenges in the other 97 counties in the future. Such a result would continue to cause irreparable harm to Plaintiff NC NAACP, which would be forced to divert its limited staff and resources away from planned activities in response to such unlawful disenfranchisement, as well as to the NC NAACP's 20,000 members located *throughout* the State who would be at risk of such disenfrachisement, and thus would fail to afford NC NAACP "the [complete preliminary] relief to which [it is] entitled." *Bresgal*, 843 F.2d at 1170-71 (emphasis removed); *see* ECF No. 42 at 22-23 (finding "NAACP has likewise demonstrated that they will face irreparable harm if an injunction does not issue. … That the NAACP would have to continue to divert resources in the absence of relief is enough to satisfy its burden of showing a likelihood of suffering irreparable harm"); ECF No. 5 ¶¶5, 29-32; *De Beers Consol. Mines v. United States*, 325 U.S. 212, 220 (1945) ("A preliminary injunction is always appropriate to grant intermediate relief of the same character as that which may be granted finally.").

*Clement* is analogous; there, "the state offer[ed] no argument that a total internet mail ban might be constitutional if implemented at a different prison" and the court concluded "it would be inefficient and unnecessary for prisoners in each California state prison to separately challenge the same internet mail policy; it would simply force [the state] to face repetitive litigation." 364 F.3d at 1153. The same rationale applies here. State Defendants do not – nor could they reasonably – argue that residency-based challenges brought under the same circumstances as occurred in Beaufort, Moore, and Cumberland would be any less violative of the NVRA if brought in any of the 97 other counties. It would be "inefficient and unnecessary" for Plaintiffs to have to "separately challenge" the same type of unlawful private-party challenges and voter registration cancellations under N.C.G.S. §§163A-911 and 163A-912 every time they occurred in a new county. *See id.* Imposing such a burden would be particularly unreasonable given that Plaintiffs (unlike the CBOEs) may not even learn of such private-party challenges until it is too late to seek effective preliminary injunctive relief. *See* ECF No. 42 at 25 (observing that "the voter is often unaware that the registration is being challenged" pursuant to these state procedures).

### C. An Injunction Maintaining the Status Quo Through Entry of Final Judgment Is Necessary to Prevent the Risk of Irreparable Harm in Subsequent Elections.

State Defendants offer no reason why the PI Order should be construed to apply only to the November 2016 election, rather than through a final decision on the merits; they merely argue that reading the PI Order as limited in duration is "reasonabl[e]" in light

10

of the preliminary injunction proceedings' emphasis on preventing irreparable harm in the November 2016 election.  *See* ECF No. 100 at 6-7.

In fact, their narrow construction of the PI Order is unreasonable.  As the Court explained, enjoining future violations of the NVRA's 90-Day and Waiting Period and Notice Provisions is necessary "'to maintain the status quo and prevent irreparable harm *while a lawsuit remains pending*.'"  ECF No. 42 at 25 (quoting *League of Women Voters of N.C.*, 769 F.3d at 236; emphasis added).  It is standard practice that preliminary injunctions remain in place to "preserve[] the status quo pending a final trial on the merits" and they are typically "of indefinite duration."  *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 422 (4th Cir. 1999); *see also League of Women Voters of N.C.*, 769 F.3d at 247-49 (enjoining state's elimination of same-day registration and out-of-precinct voting, upon finding they likely violated Voting Rights Act, and reinstating preexisting state law provisions "pending the conclusion of a full hearing on the merits").

That Plaintiffs, in seeking urgent emergency injunctive relief, and the Court, in granting such relief, were focused on preventing the most immediate threat of irreparable disenfranchisement in the November 2016 election in no way undercuts the threat of irreparable harm in future elections, absent a continuing preliminary injunction.  If additional voters are wrongfully purged within 90 days of the November 2018 or subsequent elections, or before that time period but without adherence to the NVRA's notice-and-waiting-period requirements, those disenfranchised voters (many of whom may be members of Plaintiff NC NAACP) and the NC NAACP itself will be irreparably

11

Case 1:16-cv-01274-LCB-JLW   Document 105   Filed 04/09/18   Page 11 of 16

harmed, *see* ECF No. 42 at 22-23, and the public's interest in "'permitting as many qualified voters to vote as possible'" will be disserved, *id.* at 27 (quoting *League of Women Voters*, 769 F.3d at 247-48). Moreover, because Plaintiffs are merely asking State Defendants to "take all reasonable and necessary steps to ensure statewide compliance with the NVRA" in *advance* of the November 2018 election and any subsequent elections that occur before final judgment, any burden on State Defendants is minimal and appropriately "narrowly tailored … to ensure that eligible voters are not deprived of their right to participate in the upcoming election due to a flawed process engaged in by the State and County Boards, which this Court has determined likely violates the NVRA." ECF No. 42 at 25.

