UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| NORTH CAROLINA STATE CONFERENCE OF THE NAACP, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> The NORTH CAROLINA STATE BOARD OF ELECTIONS, *et al.*, <br><br> *Defendants*. | No. 1:16-cv-1274-LCB-JLW |

## PLAINTIFFS' CONSOLIDATED REPLY TO DEFENDANTS' BRIEFS IN OPPOSITION TO PARTIAL SUMMARY JUDGMENT

Plaintiffs North Carolina State Conference of the NAACP, Moore County Branch of the NAACP, James Edward Arthur, Sr., James Michael Brower, Grace Bell Hardison, and James L. Cox (collectively "Plaintiffs"), by and through undersigned counsel, submit this Reply Brief in support of Plaintiffs' Motion for Partial Summary Judgment.

## ARGUMENT

As the Brief in Opposition to Partial Summary Judgment filed by Defendants State Board of Elections, its Executive Director, and its members ("SBOE"), makes clear, there is no question that Plaintiffs are entitled to summary judgment as to Counts I and II of the Complaint. The attempts by Defendants Cumberland County Board of Elections ("Cumberland CBOE"), Moore County Board of Elections, ("Moore CBOE"), and Beaufort County Board of Elections ("Beaufort CBOE"), and their respective directors and

members, to convince the Court otherwise are belied by the undisputed facts in this case and unsupported by the law. Defendants' actions violated both the National Voter Registration Act's ("NVRA") notice-and-waiting-period provisions, 52 U.S.C. §20507(d), and its 90-day prohibition against systematic removals, *id.* §20507(c)(2)(A), and the Court should therefore grant Plaintiffs' Motion for Partial Summary Judgment.

## I.   The SBOE and Plaintiffs Agree that Summary Judgment for Plaintiffs is Proper

Defendant SBOE and Plaintiffs are in agreement that Summary Judgment for Plaintiffs is proper. The SBOE, which is responsible for overseeing the administration of state and federal election law, concludes in its brief that N.C. Gen. Stat. §163A-911(c)(1)-(3) and (e), the state statutory provisions that permit residency-based challenges, "conflict with subsections (c) and (d) of Section 8 of the NVRA [52 U.S.C. §20507(c) and (d)] because they allow the County Boards of Elections to remove voters from the official list of eligible voters in elections for Federal office without having a written request of the voter or complying with the notice and waiting period." SBOE Opp. at 8, ECF No. 101. The SBOE notes that a "growing body of case law" makes clear that the NVRA prohibits removal of a registered voter from the registration rolls unless the voter gives notice in writing that the voter has moved or the state has complied with the NVRA's notice-and-waiting-period provisions. *Id.* at 6. (citing, *inter alia*, *U.S. Student Ass'n Found. v. Land*, 546 F.3d 373 (6th Cir. 2008); *Mont. Democratic Party v. Eaton*, 581 F. Supp. 2d 1077 (D. Mont. 2008); *Md. Green Party v. Md. Bd. Of Elec.*, 832 A.2d 214, 244 (Md. 2003)).

Case 1:16-cv-01274-LCB-JLW   Document 108   Filed 04/18/18   Page 2 of 21

Plaintiffs take no issue with the SBOE's position that, because the NVRA pertains to federal elections, residency-based challenges under N.C. Gen. Stat. §163A-911(c)(1)-(3) and (e) would permit the removal of voters from an official list of eligible voters for municipal elections, as long as those voters were not removed from the list of voters for federal elections. SBOE Opp. at 8. Thus, there is complete agreement between Plaintiffs and the SBOE both that summary judgment is proper as to Count I of the Complaint, and that the proper remedy is a permanent injunction enjoining Defendants from cancelling voters from the voter rolls for a federal election pursuant to a residency-based challenge without either (i) a written confirmation from the voter or (ii) complying with the NVRA's notice-and-waiting-period provisions.

Plaintiffs and the SBOE likewise agree that summary judgment for Plaintiffs is proper as to Count II. The SBOE makes no argument in its brief opposing summary judgment as to Count II and concludes that "the NVRA and case law support Plaintiffs' position that the State cannot remove voters, or begin to remove voters, *en masse*, during the ninety (90) days before an election based on changes in residency." *Id.* at 9.

