# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| NORTH CAROLINA STATE CONFERENCE OF THE NAACP, MOORE COUNTY BRANCH OF THE NAACP, JAMES EDWARD ARTHUR, SR., JAMES MICHAEL BROWER, GRACE BELL HARDISON, AND JAMES L. COX, | ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 1:16CV1274 |
| BIPARTISAN BOARD OF ELECTIONS AND ETHICS ENFORCEMENT, et al.,[1] | ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION, ORDER, AND JUDGMENT

LORETTA C. BIGGS, District Judge.

This matter is before the Court on: (1) Plaintiffs' Motion to Clarify Scope of Preliminary Injunction or, Alternatively, Motion to Modify Preliminary Injunction ("Motion to Clarify or Modify"), (ECF No. 91); and (2) Plaintiffs' Motion for Partial Summary Judgment as to Counts I and II of the Complaint, (ECF No. 93). For the reasons stated below, Plaintiffs'

---

[1] The North Carolina General Assembly has enacted legislation that creates a "Bipartisan State Board of Elections and Ethics Enforcement" to assume the functions of the North Carolina State Board of Elections. S. 68, 2017 Gen. Assemb., Reg. Sess. (N.C. 2017). Further, the Governor of North Carolina has appointed nine members to this new board. (ECF No. 101 at 1 n.2.) The Bipartisan State Board of Elections and Ethics Enforcement and its members are automatically substituted as parties to this action in lieu of the North Carolina State Board of Elections, pursuant to Federal Rule of Civil Procedure 25(d).

Motion for Partial Summary Judgment will be granted, and Plaintiffs' Motion to Clarify or Modify the scope of the preliminary injunction will be denied as moot.

## I.      BACKGROUND

Plaintiffs' Complaint, filed October 31, 2016, generally alleges that in the months and weeks immediately preceding the November 2016 election, boards of elections in three North Carolina counties—Beaufort, Moore, and Cumberland—improperly canceled thousands of voter registrations for changes of residency on the basis of single mailings returned as undeliverable. (ECF No. 1 ¶¶ 3, 46, 47.) More specifically, Plaintiffs allege that a "handful" of private individuals brought coordinated and targeted *en masse* challenges to voter registrations on change-of-residency grounds pursuant to North Carolina's voter challenge statute, N.C. Gen. Stat. § 163-85, et seq.[2] (*Id.* ¶¶ 42–44, 46.) Plaintiffs further allege that in sustaining these challenges and subsequently canceling challenged voter registrations, the Defendant County Boards violated the National Voter Registration Act of 1993, (the "NVRA" or "Act"). (*Id.* ¶¶ 96–98, 107.)

Also on October 31, 2016, along with their Complaint, Plaintiffs filed an Amended Application for Temporary Restraining Order, (ECF No. 21), requesting that this Court enjoin Defendants from, among other things: "(1) cancelling the registration of voters through the challenge procedure set forth in N.C.G.S. § 163-85 and § 163-86, when those challenges are

---

[2] When Plaintiffs filed their Complaint the voter challenge statutes appeared in Chapter 163 of the North Carolina General Statutes. While this action remained pending, the North Carolina General Assembly recodified Chapter 163 into a new chapter of the North Carolina General Statutes, Chapter 163A. S. 68, §§ 3,4, 2017 Gen. Assemb., Reg. Sess. (N.C. 2017). The voter challenge statutes were moved to Chapter 163A as a result of this recodification, and the Court will discuss them as such. *See id.*

based on change of residency and the State has neither received written confirmation from the voter of a change in residence outside of the county, nor complied with the NVRA's notice requirement and two-election cycle waiting period; (2) using the challenge procedure set forth in N.C.G.S. § 163-85 and § 163-86 to remove voters from the rolls based on change of residency information in the 90 days preceding a federal election; and (3) holding hearings or taking any other actions to process challenges filed under those provisions in the circumstances identified." (ECF No. 21-1 at 31.) This Court held a hearing on Plaintiffs' request on November 2, 2016.

On November 4, 2016, this Court entered a Memorandum Opinion, (ECF No. 42), concluding that Defendants' actions as alleged by Plaintiffs had likely violated the NVRA, (*id.* at 21), and simultaneously entered a Preliminary Injunction, (ECF No. 43). The injunction ordered, among other things, that (1) Defendants shall "restore the voter registrations that were canceled during the 90-day period preceding the November 8, 2016" general election "through application of the challenge procedure set forth in N.C. Gen. Stat. §§ 163-85 and 163-86, and . . . ensure that those voters are able to vote" in that election; (2) Defendants were "enjoined and restrained from canceling the registration of voters through the challenge procedures set forth in N.C. Gen. Stat. §§ 163-85 and 163-86" when officials had not complied with the NVRA; and (3) "Defendant Strach shall take all reasonable and necessary steps to ensure statewide compliance with the NVRA consistent" with the Court's Opinion. (*Id.* (emphasis omitted).)

The Beaufort County Board, the Cumberland County Board, and the Moore County Board each subsequently filed motions to dismiss, and the Court denied these motions by

Memorandum Opinion and Order signed September 26, 2017. (ECF No. 77.) Plaintiffs now move for partial summary judgment on Counts I and II of the Complaint, alleging violations of the NVRA, (ECF No. 93), in addition to bringing their Motion to Clarify or Modify, (ECF No. 91). The Court will begin by discussing the motion for partial summary judgment.

## II.    MOTION FOR PARTIAL SUMMMARY JUDGMENT

### A.  Legal Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if the evidence would permit a reasonable jury to find for the nonmoving party, and "[a] fact is material if it might affect the outcome" of the litigation. *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568 (4th Cir. 2015) (internal quotation marks omitted). Where a court has before it cross-motions for summary judgment, "the court must review each motion separately on its own merits" to determine whether each party is entitled to judgment as a matter of law. *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003).