## II. Arbitrarily Limiting the Scope of the PI Order Would Raise Equal Protection Concerns.

Finally, interpreting the PI Order to enjoin NVRA violations only in Beaufort, Moore, and Cumberland Counties, while allowing precisely the same types of challenges and cancellations to proceed in North Carolina's other 97 counties, would lead to uneven enforcement of the NVRA throughout the State that would itself give rise to a likely equal protection violation under *Bush v. Gore*, 531 U.S. 98 (2000). "[A] citizen has a constitutionally protected right to participate in elections on an equal basis with other citizens in the jurisdiction." *Dunn v. Blumstein*, 405 U.S. 330, 336 (1972); *accord League of Women Voters*, 769 F.3d at 229. State Defendants' proposed differential treatment of challenges under N.C.G.S. §§163A-911 and 163A-912 based on the county in which they are brought would create a statewide equal protection problem, denying voters in the other

12

97 counties the same NVRA protections afforded voters in Beaufort, Moore and Cumberland.[2]  *See Northeast Ohio Coal. for the Homeless v. Husted*, 696 F.3d 580, 598 (6th Cir. 2012).  The Constitution does not permit such a result.

## CONCLUSION

For the foregoing reasons and those in Plaintiffs' opening brief, Plaintiffs respectfully request that the Court issue an order clarifying the scope of the PI Order as set forth in Plaintiffs' motion.

Dated:   April 9, 2018                                         Respectfully submitted,

By: /s/ Stacey M. Leyton
Stacey M. Leyton (CA SBN 203827)
Peder J. Thoreen (CA SBN 217081)
Eric P. Brown (CA SBN 284245)
Connie K. Chan (CA SBN 284230)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Telephone: (415) 421-7151
Fax: (415) 362-8064
E-mail: sleyton@altber.com
         pthoreen@altber.com
         ebrown@altber.com
         cchan@altber.com

         /s/ Penda D. Hair
Penda D. Hair (DC SBN 335133)
FORWARD JUSTICE
P.O. Box 42521
Washington D.C. 20015
Telephone: (202) 256-1976
Email: phair@forwardjustice.org

Caitlin Swain (VA SBN 84515)
Leah Kang (NC SBN 51735)
FORWARD JUSTICE
400 W. Main Street, Suite 203
Durham, NC 27701
Telephone: (919) 323-3889
Email:  cswain@forwardjustice.org
            lkang@forwardjustice.org

         /s/ Irving Joyner
Irving Joyner (NC SBN 7830)
P.O. Box 374
Cary, NC 27512

         /s/ Mary Joyce Carlson
Mary Joyce Carlson (DC SBN 987939)
1101 New York Avenue NW
Washington DC 20008

---

[2] Beaufort, Moore, and Cumberland County Defendants agree with Plaintiffs that the PI Order remains in effect through entry of final judgment.  *See* ECF No. 82 at 3-4 ¶2(f).

Telephone: (919) 560-6293  Telephone: (202) 230-4096
Fax: (919) 530-6339  Fax: (202) 408-4649
Email: ijoyner@nccu.edu  Email: carlsonmjj@yahoo.com

## CERTIFICATE OF WORD COUNT

As required by Local Rule 7.3(d)(1) and (2), I certify that this document contains 3,123 words, excluding the parts of the document that are exempted by Local Rule 7.3(d)(1). The document therefore complies with Local Rule 7.3(d)(1), which limits briefs in support of motions and responsive briefs to 6,250 words and reply briefs to 3,125 words.

This the 9th day of April, 2018.

/*s*/ Irving Joyner

Irving Joyner
*Attorney for NC NAACP*

## CERTIFICATE OF SERVICE

I, Irving Joyner, hereby certify that on April 9, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and have verified that such filing was sent electronically using the CM/ECF.

This the 9th day of April, 2018.

/*s*/ Irving Joyner

Irving Joyner
*Attorney for NC NAACP*