As to the SBOE's arguments that the NVRA's 90-day prohibition is subject to certain limitations, Plaintiffs, again, are in agreement with the SBOE's positions that the 90-day prohibition neither prohibits removals resulting from challenges based on criminal convictions, mental incapacity, or death, nor applies to the 90 days preceding a *municipal* election. *Id.* at 9-10 (citing *Arcia v. Sec'y of Fla.*, 772 F.3d 1335, 1345 (11th Cir. 2014)). Plaintiffs furthermore understand, as the SBOE argues in its brief, that the 90-day

3

prohibition "by its terms only applies to programs which 'systematically' remove the names of ineligble voters," as opposed to removals "based on individual correspondence or rigorous individualized inquiry." *Arcia*, 772 F.3d at 1346, 1348. Plaintiffs' motion for partial summary judgment accordingly requests that the Court enter a permanent injunction prohibiting Defendants from cancelling "challenges brought under N.C. Gen. Stat. §§163A-911–912 by a private party or parties *that result in the systematic removal of voters*" within 90 days of a federal election. Pl.'s Summ. J. Br. at 28 ¶1(B) (emphasis added).

There is therefore no disagreement between Plaintiffs and the SBOE that the undisputed facts in this case establish that the NVRA's notice-and-waiting-period provisions and 90-day prohibition were violated, and the Court should grant summary judgment in Plaintiffs' favor as to both Counts I and II.

## II. The CBOEs' Oppositions to Summary Judgment are Without Merit

The CBOEs disagree with the SBOE and Plaintiffs' position that summary judgment for Plaintiffs is proper here, but their arguments are without merit.

### A. The CBOEs Incorrectly Argue that the NVRA Does Not Apply Because the Removed Voters were Ineligible (Count I)

The CBOEs defend their mass removals by arguing that the NVRA's notice-and-waiting-period provisions did not apply to the residency-based removals in this case because, according to the CBOEs, the removed voters were ineligible voters. Cumberland Opp. at 7-12, ECF No. 103; Moore Opp. at 8-13, ECF No. 102; Beaufort Opp. at 7-14, ECF No. 104. But this assertion is both wrong on the law and wrong on the facts.

4

The CBOEs contend that the removals in this case are like those upheld in *Bell v. Marinko*, 367 F.3d 588 (6th Cir. 2004) – a case that is wholly inapposite. In *Marinko*, individuals challenged the eligibility of about 100 seasonal residents of a vacation town on the basis that they were seasonal rather than permanent residents, and thus not permitted to vote there. *Id.* at 589. The challenged voters filed suit on the theory that such removals were not listed among the enumerated grounds for removal of voters set forth in 52 U.S.C. §20507(a)(3)-(4), and thus were not permitted by the NVRA. Importantly, the challenges in *Marinko* were *not* based on any alleged *change* in residency, and unlike in the present case, the plaintiffs did *not* assert any claim under the NVRA's notice-and-waiting-period provision, 52 U.S.C. §20507(d).[1] Rather, the Sixth Circuit in *Marinko* upheld the removals against a challenge *under 52 U.S.C. §20507(a)(3)-(4)* by reasoning that the seasonal residents "were ineligible and improperly registered to vote in the first place," and so their removal on that ground did not violate the NVRA provision at issue. *Id.* at 591-92.

Thus, *Marinko* is inapposite for two separate and independent reasons. First, *Marinko* addressed a different provision of the NVRA than the provision at issue here. The provision on which the *Marinko* plaintiffs relied, 52 U.S.C. §20507(a)(3)-(4), sets forth the permissible substantive grounds for removal from the voter registration rolls. The

---

[1] As the lower court in *Marinko* explained, "the issues of change of residence, and the [NVRA] provisions applicable thereto, need not be addressed" because "[t]his is not a case in which the challenge arose because the challengers believed that the plaintiffs had moved, thereby rendering themselves ineligible to remain registered." *Bell v. Marinko*, 235 F. Supp. 2d 772, 777 (N.D. Ohio 2002), *aff'd* 367 F.3d 588 (6th Cir. 2004).