### B.  Background on the NVRA

The NVRA "has two main objectives: increasing voter registration and removing ineligible persons from the States' voter registration rolls." *Husted v. A. Philip Randolph Inst.*, 138 S. Ct. 1833, 1838 (2018). The NVRA achieves the latter of these two objectives by requiring states to "'conduct a general program that makes a reasonable effort to remove the names' of voters who are ineligible 'by reason of' death or change in residence." *Id.* (quoting 52 U.S.C. § 20507(a)(4)). The means by which a state may remove a voter on change-of-

residence grounds however is further restricted by other provisions of the NVRA. *See* § 20507(a)(4)(B). Two of these provisions are at issue in this case: the prior notice and waiting period requirement, § 20507(d), and the prohibition of systematic removals of voter registrations within 90 days of a federal general election, § 20507(c)(2)(A).

The prior notice and waiting period requirement prohibits a state from "remov[ing] the name of a registrant from the official list of eligible voters in elections for Federal office on the ground that the registrant has changed residence unless the registrant": (1) confirms in writing that he or she has moved outside the registrar's jurisdiction; or (2) fails to respond to a notice as outlined under subsection (d)(2), and (3) has not voted or appeared to vote in two federal election cycles following receipt of notice. § 20507(d)(1). Subsection (d)(2) prescribes the content for a NVRA-compliant notice. Under this subsection, a notice must contain "a postage prepaid and pre-addressed return card, sent by forwardable mail, on which the registrant may state his or her current address." § 20507(d)(2). The notice must also display the following information:

> (A) If the registrant did not change his or her residence, or changed residence but remained in the registrar's jurisdiction, the registrant should return the card not later than the time provided for mail registration under subsection (a)(1)(B). If the card is not returned, affirmation or confirmation of the registrant's address may be required before the registrant is permitted to vote in a Federal election during the period beginning on the date of the notice and ending on the day after the date of the second general election for Federal office that occurs after the date of the notice, and if the registrant does not vote in an election during that period the registrant's name will be removed from the list of eligible voters. (B) If the registrant has changed residence to a place outside the registrar's jurisdiction in which the registrant is registered, information concerning how the registrant can continue to be eligible to vote.

*Id.*

The 90-day prohibition against systematic removal of voter registrations, found in subsection (c)(2)(A), provides that "[a] State shall complete, not later than 90 days prior to the date of a primary or general election for Federal office, any program the purpose of which is to systematically remove the names of ineligible voters from the official lists of eligible voters." § 20507(c)(2)(A).

## C. Discussion

Plaintiffs seek summary judgment as to Count I of the Complaint, which alleges violations of the prior notice and waiting period requirement found in 52 U.S.C. § 20507(d), and Count II, which alleges violations of the 90-day prohibition on systematic removals found in 52 U.S.C. § 20507(c)(2)(A). (ECF Nos. 1 ¶¶ 91–114; 93.) The State Board appears to concede that the conduct of the County Boards violated the NVRA and primarily disputes the scope of relief to which Plaintiffs are entitled.[3] (*See* ECF No. 101 at 6–8.) The County Boards, in contrast, each contend that their conduct is permissible under both NVRA provisions at

---

[3] The State Board makes a number of statements in its brief to support this concession, to include the following: "The statutory language of the NVRA and a growing body of case law supports the position that the NVRA prohibits removal of a registrant 'from the official list of eligible voters in elections for Federal office on the ground that the registrant has changed residence unless the registrant' either confirms in writing that he wants to be removed or the state has complied with the notice and waiting-period in subsection (d)(1)(B) of the NVRA." (ECF No. 101 at 6; *see id.* ("In so far as Plaintiffs assert that the residential-based challenges allowed by subsections (c)(1), (2) & (3) and (e) of NC. Gen. Stat. § 163A-911 conflict with subsections (c) and (d) of Section 8 of the NVRA, when those challenges are brought in a Federal Election cycle, there appears to be merit to Plaintiffs' position."); *see also id.* at 8 ("[W]hile Plaintiffs may be entitled to summary judgment on Count I, it is important to narrow any resulting permanent injunction to the scope of the NVRA's applications: to wit, removals affecting an official list of eligible voters in elections for Federal office."); *see also id.* at 9 ("[A]s to Count II . . . the NVRA and case law support Plaintiffs' position that the State cannot remove voters, or begin to remove voters, *en masse*, during the ninety (90) days before an election based on changes in residency, but there are exceptions to this time limitation that support the continued existence and operation of N.C. Gen. Stat. § 163A-911.").)

issue and further request that the Court sua sponte enter summary judgment in their favor. (ECF Nos. 102 at 1–2; 103 at 1–2; 104 at 2.)

The Court possesses the power to sua sponte enter summary judgment so long as the opposing party "was on notice that she had to come forward with all of her evidence." *Celotex Corp v. Catrett*, 477 U.S. 317, 326 (1986). *See* Fed. R. Civ. P. 56(f). The Court finds that Plaintiffs received sufficient notice in this case as the County Boards request summary judgment on the same grounds raised by Plaintiffs in their summary judgment motion. *See Eddy v. Biddle*, No. 1:11CV137, 2013 WL 66929, at *18 (N.D.W. Va. Jan. 4, 2013) (granting summary judgment to nonmovant sua sponte on issue raised by movant). The Court will, therefore, treat Plaintiffs' partial summary judgment motion and the County Boards' requests as cross-motions for summary judgment as to Counts I and II of the Complaint.