5

provision at issue in this case, 52 U.S.C. §20507(d), by contrast, specifically sets forth the procedures that must be followed before voters can be removed based on one specific substantive ground: that of change in residency. That is, Section 20507(d) explicitly provides that a state "*shall not* remove the name of a registrant from the official list of eligible voters in elections for Federal office *on the ground that the registrant has changed residence*," unless the registrant (i) confirms the change in writing or (ii) fails to respond to an NVRA-prescribed notice *and* fails to vote during the two federal election cycles after receiving such notice. 52 U.S.C. §20507(d) (emphases added). *Marinko* does not address this NVRA provision at all, because the plaintiffs there did not raise it, and because there was no contention that the voters in *Marinko* had changed their residence.

*Marinko* is inapplicable for a second reason as well: the CBOEs here cannot claim that the removed voters were "ineligible and improperly registered to vote in the first place." 367 F.3d at 591-92. Rather, the CBOEs argue that they were entitled to presume, on the basis of a returned mailing, *that the voters no longer lived at their registration address*, and that the Court should therefore presume the voters were ineligible at the time of their removal.[2] But when the contention is that a voter has changed residence, as

---

[2] The Cumberland CBOE further argues that Plaintiffs' contention that voters' registrations were cancelled based on residency challenges misrepresents the stipulations, because they instead were actually cancelled based on "four separate mailings requiring a response which had either been returned as undeliverable or to which the voter had failed to respond." Cumberland Opp. at 11-12. But there is no evidence in the summary judgment record showing that four such mailings were sent and either returned or ignored, and in fact the stipulations make clear that the Cumberland CBOE removed the eligible, registered voters from the rolls upon sustaining residency-based challenges. Cumberland Stips. ¶¶2, 6, ECF No. 96. In any event, even if there were evidence of NVRA-compliant

6

opposed to that a voter was never eligible to be registered at all, *Marinko* is wholly inapplicable.

To conclude otherwise, and accept the CBOEs' argument that the NVRA does not apply to the residency-based removals in this case, would render the NVRA's change-of-address protections meaningless. Under the CBOEs' reading of *Marinko*, any time a voter were challenged based on the allegation that the voter did not reside at the address of registration, either because the voter had moved or because the voter never resided there, the voter could simply be deemed "ineligible" and the notice-and-waiting-period provisions of the NVRA would thereby not apply. Such an interpretation of the NVRA would completely read 52 U.S.C. §20507(d)'s requirements of a specific notice and waiting period out of the statute.

Moreover, the Sixth Circuit itself has limited the reach of *Marinko* on a ground that would be equally applicable here, and provides a third basis for deeming *Marinko* inapposite. In *U.S Student Ass'n Found. v. Land*, 546 F.3d 373 (6th Cir. 2008), a case involving the removal of voters on the basis of undeliverable mail, the court explained that *Marinko* had held that the NVRA allowed the removal of voters after a finding of ineligibility following a "*particularized* challenge hearing for *each* specific voter." *Id.* at 386 (emphasis added). By contrast, the court explained, any registered voter who is

_____

mailings, that would be irrelevant in the absence of any showing that the Cumberland CBOE complied with the NVRA's requirement that they wait two federal election cycles before cancelling voters' registrations.

removed from the voter registration rolls "because [a mailing] is later returned as undeliverable has had his or her rights, as defined by the NVRA, [52 U.S.C. §20507(d)], violated." *Id.* But here, the CBOEs did *not* hold a "particularized challenge hearing for each specific voter." Rather, the CBOEs held hearings on multiple voters – dozens or even hundreds – at the same time. *See* Cumberland Stips. ¶6, ECF No. 96; Moore Stips. ¶13, ECF No. 98; Beaufort Stips ¶¶15 & 21, ECF No. 99. More important, unlike in *Marinko*, the CBOEs were required to (and did) *presume* that a challenged voter would be removed *unless* there was individualized evidence that satisfied the CBOE that the voter had *not* moved from the jurisdiction. *See* N.C. Gen. Stat. §163A-911(d)-(e) (requiring challenge hearing if probable cause exists that voter is not qualified, and that letter returned as undeliverable constitutes prima facie evidence that voter no longer lives in precinct); *id.* §163A-912(c) (challenge must be sustained unless voter testifies under oath or submits affidavit).