Further, Plaintiffs and the County Boards have agreed to stipulated facts for the Court to consider in evaluating the instant motions for summary judgment. (ECF Nos. 96; 97; 98; 99.) The facts that follow with respect to each County Board are taken from these stipulations.

### i. Beaufort County Board

In Beaufort County, four individuals challenged at least 138 registered voters in October 2016 pursuant to N.C. Gen. Stat. § 163A-911 on the grounds that the challenged voters were not residents of the precinct and/or municipality. (ECF No. 99 ¶¶ 1, 2.) The challenges were based on correspondence sent to each voter and returned as undeliverable. (*Id.* ¶ 3.) After holding preliminary hearings, the Beaufort County Board determined that probable cause existed to sustain 106 of the challenges based solely on the evidence that mail sent to each voter had been returned to the sender. (*Id.* ¶¶ 4, 5, 9, 10.) The Beaufort County

Board then sent notice-of-challenge letters to these 106 voters; the letters did not contain postage pre-paid and pre-addressed return cards. (*Id.* ¶¶ 8, 13.) After holding full hearings on these 106 voters in late October 2016, the Beaufort County Board sustained challenges against 65 voters, removing them from the voter rolls. (*Id.* ¶¶ 14, 15, 17, 18, 21.) The voter registrations of Plaintiffs Arthur, Hardison, and Cox were each challenged using this procedure. (*Id.* ¶¶ 6, 12, 16.)

## Count One: Prior Notice and Waiting Period Requirement

Over a matter of weeks during October 2016, the Beaufort County Board received challenges to voter registrations brought on residency grounds, concluded that probable cause existed based solely on a single mailing returned as undeliverable, and removed voters from the rolls without receiving any confirmation that these voters had moved. (ECF No. 99 ¶¶ 1, 2, 5, 10, 15, 18, 21.) The Court concludes that the Beaufort County Board violated § 20507(d) of the NVRA in sustaining challenges to voter registrations based on change of residence brought pursuant to N.C. Gen. Stat. § 163A-911, as stipulated by the parties, without complying with the prior notice and waiting period requirement in § 20507(d) of the Act. Specifically, the Beaufort County Board violated the NVRA's prohibition on removing a voter from the rolls during a federal election cycle on change-of-residence grounds without either (1) receiving the voter's written confirmation of the change of address, or (2) sending a notice containing the information required by § 20507(d)(2)[4] and waiting to confirm that the voter has not voted in two consecutive federal general elections. *See* 52 U.S.C. § 20507(d).

---

[4] The Beaufort County Board does not attempt to argue that the notices it sent to challenged voters were NVRA-compliant. The Court's examination of the notices sent by the Beaufort County

In arguing that their conduct did not violate the NVRA as alleged in Count I, the Beaufort County Board relies on *Bell v. Marinko*, 367 F.3d 588 (6th Cir. 2004), an opinion of the Sixth Circuit Court of Appeals. (ECF No. 104 at 8–14.) The court in *Marinko* affirmed a district court's ruling that Ohio's use of a voter challenge procedure allowed under state law to remove seasonal residents from a town's voter rolls did not violate the NVRA. *Marinko*, 367 F.3d at 589. In *Marinko*, seven Ohio residents challenged the registrations of approximately 100 voters pursuant to a state law allowing any registered voter to challenge any other person's right to vote. *Id.* The challenges were brought on the ground that the challenged voters were seasonal, rather than permanent, residents of the local jurisdiction, and were therefore ineligible to vote. *Id.* The Ohio Board of Elections sustained all but one of the challenges. *Id.* at 590. These seven individuals filed suit, arguing that the Ohio Board of Elections violated the NVRA because it failed to justify their removal from the voter rolls according to the exclusive grounds for a voter's removal from the rolls as provided for in the NVRA.[5] *Id.* at 590–91. Rejecting this argument, the court in *Marinko* concluded that "[i]n creating a list of justifications for removal, Congress did not intend to bar the removal of

---

Board reveals that these notices were deficient in that they failed to satisfy the requirements for such notices set forth in § 20507(d)(2)(A). (*See* ECF Nos. 99 ¶¶ 8, 13; 99-2.) The notices were not in the form of a "postage prepaid and pre-addressed return card, sent by forwardable mail, on which the registrant may state his or her current address," § 20507(d)(2)(A), and did not contain the information about how a registrant can preserve her registration as required under subsections (d)(2)(A) and (d)(2)(B). (*See* ECF No. 99-2.)

[5] Section 20507(a)(3) provides: "In the administration of voter registration for elections for Federal office, each State shall . . . provide that the name of a registrant may not be removed from the official list of eligible voters except (A) at the request of the registrant; (B) as provided by State law, by reason of criminal conviction or mental incapacity; or (C) as provided under paragraph (4)." 52 U.S.C. § 20507(a)(3). Paragraph 4 requires each state to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of (A) the death of the registrant; or (B) a change in the residence of the registrant." *Id.* § 20507(a)(4).

names from the official list of persons who were ineligible and improperly registered to vote in the first place." *Id.* at 591–92.

Marinko can be easily distinguished from the case presently before the Court on several grounds. Most saliently, the plaintiffs' argument in *Marinko* raised a question that could not be answered with reference to the plain language of the NVRA. *See id.* They argued that the Ohio Board of Elections violated the NVRA because its justification for canceling the plaintiffs' voter registrations fell outside of the permissible grounds for canceling a voter's registration prescribed in the NVRA. *See id.* Therefore, lacking clear statutory guidance to resolve this argument, the court in *Marinko* turned to the purpose of the NVRA to determine whether Congress intended to proscribe the conduct at issue in that case. *See id.* The Beaufort County Board asks this Court to apply an interpretation of the NVRA's purpose to resolve a legal question that is squarely addressed by the NVRA's text. This the Court will not do. The Fourth Circuit has instructed that "unless there is some ambiguity in the language of a statute, a court's analysis must end with the statute's plain language. . . ." *In re Sunterra Corp.*, 361 F.3d 257, 265 (4th Cir. 2004). The plain language of § 20507(d) of the NVRA is clear such that "even the most formidable argument concerning the statute's purposes could not overcome the clarity [this Court] find[s] in the statute's text." *See Kloeckner v. Solis*, 568 U.S. 41, 55 n.4 (2012).