Specifically, in all three counties, the challengers submitted a mailing that had been returned as undeliverable as their only evidence of the challenged voters' alleged change in residency. Cumberland Stips. ¶2; Moore Stips. ¶3; Beaufort Stips. ¶3. At the preliminary hearings, as directed by state statute, the CBOEs accepted the returned mailing as "prima facie evidence that the person no longer resides in the precinct," and found probable cause for removal in some cases on that basis alone. N.C. Gen. Stat. §163A-911(e); Cumberland Stips. ¶3; Moore Stips. ¶5; Beaufort Stips. ¶¶5, 10. Then, at the full hearings, *unless* the challenged voters or their representative met the burden of attending

8

the hearing or the CBOE staff otherwise came across reliable information to the contrary, the CBOEs sustained the challenge and purged hundreds of voters from the rolls. Cumberland Stips. ¶6; Moore Stips. ¶13; Beaufort Stips. ¶14-15, 17-18.[3]  The CBOEs have, in fact, admitted that voters were removed from the registration rolls even when the *only* evidence was a mailing returned as undeliverable.  Cumberland Stips. ¶¶2, 6; Moore Stips. ¶¶3, 13; Beaufort Stips. ¶¶5, 9-10, 15, 18-19.[4]  Thus, contrary to the CBOEs' characterizations, Cumberland Opp. at 8-12; Moore Opp. at 11-13; Beaufort Opp. at 11-14, their actions here fell squarely under *U.S. Student Association Foundation.*, not under *Marinko.*

The CBOEs' assertions that only ineligible voters were removed as a result of these procedures thus beg belief.  In fact, they are flatly refuted by the stipulated facts, which make clear that the CBOEs did *not* remove only ineligible voters from the rolls.  The stipulations establish that Plaintiff James Edward Arthur, Sr. was removed from the rolls

---

[3] Whether some CBOEs retained some voters on the rolls after receiving individualized evidence that a voter remained eligible, *see* Moore Opp. at 13; Beaufort Opp. at 14, is irrelevant when the CBOEs indisputably removed voters even when they *lacked* individualized evidence that the voter no longer lived in the county, based solely on a single mailing returned as undeliverable.

[4] Moreover, here, the mailings at issue were sent by private individuals, marked "DO NOT FORWARD," and in some cases sent to the wrong address (the voter's residential address instead of the listed mailing address).  *See, e.g.*, Moore Stips. ¶9; Beaufort Stips. ¶¶5-7, 11-12.  In *U.S. Student Association Foundation*, by contrast, the mailings that triggered the removal process were sent by the State and voter registrations were deactivated only if no forwarding address was on file with the post office.  546 F.3d at 377-78.  Even despite these additional protections, the court in *U.S. Student Association Foundation* held that the process violated the NVRA.

9

despite being an eligible voter who continued to reside in the county. Beaufort Stips. ¶16. The NVRA's notice-and-waiting-period provisions were designed to prevent exactly such erroneous removals.

Finally, even aside from the reasons why *Marinko* is inapplicable here, there is good reason to question the continued vitality of *Marinko*, which is out-of-circuit authority and therefore not binding. In *Arcia*, the Eleventh Circuit specifically rejected the notion that the NVRA does not protect registered voters who may have been improperly registered in the first place. 772 F.3d at 1348 ("[W]e do not accept [the state's] argument that the NVRA distinguishes between the removals of registered voters who become ineligible to vote and registrants who were never eligible in the first place."). Such a distinction is not supported by any statutory langauge in the NVRA, and could eviscerate the limitations the NVRA imposes upon the removal of eligible voters by allowing states to remove voters first, and then hope to justify any breach of the NVRA's safeguards later by arguing that the removed voters were not protected at all by the NVRA because, although registered, they were not truly eligible in the first place. The NVRA seeks to avoid just these types of removals by providing clear mechanisms for when and how any registered voters may be removed from the rolls.

The CBOEs' argument is therefore wrong on the law and unsupported by the facts, and the Court should grant summary judgment on Count I in Plaintiffs' favor. If, however, the Court were at all inclined to rule on the basis that the NVRA did not apply to the challenges in this case because only ineligible voters were removed, Plaintiffs respectfully

request an opportunity to engage in limited discovery to provide the Court with evidence that eligible voters were purged as a result of Defendants' mass removals.

## B. The CBOEs Incorrectly Argue that the 90-Day Prohibition Does Not Apply (Count II)

The CBOEs further defend their mass removals by arguing that the mass purges were not "systematic" removals, that they did not have the "purpose" of systematically removing voters, Cumberland Opp. at 15-17; Moore Opp. at 15-19; Beaufort Opp. at 15-22, and that they did not constitute a "state program," Cumberland Opp. at 13; Moore Opp. at 14.