The Court concludes that Plaintiffs are entitled to judgment as a matter of law on Count I as against the Beaufort County Board.

**Count Two: 90-Day Prohibition on Systematic Removal**

The Court will next consider whether the conduct of the Beaufort County Board violated § 20507(c)(2)(A) of the NVRA. This subsection provides that: "A State shall complete, not later than 90 days prior to the date of a primary or general election for Federal office, any program the purpose of which is to systematically remove the names of ineligible voters from the official lists of eligible voters." § 20507(c)(2)(A). There is no dispute that the conduct as stipulated by the parties occurred within 90 days of a general election for federal office. Therefore, at issue is whether this conduct constitutes a "program the purpose of which is to systematically remove the names of ineligible voters from the official lists of eligible voters." The Court concludes that it does.

As earlier stated, when determining the meaning of a statute, a court must begin its analysis by examining the statute's language. *Lee v. Norfolk S. Ry. Co.*, 802 F.3d 626, 631 (4th Cir. 2015). If a statute's language is unambiguous, then the plain meaning of the statute controls, and the inquiry is at its end. *In re Sunterra Corp.*, 361 F.3d at 265. In contrast, where the statute is ambiguous, a court must look to "other indicia of congressional intent such as the legislative history to interpret the statute." *Lee*, 802 F.3d at 631 (internal quotation marks omitted). The question whether statutory language is plain or ambiguous is "determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997). The Court will begin its analysis by determining whether "systematically remove" as used in the NVRA is ambiguous. Statutory language is ambiguous when the language "is susceptible to more than one reasonable interpretation." *In re Maharaj*, 681 F.3d 558, 568 (4th Cir. 2012).

This Court finds that the term "systematically remove" is an ambiguous term in that its meaning is susceptible to multiple interpretations, and thus, what constitutes a systematic removal is subject to debate. Further, the NVRA does not resolve this ambiguity by defining "systematically remove" elsewhere in its text.

The Court will, therefore, turn to "other indicia of congressional intent" to interpret the term's meaning in the context of the NVRA. The stated purposes of the Act provide a means of discerning congressional intent, and the NVRA's read as follows:

> (1) to establish procedures that will increase the number of eligible citizens who register to vote in elections for Federal office; (2) to make it possible for Federal, State, and local governments to implement this chapter in a manner that enhances the participation of eligible citizens as voters in elections for Federal office; (3) to protect the integrity of the electoral process; and (4) to ensure that accurate and current voter registration rolls are maintained.

§ 20501(b).[6] The Eleventh Circuit has concluded that the NVRA's prohibition on systematically removing voters within 90 days of the general election "is designed to carefully balance these four competing purposes in the NVRA . . . by limiting its reach to programs that 'systematically' remove voters from the voter rolls" but allowing removals "based on individualized information at any time." *Arcia v. Fla. Sec'y of State*, 772 F.3d 1335, 1346 (11th Cir. 2014). The court in *Arcia* recognized that Congress decided to allow systematic removal programs "at any time *except* for the 90 days before an election because that is when the risk of disfranchising eligible voters is the greatest." *Id.* As this Court previously concluded: "Individualized removals do not present the same risks as systematic removals because they

---

[6] While *Marinko* does provide non-binding authority on the purpose of the NVRA, this Court will not consider *Marinko* in discussing § 20507(c)(2)(A) because the court in that case did not consider whether the NVRA's 90-day prohibition had been violated.

are 'based on individual correspondence or rigorous individualized inquiry, leading to a smaller chance for mistakes.'" (ECF No. 42 at 11 (quoting *Arcia*, 772 F.3d at 1346).) The Court agrees with the Eleventh Circuit's observation that while "[a]t most times during the election cycle, the benefits of systematic programs outweigh the costs because eligible voters who are incorrectly removed have enough time to rectify any errors[,] . . . [e]ligible voters removed days or weeks before Election Day will likely not be able to correct the State's errors in time to vote." *Arcia*, 772 F.3d at 1346.

Here, the Beaufort County Board allowed four individuals to challenge the registrations of at least 138 registered voters. (ECF No. 99 ¶¶ 1, 2.) The challenge forms submitted by these four individuals were nearly identical.[7] (*Id.* ¶ 2.) Further, the Beaufort County Board concluded that probable cause existed to justify the cancellation of voter registrations "based solely on the challengers' evidence that pieces of mail had been returned to the sender." (*Id.* ¶¶ 5, 10.) According to the Beaufort County Board, this evidence was sufficient to cancel the voter's registration even when the mailing had been improperly mailed to the voter's residential address rather than the voter's mailing address. (*Id.* ¶¶ 5, 10–11.) Nevertheless, within a matter of weeks, 65 of the 138 challenged voters had their voter registrations canceled. (*Id.* ¶¶ 14– 15, 17–18, 21.) The Court concludes that the Beaufort County Board violated the NVRA's 90-day prohibition on systematic removals in this case.