In support of their position that the removals were not "systematic," the CBOEs point to the fact that each individual challenged voter was, as required by state statute, the subject of a preliminary hearing, mailed a letter, and then given a hearing. Cumberland Opp. at 14, 17; Moore Opp. at 17-18; Beaufort Opp. at 18-19. But the fact that the CBOEs followed a statutorily prescibed process does not disguise the systematic nature of the mass purges. To the contrary, the CBOEs began with a list of challenged voters from a mass mailing based on a state database. *See* Cumberland Stips. ¶4 (challenged voters were from an "inactive status" list); Moore Stips. ¶1 (same); Beaufort Stips. ¶3 (mass mailing was sent to "individuals on the voting rolls in the city"). They then systematically processed batches of voters at the preliminary hearings, systematically mailed batches of form letters to the voters, and systematically processed batches of voters at the full hearings. Cumberland Stips. ¶¶3-4, 6; Moore Stips. ¶¶5-7, 13; Beaufort Stips. ¶¶4-5, 8-11, 13-15, 17-18. There is thus little difference between Defendants' program and that struck down

11

in *Arcia*, where the state "started by compiling a list of registered voters" from the state motor vehicles database, based on which voters' motor vehicles identification suggested they might be non-citizens, and then "sent a portion of it to the State Supervisor of Elections in each county, instructing them to (1) review the names on the list, (2) conduct additional research using 'whatever other sources you have,' and (3) initiate a notice and removal process." 772 F.3d at 1339.

The CBOEs also argue that the purge process was individualized because some of the challenges that were originally filed were dismissed based either on information submitted by the challenged voters or their representatives, or on information that the CBOE staff found through internet research. Cumberland Opp. at 17; Moore Opp. at 18-19; Beaufort Opp. at 19. This escape hatch, however, proved useful only for those individual voters who were fortunate enough to find out about the challenge against them and attend the hearings or otherwise contest the challenges, or those voters for whom the CBOE staff fortuitously came upon information on the internet – there was absolutely no guarantee that every challenged voter received individualized consideration.

Much to the contrary, *most* of the challenged voters were systematically removed from the rolls by function of the statutory process without the CBOEs ever reviewing individualized information about the voters. *See* Cumberland Stips. ¶6 ("Unless the challenged voters attended hearings or otherwise responded to the challenge brought against them, the CBOE sustained the challenges as to almost all of them, based on the CBOE's understanding of N.C. Gen. Stat. §163-86(d)."); Moore Stips. ¶13 ("For the

12

remaining 374 voters, with neither the voters nor a representative app[e]aring on behalf of the voters appearing at the hearing, the Moore CBOE sustained the challenges, removing them from the voter rolls."); Beaufort Stips. ¶¶14-15; 16-17 ("Based on updated information from the voters, [some] challenges were withdrawn or rejected/dismissed, either in advance of or during the full challenge hearing. The Beaufort CBOE sustained the challenges against each of the [] remaining challenged voters, removing them from the voter rolls."). Defendants' challenge process therefore was not individualized, and their mass removals were thus forbidden by the NVRA's 90-day bar.

There is likewise no merit to the Beaufort CBOE's argument that the challenge process did not violate the NVRA's 90-day prohibition because their "purpose" in implementing the state challenge statute was not to remove, but to verify the eligibility of voters. Beaufort Opp. 21-23. In processing and sustaining residency-based challenges, Defendants implemented a program "the purpose of which" was to systematically remove the names of ineligible voters from the rolls. *See Arcia*, 773 F.3d at 1343-44 (holding that program to verify voters' citizenship and remove non-citzens from rolls was program with "purpose" of removing ineligible voters, and therefore covered by NVRA's 90-day prohibition). If the Beaufort CBOE were correct, then any systematic program to remove ineligible voters within 90 days of a federal election could be successfully defended on the ground that its purpose was to verify eligible voters, not to remove ineligible voters.