---

[7] Plaintiffs and the Beaufort County Board have stipulated that: "The challenge forms submitted challenged the voter's 'right to remain registered to vote' and/or 'right to vote.' The grounds for the challenges were either that the 'person is not a resident of the municipality in which the person is registered' and/or the 'person is not a resident of the precinct in which the person is registered.'" (ECF No. 99 ¶ 2.)

The Beaufort County Board's process lacked individualized inquiry with the Board concluding that generic evidence was sufficient to establish a prima facie case that each challenged voter was ineligible. The evidence in many cases consisted solely of a mass mailing previously sent to challenged voters from a local campaign and returned as undeliverable. (*See id.* ¶¶ 5, 10.) This generic evidence conveyed no information about each challenged voter's specific circumstances. As this Court stated in its November 4, 2016 Memorandum Opinion:

> There is no evidence in the record that these third parties that challenged the voters had any reliable first-hand evidence specific to the voters challenged. In fact, most of these voters were targeted based on information about their status contained on the State Board's website. (*See, e.g.,* Tr. at 82, 99.) These third parties then used North Carolina's challenge procedures provided in N.C. Gen. Stat. § 163-85(a) as a mechanism to have these voters purged from the state's voter rolls.

(ECF No. 42 at 13 (footnote omitted).) Further compounding matters, once a prima facie case was established on the basis of this generic evidence, the burden shifted to the challenged voters to prove their eligibility to vote within just days or weeks before the fall election. *See* N.C. Gen. Stat. §§ 163A-911(e), 163A-912. As this Court has previously stated:

> To rebut this finding of probable cause and prevent being removed from the voter rolls, North Carolina law places the burden on the voter who has to provide an affidavit or sworn testimony at a formal hearing set by the County Boards. N.C. Gen. Stat. § 163-86(c)–(d). In this case, many of the affected voters were unaware of this hearing and did not appear, perhaps in large part because the County Boards directed the notice of formal hearing to the same address as the undelivered mailing that supported the challenges. If a challenged voter did not attend the hearing or send someone with an affidavit attesting to that voter's residency, the County Boards canceled the voter registration of the challenged voter, asserting that such cancellation was required by North Carolina law.

(ECF No. 42 at 14–15.) This procedure demonstrates precisely why Congress prohibited states from conducting systematic programs to remove ineligible voters within 90 days of a

federal general election.[8]  If a voter failed to appear in some form before the Beaufort County Board to contest its finding of probable cause, then the voter would have been removed from the rolls—and quite possibly disenfranchised—solely on the basis of a single mailing that may well have been sent to the wrong address.[9]  *See Arcia*, 772 F.3d at 1346 (explaining that the risk of disenfranchising eligible voters is greatest within 90 days before an election).  The NVRA prohibits elections officials from making such a grave error.

The Court concludes that Plaintiffs are entitled to judgment as a matter of law on Count II as against the Beaufort County Board.  Further, having determined that Plaintiffs are entitled to judgment as a matter of law as against the Beaufort County Board on both counts, the Court will accordingly grant Plaintiffs' motion for partial summary judgment as against the Beaufort County Board and deny the Beaufort County Board's motion.

### ii. Cumberland County Board

In Cumberland County, one voter challenged the voter registrations of more than 4,000 individuals pursuant to N.C. Gen. Stat. § 163-85(c)(3) on the ground that the challenged voters did not reside in the precincts in which they were registered.  (ECF No. 97 ¶¶ 1–2.)  The only evidence submitted in support of each challenge was a single mass mailing sent to each voter from the "Voter Integrity Project of NC—Cumberland County" and returned as

---

[8] This Court rejects the arguments of the County Boards that their conduct in considering the *en masse* challenges brought by private individuals did not amount to a "State" program, (*see, e.g.*, ECF No. 103 at 13–14), and that the purpose of this program was to verify voters' eligibility rather than to remove purportedly ineligible voters from the rolls, (*see* ECF No. 104 at 21–23).

[9] "In some cases, the campaign mailings that formed the basis of the probable cause findings had not been mailed to the voter's mailing address, but instead to the voter's residential address."  (ECF No. 99 ¶ 5.)

undeliverable. (*Id.* ¶ 2.) After holding hearings in September and October 2016, the Cumberland County Board found probable cause on more than 3,500 of these challenges. (*Id.* ¶ 3.) Upon this finding of probable cause, the Cumberland County Board mailed a notice-of-challenge letter to these challenged voters, and these notices did not include postage-prepaid and pre-addressed return cards. (*Id.* ¶ 4.) Almost all of these challenges were sustained, resulting in the removal of the challenged voters from the rolls, "[u]nless the challenged voters attended hearings or otherwise responded to the challenges brought against them." (*Id.* ¶ 6.)

## Count One: Prior Notice and Waiting Period Requirement

The Court concludes that the Cumberland County Board violated § 20507(d) of the NVRA in sustaining challenges to voter registrations based on change of residency made pursuant to N.C. Gen. Stat. § 163A-911, as stipulated by the parties, without complying with the prior notice and waiting period requirement in § 20507(d) of the Act. The uncontested facts show that the Cumberland County Board violated the NVRA's prohibition on removing a voter from the rolls during a federal election cycle on change-of-residence grounds without either (1) receiving the voter's written confirmation of the change of address, or (2) sending a notice containing the information required by § 20507(d)(2)[10] and waiting to confirm that the voter has not voted in two consecutive federal general elections. *See* 52 U.S.C. § 20507(d). Over a matter of weeks during September and October 2016, the Cumberland County Board received more than 4,000 challenges to voter registrations brought on residency grounds, concluded that probable cause existed based solely on a single mailing returned as

---

[10] The Court further concludes that the notices sent by the Cumberland County Board were deficient in that they failed to satisfy § 20507(d)(2)(a). *See supra* n.4.

undeliverable, and removed more than 3,500 voters from the rolls without receiving any confirmation that these voters had changed addresses. (ECF No. 97 ¶¶ 1–4, 6.) This conduct by the Cumberland County Board plainly violates the NVRA's prior notice and waiting period requirement. While the Cumberland County Board relies on *Marinko* to argue otherwise, this Court rejects these arguments for the same reasons expressed with respect to the Beaufort County Board.