Nor does the Cumberland and Moore CBOEs' argument that Defendants' mass removals were not a state program because they have "no control over whether or when

13

any challenges are brought by anyone anywhere in the State" hold water. Cumberland Opp. 14; Moore Opp. 14. While the voter purges were triggered by private challengers, the process that removed the voters was conducted by state actors who, acting under state law, performed all necessary steps to hear, sustain, and execute the challenge-based cancellations. *See Eaton*, 581 F. Supp. 2d at 1083 ("[I]f the State's procedure for evaluating voter challenges allows a county election official to conclude that any voter [the challenger] has targeted on the basis of change-of-address information cannot vote, or that the elector has to prove anything before he or she is allowed to vote, *the State* would then be in clear violation of federal law") (emphasis added).

Defendants thus acted under state law to process mass challenges within the 90 days before a federal election, in violation of the NVRA, 52 U.S.C. §20507(c)(2)(A). In doing so, Defendants did exactly what the federal court in *Eaton* explained would violate the NVRA. 581 F. Supp. 2d at 1081-82 (if state had, within 90-day period, engaged in conduct that struck voters from registration rolls based on private party's mass challenges, "its actions would violate the Federal Voter Registration Act").

## C. The Cumberland CBOE's Suggestion That There Was No Harm to Removed Voters is Incorrect

The Cumberland CBOE suggests that even if there were illegally and wrongly removed eligible voters among the over 3,500 voters that it struck from its rolls, those voters were not harmed because state law provides that voters who are not on the rolls may cast a provisional ballot upon attesting to their eligibility in writing. Cumberland Opp. at 18-19 (citing N.C. Gen. Stat. §163A-1142). The Cumberland CBOE argues that "any voter

14

who was removed by the challenge process in Cumberland was still able to ... vote a provisional official ballot," and that "[i]t is not unreasonable that a voter who was removed from the voter lists under the circumstances of the challenges heard by the Cumberland CBOE should be required to declare his or her eligibility and vote a provisional official ballot." *Id.*

This assertion is incorrect. Provisional ballots are simply not the same as regular ballots. As Plaintiffs established during the preliminary injunction hearing in the present case, the process of casting a provisional ballot places a significant extra burden on the voter, requiring more time, extra lines, and added paperwork. *See* Tr. Prelim. Inj. Hearing at 25-27, 109-113 (Moore BOE Director Clendenin testimony that voters must wait in multiple lines and attest to their eligibility to vote before being able to cast provisional ballot), ECF No. 79. It also puts the onus on voters who have just been told their registration was cancelled to then attest under oath that they are registered. *See id.*; N.C. Gen. Stat. §163A-1142(2). Furthermore, casting a provisional ballot carries with it the risk that the vote might not be counted. *Id.* The CBOEs make no showing that the provisional ballot of an unlawfully removed voter must be counted. Indeed, in the 2014 election, over half of the provisional ballots cast in North Carolina were not counted. *See* U.S. ELECTION ASSISTANCE COMMISSION, THE 2014 EAC ELECTION ADMINISTRATION & VOTING SURVEY COMPREHENSIVE REPORT: A REPORT TO THE 114TH CONGRESS 227, Taylor Decl. ¶4 & Ex.A, ECF No. 17 & 17-1. In short, allowing an eligible voter to cast a provisional

15

ballot is no substitute for ensuring that that eligible voter remains on the voter registration rolls in the first place.

In any event, allowing a voter to cast a provisional ballot does nothing to cure an NVRA violation or diminish the infringement of that voter's fundamental right to vote. Neither the NVRA's notice-and-waiting-period provisions nor the 90-day prohibition provides that a state may engage in otherwise unlawful removals of eligible voters, so long as the voters are premitted to cast a provisional ballot.

If, however, the Court were to see any merit in the argument, put forward only by the Cumberland CBOE, that the availability of a provisional ballot for unlawfully removed voters somehow cures the NVRA violations here or obviates the need for a remedy, Plaintiffs respectfully request an opportunity to supplement the summary judgment record, including by engaging in limited discovery, to provide the Court with additional evidence of the burdens and risks associated with casting a provisional ballot that make it clear that it is an inequate alternative to ensuring that eligible voters remain registered to vote a regular ballot.