### Count Two: 90-Day Prohibition of Systematic Removal

The Court will next consider whether the conduct of the Cumberland County Board violated § 20507(c)(2)(A) of the NVRA. The Cumberland County Board allowed a single individual to challenge the registrations of more than 4,000 registered voters. (*Id.* ¶ 1.) Further, the Cumberland County Board concluded that probable cause existed to justify the cancellation of voter registrations based solely on a single piece of mail returned as undeliverable. (*Id.* ¶ 2, 3, 6.) Within a matter of weeks, more than 3,500 of these voters had their voter registrations canceled. (*Id.* ¶¶ 1, 3, 6.) There is no dispute that this conduct occurred within 90 days of a general election for federal office. This *en masse* cancellation of voter registrations lacked individualized inquiry into the circumstances of each voter and provided little to no opportunity for improper removals to be corrected. Thus, for the reasons detailed in the discussion with respect to the Beaufort County Board, this Court concludes that the Cumberland County Board violated the NVRA's prohibition on systematic removals within 90 days of a federal general election.

For the above stated reasons, Plaintiffs are entitled to judgment as a matter of law as against the Cumberland County Board on both Counts I and II of the Complaint.[11] The Court will accordingly grant Plaintiffs' motion for partial summary judgment as against the Cumberland County Board and deny the Cumberland County Board's motion.

### iii. Moore County Board

In Moore County, one individual challenged 498 registered voters on residency grounds based on a single postcard sent from the "Moore Voter Integrity Project" and returned as undeliverable. (ECF No. 98 ¶¶ 1–3.) Before holding preliminary hearings, the Moore County Board of Elections and its staff "conducted research on the challenged voters in an attempt to find updated residency information." (*Id.* ¶ 4.) Based on this research, 99 of these challenges were resolved and dismissed. (*Id.*) The Moore County Board found probable cause as to the remaining 399 voters, and subsequently sent them written notices informing them of the challenges. (*Id.* ¶¶ 5–6.) These notices did not include postage-prepaid and pre-addressed return cards. (*Id.* ¶ 8.) The Moore County Board held full hearings on these 399 voters on October 14, 2016 and sustained challenges against 374 voters, removing them from the rolls. (*Id.* ¶ 13.) The voter registration of Plaintiff Brower was challenged using this procedure. (*Id.* ¶ 9.)

---

[11] This Court's conclusion is not disturbed by the fact that a voter whose registration was improperly canceled may have been allowed to cast a provisional ballot as argued by the Cumberland County Board, (*see* ECF No. 103 at 18).

## Count One: Prior Notice and Waiting Period Requirement

The uncontested facts show that the Moore County Board violated the NVRA's prohibition on removing a voter from the rolls during a federal election cycle on change-of-residence grounds without either (1) receiving the voter's written confirmation of the change of address, or (2) sending a notice containing the information required by § 20507(d)(2)[12] and waiting to confirm that the voter has not voted in two consecutive federal general elections. *See* 52 U.S.C. § 20507(d). (*See generally* ECF No. 98.) The Court concludes that the Moore County Board's use of the voter challenge process allowed in N.C. Gen. Stat. § 163A-911, as stipulated by the parties, without complying with the prior notice and waiting period requirement in § 20507(d), is in violation of the NVRA. The Moore County Board's reliance on *Marinko* to argue to the contrary is misplaced, for the same reasons outlined with respect to the Beaufort and Cumberland County Boards.

## Count Two: 90-Day Prohibition of Systematic Removal

In Moore County, one individual challenged 498 registered voters on residency grounds based on a single postcard sent from the "Moore Voter Integrity Project" and returned as undeliverable. (ECF No. 98 ¶¶ 1–3.) Before holding preliminary hearings, the Moore County Board of Elections and its staff "conducted research on the challenged voters in an attempt to find updated residency information." (*Id.* ¶ 4.) Based on this research, 99 of these challenges were resolved and dismissed. (*Id.*) Nevertheless, for the 374 individuals whose voter registrations were ultimately canceled, the single postcard returned as

---

[12] The Court concludes that the notices sent by the Moore County Board were deficient in that they failed to satisfy § 20507(d)(2)(a). *See supra* n.4.

undeliverable served as prima facie evidence sufficient to justify the cancellation of their voter registrations. (*Id.* ¶¶ 1–3, 5, 13.) *See* N.C. Gen. Stat. § 163A-911(e). The Court concludes that the cancellation of these 374 voters' registrations lacked the individualized inquiry necessary to survive the NVRA's prohibition on systematic removals within 90 days of a federal general election.

The Court recognizes that the Moore County Board made an effort to gather individualized information about each challenged voter to the extent possible before sustaining each challenge. (*See* ECF No. 102 at 16–19.) The Moore County Board argues that this process of gathering individualized information is sufficient for the Court to conclude that their conduct was not "systematic" within the meaning of the NVRA. (*Id.*) The Court rejects this argument. The Court would find this argument persuasive if individualized inquiry was necessary to sustain each challenge. However, the Moore County Board used individualized inquiry to determine which challenges to dismiss. Thus, a Moore County voter whose registration was improperly challenged would have had her registration canceled on the basis of a single piece of mail returned as undeliverable unless the Moore County Board was able to ascertain her residency on the basis of individualized inquiry. This Court again observes that: "Despite the efforts of these Boards and citizens in attempting to resolve these large scale voter challenges so close to an election, Individual Plaintiffs and thousands of other eligible voters were either in jeopardy of being purged or were in fact purged from the voter rolls, placing them at risk of being *erroneously* disenfranchised." (ECF No. 42 at 17 (emphasis added).) The NVRA's 90-day prohibition on systematic removals requires this individualized inquiry to function as a condition precedent to removal rather than a condition subsequent.