## III. The Court Should Order Restoration of Wrongly Removed Voters

While Plaintiffs and the SBOE agree that summary judgment is proper as to Counts I and II of the Complaint, and, as discussed above, are largely in agreement as to the proper scope of declaratory and injunctive relief, the SBOE asserts that restoration of additional wrongly removed voters who may not have been covered under the Court's preliminary injunction order is not warranted. The SBOE argues that before the Court may order the

16

restoration of purged eligible voters, the Court needs specific information regarding the particular challenge process the other counties may have used to remove them. SBOE Opp. 11-12. But Plaintiffs' proposed injunction does *not* seek the restoration of voter registrations that were cancelled for a reason other than residency. Thus, the SBOE's own position that the state challenge procedures violated the NVRA by permitting residency-based removals without complying with its notice-and-waiting-period provisions shows that this remedy is appropriate. *Id.* (concluding that "subsections (c)(1), (2) & (3) and (e) of N.C. Gen. Stat. § 163A-911 conflict with subsections (c) and (d) of Section 8"). As a matter of equity, if other counties implemented these state challenge procedures to remove voters from the rolls based on non-residency in violation of the NVRA, those voters should be restored.

Accordingly, among other requested declaratory and injunctive relief as laid out in the attached proposed order, Plaintiffs request that the Court order Defendant Strach and the SBOE to restore to the rolls and sent mailed notices of restoration to the mailing address of wrongly removed voters statewide who fit the following criteria:

> (i)      The voter's record on the Statewide Elections Information Management System ("SEIMS") database indicates the voter was removed from the list of eligible voters for a federal election due to a sustained challenge during a federal election cycle between November 8, 2010 and the date of a permanent injunction order in this case;

17

Case 1:16-cv-01274-LCB-JLW   Document 108   Filed 04/18/18   Page 17 of 21

(ii)     SEIMS records do not show that the voter subsequently registered or attempted to register at another address in North Carolina; and

(iii)    The reason for the removal, if ascertainable, did not involve qualifications other than residency, such as age, criminal convictions, mental incapacity, or death of the registrant.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Partial Summary Judgment as to Counts I and II of the Complaint should be granted, and the Court should issue the attached proposed order for declaratory and permanent injunctive relief.

Dated:   April 18, 2018

Respectfully submitted,

By: /s/ Stacey M. Leyton
Stacey M. Leyton (CA SBN 203827)
Peder J. Thoreen (CA SBN 217081)
Eric P. Brown (CA SBN 284245)
Connie K. Chan (CA SBN 284230)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Telephone: (415) 421-7151
Fax: (415) 362-8064
E-mail: sleyton@altber.com
       pthoreen@altber.com
       ebrown@altber.com
       cchan@altber.com

/s/ Penda D. Hair
Penda D. Hair (DC SBN 335133)
FORWARD JUSTICE
P.O. Box 42521
Washington D.C. 20015
Telephone: (202) 256-1976
Email: phair@forwardjustice.org

Caitlin Swain (VA SBN 84515)
Leah Kang (NC SBN 51735)
FORWARD JUSTICE
400 W. Main Street, Suite 203
Durham, NC 27701
Telephone: (919) 323-3889
Email: cswain@forwardjustice.org
      lkang@forwardjustice.org

/s/ Irving Joyner
Irving Joyner (NC SBN 7830)
P.O. Box 374
Cary, NC 27512

/s/ Mary Joyce Carlson
Mary Joyce Carlson (DC SBN 987939)
1101 New York Avenue NW
Washington DC 20008

18

Telephone: (919) 560-6293        Telephone: (202) 230-4096
Fax: (919) 530-6339               Fax: (202) 408-4649
Email: ijoyner@nccu.edu         Email: carlsonmjj@yahoo.com

## CERTIFICATE OF WORD COUNT

As required by Local Rule 7.3(d)(1) and (2), I certify that this document contains 4,700 words, excluding the parts of the document that are exempted by Local Rule 7.3(d)(1). The document therefore complies with the Court's Order Granting Plaintiffs' Motion to File a Consolidated Brief and to Exceed the Word Count, granting Plaintiffs' request to apply a 6,250 word limit to the foregoing Consolidated Reply to Defendants' Briefs in Opposition to Partial Summary Judgment.

This the 18th day of April, 2018.

_____/s/ Irving Joyner_____
Irving Joyner
*Attorney for Plaintiffs*

## CERTIFICATE OF SERVICE

I, Irving Joyner, hereby certify that on April 18, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and have verified that such filing was sent electronically using the CM/ECF.

This the 18th day of April, 2018.

_____/s/ Irving Joyner_____
Irving Joyner
*Attorney for Plaintiffs*