*See Arcia*, 772 F.3d at 1346. Simply put, the Moore County Board's effort to obtain individualized information occurred too late in the process to provide the safeguards against disenfranchising voters that Congress intended in enacting the NVRA.

The Court concludes that the Moore County Board violated the NVRA's 90-day prohibition on systematic removals. Accordingly, Plaintiffs are entitled to judgment as a matter of law as against the Moore County Board as to both counts, and the Moore County Board's cross-motion will therefore be denied.

### D. Declaratory and Injunctive Relief

Plaintiffs have requested that this Court award declaratory and injunctive relief. With respect to the declaratory relief, this Court will declare that Defendants' conduct in sustaining challenges to voter registrations without complying with the prior notice and waiting period requirement mandated by the NVRA, as well as systematically canceling registrations and removing voters from the rolls within 90 days of the November 2016 election, violated 52 U.S.C. § 20507(c)(2)(A) and 52 U.S.C. § 20507(d)(1). Plaintiffs also request that this Court declare that Defendants have violated 52 U.S.C. § 20507(f), and the State Board concedes this violation by suggesting the Court declare that subsection (f) has been violated. (ECF Nos. 94 at 18–19; 101 at 10.) Subsection (f) prohibits a registrar from canceling a voter's registration by reason of a change of address to another address within the registrar's jurisdiction.[13] 52

---

[13] Specifically, subsection (f) provides: "In the case of a change of address, for voting purposes, of a registrant to another address within the same registrar's jurisdiction, the registrar shall correct the voting registration list accordingly, and the registrant's name may not be removed from the official list of eligible voters by reason of such a change of address except as provided in subsection (d)." 52 U.S.C. § 20507(f).

U.S.C. § 20507(f). The record discloses that the Beaufort County Defendants violated § 20507(f) by sustaining the challenge to, and canceling the voter registration of, Plaintiff James Arthur, Sr., by reason of a change of address, even though Mr. Arthur never moved outside of Beaufort County.[14] (ECF Nos. 8 ¶¶ 3, 4, 5, 11; 99 ¶ 16.) The Court will therefore declare that the Beaufort County Defendants violated § 20507(f).

The Court will next consider whether permanent injunctive relief is warranted and the proper scope of relief to be awarded. An injunction is an equitable remedy that, the Supreme Court has cautioned, "does not follow from success on the merits as a matter of course." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 32 (2008). A plaintiff requesting a permanent injunction must show:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*SAS Inst., Inc. v. World Programming Ltd.*, 874 F.3d 370, 385 (4th Cir. 2017), *petition for cert. filed*, (quoting *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)). "Satisfying these four factors is a high bar, as it should be," because "[a]n injunction is a drastic and extraordinary remedy." *Id.* (alteration in original) (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010)).

Plaintiffs have shown that a permanent injunction is warranted under the circumstances of this case. Absent an injunction, the violations of the NVRA outlined above

---

[14] Mr. Arthur registered to vote at an address in Belhaven, North Carolina in 2011 and moved to a nursing home located in Washington, North Carolina in 2013. (ECF No. 8 ¶¶ 3–5.) Both addresses are in Beaufort County. (*Id.*)

by the Beaufort, Cumberland, and Moore County Boards, as well as the State Board, can and most likely will occur. *See Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 938 (4th Cir. 1995) (recognizing that "a party seeking an injunction must normally show that it would suffer irreparable injury absent the injunctive relief"). Any North Carolina registered voter can use the voter challenge process authorized under N.C. Gen. Stat. §§ 163A-911 et seq. to challenge the voter registration of the individual Plaintiffs on residency grounds, singularly or *en masse*. Nor would Defendants be prevented from sustaining such challenges and improperly canceling these registrations while failing to adhere to the mandates of the NVRA. This conduct would necessarily cause Plaintiffs NC NAACP and Moore County NAACP to divert more of their resources to, once again, challenging this unlawful conduct. The Fourth Circuit has acknowledged that "[c]ourts routinely deem restrictions on fundamental voting rights irreparable injury." *League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 247 (4th Cir. 2014). Further, there can be no question that these voters would lack an adequate remedy at law if their voter registrations were again challenged just weeks before a federal election because "once the election occurs, there can be no do-over and no redress." *Id.* (concluding "[t]he injury to these voters is real and completely irreparable if nothing is done to enjoin this law").

This Court also concludes that, considering the balance of hardships, a remedy in equity is warranted, and further, the public interest would not be disserved by a permanent injunction. The balance of hardships tips decidedly in Plaintiffs' favor. Plaintiffs, as the Court has explained, face irreparable harm in the absence of a permanent injunction, whereas neither the State Board nor the County Boards have identified any harm that they will suffer from the

issuance of an injunction. Second, the public interest in this case could not be clearer. This Court fully agrees with the Fourth Circuit's conclusion that "[b]y definition, '[t]he public interest . . . favors permitting as many qualified voters to vote as possible.'" *Id.* (second alternation in original) (quoting *Obama for Am. v. Husted*, 697 F.3d 423, 437 (6th Cir. 2012)). The NVRA encourages the participation of qualified voters in federal elections by mandating certain procedures designed to reduce the risk that a voter's registration might be erroneously canceled. Defendants' conduct contravened these procedures. The public interest, therefore, weighs in favor of the Plaintiffs.

As to the scope of the injunction to be issued, an injunction prospectively enjoining Defendants from canceling the registration of voters in violation of the NVRA's prior notice and waiting period requirement and 90-day prohibition on systematic removals, as well as ordering the Executive Director of the State Board to ensure statewide compliance with the NVRA, will issue by Order signed below. Plaintiffs vigorously argue for this Court to issue a statewide injunction that includes "ensuring restoration of voters in other counties who were unlawfully removed based on residency-based challenges" between November 8, 2010 and the date of this Court's issuance of a permanent injunction. (ECF No. 94 at 26–29.) As to this request, the Court reiterates its conclusion stated in its November 4, 2016 Memorandum Opinion: "The Court declines to expand any relief to the counties not named in this lawsuit and for which the Court has no specific information regarding the process used in those counties or the specific nature of the challenges." (ECF No. 42 at 24.) Accordingly, while the Court will order the Executive Director of the State Board to ensure statewide compliance with this Court's Memorandum Opinion and Order, the Court will not order the restoration

of voter registrations not at issue in this case. *See PBM Prods., LLC v. Mead Johnson & Co.*, 639 F.3d 111, 128 (4th Cir. 2011) (stating that the court of appeals "will vacate an injunction if it is broader in scope than that necessary to provide complete relief to the plaintiff[s] or if an injunction does not carefully address only the circumstances of the case" (internal quotation marks omitted)).

## III.     MOTION TO CLARIFY OR MODIFY PRELIMINARY INJUNCTION

Plaintiffs, in addition to seeking partial summary judgment, have filed a Motion to Clarify Scope of Preliminary Injunction or, Alternatively, Motion to Modify Preliminary Injunction. (ECF No. 91.) In this filing, Plaintiffs "move the Court to issue an order clarifying that the Court's November 4, 2016 Order Granting Preliminary Injunction . . . was not limited to voter challenges in connection with the November 2016 election, but rather continues to remain in effect until the entry of final judgment in this action, or until the Court otherwise dissolves the preliminary injunction." (*Id.* at 1.) The Court has concluded that a permanent injunction will issue. As this permanent injunction will be prospective, and therefore expressly not limited to the November 4, 2016 general election, the Court concludes that Plaintiffs' Motion to Clarify or Modify is moot. The Court will deny Plaintiffs' motion on this basis.

## IV.     CONCLUSION

For the reasons stated above, the Court concludes that Plaintiffs are entitled to judgment as a matter of law against Defendants as to Counts I and II of the Complaint. The Court further concludes that Plaintiffs have shown irreparable harm in the absence of injunctive relief, the inadequacy of remedies at law, that the balance of equities tips in their favor, and that an injunction is in the public interest. The Court will, therefore, enjoin

Defendants from canceling voter registrations using the challenge procedure outlined in N.C. Gen. Stat. § 163A-911 et seq. without complying with the NVRA's prior notice and waiting period requirement and prohibition on systematic removals within 90 days of a federal election. Further, the Court will order the Executive Director of the State Board to ensure statewide compliance with the NVRA. Finally, Plaintiffs' Motion to Clarify or Modify will be denied as moot.

For the reasons outlined herein, the Court enters the following:

## ORDER AND JUDGMENT

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion to Clarify the Scope of Preliminary Injunction or, Alternatively, Motion to Modify Preliminary Injunction, (ECF No. 91), is **DENIED** as moot.

**IT IS FURTHER ORDERED AND ADJUDGED** that Plaintiffs' Motion for Partial Summary Judgment as to Counts I and II of the Complaint, (ECF No. 93), is **GRANTED IN PART** to the extent as set forth herein. Judgment is hereby entered in favor of Plaintiffs and against Defendants on Counts I and II of the Complaint. This Court hereby declares that the sustaining of the voter challenges brought in Cumberland, Moore, and Beaufort Counties pursuant to N.C. Gen. Stat. § 163A-911(c)(1)–(3) during the months immediately preceding the November 2016 general election, and the subsequent cancellation of the voter challenges subject to the sustained challenges, violated the NVRA, specifically 52 U.S.C. § 20507(c)(2)(A), 52 U.S.C. § 20507(d)(1), and with respect to the Beaufort County Board, 52 U.S.C. § 20507(f).

**IT IS FURTHER ORDERED** that Defendants and their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them, are **HEREBY ENJOINED AND RESTRAINED** from: (1) removing the registration of voters from the official list of eligible voters in elections for federal office through the challenge procedures set forth in N.C. Gen. Stat. §§ 163A-911 et seq., when those challenges are based on change of residency and the State has neither received written confirmation from the voter of a change of residency outside of the county, nor complied with the NVRA's prior notice requirement and two-election cycle waiting period; (2) using the challenge procedure set forth in N.C. Gen. Stat. §§ 163A-911 et seq. to remove voters from the rolls without individualized inquiry as to the circumstances of each voter in the 90 days preceding a federal election in the absence of a request of the registrant, necessity under State law by reason of criminal conviction or mental incapacity, or the death of the registrant; and (3) holding hearings or taking any other action(s) to process challenges filed under those provisions in the circumstances identified above.

**IT IS FURTHER ORDERED** that the Executive Director of the Bipartisan State Board of Elections and Ethics Enforcement, currently Defendant Strach, her successors or replacements, shall take all reasonable and necessary steps to ensure statewide compliance with the NVRA consistent with this Court's Memorandum Opinion and this Order.

This, the 7th day of August, 2018.

/s/ Loretta C. Biggs
United States District Judge